UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Criminal Case No: **1:21-cr-00382** |
| ) | |
| **CHRISTOPHER WARNAGIRIS,** ) | |
| ) | |
| Defendant. ) | |

# DEFENDANT'S OPPOSITION TO
# GOVERNMENT'S REQUEST FOR PROTECTIVE ORDER

The government has filed a request for a Protective Order ("PO") to cover discovery materials that the government is required to produce to the defendant, Major Christopher Warnagiris, pursuant to:

- Rule 16 of the Federal Rules of Criminal Procedure,

- the Due Process Protections Act and Rule 5(f) of the Federal Rules of Criminal Procedure, as amended on October 21, 2020,

- *Brady v. Maryland*, 373 U.S. 83 (1963), *Strickler v. Greene*, 527 U.S. 263 (1999), *United States v. Agurs*, 427 U.S. 97 (1976), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 475 U.S. 667 (1985), and *California v. Trombetta*, 467 U.S. 479 (1984), and their progeny, and,

- The U.S. Attorney's Office General Discovery Policy (2015), which promises that counsel for the government will provide "*discovery beyond* what is required under Rule 16 and other governing federal law." (Emphasis added.)

The government is seeking to protect most discovery materials in this case by what has come to be known as a *standard* PO for a Capitol prosecutions, identical to the ones the government has filed *unopposed* in other January 6 Capitol cases.[1] In the meantime, the government is withholding discovery materials that they do not want the defendant to utilize or share as the defense deems necessary. The government advises they will not provide video evidence from CCTV cameras until the requested PO is entered in this case. Withheld materials include potentially exculpatory video footage.

Maj. Warnagiris opposes the government's draft of the PO as overbroad and not narrowly tailored, falling short of the "particularized, specific showing" standard required in the District of Columbia for entry of a protective order, and specifically opposes on the following grounds:

- the proposed PO creates a disparity between the parties in their ability to utilize video evidence, giving the government a strategic advantage to simply choose which videos to make public while at the same time burdening the defendant with litigation if he wished to do the same;

- the proposed PO protects videos from cameras and of areas that have already been made public through similar videos in other cases, prohibiting the defendant

---

[1] In the January 6 Capitol case *United States v. Samuel Lazar*, Case No 21-CR-525-ABJ (D.D.C. 2021), in a minute order entered on September 1, 2021, Judge Amy Berman Jackson denied the government's *unopposed* motion for a protective order, without prejudice, on the basis that the proposed order violated Local Rule of Criminal Procedure 49(f)(6)(i). While this factor is relevant to the opposition of the government's PO in this case and any other Capitol prosecution, Maj. Warnagiris' opposition to the PO is based on additional and more contentious factors, as outlined by the foregoing opposition.

- from utilizing video footage under a security concern argument that is inapplicable when the camera positions and areas covered have already been revealed to the public;

- the government has already publicly released CCTV footage of Maj. Warnagiris and video stills from security cameras of Maj. Warnagiris, nullifying the concerns outlined in their proposed PO with respect to videos and images depicting the allegations against this defendant;

- the proposed PO protects *videos* from recordings and of areas that have already been made public through *video stills, or screen shots*, from these cameras and recordings, which have been filed liberally in federal courts and released to the public by the government on a dedicated web site — yet the proposed PO prohibits the defendant from utilizing moving video while the government continues to use and publicize images from the same sources, under a security concern argument that is inconsistent with the government's actions and alleged concerns; and,

- while the law and the proposed PO place the burden on the government to maintain the protection of a PO, the government has, in at least one other Capitol case where this standard PO has been entered, audaciously filed pleadings shifting the burden from the government to the defense when the defendant contested the sensitivity of the PO designation for a particular piece of evidence pursuant to Section 9 of the standard PO — demonstrating that the government cannot be trusted to abide by the conditions of their own PO, and placing defense

counsel in an ethical dilemma for all future cases where the government seeks defense agreement to this type of PO.

