# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| V. ) | CASE NO: 1:21-CR-00382 |
| ) | |
| **CHRISTOPHER WARNAGIRIS,** ) | |
| ) | |
| DEFENDANT. ) | |

## MOTION TO DISMISS COUNT TWO OF THE INDICTMENT

Defendant Christopher Warnagiris moves for dismissal of Count Two of his Indictment. Count Two alleges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, CHRISTOPHER WARNAGIRIS, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.
>
> (Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2).

Count Two contains no other allegations, is not preceded by a general facts section, and does not cross-reference any other Counts.

Defendant, therefore, moves for dismissal of this Count for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v) and for lack of specificity under Fed. R. Crim. P. 12(b)(3)(B)(iii).

**BACKGROUND**

The defendant is accused of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), on January 6, 2021.

18 U.S.C. § 1512(c)(2) states:

> (c) Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals **a record, document, or other object**, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) **otherwise** obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both. [Emphasis added.]

A conviction under 18 U.S.C. § 1512(c) is a Class C felony pursuant to 18 U.S.C. § 3559, an offense punishable by up to 20 years in federal prison, up to 3 years of supervised release under 18 U.S.C. § 3583, up to 5 years of probation under 18 U.S.C. § 3561, up to a $250,000.00 fine under 18 U.S.C. § 3571, a special assessment of $100 under 18 U.S.C. § 3013, and the permanent deprivation of Second Amendment rights under 18 U.S.C. § 922(g)(1) (s*ee Scarborough v. United States*, 431 U.S. 563 (1977)). This list of penalties does not include state-level implications of a federal felony conviction, such as the loss of voting rights and the right to serve on a jury in some states. In summary, the offense is a very serious one. It is the most serious offense in Mr. Warnagiris' Indictment.

The government, however, fails to state under what fact pattern the defendant is alleged to have violated 18 U.S.C. § 1512(c) and fails to include all necessary elements of the offense.

Since the government failed to include a description of the facts in their indictment, and because a motion to dismiss is limited to "the language of the indictment," discussion of additional facts not found in the indictment would be outside the scope and parameters of the issue before the court. See *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). As such, the defense will not be introducing or discussing facts about Mr. Warnagiris' conduct that are not found in Count Two of the indictment.

**ARGUMENT**

**I. Failure to State an Offense**

Fed. R. Crim. P. 12(b)(3)(B)(v) provides for the dismissal of an indictment that fails to state an offense.

When reviewing a Motion to Dismiss, the Court is limited to the four corners of the indictment and analysis of the statute that was cited in the indictment. See *United States v. Akinyoyenu*, 199 F. Supp. 3d 106 (D.C. 2016); *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) ("Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury."); *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes."). The government's position is that the indictment is sufficient. As such, we will proceed with the few facts as indicted — a limitation crafted by the government itself.

Citing subsection (c)(2) of 18 U.S.C. § 1512, the government alleges that the defendant "attempted to, and did, corruptly *obstruct, influence, and impede an official proceeding*, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18." [Emphasis added]. But subsection (c)(2) states, "[whoever corruptly] *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so." In the indictment of Mr. Warnagiris, the government left out the operative term of the code section which prefaces and controls all the terms that follow — the term *otherwise,* as well as any mention of *a record, document, or other object,* an indispensable component of subsection (c) that renders meaning to the term *otherwise*.

What is the operation of the term *otherwise*? What does it refer to? Why did the government leave *otherwise* out of the indictment when it prefaces and controls the terms that follow it? Are the two subsections of § 1512(c) dependent on each other or independent of one another? If independent, then what is the legal significance of the term *otherwise*? If dependent, then is § 1512(c)(2) a catchall for § 1512(c)(1)? Do both subsections of § 1512(c) criminalize conduct with respect to *a document, record, or other object?* Can the legislative term *otherwise* be discarded as legally insignificant, as indicated by the indictment?

These questions about the operative term *otherwise* have been answered by Judge Nichols. See *United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. March 7, 2022); see also *United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. May 27, 2022). To reduce redundancy and to promote efficiency, the defense hereby incorporates by reference Judge Nichols' Order in *United States v. Miller* dated March 7, 2022, and Judge

Nichols' subsequent Order in *United States v. Miller* dated May 27, 2022 for all sections of defendant's Motion to Dismiss Count Two.

