## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **V.** ) | CASE NO: 1:21-CR-00382-PLF |
| ) | |
| **CHRISTOPHER WARNAGIRIS,** ) | |
| ) | |
| DEFENDANT. ) | |

### REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND THREE OF THE SUPERSEDING INDICTMENT

## I. Reply to Government's Inclusion of Facts Outside of the Indictment

The Government provided facts in their Response, ECF No. 44, which the Government excluded from the four corners of the Indictment. As has been argued in Defendant's Motion to Dismiss, the consideration of these facts is outside the scope of the legal issues that may be considered on the particular Motion to Dismiss that is the subject of the argument before this court. See *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.")

Nonetheless, the Government takes lavish liberties describing what their evidence depicts, and attributes inaccurate factual allegations to this defendant, thus requiring the defendant to add context in response.

In its brief, the Government claims that Mr. Warnagiris was "the first person to breach" the "East Rotunda Doors." Yet in the case of January 6 defendant George Tenney, Case No. 1:21-

cr-00640-TFH, the Government claimed that it was, instead, *George Tenney* who was first to breach those doors — the Government simply used different language to describe the doors, calling them the "Rotunda Doors" by the "East Foyer" in that case. See *United States v. George Tenney*, Case 1:21-cr-00640-TFH, ECF. No 49 (D.D.C. June 21, 2022). In a Statement of Offense filed in that case, Mr. Tenney admits to opening the East Rotunda Doors from inside of the Capitol. *Id*.



Statement of Offense from United States v. George Tenney

In video footage depicting the incident, Mr. Warnagiris is seen outside the East Rotunda Doors, and then eventually is seen seeking refuge through the *open door* as he is being pushed around by the crowd, battered over the head repeatedly with flag poles. Mr. Warnagiris does not open, nor "breach" that door. Nor does he "push himself" inside. Mr. Warnagiris is seen through the security camera, which is directed at the open door, being hit over the head repeatedly— so hard at one point that his red hat flies off.



Screenshots from USCP CCTV with Mr. Warnagiris highlighted

A few minutes after getting inside the building through the open door, Mr. Warnagiris returns to the door and starts helping people through that door, including assisting five police officers make their way inside. In fact, the very first person Mr. Warnagiris assisted through the open door is a police officer, who, like Mr. Warnagiris, appears to have been deprived of his hat.



Mr. Warnagiris is seen passing by uniformed law enforcement officers once he leaves the door area, none of whom ask him or gesture him to leave or exit the building. While he walks through the Capitol Building, Mr. Warnagiris is peaceful and respectful, staying within the red velvet ropes when possible, and is seen at one point attempting to calm the crowd— repeatedly

stating "be quiet" and gesturing with his hands downward to calm them down. When facing police officers, he is seen following their orders.




At no point does Mr. Warnagiris engage in any violent behavior.

The Government's case arose from a conflation of Mr. Warnagiris and another man, both of whom were at the East Rotunda Doors at the same time and near one another. It is a man who was standing behind Mr. Warnagiris when he was at the doors, a man wearing a burgundy beanie, who engaged aggressively with the officers near the doorway— a man who will be later confused for Mr. Warnagiris by the witnessing officer.

As previously brought to this court's attention in Footnote 1 in ECF No. 13, the Government's main witness, Officer Warner, confounded Mr. Warnagiris with another man present at the Capitol, a man who is seen on video wearing a **burgundy beanie**. That man has since been arrested and identified as Kaleb Dillard. See *United States v. Kaleb Dillard*, Case No. 2:22-mj-00341, Document 1-1, (D.D.C. August 23, 2022).[1]

---

[1] The Government has not yet provided any exculpatory evidence to the defense regarding their investigation of Mr. Dillard and the statements made by Officer Warner in Mr. Dillard's case, despite repeated requests made by defense counsel. Defense counsel learned of Mr. Dillard's case independently and brought it to the Government's attention.



Case 2:22-mj-00341-NAD   Document 1-1   Filed 08/23/22   Page 13 of 21

During the second instance of physical contact, DILLARD approaches a second Capitol Police Officer from the front. It appears that DILLARD then pushes the second officer in the chest. DILLARD is circled in red in the screenshot below with his hands on the chest of the second officer.

