UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | CRIMINAL CASE NO: 1:21-CR-0382-PLF |
| ) | |
| **CHRISTOPHER WARNAGIRIS**, ) | TRIAL: NOVEMBER 8, 2023 |
| ) | |
| DEFENDANT. ) | |
| ) | |

REPLY TO GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR EXCULPATORY EVIDENCE

**I. Applicable Legal Standards**

The Constitution guarantees all criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The due process clause assures "the fairness, and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison*, 477 U.S. 365 (1986). As such, a defendant is entitled to review, before trial, of any evidence that is favorable to him and that is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). Favorable evidence encompasses both evidence that is exculpatory and evidence that could be used to impeach a government witness. *United States v. Bagley*, 473 U.S. 667, 676-77 (1985). Pursuant to *Brady* and its progeny, the government is obliged to produce all evidence required by the law and the Federal Rules of Criminal Procedure. *See id.*, 373 U.S. at 87 (holding that due process requires disclosure of "evidence [that] is material either to guilt or to punishment" upon request). *See also United States v. Marshall*, 132

F.3d 63, 67-68 (D.C. Cir. 1998) (holding that the disclosure requirements of Fed. R. Crim. P. 16(a)(1)(C) covers evidence that is material to the preparation of the defendant's defense).

In *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995), the Supreme Court held that the obligation to disclose exculpatory *Brady* evidence includes producing evidence "known only to police investigators and not to the prosecutor" and that the "prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf." In *Giglio v. United States*, 405 U.S. 150, 153-55 (1972), the Supreme Court held that *Brady* encompasses impeachment evidence. And, where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure. *See United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988). Importantly, "the government is required to disclose *Brady* material in sufficient time for the defendant to 'use the favorable material effectively in the preparation and presentation of its case.'" *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998) (citing *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir.), cert. denied, 429 U.S. 924 (1976)).

Evidence to which a defendant would be entitled under *Brady* includes prior inconsistent statements by a witness and evidence that would impeach a witness. *See Strickler v. Greene*, 527 U.S. 263 (1999); *Smith v. Cain*, 565 U.S. 73 (2012) (holding that the undisclosed statements of an eyewitness were "plainly material" when this statement directly contradicted this witness' trial testimony). When the evidence sought is about the "reliability of a given witness," which "may well be determinative of guilt or innocence," the "nondisclosure of evidence affecting credibility falls within this general [discovery] rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

Combining these constitutional duties together, the prosecutor is entrusted with the paramount obligation of supplying a defendant with the evidence to which he is entitled, evidence that protects a defendant's right to put forward a complete defense. A prosecutor's role in the justice system is thus to ensure that a defendant receive "constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). "Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." *California v. Trombetta*, 467 U.S. 479 (1984). And, thereby, affording the defendant a "meaningful opportunity to present a complete defense." *Id*.

After all, a DOJ prosecutor's production obligation is even broader than due process, which is why sanctions are now outlined by Rule 5(f) in federal court before a trial begins. *See also Strickler*, 527 U.S. at 281 (discussing "the special role played by the American prosecutor in the search for truth in criminal trials"); *Berger v. United States*, 295 U.S. 78, 88 (1935) (the United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done."); *Hsia*, 24 F. Supp. 2d at 30 (citing same); *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009) ("[T]he obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations."); *see also* 28 U.S.C. § 530B (binding federal prosecutors to state ethics rules). Of note—

> "'The prosecutor… enters a courtroom to speak for the People and not just some of the People. The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of `The People' includes the defendant and his family and those who care about him. It also includes the vast majority of citizens

who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.'"

*On Prosecutorial Ethics,* 13 Hastings Const.L.Q. 537-539 (1986). *See also United States v. Ward*, 63 F. Supp. 2d 1203 (C.D. Cal. 1999).

The evidence that is sought by Mr. Warnagiris is the type that, if not provided to the defense, "would deprive the defendant of a fair trial." *Hsia*, 24 F. Supp. 2d at 30 (citing *Bagley*, 473 U.S. at 675). And, as this Court has previously ruled in *Hsia*, it is unacceptable for the government to take the position that certain discovery does not constitute *Brady* material simply because the evidence is available in a public forum. *See Hsia*, 24 F. Supp. 2d at 29.

## II. Argument in Reply

In this case, the defense seeks evidence that may very well be determinative of guilt or innocence — on *at least five counts*.

The evidence sought by the defense relates to the credibility of the government's victim-witness, as named in Counts One and Three, and relates to the conduct described in Counts Four, Six, and Eight. From what is already known to the parties about this officer victim-witness:

(1) Officer Warner interacted with multiple protesters on January 6,

(2) he appears to have confused Mr. Warnagiris with at least one other defendant (*see* ECF No. 13 at *2 and ECF No. 45 at *6-7), and,

(3) he appears to have told the protesters before they made their way up the outdoor stairs of the Capitol Building exterior that he will talk to his supervisors about getting them up those stairs and then when the protesters were on the outdoor stairs, he appears to have

encouraged the protesters by saying "you guys can still push," later fist-bumping the protesters at the top of the outdoor stairs; inside of the Capitol he fist-bumped another protester.

