UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-0382 (PLF) |
| | ) | |
| CHRISTOPHER WARNAGIRIS, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

A bench trial in this case is scheduled to begin on November 8, 2023. See Scheduling Order [Dkt. No. 59]. In anticipation of trial, the government has filed three motions in limine seeking to limit the kind of evidence and arguments that defendant Christopher Warnagiris can present at trial. Mr. Warnagiris has also filed a motion in limine seeking to limit the government's ability to present "non-particularized" evidence about the events of January 6, 2021. The Court heard oral argument on the motions on October 16, 2023.

The Court has carefully considered the parties' written submissions, counsels' presentations at oral argument, and the applicable authorities. For the following reasons, the Court will hold Mr. Warnagiris's motion in abeyance until the final pretrial conference, and the Court will grant in part, deny in part, and otherwise hold in abeyance the government's motions.[1]

---

[1] The Court has reviewed the following documents in connection with the pending motions: Second Superseding Indictment ("Indictment") [Dkt. No. 49]; United States' Motion in Limine Regarding Cross Examination of U.S. Secret Service Witness ("U.S.S.S. Mot.") [Dkt. No. 66]; United States' Motion in Limine Regarding Evidence About the Specific Locations of U.S. Capitol Police Surveillance Cameras [Dkt. No. 67]; United States' Omnibus Motions in Limine ("Omnibus Mot.") [Dkt. No. 69]; Defendant's Motion in Limine to Exclude Generalized, Sweeping, Non-Particularized January 6 Evidence ("Def. Mot.") [Dkt. No. 70]; Response to Government's "Omnibus" Motion in Limine ("Omnibus Opp.") [Dkt. No. 76]; Response to

I.  BACKGROUND

The events of January 6, 2021 are summarized in the Court's opinion in United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022), and the government's allegations specifically against Mr. Warnagiris are summarized in this Court's opinion in United States v. Warnagiris, Crim. No. 21-0382, 2023 WL 6926491, at *2 (D.D.C. Oct. 19, 2023).

The government has filed three motions in limine seeking to limit Mr. Warnagiris's ability to introduce certain evidence and make certain arguments at trial. See U.S.S.S. Mot.; United States' Motion in Limine Regarding Evidence About the Specific Locations of U.S. Capitol Police Surveillance Cameras; Omnibus Mot.  Mr. Warnagiris has filed one motion in limine seeking to limit the government's use of "generalized" and "non-particularized" evidence relating to the events at the United States Capitol on January 6, 2021. See Def. Mot.  The Court has addressed many of the issues raised in the parties' motions in opinions it issued in two other January 6 cases:  United States v. Baez, Crim. No. 21-0507, 2023 WL 6364648 (D.D.C. Sept. 29, 2023) and United States v. Gunby, Crim. No. 21-0626, 2023 WL 6796061 (D.D.C. Oct. 13, 2023).

II.  LEGAL STANDARD

Courts evaluate the admissibility of evidence on a pretrial motion in limine according to the framework established by Rules 401 and 402 of the Federal Rules of Evidence. See Daniels v. District of Columbia, 15 F. Supp. 3d 62, 66-67 (D.D.C. 2014); see also United

---

Government's Motion in Limine to Limit Cross Examination of U.S.S.S. Witness ("U.S.S.S. Opp.") [Dkt. No. 78]; Government's Opposition to Defendant's Motion in Limine to Exclude Relevant Evidence of Core Elements of Counts One, Two, Four, Five, and Six ("Gov't Opp.") [Dkt. No. 81]; and United States' Reply to Opposition to its Motion in Limine Regarding Cross-Examination of U.S. Secret Service Witness ("U.S.S.S. Reply") [Dkt. No. 83].

