**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No.: 21-cr-382 (PLF) |
| : | |
| **CHRISTOPHER WARNAGIRIS** : | |
| : | |
| **Defendants.** : | |

**UNITED STATES' OBJECTIONS TO PROPOSED BENCH INSTRUCTIONS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, filed these objections to the Court's proposed bench instructions as provided in its Order dated October 24, 2023. ECF No. 91. In that order, the Court indicated that it planned to base its bench instructions on the jury instructions used in *United States v. GossJankowski*, 21-cr-0123, ECF No. 166, *United States v. Black*, 21-cr-127, ECF No. 70, and *United States v. DaSilva*, 21-cr-564, ECF No. 76. Upon review of those instructions, the government makes the following objections.

**Count One**
**Civil Disorder**
**(Violation of 18 U.S.C. § 231(a)(3))**

The government does not object to the elements of this offense as stated in *GossJankowski*, 21-cr-123, ECF No. 166 at 22.

In *GossJankowski*, the Court limited the definition of "knowingly" to allow the consideration of evidence of what the defendant did or said. *Id.* at 23. However, a defendant's

perceptions also inform their knowledge in the commission of an offense.[1] Therefore, the government proposes the following definition of "knowingly":

> "A person acts 'knowingly' if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the Court may consider all of the evidence, including what the defendant did, said, *or perceived*."

In *GossJankowski*, the Court limited the definition of "department" to only include subsets of the executive branch. *Id.* at 23 ("The term 'department' includes executive departments. The Department of Homeland Security, which includes the United States Secret Service, is an executive department."). However, to ensure that the term "federally protected function" includes actions of the legislative branch, the definition of "department" should read:

> The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) *or the legislative branch.*

This definition was used in *DaSilva*. 21-cr-564, ECF No. 76 at 3.

In *GossJankowski*, the Court did not define the term "instrumentality." 21-cr-123, ECF No. 166 at 23. The government proposes defining the term as, "The term 'instrumentality' includes any other formal entity through which the government operates, such as Congress or the United Sates Capitol Police."[2] This definition was included in *DaSilva*. 21-cr-564, ECF No. 76 at 3.

---

[1] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB), ECF No. 97 at 11 (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL), ECF No. 101 at 9 (same); *United States v. Gunby*, 21-cr-626 (PLF), ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)); *United States v. Christensen*, 21-cr-455 (RCL), ECF No. 72 at 9 (same).

[2] *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained

In *GossJankowski*, the Court did not define the term "official duties." 21-cr-123, ECF No. 166 at 23. The government proposes defining the term as:

> "For the U.S. Capitol Police and Metropolitan Police Department on January 6, 2021, the term 'official duties,' means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas."[3]

This definition was included in *DaSilva*. 21-cr-564, ECF No. 76 at 3.

## Count Two
## Obstruction of an Official Proceeding and Aiding and Abetting
## (Violation of 18 U.S.C. §§ 1512(c)(2) and 2)

The government does not object to the elements of this offense as stated in *GossJankowski*. 21-cr-123, ECF No. 166 at 25.

---

by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word 'instrumentality' generally are broad. Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999). Webster's Third New International Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out.' Webster's Third New International Dictionary 1172 (1971)."). For January 6 cases using this instruction, see *United States v. Gietzen*, 22-cr-116 (CJN), ECF No. 50 at 23, *United States v. Alam*, 21-cr-190 (DLF), ECF No. 104 at 26, *United States v. Christensen*, 21-cr-455 (RCL). ECF No. 72 at 9, and *United States v. McAbee*, 21-cr-35 (RC), ECF No. 376, at 29-30.

[3] *United States v. Schwartz, et al.*, 21-cr-178 (APM), ECF No. 172 at 19; *United States v. Christensen*, 21-cr-455 (RCL), ECF No. 72 at 9; *United States v. McAbee*, 21-cr-35 (RC), ECF No. 376, at 30. *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.' We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

The Court did not define the terms "obstruct" or "impede" in *GossJankowski*. *Id.* at 25-26. The government would define those terms as meaning "to block, interfere with, or slow the progress of an official proceeding."

The government notes that the term "official proceeding" in this Count includes Congress's Joint Session to certify the Electoral College vote on January 6, 2021.[4] The government would include the remaining portion of the definition of "official proceeding" as stated in *GossJankowski*. *Id.* at 25 ("The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.").

