**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-382 (PLF)** |
| | : | |
| **CHRISTOPHER WARNAGIRIS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S**
**ORAL MOTION TO DISMISS FOR A VARIANCE FROM THE INDICTMENT**

The United States, by and through its attorney, the United States Attorney for the District
of Columbia, respectfully submits this opposition to the defendant's oral motion to dismiss on the
basis of a variance from the indictment.[1] At the close of the government's case-in-chief, the
defendant moved to dismiss Counts Four, Five, and Six of the Second Superseding Indictment.[2]
In support of this motion, the defendant argued that there was a difference between the map
delineating the restricted perimeter introduced at trial compared to the map presented to the grand
jury. The Court should deny this motion because the defendant has failed to demonstrate that there
was a variance from the indictment, or, in the alternative, that the minute difference between the
two presentations caused substantial prejudice to him.

**DISCUSSION**

The purpose of an indictment is to provide notice to the defendant of the nature of the

---

[1] Per the Court's order, the government files this opposition to the defendant's oral motion. Absent
a written motion from the defendant, the government will respond as best as it is able to what to
understands the defendant's argument to be.

[2] These charges are respectively entering and remaining in a restricted building or grounds, in
violation of 18 U.S.C. § 1752(a)(1), disorderly and disruptive conduct in a restricted building or
grounds, in violation of 18 U.S.C. § 1752(a)(2), and engaging in physical violence in a restricted
building or grounds, in violation of 18 U.S.C. § 1752(a)(4). ECF No. 49.

charges against him. *United States v. Warnagiris*, 21-cr-382 (PLF), ECF No. 87, 2023 WL 6926491 at *3 (D.D.C. Oct. 19, 2023) (denying the defendant's motion to dismiss for failure to state an offense) (citing *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015)). However, a defendant may move to dismiss the indictment against him where there is a divergence between the indictment returned by the grand jury and what was proven at trial. *Gaither v. United States*, 413 F.2d 1061, 1071-72 (D.C. Cir. 1969) (citing *Berger v. United States*, 295 U.S. 78, 82 (1935)).

## I.    The difference between a constructive amendment and a variance

There are two forms of divergences that may lead to dismissal. The first is a constructive amendment, which "occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *Gaither*, 413 F.2d at 1071; *see also United States v. Palmer*, 85 F. Supp. 3d 284, 297 (D.D.C. 2015) ("To support a claim of constructive amendment, defendant would have needed to show that the evidence presented at trial and the instructions given to the jury so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment.") (internal citation omitted). This kind of departure from an indictment is problematic "because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny." *Gaither*, 413 F.2d at 1071-72. A defendant need not show prejudice to seek dismissal for a constructive amendment. *United States v. Lorenzana-Cordon*, 949 F.3d 1, 4-5 (D.C. Cir. 2020) (citing *Gaither*, 413 F.2d at 1072).

The second kind of divergence is a variance, which "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts *materially* different from those alleged in the indictment." *Id.* at 1071 (emphasis added). A variance is impermissible

because "it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution." *Id.* at 1072. To warrant dismissal on the grounds of a variance, the defendant must show that "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Lorenzana-Cordon*, 949 F.3d at 4 (quoting *United States v. Baugham*, 449 F.3d 167, 174 (D.C. Cir. 2006)) (internal quotation marks omitted). This standard permits "flexibility in proof at trial," so long as "the defendant was given notice of the core of criminality to be proven at trial." *United States v. Apodaca*, 287 F. Supp. 3d 21, 48 (D.D.C. 2017) (internal citation omitted).

While not plainly stated, the distinction between the two divergences is best understood by looking at whether actions by the government and the court changed any operative language (i.e., the elements) of the indictment. Take as an example a defendant who was indicted for conspiracy to distribute cocaine. At trial, however, the government admitted evidence of conspiracy to distribute both marijuana and cocaine. This additional evidence could be a constructive amendment *if* the specific substance was an element of the offense, and the court instructed the jury that conspiracy to distribute either controlled substance would be sufficient for a guilty finding. *See United States v. Toms*, 396 F.3d 427, 435-36 (D.C. Cir. 2005). In this hypothetical case, the evidence and jury instructions constructively amended the language of the indictment to allow the jury to convict on the basis of conspiracy to distribute marijuana.

An example of a variance, on the other hand, can be found in the case of *Stirone v. United States*, 361 U.S. 212 (1960).[3] In *Stirone*, the defendant was indicted for unlawfully interfering with

---

[3] In *Gaither*, the D.C. Circuit described the case of *Stirone* as an example of both a variance and a constructive amendment. 413 F.2d at 1072 ("[T]he Supreme Court [in *Stirone*] found the variance substantial enough to amount to a constructive amendment of the indictment."). The First Circuit,

interstate commerce in violation of the Hobbs Act. *Id.* at 213. The indictment returned by the grand jury charged that the defendant interfered with Pennsylvania's inbound sand trade. *Id.* At trial, however, the government presented evidence that the defendant also violated the Hobbs Act by interfering with the state's outbound steel trade. *Id.* at 214. The court then instructed the jury that it could find the defendant guilty on either theory. *Id.* The Supreme Court held that, because the variance between the facts alleged in the indictment and the evidence presented at trial was so severe that it "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Id.* at 217. Nonetheless, the new evidence introduced at trial did not change the operative language of the indictment; it merely availed the government of an alternative set of facts to prove the same charge. *Id.* at 218-19; *see also Katana*, 93 F.4th at 530-32. Thus, *Stirone* provides an example of the level of prejudice caused by a variance that would necessitate dismissal of an indictment.