## LEGAL STANDARD AND ARGUMENT

"When the Government is seeking a protective order, it bears the burden of showing that good cause exists for its issuance. Good cause requires a 'particularized, specific showing.'" *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (internal citations omitted). "In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Id*. In weighing the need for a protective order against constitutional prejudice to the Defendant or harm to the public, "the Court considers two factors—the nature and circumstances of the alleged crime and the Defendant's criminal history. Considering the type of crime charged helps assess the possible threats to the safety and privacy of the victim." *Id*.

Moreover, the D.C. Circuit recognizes a "strong presumption in favor of public access to judicial proceedings." *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980).[2]

---

[2] *See also In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power"); *Waller v. Georgia*, 467 U.S. 39, 47 (1984) ("The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor … The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny"); *Gannett Co. v. DePasquale*. See 443 U. S. 368, 380 (1979) ("The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions").

A. Burden to Show Good Cause

Paragraph 9 of the proposed PO is in concert with the law governing the secrecy of evidence, specifically noting that the burden of good cause on maintaining the designations "remains with the government at all times."

> 9. **Modification Permitted.** Nothing in this Order shall prevent any party from seeking modification of this Order nor prevent the defense from contesting a sensitivity designation. The parties agree that the burden of demonstrating the need for a protective order remains with the government at all times.

It would seem without question that the government bears the burden of showing good cause when seeking a protective order, or when responding to a defendant who contests such designation. Yet, in the concurrent Capitol case of *United States v. John Anderson*, Case No 1:21-CR-215 (D.D.C. 2021), where a standard PO was entered and the defendant later filed for an amendment of the sensitivity designations on a 30-second CCTV clip, the government shifted the burden of demonstrating good cause on to the defendant, audaciously arguing in their responsive pleading that "defendant has not demonstrated good cause to remove the designation."

The government's decision not to abide by the terms of the PO that it had drafted and had asked the defendants in all of the Capitol cases to sign, which most did in good faith reliance on preserving their ability to readily contest the government's secrecy designations later, has created an ethical dilemma for defense counsel in Capitol cases moving forward — which is precisely what undesigned counsel is encountering and bringing to the court's attention in this matter.



*Highlighted snippets from briefs of the government and the defense in United States v. John Anderson.*

B. Materials Already Made Public

The materials that the government sought to protect in the *Anderson* case, the same materials that the PO covers in this case, include videos of Capitol areas and videos from CCTV cameras that are almost identical to ones that have *already been made public by the government* in a variety of Capitol prosecutions and investigations, in addition to the U.S. House of Representatives trial of President Donald J. Trump.[3]

In the *Anderson* case, citing security concerns, the government fought to keep from the public a 30-second video from a CCTV camera *even though* in the concurrent case of *United States v. Robert Morss*, Case No 21-CR-40-TNM-5 (D.D.C. 2021), the *government released CCTV from that same camera*, showing the same area, the same people, and almost the same time frame, without contestation and without citing any security concerns. See *United States v. John Anderson*, Criminal Case No 1:21-CR-00215-RC (D.D.C. 2021) [Document 33]. The

---

[3] Capitol CCTV videos can be readily identified by a white-on-black date and time stamp in the upper left hand corner of videos and screen shots, although some video stills released by the government gave been edited to cut out the top CCTV identifier frame.

government had no explanation for this inconsistency of positions at the oral hearing on the *Anderson* motion, resulting in Judge Rudolph Contreras ruling against the government. *Id*. at Document 37.

The proposed PO makes no exception for nearly identical materials to ones that have already been made public, from the same cameras depicting the same areas, and instead burdens the defendant with litigation if he wishes to release such videos. And, as can be deduced from the *Anderson* case, the defendant should expect strong government opposition to the release of the video if he endeavors in such a task, even if the video is not genuinely subject to the alleged security concerns that the government puts forward in their request for a PO.