Judge Nichols summarized the conundrum of the operation of the term *otherwise* as follows:

> In sum, looking just to the text of 18 U.S.C. § 1512(c), there are three possible, and two quite plausible, interpretations. It is possible that subsections (c)(1) and (c)(2) are not related at all (though this is not a very plausible interpretation). Subsection (c)(1) may contain just examples of the much broader prohibition contained in subsection (c)(2). Or subsection (c)(2) may be limited by subsection (c)(1). Based solely on the text of § 1512(c), the third option seems to present the fewest interpretive problems. But it is not abundantly clear that that interpretation is the correct one.
>
> … [outlining structural and contextual issues]
>
> [T]he Court does not believe that there is a single obvious interpretation of the statute. But it is also the case that reading § 1512(c)(1) as limiting the scope of § 1512(c)(2) avoids many of these structural or contextual issues altogether. Under such a reading, § 1512(c)(2) operates as a catchall to the narrow prohibition Congress created in § 1512(c)(1)—not as a duplicate to nearly all of § 1512.

*United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. Mar. 7, 2022).

Contrary to the suggested inference in the indictment, the term *otherwise* is not surplusage. In *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court reviewed the meaning of the term *otherwise* as used in another criminal statute, 18 U.S.C. § 924(e)(2)(B)(ii).

> [W]e cannot agree with the Government that the word "otherwise" is sufficient to demonstrate that the examples do not limit the scope of the clause. That is because the word "otherwise" can (we do not say must, cf. post, at 1589-1590 (SCALIA, J., concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others — similar, say, in respect to the degree of risk it produces, but different in respect to the "way or manner" in which it produces that risk. Webster's Third New International Dictionary 1598 (1961) (defining "otherwise" to mean "in a different way or manner").

*Begay v. United States*, 128 S.Ct. 1581, 1586 (2008). Both the judgment of the Supreme Court and the concurring opinion by Justice Scalia concluded that the term *otherwise* tethered the text preceding the word to the text following it. *United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. Mar. 7, 2022). The majority opinion in *Begay* concluded that the text preceding *otherwise* influenced the meaning of the text that followed: it "limit[ed] the scope of the clause to crimes that are similar to the examples themselves." *Begay*, 553 U.S. at 143.

The government will ask this court to rule in defiance of *Begay,* in favor of an interpretation that reduces the government's burden of proof and expands the parameters of § 1512(c)(2) to include any conduct, without limitation, as long as it obstructs, influences, or impedes an official proceeding — scrapping the confines of the operative term *otherwise* that tethers the actions of *obstructs, influences, or impedes* to a *document, record, or other object* in the preceding subsection § 1512(c)(1). But the government's interpretation ignores the congressionally-imposed limits on the law, along with its legislative history, in a bold attempt by the prosecution to create an omnipotent catchall for all conduct that the government deems obstructive to a proceeding, irrespective of its connection to documents, records, or other objects.

Congress intended no such expansiveness. See *United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. Mar. 7, 2022) (detailed analysis of legislative history supports a limited construction of § 1512(c)(2) to documents, records, or other objects).

For additional support of the defendant's position, consideration of similar provisions is insightful. Take, for instance, the neighboring code section of 18 U.S.C. § 1503(a). While this code section serves as a "catchall provision," see *United States v. Aguilar*, 515 U.S. 593, 599 (1995), and uses the terms "corruptly . . . influenc[ing], obstruct[ing], or imped[ing]," it does not

have a tethering condition or a function of the word *otherwise* as is found in § 1512(c)(2) that conditions the verbs on another requirement. Neither does another neighboring code section,18 U.S.C. § 1505, which also uses the verbs "corruptly… influences, obstructs, or impedes," but does not condition these elements on another through the use of tethering or the term "otherwise." Congress did not add the word *otherwise* accidentally to start off § 1512(c)(2) when they didn't intend for the term to have meaningful utility — we know this from looking at 18 U.S.C. §§ 1503(a) and 1505. Congress added the term *otherwise* as a precondition. Without the conditional term, 1503(a) and 1505 do not include "any limitation on the nature of the obstructive act other than that it must be committed 'corruptly.'" *United States v. McHugh*, Criminal Action No. 21-cr-453, 2022 WL 1302880 (D.D.C. May 2, 2022) (Bates, J.) (but reaching the opposite conclusion as to the utility of the term *otherwise*); see also *United States v. Ring*, 628 F. Supp. 2d 195, 224 (D.D.C. 2009) (noting that § 1512(c)(2) is independent of § 1512(c)(1)).

Further in the way of the government's proposition stands the rule of lenity— which directs courts to resolve ambiguities in criminal laws in favor of the defendant, not the government. *Liparota v. United States*, 471 U.S. 419, 427 (1985). "'[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Bouie v. City of Columbia*, 378 U. S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U. S. 612, 617 (1954)); *see also McBoyle v. United States*, 283 U.S. 25, 27 (1931) (refusing to expand a criminal statute's reach without "a fair warning ... given to the world in language the common world will understand"). Withal, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly

disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (describing lenity "as a sort of junior version of the vagueness doctrine" that "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered" (citation and quotation marks omitted)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. See also *Wooden v. United States*, 142 S. Ct. 1062, 1082 (2022) (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.").