**Image 16**

12

Independent camera footage then captures a video of DILLARD near the second Capitol Police Officer. A screenshot of that independent camera footage is below.

**Image 17**

Investigators identified the officer in question as Officer A.W., who was also interviewed regarding January 6, 2021. Officer A.W. recalls entering the Capitol Rotunda from an open door outside. Officer A.W. attempted to secure the door from the inside. While securing the door, Officer A.W. came into contact with an individual wearing a maroon hat. Officer A.W. identified himself and this individual in the photo above.

Officer A.W. stated this person, identified by investigators as DILLARD, approached Officer A.W. and began yelling at him. DILLARD stated, among other things, that he had been in the military prior to this date. After this confrontation, DILLARD left the Rotunda area.

**Affidavit from United States v. Kaleb Dillard**

Case 2:22-mj-00341-NAD   Document 1-1   Filed 08/23/22   Page 13 of 21

In ECF No. 44, the Government claimed, on page 2, that "[Mr.] Warnagiris ignored the officer's orders to move and instead pushed back on the officer." Later on, on page 12, this same incident was described as "forceful pushing and pulling of the officer's body against the door." However, neither the Government's CCTV footage nor publicly available audio-video footage depicts any actions by Mr. Warnagiris that resemble the accusations.[2] Instead, the evidence



Screenshot from USCP CCTV

---

[2] Video of alleged incident is publicly available at timestamp 6:34 at https://youtu.be/KjpNTN_TNfE?t=394.

shows a burgundy-beanie-clad Mr. Dillard engaging in physical contact with Officer Warner, and Officer Warner is indeed depicted as pushed and pulled— but not by Mr. Warnagiris. **Mr. Warnagiris, who has his back turned to the officer as this is happening to him, has both of his hands on the doors, and none on the officer.**



A red circle around the right hand of Mr. Warnagiris, which is placed on the door, not the office.

Publicly available YouTube video also depicts a conversation between Officer Warner and the man in the burgundy beanie, Mr. Dillard — the same conversation that Officer Warner erroneously claimed to have had with Mr. Warnagiris when he was interviewed about Mr. Warnagiris by the FBI.[3]

Ignoring this critical error, the Government proceeds with a false factual narrative against Mr. Warnagiris — one that is not supported by their own evidence. <u>All available video evidence depicts a man standing behind Mr. Warnagiris, a man in a burgundy beanie hat, pushing Officer Warner</u>.

---

[3] The interaction that Officer Warner had with Mr. Dillard, depicted wearing a burgundy beanie, who he confused for Mr. Warnagiris, appears in a publicly available YouTube video at timestamp 10:38 on link https://www.youtube.com/watch?v=V-fkunG5J6k. Mr. Warnagiris is seen walking away from that area a few seconds prior, depicted wearing a green jacket with yellow accents, at an earlier timestamp, 10:34.





Indeed, Officer Warner stated to the FBI that he "remembered there being a protester immediately to his left but did not realize that the protester was fighting to push the door open until he saw the screenshot before the interview," according to the FD 302 filed with this case. Officer Warner's recollection appears to have been crafted three months after the initial incident as he was being interviewed by FBI Agent Weatherhead and presented with a screenshot, instead of a video. It appears to be a recollection error. Agent Weatherhead, noticing the error during the interview that took place on March 26 of 2021, created a special note in his report: "Agent's note: in the video, one can see another protester, currently referred ot as BOLO-166-AFO, stand face to face with Ofc. Warner and talk to him… It is possible that the comments Ofc. Warner attributed to WARNAGIRIS were made by BOLO-166-AFO."

In response to emails from defense counsel attempting to resolve the unsupported allegations in the Government's Response brief with the reality of the video evidence, Government counsel, in an email dated January 13, 2022, stated, "While Dillard is undeniably in the video, your client also makes physical contact with the officer." The nature of this watered-down allegation is elusive. But even if, hypothetically, the defendant made incidental "physical contact" with the officer, such contact would be insufficient, as a matter of law, to constitute an assault— which is defined in the D.C. Circuit as an (a) attempt to cause or purposely, knowingly or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to another with a deadly weapon; or (c) attempt by physical menace to put another in fear of imminent serious bodily injury. *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996). The Government's reduced claim of "physical contact" also fails.

The Government does not possess any evidence *against Mr. Warnagiris* that constitutes an actual assault under federal law.