The video showing Officer Warner's interaction with January 6 protesters was *incidentally* discovered by undersigned counsel — but there are no technical tools available to the defense to review, what appears to be, hundreds of thousands of videos (maybe more) posted to random websites on the internet, for relevance to this case. The task is *impossible for any human to undertake*, be it one who works for the defendant or the government. The government, however, has *exclusive* domain, control, possession, and access to technology — a tool — that has the capability to review the public domain evidence in an effective and usable manner; the government, in fact, uses this tool to review the evidence against this defendant and other January 6 defendants. *See* ECF No. 62. Since facial recognition software is not free, nor in the public domain, the assumption of undersigned counsel is that the Government provided the facial recognition tool to the civilian group to use in analyzing evidence to assist the Government as its agent. The Government does not deny in its brief in opposition that the DOJ has exclusive control over this civilian group that the Government uses as an agent for purposes of January 6 evidence analysis.

Moreover, the government has been under ***a constitutional duty to preserve evidence.*** Presumably, the DOJ is in compliance with this duty and created a database with copies of the publicly available digital evidence from the events of January 6 at the Capitol. *See California v. Trombetta*, 467 U.S. 479, 489 (1984). The activation of *Trombetta* duties arose largely because a number of videos, uploaded by participants and observers, began disappearing from the internet.

These were either removed by the original posters or by social media platforms that deactivated the accounts.[1] At this juncture, the defense is operating under the assumption that the government, in line with *Trombetta*, has retained copies of these videos pertinent to their January 6 investigation. At a minimum, the civilian group that calls itself @capitolhunters on Twitter/X, has compiled and saved over 22,000 publicly-available videos related to January 6.[2] The Government has not revealed whether Twitter's @capitolhunters and the civilian group used by the DOJ for January 6 investigations, which it refers to as "capitolhuminthelp," are one and the same.

    Regardless of whether the task is to search its own database or the public domain, the DOJ has the exclusive capability to order the face-trace tool to be used to review anyone depicted in photos or videos, including images and videos of their own officers. Per *Kyles v. Whitley,* the evidence sought by Mr. Warnagiris, based on its nature, is of the type "known only to police investigators"— which in this case are the individuals operating the face recognition technology and investigating publicly available January 6 evidence for the government. The prosecutor, accordingly, "has a duty to learn of any favorable evidence known to others acting on the government's behalf." *Kyles*, 514 U.S. at 437-38. This requirement extends to witness impeachment evidence, per *Giglio,* and to evidence that is material to the preparation of the defendant's case, per the D.C. Circuit's decision in *Marshall* and this Court's decision in *Hsia.*

---

[1] Marc Scott, *Thousands of posts around January 6 riots go missing from Facebook transparency tool*, POLITICO (Aug 31, 2021), https://www.politico.eu/article/facebook-crowdtangle-data-january-6-capitol-hill-riots-transparency; Scott Klein and Jeff Kao, *Why We Published More Than 500 Videos Taken by Parler Users of the Capitol Riot*, PROPUBLICA (Jan. 17, 2021), https://www.propublica.org/article/why-we-published-parler-users-videos-capitol-attack.

[2] A description of the collection is available at: https://www.scribd.com/document/672463400/Capitol-Attack-Resources.

The government's assertions that the defense is somehow lazy for not developing our own facial recognition system, constructing our own January 6 video database, or combing through every video on the internet is slightly disconnected from the practical realities — just a tad — and in complete disregard of its own duties to the defendant and the prior rulings of this Court.

### III. Conclusion

In this case, the government has exclusive possession and control of tools to review videos and images, rendering the recognition of specific faces as effectively only "known" to their agents who are operating the facial recognition tools on behalf of the Government. The government has already learned of the need to review available evidence depicting Officer Warner from the video brought to its attention through incidental discovery by the defense. *Kyles* directs the government to learn of any favorable evidence known to others acting on the government's behalf— the face-trace team, in this case. The defendant seeks to enforce his right to an opportunity to present a complete defense under *Trombetta*. The evidence that is sought by the defense is the type that, if not provided, would deprive the defendant of a fair trial. *See Hsia*, 24 F. Supp. 2d at 30 (citing *Bagley*, 473 U.S. at 675). And, as this Court has previously ruled in *Hsia*, it is unacceptable for the government to take the position that certain discovery does not constitute *Brady* material simply because the evidence is available in a public forum. *See Hsia*, 24 F. Supp. 2d at 29.

The defense, therefore, asks this Court to order the prosecutors to comply with their constitutional duty; and, to impose a penalty of dismissal on Counts One, Three, Four, Six, and

Eight in the event that the prosecutors do not. After all, in a criminal case, the sword of Damocles "is hanging over the head of the [DOJ]." *United States v. Blackley*, 986 F. Supp. 600, 607 (D.D.C. 1997).

Respectfully submitted,

By Counsel:

_____/s/_____
MARINA MEDVIN, ESQ.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on September 25, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.