States v. Sutton, 636 F. Supp. 3d 179, 190 (D.D.C. 2022); Democracy Partners, LLC v. Project Veritas Action Fund, Civil Action No. 17-1047, 2022 WL 3334689, at *3 (D.D.C. Aug. 12, 2022).  First, "the Court must assess whether the evidence is relevant."  Daniels v. District of Columbia, 15 F. Supp. 3d at 66.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401.  "Relevant evidence is admissible" unless an applicable authority provides otherwise, whereas "[i]rrelevant evidence is not admissible."  FED. R. EVID. 402.  The proponent of admitting an item of evidence has the initial burden of establishing relevance.  See Dowling v. United States, 493 U.S. 342, 351 n.3 (1990); United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

Even if the proponent of an item of evidence can demonstrate its relevance, however, a court may still conclude that it is inadmissible if "the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court" provide for its exclusion.  FED. R. EVID. 402.  Rule 403 of the Federal Rules of Evidence states that a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.

Limiting the scope of cross-examination is within the discretion of a trial court and does not necessarily conflict with the Sixth Amendment's Confrontation Clause, which enshrines the defendant's right "to be confronted with the witnesses against him."  U.S. CONST. AMEND. VI; see, e.g., United States v. Machado-Erazo, 951 F. Supp. 2d 148, 158 (D.D.C. 2013) ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might

3

wish.") (citing Delaware v. Fensterer, 474 U.S. 15, 20 (1985)); United States v. Miller, 738 F.3d 361, 375 (D.C. Cir. 2013) ("Although the Confrontation Clause guarantees an opportunity for effective cross-examination, 'trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination.'") (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

### III. DISCUSSION

#### A. Government's Motions in Limine

Pursuant to Rules 401, 403, and 611(b) of the Federal Rules of Evidence, the government moves to preclude Mr. Warnagiris from offering evidence relating to a variety topics. The Court discusses the government's arguments in turn.

##### 1. Specific Locations of Security Cameras in the U.S. Capitol

The government asks the Court to preclude Mr. Warnagiris from eliciting testimony about the specific locations of U.S. Capitol Police surveillance cameras inside the Capitol building and on its grounds. See United States' Motion in Limine Regarding Evidence About the Specific Locations of U.S. Capitol Police Surveillance Cameras [Dkt. No. 67]. At oral argument, counsel for Mr. Warnagiris represented that he did not oppose the government's motion and that he would not seek to introduce any evidence about specific locations of Capitol police surveillance cameras. The government's unopposed motion therefore is granted.

##### 2. Secret Service Witnesses

To establish that the Capitol was a "restricted building or grounds" on January 6, 2021, the government states that it intends to call at trial a witness from the U.S. Secret Service, and the government argues that the Court should limit Mr. Warnagiris's cross-examination of the Secret Service witness on the Secret Service's specific tactics and emergency operations. See

4

U.S.S.S. Mot. at 2; see also United States v. Baez, 2023 WL 6364648, at *5-6.  The government seeks to limit Mr. Warnagiris's cross-examination of Secret Service witnesses specifically on the following topics:

> 1.  Secret Service protocols for when emergencies occur, including those related to the locations where protectees or their motorcades are taken at the Capitol; and
>
> 2.  Operational specifics about Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

U.S.S.S. Mot. at 2.  Mr. Warnagiris opposes the government's motion in part.  He agrees that operational specifics about Secret Service protective details are irrelevant, and he does not seek to question Secret Service witnesses about the second topic that the government raises in its motion.  See U.S.S.S. Opp. at 2.  The government's unopposed motion therefore is granted as to the "operational specifics about Secret Service protective details."  See U.S.S.S. Mot. at 2.

With respect to Secret Service witnesses, Mr. Warnagiris argues that the "locations where protectees or their motorcades [were] taken at the Capitol" are relevant to the charged offenses.  See U.S.S.S. Opp. at 1; U.S.S.S. Mot. at 2.  He maintains that these locations are relevant because Section 1752 – which forms the basis for Counts Four, Five, and Six of the indictment – prohibits entry into "any posted, cordoned-off, or otherwise restricted area . . . of a building or grounds . . . where [a] person protected by the Secret Service is or will be temporarily visiting."  U.S.S.S. Opp. at 1-2 (quoting 18 U.S.C. § 1752(c)(1)(B)).  He asks the Court to construe the statute as prohibiting entry into "an area of a building or grounds – but not entry into the building or grounds in and of themselves generally."  U.S.S.S. Opp. at 2.  Under Mr. Warnagiris's reading of the statute, if the Vice President did not and never planned to temporarily visit the precise areas in the Capitol where Mr. Warnagiris was, then Mr. Warnagiris

5

did not enter a "restricted area" as it is defined under Section 1752(c)(1)(B).  See id.  The government responds that "the statute's plain meaning can also reach larger areas, including entire buildings located within grounds where a Secret Service protectee is or will be visiting." U.S.S.S. Reply at 3-4.