The government would clarify the Court's definition of "corruptly" as stated in *GossJankowski*, *id.* at 26 ("To act 'corruptly,' the defendant must use unlawful means or have an improper motive, or both."), to mimic the language upheld by the D.C. Circuit in *United States v. Robertson*, -- F.4th --, 2023 WL 8010264 at *7 (D.C. Cir. Oct. 20, 2023). The government proposes the following: "To act "corruptly," the defendant must use independently unlawful means, or act with an unlawful purpose, or both."[5]

---

[4] *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023) (holding "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2)); *see also* 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress").

[5] In *United States v. Robertson*, the district court adopted a jury instruction that largely mirrored this proposed definition of "corruptly." *Id.* at *3. On appeal, the D.C. Circuit stated: "[T]he district court correctly informed the jury that it could find that Robertson acted 'corruptly' if the government proved that he 'use[d] [independently] unlawful means' when he obstructed, impeded, or influenced the Electoral College vote certification. . . . Defining 'corruptly' as 'wrongfully' — and treating independently unlawful conduct as 'wrongful' — provides an objective measure of culpable conduct that is straightforward to apply: A court or a jury can easily determine whether the evidence shows that a defendant took unlawful action to obstruct, impede, or influence the proceeding." *Id.* at *9.

4

Relatedly, the government would define "consciousness of wrongdoing" to mean "with an understanding or awareness that what the person is doing is wrong *or unlawful*." Compare *GossJankowski*, 21-cr-123, ECF No. 166 at 26 (defining "consciousness of wrongdoing" to only mean "with an understanding or awareness that what the person is doing is wrong.").

Lastly, the government proposes the addition of the following clarification regarding the "intent" element:

> While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.[6]

With respect to the alternative "aiding and abetting" theory of liability, the government does not object to the elements of this avenue of liability as described in *GossJankowski*. *Id.* at 27. However, the Court in *GossJankowski* included in its definition that "[s]ome affirmative conduct by the defendant in planning or carrying out the crime is necessary." *Id.* at 27. This instruction does not describe what form the "affirmative conduct" may take, specifically whether the conduct must be independently unlawful or if the conduct may otherwise be lawful in a different context. In addition, the instruction does not indicate whether or not the conduct must relate to every element of the offense. To alleviate any confusion, the government proposes replacing this sentencing with the following:

> To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, the Court must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or

---

[6] *United States v. Carpenter*, 21-cr-305 (JEB), ECF No. 97 at 11; *United States v. Kelly*, 21-cr-708 (RCL), ECF No. 101 at 10; *United States v. Fellows*, 21-cr-83 (TNM), ECF No. 140 at 27; *United States v. Alam*, 21-cr-190 (DLF), ECF No. 104 at 29.

encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

### Count Three
### Assaulting, Resisting, or Impeding Certain Officers
### (Violation of 18 U.S.C. § 111(a)(1))

The government objects to the elements as described in *GossJankowski*, because the offense in that case involved a dangerous weapon, which is not applicable here. 21-cr-123, ECF No. 166 at 29. The government also objects to the *DaSilva* instructions, because those instructions add unnecessary and misleading language to the felonious assault element. 21-cr-564, ECF No. 76 at 6. Thus, the government would propose the following elements:

> First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer A.W., an officer from the United States Capitol Police.

> Second, the defendant did such acts forcibly.

> Third, the defendant did such acts voluntarily and intentionally.

> Fourth, Officer A.W. was an officer or an employee of the United States who was then engaged in the performance of his official duties.

> Fifth, the defendant made physical contact with Officer A.W., or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offenses charged in Counts One and Two.

The government objects to the definition of "assault" as defined in *DaSilva*, 21-cr-564, ECF No. 76 at 6-7, and proposed by the defendant, ECF No. 71 at 2-5 (adopting the Model Penal Code's definition of assault as intrinsic to the assault defined in § 111). There is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." *United States v. Shabani*, 513 U.S. 10, 13 (1994). Courts in this district and elsewhere have consistently applied that settled principle to interpret § 111's use of the terms "assault" and "simple assault" consistent with the common law. *See, e.g.*, *United States v. Cua*, No. CR 21-107 (RDM), 2023 WL 2162719, at *8 (D.D.C. Feb. 22, 2023); *United States*

*v. Davis*, 690 F.3d 127, 135 (2d Cir. 2012); *United States v. Rivera-Alonzo*, 584 F.3d 829, 833 (9th Cir. 2009).