## II. The defendant fails to show either a constructive amendment or a variance

In this case, a constructive amendment claim would fail on its own terms. Any constructive amendment claim by the defendant would be that, at trial, the government proved that the defendant entered the U.S. Capitol's "restricted area," for purposes of 18 U.S.C. § 1752(c)(1), by reference to a map that is slightly different from the map presented to the grand jury that returned the defendant's indictment. But the defendant's quibble with the *evidence* presented at the two proceedings bears no logical connection to the sole issue that matters for constructive amendment purposes: whether the government secured a guilty verdict based on *a legal theory* (*i.e.*, on a set

---

however, recently issued an opinion that shows *Stirone* is better understood as a variance because the actions by the government and the trial court did not change the operative language of the indictment. *See United States v. Katana*, 93 F.4th 521, 530-32 (1st Cir. 2024)

of elements) that is different from the legal theory charged in the indictment (*i.e.*, the set of elements). *Palmer*, 85 F. Supp. 3d at 297. Any constructive amendment therefore fails in this case before it even gets off ground. To prevail, instead, the defendant would have to clear the high bar of establishing a prejudicial variance.

As explained below, any claim of prejudicial variance in this case would also fail, both on the law and on the facts. As a legal matter, a variance—which are grounded in principles of notice and double jeopardy, *Gaither*, 413 F.2d at 1072—occurs only when "the evidence offered at trial proves facts materially different from those *alleged in the indictment*," *id.* at 1071 (emphasis added). Here, however, the allegations in the indictment tracked the statutory language. They did not refer to any map in the first place, let alone any one specific map. The only specificity stated in the indictment beyond the statutory language is that the offenses occurred "within the United States Capitol and its grounds." The defendant does not, and cannot, argue that this case involved anything other than his conduct at those locations.[4] For that reason alone, the defendant's claim fails as a matter of law. And, in any event, any variance claim would fail here as a factual matter even if the evidence presented *to* the grand jury—as opposed to the allegations in the indictment returned *by* the grand jury—supplied the relevant comparison. A variance must be so significant in extent that it "deprive[s] the defendant of notice of the details of the charge against him and protection against reprosecution." *Gaither*, 413 F.2d at 1072. Here, the defendant's quibble about the minutiae of the maps introduced at the two proceedings fall far short of the mark.

---

[4] The defendant could have an argument if, for example, the government only presented evidence at trial that he had breached the White House rather than the U.S. Capitol. While both factual predicates would be sufficient for a guilty finding on the Section 1752 counts, the defendant would not have notice of the White House conduct on the current indictment. *See Stirone*, 361 U.S. at 218. This hypothetical, however, is not an accurate reflection of what happened in this case.

**III.    The defendant has not met his burden that there was a variance as a matter of fact**

Assuming *arguendo* that courts review the evidence presented to the grand jury to determine if a variance occurred, the defendant would still have the burden to prove that "the evidence offered at trial proves facts *materially different* from those alleged" before the grand jury. *Gaither*, 413 F.2d at 1071 (emphasis added). Under this standard, not every divergence requires dismissal. For example, in *United States v. Nersesian*, the defendant was indicted for unlawfully distributing narcotics "on or about June 1984." 824 F.2d 1294, 1322 (2d Cir. 1987). At trial, the government argued in closing that the relevant transactions "may have been in July or perhaps even early August." *Id* at 1323. The Second Circuit held that this argument was "not an improper material variance" because "the government is not required to prove the exact date, if a date reasonably near is established." *Id.* Thus, absent the need to prove specific facts, a difference between a grand jury presentation and the trial evidence is not necessarily a variance. This case demonstrates that "[t]he true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused." *United States v. Cross*, 766 F.3d 1, 5 (D.C. Cir. 2013) (internal citations omitted).

To appreciate the difference between the two maps that the defendant has identified as a variance in proof is to realize how hollow the defendant's claim rings. Under the law, the minute difference between the maps are neither materially different nor an issue of notice. In the earlier iteration of the map, which was introduced into evidence at the grand jury, the restricted area did not include a trolley stop on the East Front. *See* Figure 1. The map introduced at trial, however, clarified that the restricted area included the trolley stop. *See* Figure 2. This primary difference is

pictorially represented as follows,[5] with the trolley stop circled in blue in each image:



*Figure 1: The version of the restricted perimeter map presented to the grand jury*



*Figure 2: The map introduced at trial as Gov't Ex. 102*

---

[5] There are also a few small changes to various portions of the perimeter, which take the form of slightly jagged rather than straight lines to account for the placement of barriers, fencing, etc. The general shape and location of the perimeter, however, remains the same.