The government has also demonstrated that, when favorable to their case, they will forgo the alleged security concerns that were outlined for this court and publicly present CCTV footage to bolster their cases against January 6 Capitol defendants. They have already done so in various active prosecutions and investigations,[4] in addition to the U.S. House of Representatives trial of President Donald J. Trump:

- *United States v. Emanuel Jackson*, Case No 1:21-CR-395-TJK (D.D.C. 2021)
- *United States v. Bruno Cua*, Case No 1:21-CR-107-RDM (D.D.C. 2021)
- *United States v. George Tanios*, Case No 1:21-CR-222-TFH-2 (D.D.C. 2021)
- *United States v. Robert Morss*, Case No 21-CR-40-TNM-5 (D.D.C. 2021)
- *United States v. Christopher Warnagiris*, Case No 1:21-cr-00382-PLF (D.D.C. 2021)

---

[4] There may be additional publicized videos of this defendant and others, and other such cases known to the government, the party in a better position to complete this list for the court, where the government has released Capitol CCTV footage in their prosecutions or communications with the public to assist in prosecutions.

Indeed, the government has already publicly released CCTV footage depicting this defendant in the Capitol. The CCTV video of Maj. Warnagiris has been posted to Twitter by the account depicted in the screen shot below and has been viewed by the public over 72,200 times. *Available at* https://twitter.com/jsrailton/status/1392904052556640257. Yet, this CCTV video has not been provided to the defense and will be provided as "HIGHLY SENSITIVE" once it is handed over. While the PO exempts the exact snippet or video below, the longer version of this video that will be provided to the defendant under the PO will remain protected under the PO.



*CCTV date and time stamp underlined in red for emphasis.*

As far as security concerns outlined by the government, realistically, what remains to protect in this case, other than materials not directly pertaining to Maj. Warnagiris? As the D.C.

Circuit had considered over forty years ago, denying public access should be considered when there is a "possibility of prejudice to the defendants by sensational disclosure." *United States v. Hubbard*, 650 F.2d 293, 320–21 (D.C. Cir. 1980). But, once the information has been made public the argument for protecting that information is rendered moot. *Hubbard*, 650 F.2d at 322 ("One possible reason for unsealing is that the documents were already made public through other means"). In Maj. Warnagiris' case, the prejudicial disclosure has already occurred, by initiation of the government, who now seeks to limit only the defendant in any potential responsive disclosures. The government's arguments, thus, fall short of their burden for a *good cause* showing and the elements that the D.C. Circuit considers in the need to grant a protective order request.

Moreover, the government does not seek to limit its own disclosure interests, only the disclosure interests of the defendant. What can be deduced from this quagmire of incongruity is that the terms of the PO disproportionately burden the defense to seek court approval for the removal of secrecy designations to release materials for public view, while the government maintains the freedom to choose to do the same without opposing party or court oversight. This creates a disparity between the parties. The proposed order gives the government control of the evidence and the public narrative, rendering the defense an inferior party; all the while, the two parties are to stand before the court as equals. The defendant is rendered a beggar to the government through this PO — "United States may agree to remove or reduce a sensitivity designation without further order of this Court." In essence, the proposed order allows the defendant to plead with the government, *please sir, I want some more*. The effect of the PO is that the government retains sole control over the narrative of the defendant's conduct, while the

defendant is rendered Oliver Twist and has to beg the government to reveal evidence favorable to his case.

Aside from this disparity between the parties and government's demand that defendant be placed in a begging position, the defense is not aware of a single instance of the government actually agreeing with a January 6 Capitol defendant to remove a sensitivity designation without a court order — where the government actually granted a defendant's request without litigation. In the aforementioned *Anderson* case, where Judge Contreras sided with the defense and removed the sensitivity designation after the parties filed a total of eight pleadings and had two hearings, the government fought tooth and nail to inappropriately keep evidence under secrecy designation for no apparent reason other than to maintain control of the public narrative about the defendant's culpability. See *United States v. John Anderson*, Criminal Case No 1:21-CR-00215-RC (D.D.C. 2021) [Documents 24 through 38].