The plainly troubling issue with § 1512(c)(2) is that it is *not* reasonably clear what conduct is rendered criminal by this code section. How does one "corruptly … otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so"? The *otherwise* wording is bewildering, to say the least, if § 1512(c)(2) is to be construed independently of § 1512(c)(1). Under the government's omnipotent interpretation of § 1512(c)(2), any conduct could be deemed obstructive, even speech — protected by the First Amendment on Capitol Grounds. See *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 584 (D.C. 1972). Such a reading would yield an unconstitutional result and "patently absurd consequences." See *United States v. Brown*, 333 U.S. 18, 27 (1948); see also *Kolender v. Lawson*, 461 U.S. 352 (1983) (finding a statute unconstitutionally vague for encouraging arbitrary enforcement); *United States v. Reese*, 92 U.S. 214 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large"). The expansive reading proposed by the government is inferred, at best, and not plain on

its face because of that pesky term *otherwise*, thereby not giving a defendant fair warning that § 1512(c)(2) is independent of § 1512(c)(1), invoking a defendant's protections under *Lanier*.

As such, following Supreme Court precedent in *Begay,* confined by the rule of lenity, and explaining how legislative history can clear any additional ambiguity as to the operation of the term *otherwise*, Judge Nichols ruled that:

> [T]he Court believes there are two plausible interpretations of the statute: either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2). The text, structure, and development of the statute over time suggest that the second reading is the better one. But the first is, at a minimum, plausible. At the very least, the Court is left with a serious ambiguity in a criminal statute… **The Court therefore concludes that § 1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding**.

*Id*. [Emphasis added.] See also *Begay,* 553 U.S. at 144 (holding that "the provision's listed examples"—that is, the text before the term *otherwise* "indicates that the statute covers only similar crimes, rather than every crime").

The overbroad reading of § 1512(c)(2), as has been argued by the government, which omits the operation of *a document, record, or other object*, would yield an unjust result. As Judge Nichols phrased it:

> Indeed, the government has relied on the breadth of (c)(2)'s terms to form the basis of its argument. And this inconsistency would come in the oddest of places: in a subsection of a subsection nestled in the middle of the statute. At a minimum, a reader would not expect to find in a statute that is otherwise narrowly (and consistently) tailored a criminal prohibition of exceptionally broad scope, especially in that location. Congress does not hide elephants in mouseholes, see *Whitman v. Am. Trucking Ass'n, Inc*., 531 U.S. 457, 468 (2001), but this seems precisely that.

> … [I]f subsection 1512(c)(2) is as broad as the government contends here, there would have been no need for the very same Congress to add § 1512(a)(2)(B) just three months later.
>
> … [T]he weight of th[e] legislative history is inconsistent with the government's position here. It suggests that, in the wake of the Enron scandal, Congress was faced with a very specific loophole: that then-existing criminal statutes made it illegal to cause or induce another person to destroy documents, but did not make it illegal to do so by oneself. Congress closed that loop by passing subsection (c), and nothing in the legislative history suggests a broader purpose than that.

*United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. Mar. 7, 2022) (finding that the statutory context suggests that § 1512(c)(2) has a narrow scope, that the historical development of § 1512 suggests that (c)(2) operates as a catchall to § 1512(c)(1), and that the legislative history supports a narrow reading of subsection (c)(2)); see also *United States v. Pugh*, 945 F.3d 9, 28-29 (2d Cir. 2019) (Calabresi, J., concurring) (noting that "it is at least arguable that [§ 1512(c)(2)] was never intended to be used so broadly" but "as applied and interpreted [by the Second Circuit] 18 U.S.C. § 1512(c) can now reach everything from the smallest crime to the broadest political attack and creates tremendous room for prosecutorial discretion"); *United States v. Reese*, 92 U.S. 214 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large").

  Judge Nichols went on to dismiss the § 1512(c)(2) count in the indictment against Mr. Miller for failure to state an offense because the indictment failed to mention *a document, record, or other object* as required to give § 1512(c)(2) legal meaning, and following the precedent set by *Begay* in giving meaning to the term *otherwise* in a criminal statute.