## II. Reply to Government's Reading of the Text of Section 111(a)

After misstating the facts of this case, the Government moves on to misstating the limits of the Forcible Assault statute.

While claiming it is important to give meaning to each word in the law, the Government reads Section 111(a) partially, up to a semicolon, and then stops; then, the Government creates piecemeal points about the law, never reading the statute *in full* in their analysis. Yet, we *must* read § 111(a) in full, as it is written, not just stop at a semicolon, in order to give meaning to, and *understand,* the nature of the prohibitions within and the full context of the law.

§ 111(a) states, in full:

> (a) IN GENERAL.—Whoever— (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties**;**
>
> or (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service**,**
>
> shall, where the acts in violation of this section constitute **only simple assault**, be fined under this title or imprisoned not more than one year, or both, and **where such acts** involve physical contact with the victim of that assault **or the intent to commit another felony**, be fined under this title or imprisoned not more than 8 years, or both.

Section 111(a) thus outlines <u>only three ways</u> in which the law can be violated:

1. "where the acts in violation of this section constitute <u>*only simple assault*</u>"
2. "where <u>*such acts*</u> [the acts in violation of this section that constitute an *assault*] involve physical contact with the victim <u>*of that assault*</u>"
3. "where <u>*such acts*</u> [the acts in violation of this section that constitute an *assault*] involve … the intent to commit another felony"

The Government argues that "Section 111(a) authorizes punishment for a person who 'forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title'… Because each clause references all six prohibited acts, each necessarily punishes that full range of obstructive conduct—not assaults alone." **But where does the code authorize punishment for anyone who <u>*only*</u> "resists, opposes, impedes, intimidates, or interferes"?** The penalty portion of the code section does the exact opposite — it expressly **excludes** these behaviors from a penalty, and **only punishes assaults**. The Government admits as such, to the extent of one of the two felonies, at least, in a footnote. The Government's interpretation of the law requires us to read the words "resists, opposes, impedes, intimidates, or interferes" and to stop at the semi-colon, without reference to the language that comes after the semi-colon, which explains how the acts described are characterized and punished.

Moreover, the Government's interpretation requires us to discard words in the penalty portion of 111(a), the portion that was **amended in 2008** and **the crux of the defendant's argument**. The portion of the sentence that reads, "and where **such acts** involve physical contact with the victim **of that assault** or the intent to commit another felony," requires a reference for "such acts" — which, if you look behind the preceding comma, are the acts that constitute an *assault*. That is why the sentence reads **"<u>*of that*</u> assault"** and not "*of an* assault." The words "that assault" reference the assault resulting from "such acts." As such, the words "or the intent to

commit another felony," which are also preceded by the terms "such acts" — where there is no comma separating these words — necessarily require an assault for the application of a penalty. This penalty section, the part that the Government brushes over, is the portion of the law that was amended in 2008 and which changes how today's courts must analyze the statute. The Government's case law from 1958 does not assist in the analysis.

The entirety of the penalty section of 111(a) thus requires an assault, at a minimum, for a conviction.

The Government finds support for its position through *Ladner v. United States (*older case law decided under a very different version of this statute in the 1950's), the *United States v. Stands Alone* decision from the 7th Circuit (which was wrongly decided), and D.C.'s *United States v. Arrington* decision (which was decided in 2002, six years prior to Congress amending § 111(a) to the code that is effective today). *See Ladner v. United States*, 358 U.S. 169 (1958), *United States v. Stands Alone,* 11 F. 4th 532 (7th Cir. 2021) (deciding that assault is not required for a conviction under § 111(a)); *United States v. Arrington*, 309 F.3d 40 (D.D.C. 2002); but see *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016).

The 1958 *Ladner* decision dealt with an offense punishable by up to three years in prison, a penalty applicable to each of the six verbs, not limited to assault. *Ladner v. United States*, 358 U.S. 169 (1958). The current law is comprised of consequentially different text, with different penalties from those in the 1950s version of the law, limiting penalties to assaultive acts: "where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with

the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both."



Section 111 applicable in the 1950s.

Section 111(a) applicable today

The Government also cites two local decisions, one by Judge McFadden and one decision by Judge Berman Jackson, neither of which discusses the penalty wording of § 111(a) in reference to their decisions, seeming to rely on the first words of the sentence that is 111(a). The particular issue raised by Mr. Warnagiris has not yet been directly resolved in the District of Columbia.