       Mr. Warnagiris cites no authority for his preferred interpretation of Section 1752. In fact, several judges in this district seem to have adopted the broader reading of Section 1752 advocated by the government.  In another January 6 case, Judge Royce Lamberth determined that the "restricted area" included the "area around the U.S. Capitol Grounds that was closed to members of the public . . . . because the Vice President was temporarily visiting the Capitol." See Notes for Oral Ruling from the Bench under Rule 23(c), United States v. Hostetter, Crim. No. 21-0392, 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (emphasis added).  Chief Judge James Boasberg similarly determined that the "Capitol grounds and the building within it" constituted the "restricted area" charged under Section 1752.  Memorandum Opinion, United States v. Ballenger, Crim. No. 21-0719, 2023 WL 4581846, at *3 (D.D.C. July 18, 2023).  And Judge Colleen Kollar-Kotelly has repeatedly concluded that "as both a factual and legal matter, the Capitol building and grounds on January 6, 2021 were a 'restricted area' within the meaning of 18 U.S.C. § 1752."  United States v. Griffith, Crim. No. 21-0244, 2023 WL 1778192, at *2 (D.D.C. Feb. 6, 2023) (citing cases).  See also United States v. Chwiesiuk, Crim. No. 21-0536, 2023 WL 3002493, at *8 (D.D.C. Apr. 19, 2023) (granting the government's motion in limine to "preclude[] Defendants from inquiring into the Vice President's precise movements on January 6, 2021" within the Capitol building).

       This Court addressed the definition of a "restricted building or grounds" under Section 1752(c) in United States v. Jabr, Crim. No. 18-0105, 2019 WL 13110682, at *8-9

6

(D.D.C. May 16, 2019). The defendant in that case was charged under Section 1752(c)(1)(A) with entering and remaining in "the White House or its grounds" when she jumped the fence surrounding the U.S. Treasury Building. Id. at *2; see 18 U.S.C. § 1752(c)(1)(A). In holding that the Treasury Building did not fall within the "White House or its grounds," the Court explained that "[t]he 'restricted area' of the White House or its grounds could refer to all eighteen acres, surrounded by a fence, or to a subsection of the White House grounds, further restricted." United States v. Jabr, 2019 WL 13110682, at *10. The Court concludes that the same can be said for Section 1752(c)(1)(B): the "restricted area" of a building or grounds where a Secret Service protectee is or will be temporarily visiting may include the entire building or grounds to be visited, and it may include only a "subsection" of the building or grounds to be visited. The text of the statute, however, does not suggest that only a subsection of a "building or grounds" can be restricted.

    The Court agrees with the construction of Section 1752(c)(1)(B) adopted by other judges of this district. The indictment in this case charges in three separate counts that Mr. Warnagiris was "in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting." Indictment at 3-4. At trial, the government may introduce evidence that the Capitol building itself is situated "within" the broader Capitol grounds and was "posted, cordoned-off, [or] otherwise restricted" when Mr. Warnagiris was present there. Such evidence would be sufficient to establish that Mr. Warnagiris entered a "restricted building or grounds" as defined under 18 U.S.C. § 1752(c)(1)(B). If the government's evidence at trial does in fact establish that the Capitol building itself was a

7

"restricted building or grounds," then the Vice President's movements <u>within</u> the building are irrelevant to the Section 1752 offenses with which Mr. Warnagiris is charged.