The D.C. Circuit's decision in *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996), does not require a different result. First, as the Second Circuit has noted, "the *Duran* court's discussion of simple assault was dictum because the defendant's conduct involved physical conduct and thus constituted assault under any definition." *United States v. Chestaro*, 197 F.3d 600, 606 (2d Cir. 1999). Indeed, *Duran* did not address the "well-settled" rule "that 'where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning.'" *Davis*, 690 F.3d at 136 (2d Cir. 2012) (quoting *United States v. Turley*, 352 U.S. 407, 411 (1957)). There was no discussion in that case of why Congress, in using the common-law terms "assault" and "simple assault," would have meant to incorporate the Model Penal Code's definition of those terms. Indeed, Congress originally enacted Section 111 in 1948, *see* Pub. L. No. 772, 62 Stat. 683, 688 (June 25, 1948), well before the Model Penal Code was created, *see Dixon v. Untied States*, 548 U.S. 1, 8 (2006) (noting that Model Penal Code was published in 1962). And much of *Duran*'s discussion of the Model Penal Code's definition of "simple assault" addressed an "issue [that] was not raised by the parties[.]" 96 F.3d at 1510. There are thus strong reasons to conclude, as the Second Circuit did in *Chestaro*, that *Duran* does not resolve the question whether the common-law definition or Model Penal Code definition of simple assault governs. *See Cartwright v. United States*, 12 F.4th 572, 585 (6th Cir. 2021) ("There was no 'application of the judicial mind' to that question, so there was no 'decision' about it.") (quoting *Carroll v. Carroll's Lessee*, 57 U.S. 275, 287 (1853)).

Even if the Court disagrees, however, *Duran* is not controlling for a separate, independent reason: Congress has since amended § 111 in a way that indicates it could not have intended the

7

Model Penal Code definition of "simple assault" to apply. At the time *Duran* was decided, § 111 provided:

> Whoever … forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties … shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both…. Whoever, in the commission of any acts described [above], uses a deadly or dangerous weapon or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

*Duran*, 96 F.3d at 1509 (quoting 18 U.S.C. § 111). In 2008, however, Congress amended § 111 to replace the "in all other cases" language with "where such acts involve physical contact with the victim of that assault or the intent to commit another felony[.]" Pub. L. No. 110-177, § 208(b), 121 Stat. 2534, 2538 (2008). *See Cua*, 2023 WL 2162719, at *9 (discussing amendment).

This amendment provides clear Congressional intent *not* to incorporate the Model Penal Code into § 111 and *not* to adopt its definition of simple assault. The Model Penal Code's definition of simple assault requires "bodily injury." *See Duran*, 96 F.3d at 1509. Such a requirement is entirely inconsistent with Congress's post-*Duran* addition, which makes "physical contact" a felony. It would make little sense to have the same statute make a crime a felony punishable by up to 8 years in prison where a defendant makes any physical contact with an officer, but to have it be a misdemeanor if the defendant causes bodily injury. For this reason, the *Shabani* principle applies, and the Court should define "assault" by reference to the common law.

As the government objects to the *DaSilva* court's definition of assault, the government would relatedly object to the inclusion of definitions of "bodily injury" and "serious bodily injury" within this instruction. Those terms are otherwise not part of the offense as charged and thus the Court need not define them.

The government objects to the definition of "forcibly" as stated in *DaSilva*. 21-cr-564, ECF No. 76 at 7. The instruction states that "physical intimidation is not enough," but fails to define the meaning of the term "physical intimidation." *Id.* The instruction continues, however, that "[a] person . . . who threatens . . . to inflict harm upon [another] acts forcibly." *Id.* These conflicting definitions will create confusion as to whether an act is a threat to inflict harm or merely physical intimidation. To avoid such confusion, the government proposes the following definition:

> A person acts "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. Physical force or contact is sufficient but actual physical contact is not required. The Court may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.[7]

### Count Four
### Entering and Remaining in a Restricted Building or Grounds
### (Violation of 18 U.S.C. § 1752(a)(1))

The government does not object to the elements of this offense as stated in *GossJankowski*. 21-cr-123, ECF No. 166 at 33.

The definition of "a person protected by the Secret Service" should include the Vice President Mike Pence as well as his immediate family. 18 U.S.C. § 3056(a)(1)-(2); *compare GossJankowski*, 21-cr-123, ECF No. 166 at 33 (defining the relevant Secret Service protectee as only Vice President Pence).