But the government has not alleged, nor did it provide evidence at trial, that any of the defendant's criminal conduct occurred anywhere near the trolley stop. Rather, the evidence at trial showed that the defendant reached the East Rotunda Doors via the Northwest Lawn, breached the doors amidst a violent mob, assaulted Sergeant Warner inside the U.S. Capitol, and joined a group of rioters attempting to break into the chamber of the House of Representatives. All of these actions occurred within the restricted perimeter regardless of which map is used to support the existence of a restricted area for the purposes of 18 U.S.C. § 1752(c)(1). Thus, any differences between the maps are immaterial and not a variance. *See Gaither*, 413 F.2d at 1071. Any attempt to argue how the inclusion of several additional square feet of coverage in an area the defendant did not appear is specious. Perhaps more to the legal point, it is also irrelevant as to issues of notice under the caselaw.

## IV.    The defendant has not demonstrated any prejudice, let alone substantial prejudice

Even if the defendant's legal theory regarding variances was correct and the minor changes between the maps was such a variance, the defendant's claim would still fail because he suffered no prejudice. In *United States v. Mangieri*, the D.C. Circuit rejected a variance claim that involved an arguably more significant divergence than what is present here. 694 F.2d 1270, 1276-1279 (D.C. Cir. 1982). In that case, the defendant was indicted on nine separate counts for failing to report several debts on his loan applications to a federal credit union. *Id.* At 1271. Among his debts were two separate loans from a financial institution, one in the amount of $2,512.88 and the other for $1,436.20. *Id.* At 1276-77. The defendant properly disclosed the former, but not the latter. *Id.* at 1277. The indictment, however, mistakenly listed the $2,512.88 debt as the predicate for the offense. *Id.* At trial, the government admitted evidence of both debts and, with the aid of an

instruction by the court, clarified that the $1,436.20 debt was the relevant one for the jury to consider. *Id.* The D.C. Circuit held that this variance did not prejudice the defendant, because the government did not need to prove the amount of the misreported debt, only that there was a misreported debt. *Id.* at 1277-79.

The facts of *Mangieri* largely mirror the facts of this case. To prove the offenses related to a restricted building or grounds, the government need only prove that the relevant area was restricted. *See* 18 U.S.C. § 1752(c)(1). The statute, however, does not require proof of the specific contours of those restrictions. This non-burden is akin to the loan disclosure in *Mangieri*. Where this case diverges from *Mangieri*, however, is that the second superseding indictment makes no reference to any sort of map. *See* ECF No. 49. Rather, the defendant was charged with committing three criminal acts "in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds[.]" *Id.* at 3-4. With that language in mind, the government's evidence did not even differ from a superfluous portion of the indictment as it had in *Mangieri*.

Yet the defendant argues that somehow the trivial change in the two maps did not give him "notice of the core of criminality to be proven at trial." *Apodaca*, 287 F. Supp. 3d at 48. Given the opinion in *Mangieri*, this argument clearly fails. Almost the entire body of evidence presented by the government focused on the defendant's actions between the East Rotunda Doors and the House chamber. The miniscule change in one piece of evidence, among many other pieces of evidence, that helps prove that the U.S Capitol was restricted on January 6 cannot credibly support a claim of prejudice in this case. Even assuming there was a small level of prejudice, it does not rise to the level of having a "substantial and injurious effect or influence in determining the [] verdict."

*Lorenzana-Cordon*, 949 F.3d at 4. A conclusion to the contrary would essentially eliminate the defendant's burden to show prejudice caused by a variance and give the government no flexibility to accommodation minor changes in its evidence between indictment and trial. *See Apodaca*, 287 F. Supp. 3d at 48. Thus, the defendant has not demonstrated any prejudice based on the slight divergence in evidence related to the restricted perimeter.

**V.      The defendant's motion is premature and there is no risk of prejudice in a bench trial**

Even assuming that there is a variance, the defendant's motion is premature. The D.C. Circuit's standard for prejudice in the context of a variance is whether "the error had a substantial and injurious effect or influence in determining the [] verdict." *Lorenzana-Cordon*, 949 F.3d at 4. (citation omitted). As there has been no verdict, the defendant cannot yet show prejudice. In addition, in the context of a bench trial, the defendant will be unable to show any prejudice because the Court can sift through the record and isolate any divergences that could create such prejudice.

## <u>CONCLUSION</u>

For the above-stated reasons, the government respectfully requests that the Court deny the defendant's oral motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:      */s/ ANDREW HAAG*
Andrew Haag
Assistant United States Attorney
Massachusetts Bar No. 705425
601 D Street NW, Washington, DC 20530
Tel. No.: (202) 252-7755
Email: andrew.haag@usdoj.gov

10

*/s/ REBEKAH LEDERER*
Rebekah Lederer
Assistant United States Attorney
Pennsylvania Bar No. 320922
601 D St. N.W, Washington, DC 20530
Tel. No.: (202) 252-7012
Email: rebekah.lederer@usdoj.gov