The standard PO is simply unfair to the defendant. By allowing the government to maintain unilateral control of the narrative and unbalanced, opportunistic decision control over video release, the government would simply be permitted by court order to protect their party interest at the cost of prejudice to the defendant. This prejudice and prejudicial disparity is in opposition to the government's good cause request for a PO. See *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (citing case law on protective order imposition that considered whether "the defendant would be prejudiced by a protective order").

C. Public Video Stills or Screen Shots From CCTV Videos

The government has inexplicably decided that *video stills* or *screen shots* from CCTV cameras *may* be used without limitation, but *videos* cannot. The government has readily publicized video stills from their CCTV cameras on their public web site entitled "Capitol Breach Cases" and found at https://www.justice.gov/usao-dc/capitol-breach-cases. The government does not explain how video stills or screen shots can be distinguished from moving images or videos for purposes of security concern designation.

The alleged distinction between screen shots and moving video remains a conundrum. After all, a video is but a moving collection of stationary pictures. Even sound is not a concern to this analysis as the CCTV cameras were not equipped with sound recording. This is genuinely a distinction between moving pictures and stationary pictures.

As can be seen in at least two of the pages from the Statement of Facts filed in this case, displayed below, the government has already released screen shots from their security cameras in Maj. Warnagiris' case, which they also published for public viewing on https://www.justice.gov/opa/press-release/file/1393941/download. And, as discussed *supra*, the government also released CCTV video depicting Maj. Warnagiris in the Capitol to the public. There is no added security benefit to the government to keep any relevant videos of Maj. Warnagiris in secrecy. And, the government's argument for *good cause* is rendered meaningless once they release such imagery. See *Hubbard*, 650 F.2d at 322 ("One possible reason for unsealing is that the documents were already made public through other means").




Why is it that photo stills from these security cameras can be selectively publicized by the government, even the videos when they so choose, but the defendant must jump through legal hoops of fire to attempt the same, just to place his accusations in context?

By releasing the CCTV footage of Maj. Warnagiris in the Capitol, by releasing additional screen shots of him from CCTV cameras, and by releasing similar content in other Capitol cases, the government completely negates their argument for "good cause" to protect any materials that also depict similar areas or events in the Capitol. See *Hubbard*, 650 F.2d at 322 ("One possible reason for unsealing is that the documents were already made public through other means"). There is no justification for entry of the proposed PO in this case to cover media depicting Maj. Warnagiris, as the case currently stands.

## CONCLUSION

The PO is overbroad in that it protects areas and materials that have already been released or revealed to the public. The PO is not narrowly tailored to the government's alleged concerns, and the government's arguments for *good cause* are invalidated by their inconsistent treatment of the CCTV videos in the various Capitol cases, and in their release of screen shot images from the same cameras they seek to protect.

The PO inappropriately protects materials depicting Maj. Warnagiris in the Capitol even though the government has already released these materials to the public. Any protections on materials depicting this defendant should be removed from the PO as prejudicial to the defendant.

Furthermore, the imbalance created by the proposed PO renders the government and the defense unequal parties before this court. Such inequality cannot be upheld by court order.

A fair PO must be narrowly tailored to only cover materials not previously released to the public through any other means, materials not depicting this defendant, and materials which are genuinely being protected for good cause. A fair PO must balance the interests of both parties with respect to releasing evidence favorable to their side, which the proposed PO does not do. And, any PO imposed by this court must not conflict with the Local Rules.

Date: September 6, 2021

Respectfully submitted,
By Counsel:

/s/
_____
Marina Medvin, Esq.
*Counsel for Christopher Warnagiris*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

### **CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on September 6, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
_____
Marina Medvin, Esq.