The language of the indictment against Mr. Warngiris is **identical** to the language indicted against Mr. Miller— neither indictment mentions *a document, record, or other object.* For the reasons stated herein, and the reasons explained by Judge Nichols, Count Two of the indictment against Mr. Warnagiris should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense. See also *United States v. Fischer*, Criminal Action No. 1: 21-cr-00234 (CJN) (D.D.C. Mar. 15, 2022) (dismissing Count Three of the defendant's indictment under § 1512(c)(2) because the indictment did not allege that defendant had taken some action with respect to a document, record, or other object); *United States v. Lang*, Criminal Action No. 1: 21-cr-0053 (CJN), Minute Order (D.D.C. June 7, 2022) (same). See also *United States v. Singleton*, Criminal Action No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (Atlas, J.) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *United States v. Hutcherson*, Criminal Action No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceeding[] through his conduct in relation to a tangible object"). *Contra United States v. Puma*, Criminal No. 21-0454 (PLF) (D.C. Mar. 19, 2022) (finding "contrary to Judge Nichols' reasoning in Miller" on a motion to dismiss for vagueness); *United States v. McCaughey et al.*, Criminal No. 21-cr-40, ECF No. 388 at 2 (D.D.C. July 20, 2022) (McFadden, J.) (denying defendant's construction that "1512(c) penalizes only documentary crimes" and noting that "*Miller* has also persuaded no other [D.D.C.] judge on this question."); *United States*

*v. Grider*, Criminal Action No. 21-022 (CKK), 2022 WL 3016775, at *3 n.3 (D.D.C. July 29, 2022) (collecting cases).[1]

## II. Lack of Specificity

Fed. R. Crim. P. 12(b)(3)(B)(iii) provides for the dismissal of an indictment that lacks specificity, which ties into the constitutional rights of the defendant to be informed of the nature and cause of the accusations that were presented on indictment to a Grand Jury.

The Fifth Amendment guarantees that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and the Sixth Amendment guarantees that a person accused of a crime shall "be informed of the nature and cause of the accusation." U.S. Const. Amend. V, VI. A valid indictment "preserves the Fifth Amendment's protections against abusive criminal charging practice." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). The indictment must not only contain the elements of the offense charged, fairly inform the defendant of the charge against which he must defend, and enable the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Sutton v. United States*, 157 F.2d 661, 663 (5th Cir. 1946) (a defendant "shall be so fully and clearly informed of the charge against him as not only to enable him to prepare his defense and not be taken by surprise at the trial, but also that the information as to the alleged offense shall be so definite and certain that he may be protected by a plea of former jeopardy against another prosecution for the same offense"). Fed. R. Crim. P.

---

[1] An appeal of Judge Nichols' decisions in the cases of Garret Miller, Edward Lang, and Joseph Fischer is pending before the United States Court of Appeals for the D.C. Circuit, Case Nos. 22-3038, 22-3039, and 22-3041. Oral Argument is scheduled for December 12, 2022. The defense will be seeking abeyance pending a decision from the Court of Appeals because the issues before the Court of Appeals are the exact ones raised by the defendant in this motion.

7(c) states that an indictment "must be a plain, concise, and definite written statement of the *essential facts constituting the offense charged*." (Emphasis added.)

In Mr. Warnagiris' indictment, the government regurgitates some of the words in § 1512(c) but fails to include the term *otherwise*, fails to include reference to *a document, record, or other object,* and fails to notify Mr. Warnagiris of the *facts* on which the government bases the indictment. The only factual context supplied in the indictment is about the proceeding itself — "an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18."[2] But what about Mr. Warnagiris' personal conduct was unlawful? In what manner did Mr. Warnagiris "corruptly obstruct, influence, and impede" this official proceeding? What is the operative *actus rea* that is alleged to have been committed criminally? Stated more simply, what exactly is the defense defending here? The Grand Jury did not sign off on a theory, leaving the government free to explore its options at trial.

Yet the government's obedience to the Constitution is not negotiable. This court has been stern with the government: "[a] defendant can only be prosecuted for offenses that a grand jury has actually passed up on." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). Reciting the operative words of a statute in an indictment is not sufficient when it allows the government to formulate a favorable fact pattern for a trial jury that has not been prescreened and approved by a grand jury. See *United States v. Cruikshank*, 92 U.S. 542, 559 (1875) ("[T]he

---

[2] The government's inclusion of facts describing the *proceeding* itself is proof of consciousness in this regard — the government is aware that descriptive and limiting facts are a necessary component of an indictment. See *United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. May 27, 2022) ("The government seems to realize that parroting the statute will not always suffice. Indeed, the Indictment includes allegations laying out the "official proceeding" at issue here.").

indictment should state the particulars, to inform the court as well as the accused. It must be made to appear — that is to say, appear from the indictment, without going further — that the acts charged will, if proved, support a conviction for the offence alleged."). This is why specificity is an indispensable component of an indictment. While the language of the statute may be used in the general description of the offense, it "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974). The requirement of a statement of facts and circumstances is key to a kosher indictment.