What is the penalty for forcible opposition? How about interference with and impeding officers? Where is the penalty for these acts, done independent of an assault, stated? Has the defendant been put on notice of these acts as crimes, and with punishment certain? He has not.

The U.S. Code serves as notice to all People as to U.S. crime and punishment. As such, Courts cannot impose penalties in excess of these notifications without running afoul of the Fifth Amendment's Due Process Clause and the standard of fair notice to defendants. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness

enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."); *Winters v. New York*, 333 U. S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."); *United States v. Allen*, 983 F.3d 463, 472 (10th Cir. 2020) ("... the Due Process Clause requires that criminal laws have clear prohibitions and penalties, because persons 'of common intelligence cannot be required to guess' what conduct the law prohibits and what penalties apply when the law is violated."); *Lankford v. Idaho*, 500 U. S. 110 (1991) (due process violated because the defendant and his counsel did not have adequate notice that judge might impose death sentence); *Jones v. United States*, 526 U.S. 227 (1999). See also *United States v. Batchelder*, 442 U.S. 114, 121 (1979) (discussing the rule of lenity as it applies to sentencing and to substantive provisions used in determining penalties); *Miller v. Florida*, 482 U. S. 423 (1987) (Ex Post Facto Clause violated by the retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U. S. 347 (1964) (retroactive application of new construction of statute violated due process).

Nowhere in the Code is notification given to Mr. Warnagiris, or any other defendant, that the Court can impose a penalty for *only* the acts of resisting, opposing, impeding, intimidating, or interfering under § 111(a). Therefore, penalizing a defendant under § 111(a), without holding the Government to proof of an assault, is a violation of the defendant's due process rights. As such, "a § 111(a)(1) conviction for resisting, opposing, impeding, intimidating, or interfering … necessarily involves — at a minimum — simple assault." *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016).

If this Court believes that the Government's construction of § 111(a) remains equally plausible, then it is this Court's "duty" to adopt the construction that does not violate the defendant's constitutional rights. *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U. S. 366, 408 (1909); *Jones v. United States*, 526 U.S. 227, 239 (1999). The Court must adopt the defendant's construction under this reasoning.

Moreover, in the event that the wording of § 111(a) is concluded as equivocal, the rule of lenity directs courts to resolve such ambiguities in criminal laws in favor of the defendant. *Liparota v. United States*, 471 U.S. 419, 427 (1985). "'[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U. S. 612, 617 (1954)); *see also McBoyle v. United States*, 283 U.S. 25, 27 (1931) (refusing to expand a criminal statute's reach without "a fair warning ... given to the world in language the common world will understand"). Withal, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (describing lenity "as a sort of junior version of the vagueness doctrine" that "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered" (citation and quotation marks omitted)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. See also *Wooden v. United States*, 142 S. Ct. 1062, 1082 (2022) (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.").

## III. Reply to Government's Assertion That the Indictment Can Be Remedied By a Court

The defendant's Motion to Dismiss explained explicitly *why* the dismissal of the Indictment is appropriate: instead of using the language of the code section, **the Government changed the wording of the law in its indictment of Mr. Warnagiris**, broadening the scope under which it can seek conviction by eliminating the operative terms "of that assault" following the word "victim" in the penalty section of the code, and randomly adding terminology not found in the code— "the acts in violation of this section." The Superseding Indictment, thus, impermissibly expanded the law and invalidly attempted to criminalize conduct more broadly than legislated by Congress. The Superseding Indictment does not track the statutory language. The Indictment approved by the Grand Jury is for a charge not recognized by law, a charge much broader than the one Congress legislated.

Compare the statutory charge with the indicted one:

§111. Assalting, resisting, or impeding certain officers or employees

(a) IN GENERAL.—Whoever—
(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

COUNT THREE

On or about January 6, 2021, within the District of Columbia, **CHRISTOPHER WARNAGIRIS**, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, and inflict bodily injury on, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, A.W., an officer from the United States Capitol Police Department, while such officer or employee was engaged in or on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

(Assaulting, Resisting, or Impeding Certain Officers in violation of Title 18, United States Code, Sections 111(a)(1))

The phrase "*where such acts* involve physical contact *with the victim of that assault*" and the phrase "*where the acts in violation of this section* involve physical contact with *the victim*" are two very different concepts. One requires a victim to have suffered an assault, the other does not. One requires *such acts*, referencing the prior term *assault*, while the other more broadly states *"acts in violation of this section,"* omitting any reference to an assault. The Government's rewording of the law is the one they argue in favor of in their Opposition brief. However, it is not the law, it is a prosecutorial revision of the law — something Government prosecutors have no authority to do.