Nevertheless, an area is only restricted when a Secret Service protectee "is or will be visiting" that area. 18 U.S.C. § 1752(c)(1)(B). The Vice President's movements within the Capitol may not be relevant depending on what "restricted area" the government establishes at trial – but whether and when the Vice President left the Capitol building and grounds is "an essential question" of fact that the Court must decide under the government's or Mr. Warnagiris's construction of Section 1752(c)(1)(B). <u>See</u> <u>United States v. Griffin</u>, Crim. No. 21-0092, Memorandum Order (D.D.C. Mar. 18, 2022) [Dkt. No. 92] at 4. The government's motion <u>in limine</u> as to the "locations where protectees or their motorcades are taken at the Capitol" therefore will be held in abeyance until trial, when the Court can consider the motion in view of the evidence presented about how the Capitol building and grounds were "restricted" on January 6, 2021. U.S.S.S. Mot. at 2.

3.    Multimedia

The government seeks admission of various "multimedia" exhibits, including videos derived from body worn camera footage, surveillance footage, and "videos and photographs taken by third parties such as other rioters and journalists who were present inside and outside the Capitol on January 6." Omnibus Mot. at 2. The government asserts multiple, overlapping bases for admitting such evidence at trial. Its written submission includes a "nonexclusive list of bases for authentication should the United States be unable to enter into stipulations" with Mr. Warnagiris about specific exhibits in advance of trial. <u>Id</u>. at 4.

Mr. Warnagiris indicated at oral argument that the parties will likely be able to resolve any issues regarding authentication before trial. He therefore suggests that the Court

8

reserve ruling on any remaining issues of authentication until the exhibits are presented at trial. Omnibus Opp. at 1-2. For these reasons, the government's motion is held in abeyance. The Court will address any arguments about the authenticity of specific exhibits at the final pretrial conference and at trial as issues arise.

4. Judicial Notice

The government asks the Court to take judicial notice of the Twelfth Amendment of the U.S. Constitution, various provisions of the U.S. Code, and portions of the Congressional Record from January 6, 2021. Omnibus Mot. at 8-9. The government suggests that these documents are self-authenticating. Id. Mr. Warnagiris responds that this case will proceed by way of bench trial, not jury trial. Omnibus Opp. at 2. He further asserted at oral argument that the Court does not need to admit these documents into evidence to establish any of the elements of the charged offenses. The Court agrees. The government's motion is denied.

5. Confidential Informants

In its written submission, the government requested that the Court impose several limitations on defense counsel's ability to cross examine confidential human resources. Omnibus Mot. at 9-11. At oral argument, the government clarified that it was not aware of any confidential informants who would potentially testify at trial. The government's motion therefore is denied as moot.

6. Mr. Warnagiris's Out-of-Court Statements

The government requests that the Court prohibit Mr. Warnagiris from offering any of his own out-of-court statements in evidence. Omnibus Mot. at 11-13. Mr. Warnagiris responds that the government's motion is nothing more than a request "to simply affirm that the

9

Federal Rules of Evidence still apply to this trial." Omnibus Opp. at 3. As Mr. Warnagiris correctly pointed out at oral argument, his out-of-court statements only constitute hearsay when they are being admitted to prove the truth of the matter asserted in those statements. See FED. R. EVID. 801(c). His statements may properly be admitted for a non-hearsay purpose; for example, as evidence of Mr. Warnagiris's state of mind or intent. The Court agrees and therefore will deny the government's motion. The parties may raise specific hearsay objections as appropriate at trial.

7. First Amendment

The government contends that Mr. Warnagiris should be prohibited from arguing at trial that evidence of his statements and actions should not be admitted because those statements and actions "were protected by the First Amendment." Omnibus Mot. at 13 (citing Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993)). The government further asserts that Mr. Warnagiris is "not entitled to a First Amendment defense as a matter of law" and requests that the Court prohibit Mr. Warnagiris from questioning any witnesses about whether his statements and conduct constitute protected activity under the First Amendment. Omnibus Mot. at 16. At oral argument, Mr. Warnagiris clarified that he has not raised any First Amendment claims, but he suggested that his beliefs and impressions about the First Amendment may be relevant to his state of mind.

The Court agrees with the government that, generally speaking, the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." Wisconsin v. Mitchell, 508 U.S. at 489; see United States v. Ring, 706 F.3d 460, 472 (D.C. Cir. 2013) (rejecting the argument that "permitting a jury to draw adverse inferences from constitutionally protected activity violates a defendant's First

10

Amendment rights"). The Court has previously held that many of the statutes under which Mr. Warnagiris is charged are facially constitutional under the First Amendment because they proscribe non-expressive conduct, not speech. See United States v. Baez, Crim. No. 21-0507, 2023 WL 3846169, at *5-10 (D.D.C. June 2, 2023). But, since Mr. Warnagiris has not yet raised any First Amendment arguments, the Court declines to grant the government's broad request at this juncture.