In its order, the Court asked for the government's definition of "restricted" as the term is used in § 1752, ECF No. 91 at 4, in light of the defendant's arguments about the meaning of "otherwise restricted" as stated in his trial brief, ECF No. 71 ("Def. Br.") at 13. To determine what

---

[7] *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) (The element of 'forcible' action can be met by a showing of either physical contact with the federal agent, or by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases). For a January 6 case using this definition, *see United States v. McAbee*, 21-cr-35 (RC), ECF No. 376, at 19.

Congress meant by "otherwise restricted area," this Court "begin[s] by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, (2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)). The court "must enforce plain and unambiguous statutory language according to its terms." *Id.*

The word "restricted" when applied to "an area, building, etc." means "accessible only to certain authorized people." *Restricted (adj.)*, Oxford English Dictionary, *available at* http://www.oed.com. And "otherwise" means "in another way" or "in a different manner." *Otherwise*, Oxford English Dictionary; *see generally United States v. Fischer*, 64 F.4th 329, 336 (D.C. Cir. 2023) (same). Thus, the government proposes defining "otherwise restricted" as "in another way made accessible only to certain authorized people."

It is thus sufficient under § 1752(c) for the individual or entity in charge of a location to declare that location may be entered only by some people. The location would then be an "otherwise restricted area"—one "made accessible only to certain authorized people" in a different way than signs or a cordon. If Congress had meant to require another "type of visible or physical restriction," Def. Br. at 13, it would have said so directly. Just as a private landowner need not erect a fence or post "no trespassing" signs to declare his land off-limits to visitors, the entity restricting an area under § 1752 need not delineate the restricted area in any particular fashion. A lack of notice may make it difficult, if not impossible, for the government to prove beyond a reasonable doubt that a defendant *knew* that he was in a restricted area and that he lacked lawful authority to be there. *See* § 1752(a)(1) ("making it a crime to "knowingly enter[ ] or remain[ ] in any restricted building or grounds without lawful authority").[8] But it does not mean that the area

---

[8] In its order, the Court asked the government "[h]ow to construe the knowledge requirement in 18 U.S.C. § 1752[.]" ECF No. 91 at 4. The government does not believe that this statute requires

is not restricted in the first place. Rather, to be restricted in an *objective* sense, *United States v. Baez*, 21-cr-507 (PLF), 2023 WL 6364648, at *3 (D.D.C. Sep. 29, 2023), an area simply must be "accessible only to certain authorized people." This "broad interpretation of the statute — encompassing all forms of [restrictions] — is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text[.]" *Fischer*, 64 F.4th at 337 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

## Count Five
### Disorderly Conduct in a Restricted Building or Grounds
### (18 U.S.C. § 1752(a)(2))

The government does not object to the elements of this offense as stated in *GossJankowski*. 21-cr-123, ECF No. 166 at 35.

The government objects to the definition of "disorderly conduct" as stated in *GossJankowski*. *Id.* The definition stated there requires the conduct be "unreasonably loud and disruptive." However, conduct need not be loud to be disorderly. For example, if someone pointed a knife at a victim, but made no noise whatsoever, this conduct would not be disorderly under this definition. Although the *GossJankowski* instructions include the alternative avenue of "interferes with another person," *id.*, this definition moves away from the typical definition of disorderly conduct that focuses on the impact on the public.[9] Therefore, the government proposes the following definition:

> "Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety. Disorderly conduct includes when a person acts in such a manner as

---

a unique definition of the scienter element. Rather, the government would use the same definition as stated for the offense of civil disorder, in violation of 18 U.S.C. § 231(a)(3), discussed above.

[9] *United States v. Grider*, 21-cr-22 (CKK), ECF No. 150 at 24 ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2d ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

11

to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[10]

The government does not object to the definition of "disruptive conduct" as stated in *GossJankowski*. *Id.* at 35.

Lastly, the government objects to the inclusion of a "cause-in-fact" instruction. Def. Br. at 23-24. The causal element "in fact" is not a term of art. 18 U.S.C. § 1752(a)(2). It is a plain statement of causation, which requires no further definition. In addition, the defendant's proposed instruction leaves key terms undefined. In his brief, the defendant requests an instruction that "[t]he Government must prove that the Defendant's actions were the 'but-for causation' [sic] or 'an independently sufficient cause' that impeded or disrupted the orderly conduct of Government business or official functions." Def. Br. at 23. The defendant, however, fails to define either a "but-for cause" or "an independently sufficient cause." In the absence of this necessary clarity, the government objects to the defendant's proposed instruction.