"A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." *Cruikshank*, 92 U.S. at 558 ("It is a crime to steal goods and chattels; but an indictment would be bad that did not specify with some degree of certainty the articles stolen."). Mr. Warnagiris' indictment conspicuously lacks any factual description of an *actus rea* and the circumstances surrounding these allegedly criminal actions. The grand jury has not "passed up on" a theory of facts or circumstances that in any way narrows the scope of the government's case against Mr. Warnagiris under § 1512(c)(2).

> In the specific context of this statute, under the government's interpretation, just about any actus reus could satisfy the statute. See, e.g., Mot. at 10-11; see also *Caldwell*, 2021 WL 6062718, at *13 (noting that "a person outside the Capitol building protesting legislation while it is under consideration by a congressional committee," or a "citizen who emails her congresswoman to urge her to vote against a judicial nominee" could fall under a broad reading of the statute, but stating without explanation that "no one would seriously contend that such [] act[s] violate[] section 1512(c)(2)"). Indeed, absent any limiting context, the words "obstruct, influence, and impede" provide essentially no limit on what criminal conduct might be at issue. See *Miller*, 2022 WL 823070, at *9; *Sandlin*, 2021 WL 5865006, at *5; see also *Caldwell*, 2021 WL 6062718, at *13 (explaining that "[t]he terms `obstruct,' `impede,' and especially `influence,' unless meaningfully limited,

> sweep in wholly innocent and protected First Amendment conduct."). This is true in part because those verbs refer to the effect that an action has, not to the act itself. See *Sandlin*, 2021 WL 5865006, at *5. Because many actions (including some constitutionally protected ones) could have the natural and probable effect of at least influencing an official proceeding, those words, without more, provide a defendant little to no guidance as to what conduct is being charged.
>
> … Absent any additional context or specificity, nothing in Count Three informs Miller of what actions he is alleged to have taken with respect to some document, record, or other object. And looking to the rest of the Indictment, and assuming that Count Three implicitly incorporates its other charges, the government has pointed to no action alleged in the Indictment's four corners that has a reasonable nexus with a document, record, or other object. The Court cannot presume that the grand jury passed judgment on this essential element of the offense.

*United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. May 27, 2022).

Count Two of Mr. Warnagiris' indictment is incomplete, overbroad, and unconstitutional. The government regurgitates some of the words in § 1512(c) but fails to notify Mr. Warnagiris of the *facts* on which the government bases the indictment. As such, the government has failed to notify the defendant with *specificity* of the nature and cause of the accusations against him in violation of his Sixth Amendment's "nature and cause" clause. See also *United States v. Miller*, Criminal Action No. 1: 21-cr-00119 (CJN) (D.C. May 27, 2022); *but see United States v. Brock*, Criminal Action No. 21-140 (JDB) (D.D.C. Aug. 31, 2022) (finding that "a wide range of actions" could obstruct, influence, or impede a joint session).

The clearest example of the defect in the indictment is the factual limitation on the government and defense in arguing this very motion — what is the *actus rea* on which the government bases its allegations, what did Mr. Warnagiris do to run afoul of the statute? The omission is a critical one.[3]

---

[3] The defense objects to consideration of any facts constituting an *actus rea* outside of Count Two of the indictment — the government cannot have its cake and eat it too.

The defendant, therefore, moves to dismiss Count Two pursuant to Fed. R. Crim. P. 12(b)(3)(B)(iii). See also *United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004) (overturning conviction and dismissing an indictment for failing to state an essential element of the offense); *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971) (noting that an indictment needs to "achieve the requisite degree of precision" and holding that an indictment is insufficient as a matter of law when "it describes the offense only in impermissibly broad and categorical terms").

## **CONCLUSION**

For any and for all of the reasons stated herein, any one of which would independently suffice, Count Two of the indictment must be dismissed.

## **ABEYANCE**

An appeal of Judge Nichols' decisions in the cases of Garret Miller, Edward Lang, and Joseph Fischer is pending before the United States Court of Appeals for the D.C. Circuit, Case Nos. 22-3038, 22-3039, and 22-3041, with Oral Argument scheduled for December 12, 2022. A decision from the Court of Appeals will directly affect the defendant's motion. As such, the defense is seeking abeyance of action on this motion and Mr. Warnagiris's case while a decision from the Court of Appeals is pending.

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on November 18, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.