The Government, in its Response in Opposition, thus ignores this alteration, this craft, entirely— leaving a pink elephant to wander the courtroom…

The Fifth Amendment guarantees that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and the Sixth Amendment guarantees that a person accused of a crime shall "be informed of the nature and cause of the accusation." U.S. Const. Amend. V; U.S. Const. Amend. VI. A valid indictment "preserves the Fifth Amendment's protections against abusive criminal charging practice." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). The Government's failure to indict a statute lawfully and correctly is not the type of error that can be solved by a Court. Only verbiage that "may normally be treated as 'a useless averment'" may be struck by a court, see *Ford v. United States*, 273 U.S. 593, 602 (1927), otherwise described as superfluous language "unnecessary to an offense," see *United States v. Miller*, 471 U.S. 130, 144 (1985). But in Mr. Warnagiris' case, the Government would need this Court to *rewrite the language of the Indictment*. The actions sought by the Government cannot be granted without the defendant's waiver of his Fifth

Amendment right to have a Grand Jury review the Government's allegations. See U.S. Const. Amend. V. And, Mr. Warnagiris does not waive his constitutional rights.

At this juncture, the Indictment that the Government obtained from the Grand Jury is one for an offense that is broader than the law permits — which means **the Government did not present to a Grand Jury a lawful charge and the Grand Jury did not return an indictment on a lawful charge**. There is no option to amend through the Court in such a case. "A defendant can only be prosecuted for offenses that a grand jury has actually passed up on." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017).

As the Government notes continuously throughout its brief, an indictment must "track the statutory language." The Government's Superseding Indictment of Mr. Warnagiris does not track the statutory language— the Indictment alters it, unlawfully. The charge, therefore, must be dismissed.


**IV. Reply to Government's Assertion That "the Court cannot determine whether Warnagiris' conduct violates the statute until after a trial"**

The Government argues that "the Court cannot determine whether Warnagiris' conduct violates the statute until after a trial." This directly conflicts with Rule 12(b)(1) and with legal precedent.

"[T]he indictment should state the particulars, to inform the court as well as the accused. It must be made to appear — that is to say, appear from the indictment, without going further — that the acts charged will, if proved, support a conviction for the offence alleged." *United States v. Cruikshank*, 92 U.S. 542, 559 (1875). Accordingly, Fed. R. Crim. P. 7(c) states that an

indictment "must be a plain, concise, and definite written statement of the *essential facts constituting the offense charged*." (Emphasis added.) This Court absolutely has the power to dismiss an indictment if, as alleged, the facts cannot or do not constitute a crime recognized by law, as well as for a variety of other reasons related to the facts alleged in an indictment. See Fed. R. Crim. P. 12.

Rule 12(b)(1) allows the court to consider the facts presented in an indictment, or otherwise undisputed facts, in its dismissal of cases pre-trial. See *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (a district court may consider undisputed facts and dismiss an indictment before trial under Rule 12(b) based on a question of law); *United States v. Nitschke,* 843 F. Supp. 2d 4, 8-9 (D.D.C. 2011) (Judge Boasberg held that the Government cannot prevent a pretrial dismissal of an indictment so long as the relevant facts are undisputed and only a question of law is presented); see also *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) ("the Government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment"); *United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir. 1991) ("it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case"); *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) (dismissing an indictment pursuant to Rule 12(b) based on undisputed evidence that the defendant was not present when the alleged crime was committed, establishing that he could not, as a matter of law, be charged with knowingly committing the indicted offense); *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992) (dismissal of an indictment is appropriate where undisputed facts showed that the Government could not prove