This case is proceeding to a bench trial, not a jury trial, and the government's concerns about First Amendment arguments "confusing the issues, wasting time, and unfairly prejudicing the fact finder," see FED. R. EVID. 403, are less weighty in this context. The motion is denied without prejudice, and the Court will address this issue if it arises at trial. In addition, if Mr. Warnagiris chooses to argue that any of the statutes under which he is charged are unconstitutional as applied to his conduct, he may raise those arguments on a motion under Rule 29 of the Federal Rules of Criminal Procedure. See United States v. Baez, 2023 WL 3846169, at *6.

8. Selective and Vindictive Prosecution

The government argues that Mr. Warnagiris "should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States." Omnibus Mot. at 17. At oral argument, Mr. Warnagiris explained that he has not raised a selective or vindictive prosecution claim and that he would not do so at trial. The Court agrees with the government that claims of selective prosecution and evidence about the United States' Attorney's Office charging decisions "have no place at trial." United States v. Sutton, 636 F. Supp. 3d at 209-10. The government's motion is granted.

11

9.  Entrapment by Estoppel, Public Authority Defense, and Purported Inaction by Law Enforcement

The government argues that the Court should preclude Mr. Warnagiris from making arguments at trial relating to the "entrapment by estoppel" or "public authority" defenses. See Omnibus Mot. at 18-23. This Court addressed the availability of both defenses in its Baez opinion. See United States v. Baez, 2023 WL 6364648 at *6 (quoting United States v. Chrestman, 525 F. Supp. 3d 14, 31 (D.D.C. 2021)). At oral argument, Mr. Warnagiris explained that he has not raised either of these defenses and that the does not plan to. Based on Mr. Warnagiris's representations and on the Court's discussion of these defenses in Baez, the government's motion is granted.

10.  Jury Nullification

The government argues that the Court should preclude Mr. Warnagiris from making arguments or introducing evidence that would encourage jury nullification, including arguments about: the cost of prosecuting people for their conduct on January 6, 2021; potential punishment and collateral consequences of conviction; and Mr. Warngairis's "claimed ignorance of the law." See Omnibus Mot. at 23-26. Mr. Warnagiris responds that the government's boilerplate motion should be denied because this case is proceeding to a bench trial, not a jury trial. Omnibus Opp. at 4. The Court agrees. The government's motion is denied.

11.  Character Evidence

The government asks the Court to prohibit Mr. Warnagiris from introducing "reputation or opinion evidence that he is generous, charitable, family-oriented, [or] religious." Omnibus Mot. at 24. The government suggests that such evidence of "generally good character" is not admissible given the offenses charged in this case. Id. The government also asks the

Court to prohibit Mr. Warnagiris from introducing specific instances of good character, "including caring for family members, donations, attending religious services, performing charitable or civic work, or other forms of generosity." Id. at 25. At oral argument, Mr. Warnagiris responded that, at this time, he does not plan to offer character evidence at trial. He noted, however, that depending on the testimony of the government's witnesses, he may change his mind and potentially may seek to present character witnesses and testimony. If so, Mr. Warnagiris represented that he will offer such evidence consistent with Rule 404 and Rule 405 of the Federal Rules of Evidence. See United States v. Baez, 2023 WL 6364648 at *10-11. Based on Mr. Warnagiris's representations, the government's motion will be denied without prejudice and will be addressed at trial if it becomes necessary to do so.

### 12. Defense of Self or Others

The government argues that the Court should preclude Mr. Warnagiris from arguing that his actions on January 6 were in defense of himself or others. See Omnibus Mot. at 27. Mr. Warnagiris stated at oral argument that, since his defense in this case is that no assault took place, he does not intend to raise self-defense as an affirmative defense. Based on Mr. Warnagiris's representations, the government's motion is denied as moot.