**Count Six**
**Engaging in Physical Violence in a Restricted Building or Grounds**
**(18 U.S.C. § 1752(a)(4))**

The first element of this offense as stated in *DaSilva* lacks the inclusion of "or in proximity to" with respect to the physical scope of the offense. 21-cr-564, ECF No. 76 at 13. The government would include this additional language, which would mimic the similar element for 18 U.S.C. § 1752(a)(2) as stated in *GossJankowski*. 21-cr-123, ECF No. 166 at 35.

The government does not object to the definition of "act of physical violence" as stated in *DaSilva*. 21-cr-564, ECF No. 76 at 13.

---

[10] *United States v. Schwartz, et al.*, 21-cr-178 (APM), ECF No. 172 at 27; *United States v. Gietzen*, 22-cr-116 (CJN), ECF No. 50 at 32; *United States v. Alam*, 21-cr-190 (DLF), ECF No. 104 at 237-38.

12

The government raises the same objection to the definition of "assault" as stated in *DaSilva*, 21-564, ECF No. 76 at 13, which was discussed above in connection to the offense under 18 U.S.C. § 111(a)(1). To the extent the Court determines that *Duran* does control, *Duran* should be limited to the construction of § 111 and the Model Penal Code should not apply to the charge in this case under 18 U.S.C. § 1752, because that statute is not discussed nor anticipated by *Duran* and thus the *Shabani* principal applies.

**Count Seven**
**Disorderly Conduct in a Capitol Building**
**(40 U.S.C. § 5104(e)(2)(D))**

The government does not object to the elements of this offense as stated in *GossJankowski*. 21-cr-123, ECF No. 166 at 37. However, there appears to be a typo in the first element, which states "in any of the Capitol Building" rather than "in any of the Capitol Buildings." *Id.* The government would propose the latter to mimic the statutory language. 40 U.S.C § 5104(e)(2)(D).

The government does not object to the definition of "United States Capitol Buildings or Grounds" as stated in *GossJankowski*. 21-cr-123, ECF No. 166 at 37.

The government reiterates its objection to the definition of "disorderly conduct" as stated in *GossJankowski*. *Id.* at 35, 37.

The government agrees with the first half, but objects to the second half, of the definition of "willfully" as stated in *GossJankowski*. *Id.* at 38. To ensure that the government's burden is properly stated, the government proposes the following definition:

> A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. While the government must show that a defendant knew that the conduct was unlawful, the government does not need to prove that the defendant was aware of the specific law that his conduct violated.[11]

---

[11] As the Supreme Court has explained, "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal quotation marks omitted). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a bad purpose. In other words, in order to

13

**Count Eight**
**Act of Physical Violence in the Capitol Grounds or Building**
**(40 U.S.C. § 5104(e)(2)(F))**

The government does not object to the elements of this offense as stated in *DaSilva*. 21-cr-564, ECF No. 76 at 17.

The government does not object to the definition of "act of physical violence" as stated in *DaSilva*. *Id.*

The government reiterates its objection to the definition of "assault" as stated in *DaSilva*, *Id.* Again, to the extent the Court determines that *Duran* does control, *Duran* should be limited to the construction of § 111 and the Model Penal Code should not apply to the charge in this case under 40 U.S.C. § 5104, because that statute is not discussed by *Duran* and thus the *Shabani* principal applies.

**Count Nine**
**Parading, Demonstrating, and Picketing in a Capitol Building**
**(40 U.S.C. § 5104(e)(2)(G))**

This charge was not included in the jury instructions for *GossJankowski*, *DaSilva*, or *Black*. Therefore, the government proposes the following elements:

> First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

> Second, the defendant acted willfully and knowingly.

The government proposes the following definitions:

> The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress

---

establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* at 191-92 (internal quotation marks omitted).

by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[12]

The term "Capitol Buildings" has the same meaning described in the instructions for Count Seven. The terms "knowingly" and "willfully" have the same meaning described in the instructions for Count One and Seven, respectively.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: */s/ Andrew Haag*
ANDREW HAAG
Assistant United States Attorney
D.C. Bar Number 1008904
601 D Street NW
Washington, D.C. 20530
(202) 252-7755
andrew.haag@usdoj.gov

*/s/ Rebekah Lederer*
REBEKAH LEDERER
Assistant United States Attorney
Pennsylvania Bar No. 320922
601 D Street NW
Washington, D.C. 20530
(202) 252-7012
rebekah.lederer@usdoj.gov

---

[12] *United States v. Barnett*, 21-cr-38 (CRC), ECF No. 158 at 23; *United States v. Alam*, 21-cr-190 (DLF), ECF No. 104 at 44; *see also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).