defendant's intent as a matter of law); *United States v. Phillips,* 367 F.3d 846, 855 & n. 25 (9th Cir. 2004). *Accord United States v. Chavez*, 460 F. Supp. 3d 1225 (D.N.M. 2020); *United States v. Lund*, No. CR16-4016-MWB (N.D. Iowa Mar. 15, 2016); *United States v. Marrowbone,* 102 F. Supp.3d 1101, 1105 (D.S.D. 2015); *United States v. Lafferty*, 608 F. Supp. 2d 1131 (D.S.D. 2009); *United States v. Edmonson*, 175 F. Supp. 2d 889 (S.D. Miss. 2001); *United States v. Rodriguez*, 931 F. Supp. 907 (D. Mass. 1996); *United States v. Brady*, 820 F. Supp. 1346 (D. Utah 1993). *See, also, e.g.*, *United States v. DaSilva*, 1:21-cr-00564, ECF No. 34 (D.D.C. Jan 16, 2023).

Mr. Warnagiris, or any hypothetical defendant, can file a Rule 12(b)(1) Motion to Dismiss and argue that his charges cannot be sustained as a matter of law. If presented with such a motion, this Court has the authority to grant the motion if the court agrees that a defendant's charges cannot be sustained as a matter of law.

## V. Reply to Government's Assertion That the Indictment Sufficiently Appraises the Defendant of Conduct Constituting an Offense

It was not until the Government alleged a fact pattern in their Opposition brief that this Court was made aware of the facts constituting the alleged offense of felonious forcible assault. Yet the Government has still not explained what actions constitute the felonious civil disorder charge. The same officer is named in both counts, that is all we know.

The arguments in the defendant's Motion lay the legal foundation for why the inclusion of limiting facts is necessary. This isn't a high bar for the Government to meet — they simply need to add a few words to describe which conduct is at issue for each charge.

In Mr. Warnagiris' case, there is little limitation to the Government's allegations — they can proceed in a variety of ways, unrestricted by a Grand Jury. The Government boasts that they can — writing in an email to defense counsel on January 13, 2023, in response to a request for the Government to explain the exact scope of their prosecution: "there are six different ways to violate the statute… [w]e are alleging that your client violated the statute in those six ways, including a forcible assault."[4]

And, Mr. Warnagiris is left without the ability to particularize his defense preparations and arguments under the confines of the Superseding Indictment. Indeed— the Government has already, in the course of this Motion alone, swung its case from claiming that (1) Mr. Warnagiris "pushed" the officer, to then claiming that (2) the "forceful pushing and pulling of the officer's body against the door" is the assault, to reducing the factual claim to that of (3) Mr. Warnagiris having had incidental "physical contact" with the officer.

The Government's audacious argument that Mr. Warnagiris "thus cannot claim that he is, for example, unable to determine what acts form the basis for the charges. The answer is apparent from the discovery"— is *shameless*. After reviewing the Government's Response in Opposition, the discovery now shows us that the allegations against Mr. Warnagiris have, at the minimum, been muddled with the allegations against another defendant, possibly multiple other defendants; and. the Government's pleadings, placing inaccurate allegations on the record in this case, have shown the factually-deficient nature of the Government's approach to *this* prosecution.

It appears that the Government's argued theory is that a defendant who is being accused of *crimes committed by another man* should not be specifically notified of the nature of the

---

[4] This reply was in response to a January 13, 2023, email from defense counsel notifying Government counsel that their "memo accuses Warnagiris of actions taken by Dillard."

accusations *against him* so that the Government can use the opportunity of an open-ended prosecution to prosecute him *generally*. This is unconstitutional.

The addition of factual allegations in an indictment to constitute the offense charged delivers *notice* to the defendant and *restrains* the Government from prosecuting offenses not approved by a Grand Jury. That is why "the indictment should state the particulars, to inform the court as well as the accused … that the acts charged will, if proved, support a conviction for the offence alleged." *United States v. Cruikshank*, 92 U.S. 542, 559 (1875); Fed. R. Crim. P. 7(c) (an indictment "must be a plain, concise, and definite written statement of the *essential facts constituting the offense charged*") (Emphasis added).

## VI. Conclusion

The defendant is simply seeking a fair indictment to which he is entitled under the Constitution and under federal law, nothing more. The Government is seeking a free pass to go fact-fishing at trial. The defendant's motion should be granted to preserve his rights and to hold the Government accountable to the constitutional standard of notice through indictment.


Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

## **CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on January 23, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____

Marina Medvin, Esq.