### 13. Experts

The government requests that the Court preclude Mr. Warnagiris from presenting any expert testimony at trial since Mr. Warnagiris has failed to comply with the notice requirements under Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure. See Omnibus Mot. at 27. Mr. Warnagiris responds that the government's motion improperly seeks to limit his ability to present a complete defense. See Omnibus Opp. at 5. While he has no present intention to offer expert testimony, he argues that, "[i]n the event that a situation arises in which Mr.

13

Warnagiris needs to call an expert who has not been previously planned or [made] known to the parties . . . the parties can then litigate the issue." Id.  The Court agrees with Mr. Warnagiris.  As the Court explained at oral argument, this is a bench trial.  If Mr. Warnagiris decides to present an expert witness, the Court can simply adjourn trial for as long as necessary for the parties to prepare for an expert's testimony.  The government's motion is denied.

### B.  Mr. Warnagiris's Motion in Limine

Mr. Warnagiris asks the Court to limit the government's presentation of "sweeping, non-case-specific evidence pertaining to the events of January 6, 2021, as well as any generalized testimony recounting the experiences of federal officers on that day." Def. Mot. at 1.  He argues that such evidence is irrelevant to the offenses with which he is charged under Rule 401 and Rule 402 of the Federal Rules of Evidence.  Id. at 2.  He further contends that, even if it is relevant, such evidence is unfairly prejudicial, wastes the Court's time, and is needlessly cumulative.  Id.; see FED. R. EVID. 403.  The government responds that general evidence about January 6, 2021 is relevant to multiple offenses with which Mr. Warnagiris is charged.  Gov't Opp. at 1, 3.  For instance, the government argues that it must rely on general January 6 evidence to prove the existence of a "civil disorder" as required for Count One.  Id. at 3-4.  The government also argues that it must use general January 6 evidence to prove that an official proceeding was in fact impeded or obstructed and that Mr. Warnagiris aided and abetted the obstruction of that official proceeding, as required for Count Two.  Id. at 4-5.

At oral argument, counsel for Mr. Warnagiris explained that he specifically takes issue with the fifteen-minute-long montage video that the government intends to show at trial.  The montage depicts the crowd of rioters and contains statements from law enforcement officers that may elicit unnecessarily emotional responses in viewers.  Mr. Warnagiris suggested that the

14

government has other evidence – evidence that is specific to Mr. Warnagiris – that depicts a "civil disorder," and that the montage video should be excluded both as cumulative and prejudicial. The government responded that Rule 403's concern with "unfair prejudice" is less applicable in a bench trial than it would be in a jury trial.

The Court agrees with the government that some general evidence about January 6, 2021 will be relevant and probative in this case. But the Court also agrees with Mr. Warnagiris that other general evidence about January 6, 2021 may be cumulative, unfairly prejudicial, and irrelevant. "[I]n some instances, it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." Graves v. District of Columbia, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (quoting Casares v. Bernal, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011)). The Court will hold Mr. Warnagiris's motion in abeyance until the final pretrial conference, at which the Court will have the opportunity to review the parties' proposed exhibit lists, objections, and the exhibits themselves. See Scheduling Order [Dkt. No. 59] (ordering the parties to submit objections to trial exhibits on or before October 24, 2023).

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that United States' unopposed Motion in Limine Regarding Evidence About the Specific Locations of U.S. Capitol Police Surveillance Cameras [Dkt. No. 67] is GRANTED; it is

FURTHER ORDERED that the United States' Motion in Limine Regarding Cross Examination of U.S. Secret Service Witness [Dkt. No. 66] is GRANTED IN PART and otherwise HELD IN ABEYANCE; it is

15

FURTHER ORDERED that the United States' Omnibus Motions in Limine [Dkt. No. 69] is GRANTED IN PART, DENIED IN PART, and otherwise HELD IN ABEYANCE; it is

FURTHER ORDERED that Mr. Warnagiris's Motion in Limine to Exclude Generalized, Sweeping, Non-Particularized January 6 Evidence [Dkt. No. 70] is HELD IN ABEYANCE; and it is

FURTHER ORDERED that, on or before October 24, 2023, the parties will make their proposed trial exhibits available electronically for the Court's review.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  October 23, 2023