```
1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2
        - - - - - - - - - - - - - - - x
3       THE UNITED STATES OF AMERICA,
                                            Criminal Action No.
4                    Plaintiff,            1:21-cr-00382-PLF-1
                                            Thursday, April 4, 2024
5       vs.                                 10:35 a.m.

6       CHRISTOPHER WARNAGIRIS,

7                    Defendant.
        - - - - - - - - - - - - - - - x
8

9       _____

10                     TRANSCRIPT OF BENCH TRIAL
             HELD BEFORE THE HONORABLE PAUL L. FRIEDMAN
11                   UNITED STATES DISTRICT JUDGE
        _____

12      APPEARANCES:

13      For the United States:      REBEKAH LEDERER, ESQ.
                                    ANDREW HAAG, ESQ.
14                                  USAO
                                    601 D Street NW
15                                  Washington, DC 20001
                                    (202) 252-7012
16                                  rebekah.lederer@usdoj.gov
                                    andrew.haag@usdoj.gov
17

18      For the Defendant:         MARINA MEDVIN, ESQ.
                                    MEDVIN LAW PLC
19                                  916 Prince Street, Suite 109
                                    Alexandria, VA 22314
20                                  (888) 886-4127
                                    marina@medvinlaw.com
21

22      Court Reporter:            Lisa A. Moreira, RDR, CRR
                                    Official Court Reporter
23                                  U.S. Courthouse, Room 6718
                                    333 Constitution Avenue, NW
24                                  Washington, DC  20001
                                    (202) 354-3187
25
```

1                              I N D E X

2

3    <u>WITNESS</u>                                              <u>PAGE</u>

     AGENT STEVEN WEATHERHEAD, Resumed
4         (By Ms. Lederer)...................................15
          (By Ms. Medvin)...................................70
5         (By Ms. Lederer)..................................119

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S

 2              THE COURTROOM DEPUTY:  This is Criminal Action

 3      21-382, United States of America v. Christopher Warnagiris.

 4              For the United States, I have Andrew Haag and

 5      Rebekah Lederer.

 6              For the defendant, I have Marina Medvin.

 7              All parties are present.

 8              THE COURT:  Well, thank you, both, the government

 9      and the defense, for your very helpful emails last night.  I

10      think that will help us a lot to get to -- well, help me a

11      lot, make some decisions, and maybe it will help us.

12      Particularly Ms. Medvin's suggestions about the blues and

13      the greens might be a good thing.  Maybe it will help us get

14      through this a little faster.  We'll see.

15              So I'm happy to take up the issues in whatever

16      order you want to talk about them beyond what you've already

17      filed.

18              MS. LEDERER:  I think it might be easiest to take

19      up the issue of the map first, which AUSA Haag will address,

20      and then we could roll right into the text messages and go

21      right back into the direct examination.  That line makes

22      sense to me, if Your Honor's okay with it.

23              THE COURT:  Okay.  Well, as I understand the issue

24      with respect to the map, the Capitol grounds is defined in

25      40 USC 5102(a) as set forth in Ms. Medvin's filing last
```

1    night, and she said it yesterday in court, too.  What she

2    also pointed out in her filing was that there's an

3    attachment actually to the statute, which is a map, and

4    she's asked that I take judicial notice of it.

5          And the government said they don't have any

6    objection to it.  They may have some questions or arguments

7    to be made.  They also say that that particular map has been

8    modified from time to time over the years.

9          So that's what I understand everybody's position

10    to be.

11          But that having been said, the government does not

12    object to my taking judicial notice.

13          MS. MEDVIN:  I'm sorry, Judge?

14          THE COURT:  Pardon me?

15          MS. MEDVIN:  The last part.  You said you will

16    take judicial notice?

17          THE COURT:  I said the government doesn't object,

18    so I will.

19          MS. MEDVIN:  Thank you, Judge.

20          The only additional comment I had on the argument

21    that counsel emailed to chambers is I think that was

22    inappropriate for an email to chambers.  That's the type of

23    argument that should be had on the record potentially at

24    closing at the relevant time.

25          THE COURT:  Which argument are you talking about?

 1          MS. MEDVIN:  As to how the defense plans on using

 2     the definition.

 3          THE COURT:  Well, you know, as I said to you

 4     before, whatever you guys file in the form of briefs or

 5     motions are automatically on the record, and other stuff you

 6     can -- if there are emails, you can put them on the record

 7     later.

 8          I take your point that the second part of their

 9     email is an argument.  But -- it's not worth getting into.

10          MS. MEDVIN:  We trust that it did not affect the

11     Court.

12          THE COURT:  I took it as actually pointing out, as

13     may be helpful to you, the fact that you haven't asked those

14     questions, or not.  But they've given you notice, as well as

15     me.

16          And secondly, if they come back and ask me to take

17     judicial notice of something else later in addition to what

18     you've asked, I may wind up doing it.  We'll see.  We can

19     talk about it at the time.

20          But for now I will grant the defense's request to

21     take judicial notice of 40 USC 5102(a), which contains the

22     definition of "Capitol grounds" and a map.

23          MS. MEDVIN:  Thank you, Judge.

24          THE COURT:  Okay.

25          So the next question had to do with how to deal

1    with 602A, and 602A is a -- we began to hear testimony,

2    although I think I'd like to actually go back.

3              Exhibit 602 is a very, very, very long series

4    of messages and other things from -- extracted from

5    Mr. Warnagiris's cell phone, as I understand it.  And what

6    the government has done is extracted some items from

7    Exhibit 602, which actually runs almost 500 pages.  And the

8    things that are in 602A purport to be interchanges between

9    three or four people in a chat group, one of whom is

10   Mr. Warnagiris, and the agent identified both his phone

11   number and his -- I guess it's an email address, and so we

12   can tell from the documents whether he initiated any

13   particular messages in the chat or not.

14             There were a lot of objections yesterday to

15   whether these come in and who bears the burden of proof.

16   And I've said before that I think it's -- I think it is the

17   government that bears the burden of proof by a

18   preponderance, and I think I've also said before that -- in

19   yesterday's conversation that if the defense is concerned

20   about the context in which some of these chats occurred

21   because there were other messages earlier or later, then

22   under the Rule of Completeness they can ask the government

23   to bring them forward or they can do it themselves.

24             And we went through some of them.  Although I

25   think I'd like to go back because in the filings last night

1    there were a number of things in addition to providing some

2    cases, which I'm not sure were all that helpful other than

3    to say the text messages can be admitted in some cases, and

4    if they're not offered for the truth of the matter, they're

5    not hearsay.  In some cases there may be hearsay exceptions.

6    But that doesn't get to the fundamental questions that are

7    involved with 602A, which is whether some of these back-and-

8    forth exchanges are relevant, whether or not Mr. Warnagiris

9    saw them, whether he responded to them, whether he initiated

10   them, whether -- and a bunch of other things that Ms. Medvin

11   raised.

12         So the government filed something -- sent an email

13   last night at 8:59 p.m., and Ms. Medvin responded at 10:20.

14   And then later, or earlier, she suggested, in response to my

15   law clerk's -- my law clerk had suggested that we take these

16   in groups.  The government has them in groups.  And rather

17   than go through all of them, as we started to do yesterday,

18   when the government finishes one particular group of

19   messages, the defense will make their argument and I'll

20   rule.

21         And Ms. Medvin then added to that suggestion that

22   if everybody is in agreement, and we can stipulate to this

23   or not, green indicates that they were from Mr. Warnagiris's

24   phone and blue indicates that they were not.  If that's

25   accurate, that may help.  If it's not accurate, it doesn't.

1              MS. LEDERER:  Your Honor, the government is in

2       agreement, and that's how we would have presented it.  But

3       yesterday Ms. Medvin was objecting to everything, even her

4       own client's text messages, so that's why I was

5       painstakingly establishing who was sending what message.

6              If defense counsel is on board with what is

7       admissible to do it that way, it will speed things up.

8              THE COURT:  All right.  It seems to me that one

9       of the things we ought to do for the purposes of the record

10      is you ought to pose certain questions to the agent, and it

11      may be that he is -- rather than us just talking about it.

12      What does blue mean?  What does green mean?  What does red

13      mean?

14             She may disagree with what red means, but if he

15      has -- if he's the overview agent and he has interacted with

16      the Cellebrite people, I think he can testify about that,

17      and she can examine him about that.  And there may be other

18      things that either as a predicate or as we go along that he

19      can help us with.

20             And for purposes of fact-finding, I can't rely on

21      what lawyers say about facts.  I need testimony.  Certainly

22      the Court of Appeals does, too, so we ought to do that with

23      the agent.

24             On the other hand, it may not be necessary for him

25      to read every single one of these things as we started to do

1    yesterday.

2            So I think what we should -- I think I should hear

3    your arguments.

4            And as I understand it, when we finish with your

5    direct of Agent Weatherhead and then cross and redirect,

6    that's the end of the government's case.

7            MS. LEDERER:  Yes, Your Honor.  After we get

8    through the texts, there might be one or two more qualifying

9    questions I need to ask of Agent Weatherhead.

10           Counsel and I spoke yesterday.  Counsel was

11   looking to call Agent Weatherhead herself as a witness,

12   but I let counsel know that although I might object to

13   certain questions that are being asked, I'm not going to

14   object to her getting into it with the agent to save time

15   so she doesn't have to ask him, so I may just end up

16   asking some qualifying questions that will make sense for

17   when Ms. Medvin gets into that.

18           THE COURT:  So is it likely that we'll begin the

19   defense case after lunch today?

20           MS. MEDVIN:  Depending on the length of the cross.

21   I'm not sure how long that will take, to be perfectly

22   honest.  A lot of it will depend on the types of messages

23   that are admitted into evidence and how much context we need

24   to add.

25           THE COURT:  All right.  Well, my original goal was

1    to end this trial today.  My Plan B was to end it tomorrow,

2    and now I'm not convinced that either of these goals will be

3    met.

4              MS. LEDERER:  Your Honor, the government is

5    prepared to close today if, by some miracle, we get

6    there.

7              THE COURT:  Okay.  So shall we have some legal

8    argument or some argument as a follow-up to what you sent

9    last night, or do we just want to start going through --

10             MS. LEDERER:  Your Honor, for the most part, we

11   will rest on the information in the email, but just to point

12   out a broader stroke before we get into every single page

13   that had been highlighted by the government.

14             On the broader stroke, this is, like you already

15   stated, one large text message that shows that the defendant

16   was engaging throughout, even though it is broken down into

17   separate portions of the text messages, which makes every

18   text message sent by someone else important because it's

19   showing the ongoing back-and-forth and the engagement of the

20   defendant, especially starting with the first text message

21   on Page 2 of the report.

22             Everything that the defendant says himself is

23   automatically admissible as an opposing party statement.

24             THE COURT:  Statement of a party.

25             MS. LEDERER:  Yes.  And every statement that we've

1    included here from the defendant, except for the top message

2    on Page 52, that was only included just to show that the

3    defendant was ongoing and engaging in this group chat.

4            Other than that message sent at 3:40:52 a.m. UTC

5    on 12/14, everything else sent by the defendant directly

6    relates to intent and motive and knowledge of the

7    presidential election certification and January 6th.  And

8    everything sent in the blue is either sent and it's directly

9    responded to by the defendant so it's admissible under

10   effect on the listener.

11           THE COURT:  Admissible under what?

12           MS. LEDERER:  Effect on the listener, to which the

13   defendant directly responds.  And then occasionally there

14   are blue bubbles where the person is directly responding to

15   the defendant.  So, again, that's admissible under effect on

16   the listener.

17           And, Your Honor, as pointed out in the email, the

18   government has met its burden of preponderance by

19   establishing the fact that these messages were, in fact,

20   read.

21           THE COURT:  They were read?

22           MS. LEDERER:  Yes, the blue messages indicate that

23   the message had been opened.

24           THE COURT:  Had been opened.

25           MS. LEDERER:  By the defendant.  And therefore,

1    logically, especially when he's responding --

2         THE COURT:  It may be, and I don't know enough,

3    and I think the agent should testify about this, but, you

4    know, when you receive an invitation by Evite or the other

5    one, and you -- well, if you send an invitation by Evite and

6    you check to see what's going on, you may see that some

7    people that were invited have opened it but haven't

8    responded yet.

9         It seems to me -- and, again, we have to have some

10   testimony that's an analogy to what "read" might mean here,

11   R-E-A-D read.

12        MS. LEDERER:  Yes.  And completely understanding

13   that's the argument, the government's response back is the

14   fact that this very first text message kicks off the group

15   chat that the defendant is invited to later.  He's

16   participating over the course of this existence of this

17   group chat, and the very first message itself acknowledges

18   the fact that the defendant wants to move over into this

19   group chat.

20        THE COURT:  Well, and then the other thing we

21   talked about yesterday is the -- I think to the extent that

22   any cases are relevant that deal with this, if somebody

23   responds, how quickly they respond.

24        I mean, if somebody -- if nothing happens for two

25   weeks, it may not be actually a response and it may not be

 1    part of the same conversation.

 2              If they respond within minutes or hours, it may be

 3    different.

 4              So I think those are things that may come up as we

 5    go through these as well.

 6              MS. LEDERER:  Yes, Your Honor.  And the government

 7    will highlight -- we don't want to, again, be painstakingly

 8    going through this, but the government will be able to

 9    highlight when a read receipt -- the timestamp of a read

10    receipt versus how quickly the defendant then responds to

11    that read receipt.

12              THE COURT:  All right.  So, Ms. Medvin, is there

13    anything you want to say before we -- you know, about the

14    law or the process or anything else that is sort of a global

15    point before we start going through these again?

16              MS. MEDVIN:  I think the Court understands the

17    global points the defense is making and has asked the

18    particular questions of the government that we would be

19    posing, so I think the Court understands our position

20    overall.

21              THE COURT:  All right.  I do think that, now that

22    we have hopefully a better understanding among ourselves, we

23    ought to go back to Pages 1 and 2, which are in a group

24    before there's another break in the pagination, and talk

25    about -- ask Ms. Medvin again if she -- well, is there

1    anything you want -- do you want to put the agent on the

2    stand to testify about anything globally that relates to

3    this package that came from the Cellebrite extraction

4    report of things extracted from his phone?  And the agent

5    testified quite a lot yesterday about that and about his

6    interaction with the two people at Cellebrite and how the

7    whole thing works and then what was focused on, and that

8    became 602A.

9            But are there any things more globally you want to

10   ask him about the process in light of the conversation we've

11   had by email last night and this morning and just now?

12           MS. LEDERER:  Yes, which I was going to do anyhow.

13   Like Your Honor said, it has to make it on to the record, so

14   my plan was to do it anyhow.  So I can do that now, and if

15   you want to --

16           THE COURT:  And maybe he should just -- once he

17   gets back on the stand, he'll be there, and to the extent

18   that you want to ask him any questions specifically as we go

19   through it, we can do that.

20           So why don't we put the agent back on the stand.

21           Agent Weatherhead, you're still under oath from

22   yesterday.  And I think I've referred to you from time to

23   time as Agent Weatherstone, only because I had a law clerk,

24   and her last name was Weatherstone.  So I'll say sorry about

25   that.

```
 1              AGENT STEVEN WEATHERHEAD, Resumed

 2                DIRECT EXAMINATION, Continued

 3   BY MS. LEDERER:

 4   Q.  Agent Weatherhead, I know we started getting into the

 5   texts yesterday, but we're going to take a few steps back.

 6            I believe that you had testified that you had

 7   tagged certain group chats within the larger extraction; is

 8   that correct?

 9   A.  Yes.

10   Q.  And one of those group chats, did that make it into the

11   480-some-page report after you deemed those chats relevant?

12   A.  Yes.

13   Q.  And if I were to show you 602 for identification, would

14   you just be able to help walk us through how this one chat

15   is structured?

16   A.  Yes.

17            MS. LEDERER:  Your Honor, if I may show the agent

18   602 for identification?

19            THE COURT:  602?

20            MS. LEDERER:  Yes.

21            THE COURT:  You may.  So 602 for identification,

22   which is a long 480-some-page document.

23            MS. LEDERER:  If we can scroll down and pause

24   here.

25   Q.  Agent Weatherhead, yesterday we were referencing a group
```

1    chat in 602A, and we were referencing certain individuals --

2              THE COURT:  Did I admit this document

3    provisionally yesterday?

4              MS. LEDERER:  We provisionally admitted 602A, but

5    I'm just going to talk globally about this group chat, and

6    then I'm going to focus on 602.

7              THE COURT:  Okay.

8              MS. LEDERER:  I'm going to talk globally --

9              THE COURT:  So in your recollection I did not

10   admit 602 even provisionally?

11             MS. MEDVIN:  No.

12             MS. LEDERER:  No, we were just marking it for

13   identification so that the agent --

14             THE COURT:  So it's not in, but 602A is admitted

15   provisionally.

16             And what about 602B?  I know that's not relevant

17   at the moment.  We agreed that you were going to -- you only

18   wanted certain pieces of that admitted, and you would

19   provide that later to counsel, to Ms. Johnson, and all of --

20             MS. LEDERER:  Yes, Your Honor, and we went through

21   each portion that you were admitting at that time.

22             THE COURT:  Correct.

23             MS. LEDERER:  And you went through the -- that was

24   for 602B, the report.

25             THE COURT:  So portions have been admitted, and we

```
 1    just need --

 2              MS. LEDERER:  Yes.  Redacted --

 3              THE COURT:  -- those portions --

 4              MS. LEDERER:  Yes.

 5              THE COURT:  -- for the record.

 6              MS. LEDERER:  And these thumbnail versions that

 7    related to 602D --

 8              THE COURT:  Right.

 9              MS. LEDERER:  -- those exhibits were all admitted

10    simultaneously --

11              THE COURT:  Got it.

12              MS. LEDERER:  -- with each portion.

13              THE COURT:  So 602 is not admitted even

14    provisionally.  602A is admitted provisionally, so it can be

15    put on a screen, I guess, when we get to it.

16              MS. LEDERER:  If we may call out --

17              THE COURT:  So we're back at 602?

18              MS. LEDERER:  Yes, and we're just going to

19    globally talk about it, and we're going to establish the

20    green and blue bubbles and then pare down.

21              THE COURT:  Go ahead.

22              THE COURTROOM DEPUTY:  Should this be put on the

23    screen?

24              THE COURT:  602 is not in at all.  She's showing

25    Page 2 of 602.
```

```
1              MS. LEDERER:  Yes.  Can the witness see it though?
2    All good.
3    BY MS. LEDERER:
4    Q.  Agent Weatherhead, 602 is the larger report, correct?
5    A.  Yes.
6    Q.  Okay.  And on Page 2 of the larger report it kicks off a
7    group chat called the "Minibroahs," correct?
8    A.  Yes.
9              MS. LEDERER:  And this chat -- if we could please
10   uncall now.  Thank you.
11   Q.  And if we can just scroll through, are you seeing
12   different colored bubbles?
13   A.  Yes.
14   Q.  What colored bubbles are you seeing?
15   A.  Blue and green.
16   Q.  What do those reference?
17   A.  The blue bubbles are always on the left side of the
18   page.  Those are incoming messages.
19              The green bubbles are on the right side of the
20   page.  Those are outgoing messages from the phone that was
21   downloaded.
22   Q.  And the color scheme, is that also created to assist the
23   reader in understanding who is sending versus who is
24   receiving or who is sending at what time?
25   A.  Yes.
```

1    Q.  And when we were referencing 602A, were those just

2    selected messages out of the larger Minibroahs group chat?

3    A.  Yes.

4            MS. LEDERER:  If we could scroll back up to Page 2

5    of 602.

6    Q.  Before we had called out the first message, was that the

7    same first message from 602A?

8    A.  Yes.

9            MS. LEDERER:  If we could just call out the date

10   and time that that was sent.

11           Thank you very much.

12   Q.  Agent Weatherhead, what date and time was this group

13   chat started?

14   A.  December 5, 2020, 6:49 p.m. UTC.

15   Q.  Thank you.

16           MS. LEDERER:  If we could exit out, and if we

17   could scroll down one page.

18   Q.  Do we see a green bubble?

19   A.  Yes.

20   Q.  And as you testified before, would that indicate that it

21   would be the defendant's phone responding?

22   A.  Yes.

23           MS. LEDERER:  If we could call out this green

24   message.

25   Q.  What date and time did the defendant respond?

1    A.  December 5, 2020, 6:55 p.m. --

2    Q.  And what did the defendant respond?

3    A.  -- UTC.

4         You said what the --

5    Q.  Yes, what is in this message?

6    A.  I'm going to read it.  "There's certainly room for a

7    separate string for more like minded brothers.  But I'm not

8    in favor of limiting my talks to them to niceties about my

9    nieces and nephews and the steelers."

10   Q.  So that was sent approximately six minutes after the

11   first initial message that started this group chat?

12   A.  Yes.

13        THE COURT:  And yesterday you told us by

14   identifying the email address -- three phone numbers -- four

15   phone numbers, right, and one email address, right?

16        THE WITNESS:  Yes, sir.

17        THE COURT:  And you told us yesterday by

18   identifying the last four digits of some of those phone

19   numbers which one -- which phone belonged to Mr. Warnagiris,

20   right?

21        THE WITNESS:  Yes, Your Honor.

22        THE COURT:  And that's the same phone that,

23   through your testimony yesterday, if I'm remembering

24   correctly -- and correct me if I'm wrong -- was the phone

25   that was seized pursuant to the search warrant?

```
1                 THE WITNESS:  Yes, Your Honor.

2                 MS. LEDERER:  If we could go over to 602A so we

3       can reference that actual first initial message that started

4       this group chat.

5                     If we could call out this message, please.

6                 THE COURT:  So now is the rest of your examination

7       going to be about 602A?

8                 MS. LEDERER:  Yes, Your Honor.

9                 THE COURT:  And that's been admitted

10      provisionally.

11                MS. LEDERER:  And, Your Honor, I did that to

12      globally establish how the next messages worked.  I also did

13      that, you'll see in a second, to admit this specific

14      message.  I'll reference back to 602A, and then I'll get

15      into the read receipts.

16      Q.  Agent Weatherhead, I don't --

17                THE COURT:  That can be shown.  602A is in

18      provisionally.

19                MS. LEDERER:  Thank you.

20      Q.  I believe you read this out loud yesterday so I'm not

21      going to make you read this out loud again, but is this the

22      same message that we just saw in 602 that the defendant

23      directly responded to?

24      A.  Yes.

25                MS. LEDERER:  Your Honor, at this time I'd like to
```

 1    mark and move Page 2 of the report -- excuse me.

 2    Q.  Before I get there, Agent Weatherhead, I'm going to

 3    direct your attention to this portion of the text under the

 4    line "Read."

 5            Do read receipts mean anything to you?

 6    A.  Yes.  It indicates that the message was read.

 7    Q.  And when we say "read," do you know how generally read

 8    receipts work?

 9    A.  Opened.  The phone documented that the message was

10    opened on the phone and documented the time that that

11    happened.

12            THE COURT:  So you don't know whether somebody

13    actually read the message like I'm reading a book, right?

14    But you can tell -- but the designation "read" would

15    indicate that a particular message has been opened; is that

16    what it means?

17            THE WITNESS:  Yes, Your Honor.

18            THE COURT:  Opened?

19            THE WITNESS:  Opened.

20    Q.  When we say "opened," do we mean by the owner of the

21    phone?

22            MS. MEDVIN:  Objection.

23    Q.  Or, excuse me, by the phone, whoever has the phone of

24    the extraction that you're looking at?

25    A.  Opened by the phone by whoever is using the phone.

1    Q.  What date and time was this message read?

2    A.  December 5, 2020, 6:51 p.m. UTC.

3    Q.  When we were back looking at 602, did the defendant

4    respond to this message at 6:55 p.m.?

5    A.  Yes.

6            MS. LEDERER:  Your Honor, at this time the

7    government would seek to admit Page 2 of the report and this

8    text message.

9            THE COURT:  You would move to admit what?

10           MS. LEDERER:  To admit this Page 2 and this text

11   message of 602A.

12           MS. MEDVIN:  Judge, I'm still objecting on grounds

13   of relevancy.  I don't see -- I understand they're trying to

14   say that this conversation was opened or created, but I just

15   don't understand how it relates to statements made by the

16   defendant in relation to this case.

17           MS. LEDERER:  Your Honor, the opening line is "I

18   think we should move the political talk to this thread."

19           I just established with the agent that the

20   defendant then subsequently, six minutes later, responds in

21   agreement.  He just read the defendant's message on to the

22   record.  And then the remaining exhibits all relate to

23   political discussion regarding the election and January 6th.

24           THE COURT:  Well, look, I think that Ms. Medvin's

25   objection goes to the weight of this evidence, not to the

1    admissibility.  If the government wants to draw inferences

2    from emails in December of 2020 or chats in December of 2020

3    about people's intent and motivation that led to certain

4    actions later, the government can make those arguments.

5            But I think it's relevant to showing discussions

6    about -- in the context of others that we will see as well.

7    And while this particular one doesn't show that

8    Mr. Warnagiris responded, there may be others that do show

9    that he responded to this one; I'm not sure.  If there are,

10   the government or Ms. Medvin can introduce them for

11   completeness.

12           But there was someone named Chris referenced by

13   name in it, and among the people -- among the phones that

14   received it were Mr. Warnagiris.  So I'm going to admit it

15   over objection, and the government can -- both sides can

16   argue its relevance -- not its relevance, but the weight I

17   should give it and for what purposes, if any.

18           MS. MEDVIN:  Judge, the message with the phone

19   numbers was just projected to the Court.  If we could renew

20   that objection we had to privacy and the phone numbers.

21           THE COURT:  Yes, when this is all filed.

22           MS. LEDERER:  Your Honor, the government indicated

23   yesterday that it will be redacting this for filing.

24           THE COURT:  I understand that, but trials are

25   public, and there are people in the room, and if something's

1  admitted, we usually show it to them, right?  So I don't

2  know what you want to do about that.

3          We've got a woman on the left who's been here the

4  entire time, I think, and two people from NPR on the right,

5  and we want to preserve the privacy of the phone numbers and

6  email addresses of both the defendant and the other

7  individuals, whoever they are.  I don't know how we do that

8  and still show exhibits to the public.

9          MS. LEDERER:  Your Honor, I can probably just do

10  this to each number, and I have been making sure that the

11  agent only read out the last four numbers.

12          Ms. Medvin has had this for quite some time.  We

13  would have redacted it ahead of time if we knew this was

14  going to be an issue.

15          And Mr. Haag is going to sit at his desk and use

16  Adobe to redact as we move through.

17          THE COURT:  All right.  So going forward we're

18  going to have -- do our best to only show the last four

19  numbers, and if everybody's comfortable, we can also take

20  out everything about the email, et cetera.

21          Good luck, Mr. Haag.

22          MR. HAAG:  Thank you, Your Honor.

23          THE COURT:  Did they teach you how to do this in

24  law school?

25          MR. HAAG:  I figured it out.

```
 1            MS. LEDERER:  It's much easier on Adobe.

 2            THE COURT:  Okay.  So I'm going to admit Page 2 of

 3      602A.

 4            MS. LEDERER:  And, Your Honor, for the record, the

 5      witness did testify, when referencing 602, the whole report,

 6      that the defendant did respond six minutes later to this

 7      message.

 8            THE COURT:  There was a response?

 9            MS. LEDERER:  Yes.

10            THE COURT:  It's not in --

11            MS. LEDERER:  It's just not included in 602A.

12            THE COURT:  Okay.  So if you want to offer it, or

13      Ms. Medvin, for whatever reason, would want to offer it, it

14      will be admitted.

15            MS. LEDERER:  Your Honor, we would ask, then, that

16      Page 3 of 602A also be admitted.

17            THE COURT:  Page 3 of 602?

18            MS. LEDERER:  Of 602, thank you.

19            We can call this out, please.

20            THE COURT:  So let's -- should we look at Page 3

21      of 602 so Ms. Medvin can raise an objection if she wants to?

22            We're now going back to 602, which has not been

23      admitted, and looking at Page 3.  Okay?  So let's put Page 3

24      of 602 up.

25            MS. LEDERER:  If we can go back to 602.
```

1    Q.  If we could call out the green bubble, which, Agent

2    Weatherhead, I think about five minutes ago you indicated

3    that the green bubble would mean from the owner phone?

4    A.  Yes.

5    Q.  And you indicated that this had been sent by the owner

6    of the phone at 6:55 and 33 p.m.?

7    A.  Yes.

8    Q.  And one more time, could you just read out what the

9    response is?

10   A.  "There's certainly room for a separate string for more

11   like minded brothers.  But I'm not in favor of limiting my

12   talks to them to niceties about my nieces and nephews and

13   the steelers."

14   Q.  And, again, was that sent six minutes after the initial

15   message kicking off this group chat?

16   A.  Yes.

17          MS. LEDERER:  Your Honor, the government would

18   move to admit this message at this time from the page.

19          THE COURT:  My suggestion is that you either give

20   us at some point an amended 602A or maybe create a 602C with

21   anything we extract from 602, and we'll deal with it then.

22          So let me now hear from Ms. Medvin about that.

23   The testimony is that it's a response from the owner -- a

24   response from the phone that Mr. Warnagiris...

25          MS. MEDVIN:  I don't have an objection that can be

1    sustained realistically for this message.  But as far as the

2    other messages and the pages -- and this is where it gets

3    more complicated.  The government produces a page which has

4    multiple messages.  They want to use just one but include

5    the entire page in evidence, so that's where it gets tricky.

6            So I'll say I don't have an objection for the

7    green message, but I have objections to the blue messages on

8    that same page.

9            THE COURT:  Well, the only thing -- okay.  She's

10   going to extract the green message.

11           MS. LEDERER:  Yes, and that's what I just said.

12   We would seek to admit the green from Page --

13           THE COURT:  You'll perhaps create --

14           MS. LEDERER:  -- Page 3.

15           THE COURT:  -- create a new exhibit.  Whatever

16   logistically works.

17           The good news is that this is a bench trial so we

18   don't have to get everything pure and pristine before the

19   jury begins to deliberate.  We do want to get this done

20   before the -- I guess before the case ends, before the trial

21   ends.

22           Okay.  So moving on -- that's admitted with

23   whatever number we're going to give it.

24           Moving on, let's just say you're going to create a

25   602C, which will include anything that is now extracted from

```
1     602.  And, you know, if at the end -- at some point I'll
2     want to relook at the entirety of 602C just to make sure
3     nothing was snuck in inadvertently.
4          MS. LEDERER:  Absolutely, Your Honor, which the
5     government would never do.  But I understand you're saying
6     inadvertently.
7          THE COURT:  So the next group -- the next thing is
8     Page 52, 5-2, within 602A.  So, again, if Mr. Haag is
9     working to extract phone numbers and things or redact phone
10    numbers and things, we can put 602A back on the screen, and
11    the government's paralegal has scrolled to Page 52.
12         MS. LEDERER:  Before we put it back on the screen,
13    can we call out this portion, and I will make whatever
14    redactions that need to be made before it's published.
15    Q.  Agent Weatherhead, yesterday you read on to the record
16    this text message from 12/14/2020 from a member of the
17    group chat.  And am I correct that it says, "NV, PA, and GA
18    are" -- excuse me -- "are each sending competing state of
19    electors today, that's all we need to keep it from 270, it's
20    going to a House vote (by state delegation)"?
21    A.  Yes.
22    Q.  And yesterday --
23         MS. LEDERER:  If we could exit the callout.  If we
24    can exit the callout, please.  Thank you.
25         THE COURT:  So this can all be put up on the
```

1    screen because Mr. Haag is going to be redacting the phone

2    numbers as we go through them.

3    Q.  Did the defendant respond back with "Nice"?

4    A.  Yes.

5    Q.  And was that response at 7:36 and 20 seconds p.m.?

6    A.  Yes.

7         MS. LEDERER:  Your Honor, at this time the

8    government would move in Page 52 into evidence.

9         THE COURT:  All three of them?

10         MS. LEDERER:  Yes, Your Honor.

11         MS. MEDVIN:  Judge, we only object to the top

12    green message on that page, on Page 52.  It relates to a

13    separate unrelated conversation and looks bad on paper, but

14    in context it's fine.  It's just an unrelated conversation.

15         MS. LEDERER:  Which, Your Honor, the government

16    indicated during our argument that the government included

17    it just to show ongoing participation in the chat.

18         THE COURT:  Well, since I'm the fact-finder, I can

19    consider what you both said and not draw any inferences from

20    it except that these individuals continue to chat with each

21    other.

22         So I'll admit Page 52 of 602A.

23         And, again, Tanya, those can be posted and put up

24    on the screen.  602A has been admitted provisionally, and

25    Mr. Haag is taking out phone numbers and stuff as we go

 1    along.

 2              The next group is Pages 62 and 63.

 3              MS. MEDVIN:  What numbers -- Judge, everything is

 4    currently visible on the public screen, even before they're

 5    admitted.

 6              THE COURT:  What?  I mean, do you all want to

 7    say we're not going to put it up on the public screen so

 8    Mr. Haag doesn't have to --

 9              MS. LEDERER:  Your Honor, we'll cut out just the

10    portion that was relevant.  Again, the government would have

11    made these redactions if the defense had asked us ahead of

12    time.

13              THE COURT:  All right.  Just stop putting it up on

14    the public screen if it creates too many logistical

15    problems.  I'm sure the people here will not be publishing

16    phone numbers of people, but if that makes everybody

17    happier, then we'll do that unless there's going to be a

18    First Amendment challenge to doing it that way.  But if so,

19    tell me.

20    Q.  Agent Weatherhead, on Page 62, is this a blue bubble?

21    A.  Yes.

22    Q.  Okay.  So indicating that someone sent this message to

23    the owner phone?

24    A.  Right.

25              MS. LEDERER:  If we can call out the top of the

1     message, please.

2     Q.  Agent Weatherhead, I believe that you had read this on

3     to the record yesterday, but since it's not being shown,

4     could you just read this message one more time?

5     A.  "I love how we are all getting a crash course in

6     Electoral College procedure and 12th Am.  It's going to

7     become very relevant over the next month.

8             "And all these 'let's move on' cucks refuse to

9     give me odds that Biden won't be seated on 1/20.

10            "That's because they can FEEL how this story

11    ends" -- "FEEL" was capitalized -- "even if their brain

12    hasn't quite caught up with their fear-puckered sphincters

13    yet."

14            MS. LEDERER:  If we could take this callout down.

15    Q.  Are there attachments that were sent with this group

16    chat?

17    A.  Yes, four of them, which is just displaying President

18    Trump.

19    Q.  Is Trump -- the former President Trump in three of

20    those?

21    A.  Excuse me, three of them.

22    Q.  And I believe you had testified more in depth yesterday

23    as to each of those images.

24            MS. LEDERER:  If we could exit the callout.

25    Q.  What date and time was this sent?

```
1    A.  December 14, 2020, 8:09 p.m., UTC.
2           MS. LEDERER:  If we could scroll to the next page
3    and call out the green bubble.
4    Q.  Did the owner phone respond?
5    A.  Yes, it did.
6    Q.  What is the response?
7    A.  An image of Trump.
8    Q.  And I think you testified to it yesterday, but what is
9    the image of Trump doing?
10   A.  He's rolling up his sleeves.
11   Q.  When was this message sent?
12   A.  December 14, 2020, 8:11 p.m. UTC.
13   Q.  So was that two minutes after the prior message?
14   A.  Yes.
15          MS. LEDERER:  If we could remove that callout.
16   And if we could highlight the blue bubble which just
17   establishes that someone is sending a message.
18   Q.  Is there a response?
19   A.  Yes.
20   Q.  And is that response an image?
21   A.  Yes, an image of Trump.
22   Q.  And when was that sent?
23   A.  December 14, 2020, 8:26 p.m. UTC.
24   Q.  On this message is there a read receipt?
25   A.  Yes, showing that it was read on December 14, 2020, 8:36
```

1     p.m. UTC.

2               MS. LEDERER:  Your Honor, at this time the

3     government seeks to admit Pages 62 through 63.

4               MS. MEDVIN:  Judge, I don't have an objection to

5     the first two because it shows a message and a response from

6     the defendant.  The last one doesn't show the defendant read

7     it or responded to it.  It just shows that it was -- the

8     word "read" is used, but it just means opened on a device,

9     not that it was actually read by his mind.

10              And so it's not really relevant here or there.

11    It's a meme.  But there's no proof it was indeed read in the

12    sense of the word we use academically.

13              MS. LEDERER:  Your Honor, the government has made

14    the overarching argument continuously now that there is

15    going to be back-and-forth throughout this entire message

16    and that there is the argument to be made that it, in fact,

17    was read because the group chat is utilized for quite some

18    time.

19              Also, the government has indicated that any blue

20    response either -- first going to the defendant that

21    generates a response from the defendant is effect on the

22    listener; and when the defendant then sends something and

23    gets a response back, that is also effect on the listener.

24              THE COURT:  I'll admit it over objection.

25              The next group is Pages 68 through 70.

1          MS. LEDERER:  If we could call out the first

2     message.

3     Q.  The first message -- for the record, is this first

4     message a blue message sending to the defendant's phone?

5     A.  Yes.

6     Q.  What is the context of this message?

7     A.  Do you want me to read it?

8     Q.  I apologize.  Yeah, what is the content of this message,

9     excuse me?

10    A.  "PS, New Mexico, on nobody's radar also sent alternative

11    elector slate making it seven states.

12          "Add to that just the sense that the other side is

13    pretending as hard as they can that they won it but can't

14    quite convince themselves because they know the hammer is

15    going to drop on their heads soon..."

16    Q.  Is there an image also sent with this message?

17    A.  Yes.

18    Q.  Can you read the words of that image?

19    A.  "Chessmaster."

20          MS. LEDERER:  If we could exit the callout.

21          THE COURT:  Do you know when and where and what

22    time -- date and time this --

23          MS. LEDERER:  That's what I'm about to do, Your

24    Honor.  We just have to call it out so it's visible to the

25    witness.

```
 1              If we could call out the bottom portion.

 2   Q.  Agent Weatherhead, the bottom right, is there a date and

 3   time that this message was sent?

 4   A.  Yes, December 15, 2020, 4:01 a.m. UTC.

 5   Q.  Is there a read receipt?

 6   A.  Yes, at December 15, 2020, 4:13 a.m. UTC.

 7              MS. LEDERER:  If we could exit the callout,

 8   please.

 9              If we can call out this entire next message.

10   Q.  The next message, Agent Weatherhead, is that a blue

11   message?

12   A.  Yes.

13   Q.  What time was this blue message sent?

14   A.  December 15, 2020, 4:05 a.m. UTC.

15   Q.  Is there a read receipt on this message?

16   A.  Yes.

17   Q.  What date and time is the read receipt?

18   A.  December 15, 2020, 4:13 a.m. UTC.

19   Q.  And what is the content --

20   A.  "Yessir."

21   Q.  -- in this message?

22   A.  "It was a good day today."

23   Q.  Could you just read it all in full one more time because

24   I am sorry I interrupted you.

25   A.  "Yessir.  It was a good day today."
```

```
 1    Q.  Is there a green response on the next page?

 2            MS. LEDERER:  If we can exit the callout.

 3    A.  Yes.

 4            MS. LEDERER:  And if we can call out all of the

 5    green message, please.  Thank you.

 6    Q.  What is the date and time of this response?

 7    A.  December 15, 2020, 4:29 a.m. UTC.

 8    Q.  What is the defendant's response?

 9    A.  "Yeah its basically one of the last constitutional

10    offramps before violence solves the problem for us.  And so,

11    as long as we are" on -- "as long as we are following

12    process:  What is a 'competing electoral slate'?

13            "Is it the Republican electors gathering in a

14    hotel and voting for Trump?  Or is it a contrarian state

15    legislature that differs from a governor of the opposite

16    party?

17            "Because all of the 'competing elector'" -- and

18    that's in quotes -- "all of the 'competing elector' shit ive

19    seen today are like limpdicked PA legislature filing a

20    'procedure' for 'alternate' electors (eg. should the

21    'official' slate be deemed fraudulent by a court) -- NOT

22    necessarily a 'competing' slate that differs from the

23    'official' tally.

24            "They also 'send' their 'alternate' slates but

25    they also must be received in congress.  We know nothing
```

1    about that process and the Deep State functionaries who run

2    it, and we might just watch Pence on 6 jan open up a bunch

3    of blue tallies with NO competing slates.

4              "Is Pence on board?  Will he have the balls in the

5    moment he was made for?  With McConnell, Thune, and Cornyn

6    all cucking out, Im skeptical.  These retards better

7    recognize the coming storm that waits for them if they fail

8    to follow through on their constitutional duties."

9    Q.  Is that the end of the message?

10   A.  Yes.

11   Q.  Agent Weatherhead, do you know what was occurring on

12   January 6, 2021?

13   A.  Yes.

14   Q.  What was?

15   A.  A Trump rally.

16   Q.  Do you also know what was happening at the Capitol

17   building on January 6, 2021?

18   A.  A protest that became violent.

19   Q.  If we can flip to the -- Page 70.

20             MS. MEDVIN:  Your Honor, if we can voir dire the

21   witness on those answers.

22             You know, I'll reserve for cross.  Disregard.

23   I'll withdraw.

24   Q.  Was there --

25             THE COURT:  So what page are you on?

```
 1                    MS. LEDERER:  We're on Page 70 now.

 2                    THE COURT:  7-0?

 3                    MS. LEDERER:  7-0.

 4     Q.  Is there a blue response on this page?

 5     A.  Yes.

 6                    MS. LEDERER:  If we could call out the message,

 7     please.

 8     Q.  What date was -- and time was this message sent?

 9     A.  December 15, 2020, 2:24 p.m. UTC.

10                    THE COURT:  December what?

11                    THE WITNESS:  15th, Your Honor.

12     Q.  Does it indicate a read receipt on this message?

13     A.  Yes, December 15, 2020, 2:38 p.m. UTC.

14     Q.  What is the content within this message?

15     A.  "The 'process' involves constitutional officers rather

16     than deep state functionaries, so there is a measure of

17     assurance there.

18                    "Yes when I heard that VP has a decision to make,

19     my final thought was, oh, great the fate of the republic is

20     going to depend on a GOP squish doing the courageous thing?

21                    "But it's not going to go down like that.  Trump

22     won't participate in a charade where the outcome is in

23     doubt, he doesn't do the kind of cuck theater you're

24     describing above.

25                    "These more & more obscure procedures are
```

1    emergency pressure releases that preserve peace by easing

2    down the intensity of the final confrontation, which will

3    happen under any circumstances, including Trump getting 12

4    more years.  A reckoning is coming.  The only question is

5    how violent the reckoning has to be.

6          "The post-election is like timed dam releases on a

7    swelling reservoir.  Either you let it out in a manageable

8    flow or you risk blowing up the whole damn dam..."

9    Q.  Were there also images included in -- image attachments

10   with this message?

11   A.  Yes.

12          MS. LEDERER:  Your Honor, at this time I would

13   seek to --

14          THE COURT:  What are the attachments?  I can't see

15   them.

16          MS. LEDERER:  If we can exit the callout and call

17   out this portion.  If we can call out both.  Thank you very

18   much.

19   Q.  Agent Weatherhead, can you make out the two attachments?

20   A.  The one on top is an image of a dam.

21          The one on bottom is -- I don't know, it looks

22   like a cowboy with some writing on the top, which I can't

23   see, and writing on the bottom saying, "It's a reckoning."

24          MS. LEDERER:  Your Honor, at this time the

25   government moves to admit Pages 68 through 70.

1          MS. MEDVIN:  We don't have an objection to the

2     admission of the first --

3          THE COURT:  Can you make sure you're speaking into

4     the microphone.  Sorry.

5          MS. MEDVIN:  We don't have an objection to the

6     first two blue and one green message because that's showing

7     continuity and it's showing a response, but that very last

8     blue one the defendant did not respond to.

9          So, again, it's the same objection we raised

10    previously.

11          It's also highly prejudicial in this particular

12    scenario because it's discussing some kind of politically

13    related mind-thinking or mindset, but it could potentially

14    sway the Court to believe the defendant heard or agreed with

15    it even though he didn't actually interact with this

16    message.

17          So in this case, it's highly, highly prejudicial,

18    and the prejudice may outweigh any probative value here.

19          MS. LEDERER:  Your Honor, the message was sent.

20    It's the next message after the defendant's response on Page

21    69.  Both -- the defendant is discussing what's going to

22    happen on January 6th as well as this blue message response

23    on Page 70 including a read receipt.  And the messaging

24    continues to discuss the presidential election as well as

25    January 6th as well as the certification process.

```
 1            THE COURT:  Well, this message on Page 70 is

 2     not an immediate response.  It's ten hours later.  And

 3     unlike the last one I think we talked about, there's no

 4     indication -- unless you tell me otherwise -- in 602 itself

 5     that the defendant ever reacted to the message on Page 70.

 6            MS. LEDERER:  Your Honor, there's no specific

 7     reaction included here.  However, the conversation does

 8     continue to go on in relation to this overarching topic of

 9     stopping the certification.

10            THE COURT:  I understand.

11            MS. MEDVIN:  Objection, Judge, to the

12     characterization.

13            MS. LEDERER:  Your Honor, this is argument right

14     now for admissibility.  I can characterize it as the

15     government so sees fit.

16            And even though there is some time later, it's

17     still effect on the listener.  This is the next response in

18     direct response to the defendant's message on Page 69.

19            THE COURT:  I'm going to exclude Page 70 for the

20     reason Ms. Medvin said, prejudice outweighs probative value.

21            So we'll move on to Page 99.

22     Q.  Agent Weatherhead, on Page 99 are there two bubbles?

23     A.  Yes.

24     Q.  Are both of those green?

25     A.  Yes.
```

1    Q.  So does that indicate that both of these came from the

2    defendant's phone?

3    A.  Yes.

4            MS. LEDERER:  If we could start with the first

5    message, please.  Thank you very much.

6    Q.  What date and time was this message sent, bottom right

7    corner?

8    A.  December 20, 2020, 5:15 a.m. UTC.

9    Q.  And what was sent in this message?

10   A.  A link to a video.

11   Q.  Can you make out the title of the video that was sent?

12   A.  The URL?

13   Q.  Yes.

14   A.  "Rumble.com/vbwjmv-dont-just-talk-like-an-american-act-

15   like-one-hagmann" -- and I can't see -- "hagmann-report."

16           MS. LEDERER:  If we can exit this callout and call

17   out the second message.

18   Q.  What time is the second message sent?

19   A.  December 20, 2020, 5:16 a.m. UTC.

20   Q.  What is the text within this message?

21   A.  "Im seeing communities blowing up at this 6 jan

22   prospect.  Theyre talking about getting there by 4 jan and

23   occupy the city.  And some are talking about going armed.

24   That is some Rubicon shit."

25           MS. LEDERER:  If we can exit out of the callout.

1    Q.  Agent Weatherhead, when the defendant is referencing

2    "some Rubicon shit" in the text message, are you familiar

3    with the Rubicon?

4    A.  Yes.

5    Q.  What is the Rubicon?

6    A.  It's a river near Rome, Italy.

7         Sorry, go ahead.

8    Q.  No, if you were finishing, I didn't mean to cut you off.

9         What significance does the Rubicon River in Rome

10   have?

11        MS. MEDVIN:  Objection to speculating as to what

12   it would have for this case.

13        THE COURT:  Well, in terms of what significance it

14   has, I'm going to sustain the objection.

15        The question is whether he can tell us what

16   historically and colloquially in modern times the Rubicon

17   means to most people in common parlance.

18   Q.  Agent Weatherhead, are you familiar with the history of

19   the Rubicon?

20   A.  Yes.  Julius Caesar crossed it to invade Rome.  So

21   crossing the Rubicon is a term meaning you are crossing the

22   point of no return.

23        MS. LEDERER:  Your Honor, at this time I seek to

24   admit Page 99 into evidence.

25        MS. MEDVIN:  No objection.

```
 1              THE COURT:  It will be admitted.  Thank you.

 2              The next group is Pages 113 and '14; 113 and 114.

 3    Q.  Before we call out each message, are there two messages

 4    on Page 113?

 5    A.  Yes, two blue bubbles.

 6              MS. LEDERER:  If we could start with the first

 7    blue bubble, please.  Thank you very much.

 8    Q.  What date and time was this first message sent?

 9    A.  December 24, 2020, 2:26 a.m. UTC.

10    Q.  Is there a read receipt indicated?

11    A.  Yes, read at December 24, 2020, 2:27 a.m. UTC.

12    Q.  What text is within this message?

13    A.  "We'll see..."

14              MS. LEDERER:  If we can bring this callout down

15    and if we could just call out this top portion -- oh, excuse

16    me.  If we can just call out the date and time of this next

17    message.

18    Q.  What date and time was this next message sent?

19    A.  December 24, 2020, 2:26 a.m. UTC.

20    Q.  Thank you.

21              MS. LEDERER:  If we could exit this portion.

22              And if we could highlight the read portion.

23    Q.  Is there a read receipt indicated?

24    A.  Yes, 12/14/2020, 2:27 a.m. UTC.

25              MS. LEDERER:  Thank you.  If we can exit out of
```

1      this.

2             If we can just highlight the top portion.

3      Q.  What is the text of this message?

4      A.  It's a link to a URL.

5      Q.  And starting from the "/mike," can you just read on from

6      there?

7      A.  "mike-pence-must-tomorrow-president-trump-retweets-

8      operation-pence-card-urging-VP" --

9             THE COURT:  I'm not seeing that on the screen.

10     Oh, there it is.  I'm sorry.  Sorry to interrupt.  Go ahead.

11     A.  The last three words are "act-fraudulent-election."

12            MS. LEDERER:  If we can exit out of this callout.

13     Q.  Are there also attachments included in this message?

14     A.  Yes.

15            MS. LEDERER:  Can we highlight, please, the

16     attachments.  Thank you.

17     Q.  Can you see the thumbnails of these two attachments?

18     A.  Yes.

19     Q.  What is the first one?

20     A.  A white box with blue letters "GP."

21     Q.  What is in the second thumbnail?

22     A.  An image of Mike Pence.

23            MS. LEDERER:  If we could exit out of this and

24     scroll to the next page.

25     Q.  On this next page, are there three bubbles?

```
1    A.  Yes.

2    Q.  Does it go green, blue, green?

3    A.  Yes.

4    Q.  If we could start with the first green bubble.  What

5    time was this response sent?

6    A.  December 24, 2020, 2:33 a.m. UTC.

7    Q.  What is the text within this response?

8    A.  "Here we are, reduced to hoping the mike pence isn't an

9    establishmentarian."

10            MS. LEDERER:  If we could exit out please.

11            If we could highlight the blue response.

12   Q.  What time was the blue response sent?

13   A.  December 24, 2020, 2:34 a.m. UTC.

14   Q.  Is there a read receipt?

15   A.  Yes, December 24, 2020, 2:38 a.m. UTC.

16   Q.  What text is included in this response?

17   A.  "He has seen first hand the good.  i have to think that

18   even if he is he will do what he has to do.  its political

19   suicide if he doesn't."

20            MS. LEDERER:  If we could exit out, please.  And

21   if we could highlight the green response.

22   Q.  What time did the defendant respond to the prior

23   message?

24   A.  December 24, 2020.  The cursor is over the hour.

25            MS. LEDERER:  Can you just move the cursor.  Thank
```

```
1    you.

2    A.  Thank you.  2:41 a.m. UTC.

3    Q.  What text is included in this response?

4    A.  "I honestly don't think he has ambition for higher

5    office.  I just cant see him as one of these pathological

6    demon-possessed politicians who look for the angle.  Hes

7    swamp, for sure -- but jealous and conniving, no.

8            "If he is going to let us down on 6 Jan it will be

9    because hes been under overwhelming pressure, the kind that

10   targets clarence thomas and brett kavanaugh, not because

11   some dicksuck like mitch mcconnell whispers sweet nothings

12   in his ear."

13           MS. LEDERER:  We can exit out of this.

14           And, Your Honor, at this time the government would

15   move into evidence Pages 113 through 114.

16           MS. MEDVIN:  No objection.

17           THE COURT:  It will be admitted.

18           MS. LEDERER:  We can move to Page 124.

19   Q.  On Page 124 --

20           THE COURT:  The page is 124 and 125?

21           MS. LEDERER:  Yes, Your Honor.

22           THE COURT:  That's the group, 125.

23   Q.  Agent Weatherhead, are there two bubbles on Page 124 of

24   the report?

25   A.  Yes.
```

1    Q.  Is the first one in green and the second one in blue?

2    A.  Yes.

3          MS. LEDERER:  If we could just call out the bottom

4    portion, please.  Thank you.  The bottom portion of the

5    green bubble.

6    Q.  What time was this message sent?

7    A.  December 30, 2020, 11:59 p.m. UTC.

8          MS. LEDERER:  If we can exit out of the callout,

9    and if we could focus in on the -- excuse me, sorry, Faith,

10   I'll make this a little bit bigger.  If we can just

11   highlight the entire message portion that was sent.

12   Q.  In this message from the defendant at 11:59 on the 30th,

13   did it include a link to Twitter?

14   A.  Yes.

15   Q.  Is there also an image -- you might not be able to make

16   out the writing, but can you make out the United States in

17   that image?

18   A.  Yes.

19         MS. LEDERER:  If we can exit out of this message,

20   and if we can highlight the blue message.

21   Q.  Is there a new message on December 30th -- excuse me,

22   December 31, 2020, at 12:51:33 a.m. UTC?

23   A.  Yes.

24         THE COURT:  This is 12/31, and it looks like it's

25   about an hour later, a little over an hour later?  All

1    right.

2    Q.  Is there a read receipt?

3    A.  Yes.  December 31, 2020, 1:00 a.m. UTC.

4    Q.  What is the text within this message?

5    A.  "Did you guys hear anything about the D.C. mayor

6    shutting the city down on the fifth sixth and seventh?"

7          MS. LEDERER:  If we can exit this callout.  If we

8    can go to the next page.

9    Q.  Are there two blue responses in relation to the message

10   above?

11   A.  Yes.

12         MS. LEDERER:  If we can highlight the first

13   message.

14   Q.  When was this message sent?

15   A.  December 31, 2020, 1:00 a.m. UTC.

16   Q.  Is there a read receipt?

17   A.  Yes.  December 31, 2020, 1:00 a.m. UTC.

18   Q.  What is the text of this message?

19   A.  "No not yet... I hope the cunt does, that will double

20   the attendance."

21         MS. LEDERER:  We can exit out of this callout.

22   And if we can just call out the bottom portion of the next

23   blue bubble.

24   Q.  What time was this message sent?

25   A.  December 31, 2020, 1:37 a.m.

1   Q.  Is there a read receipt?

2   A.  December 31, 2020, 1:37 a.m., both in UTC.

3          MS. LEDERER:  We can exit out of the callout.  And

4   if we can highlight -- excuse me, if we can call out the

5   text and image attachment -- can we go a little bit above.

6   Highlight the text and image portion.

7          Thank you very much.

8   Q.  Agent Weatherhead, starting here, was a link sent in

9   response?

10  A.  Yes.

11  Q.  And starting after the "citizensfreepress.com/breaking,"

12  can you read the rest of what was in this link?

13  A.  "legal-filing-mike-pence-refused-to-sign-on-to-plan-to-

14  overturn-election."

15  Q.  And one of these image attachments, the second one, can

16  you see who is in that photograph?

17  A.  Trump and Pence.

18          MS. LEDERER:  We can exit out of this callout.

19          Your Honor, at this time the government moves to

20  admit Pages 124 through 125.

21          MS. MEDVIN:  Judge, we object.  The Court's

22  indulgence.

23          The defendant doesn't respond to any of these.

24  This is just being -- the government starts out with a

25  message from the defendant, something about a picture of a

1    map, and then an unrelated conversation ensues that he

2    doesn't participate in.  The unrelated conversation then

3    goes, "Did you guys hear anything about D.C. mayor shutting

4    down the city?"  And it's not a conversation he is

5    participating in.

6            THE COURT:  The first one at 11:59 p.m. is a U.S.

7    map on a link to something, but I don't know what the link

8    signifies.

9            The two blue -- there's a blue one on that page

10   about the mayor maybe shutting down the city and a response

11   to that one from -- and that's from -- that's from somebody,

12   not Mr. Warnagiris's phone.

13           And then there's a response to that one.

14           And then there's a separate one relating to legal

15   filing saying that the vice president was not going to go

16   along with the -- refuse to sign under the plan to overturn

17   the election.

18           And those last things about the mayor and about

19   the vice president, there's no indication that the defendant

20   opened them or responded.

21           MS. LEDERER:  Your Honor, the agent did testify

22   that both had read receipts and read on to the record the

23   dates and times of those read receipts.  Also the last

24   message is referencing what Mike Pence was going to do on

25   January 6th, and earlier in prior texts the defendant was

1    texting about expectations of what Mike Pence should or

2    might do or could do on January 6th.

3            THE COURT:  Okay.  So your argument is, one,

4    someone opened it on his phone.

5            MS. LEDERER:  Yes, Your Honor.

6            THE COURT:  All of these three blue ones?

7            MS. LEDERER:  Yes, Your Honor.

8            THE COURT:  And that one of them relates to a

9    topic he previously engaged with, namely what the vice

10   president will or won't do.

11           MS. LEDERER:  Yes, Your Honor.

12           THE COURT:  Okay.

13           MS. MEDVIN:  Judge, still, it's highly

14   prejudicial.  And just like the last time, the probative

15   value is outweighed by the high prejudice because it is

16   talking about politics.  It's going to a potential issue in

17   this case.

18           But there's no proof that the defendant interacted

19   with these messages.  There's no context in which they're

20   given.  They just appear to be a separate conversation

21   within a larger conversation, and he's not taking part in

22   this conversation.

23           And so I ask that it not be admitted.

24           THE COURT:  Anything else you want to say?

25           MS. LEDERER:  Your Honor, it's all directly

1    responding to the initial text that the defendant sent, and

2    the defendant has --

3             THE COURT:  Well, how does it respond to the

4    initial text?  What does the green thing signify?

5             I mean, you say it's a link and there's a map.

6             MS. LEDERER:  It's a link that was sent.  That

7    link no longer exists.  I've tried.

8             THE COURT:  So we don't know --

9             MS. LEDERER:  So we don't know what it is.

10   However, everything that's being referenced also references

11   back to earlier conversations that the defendant had

12   regarding Mike Pence; and there's going to be continual

13   conversation about January 6th in general and who's going.

14            THE COURT:  Okay.  What does the map show us other

15   than it's a map?

16            MS. LEDERER:  It's a map of America.

17   Unfortunately, we cannot read the writing.  And if you call

18   it out, it just makes things even more pixilated.

19            THE COURT:  All right.  Here's what I'm going to

20   do.  I'm going to admit the first item.  The green item on

21   Page 124, for whatever it's worth, at least came from his

22   phone.

23            And I'm going to admit the last item on Page 125

24   because it's a further discussion about the vice president,

25   what he might or might not do, which is responsive to things

1    that Ms. -- to portions of the chat in the chat group

2    relating to the vice president that we know he participated

3    in earlier at an earlier date.  And it seemed to be an

4    ongoing discussion.

5              Again, no indication he responded to it.  Someone

6    who had access to his phone opened it.

7              I'm going to exclude the two blue ones, one on

8    Page 124 and one on Page 125, relating to the mayor and what

9    she might do, including the sexist comment about our mayor.

10             MS. LEDERER:  Understood, Your Honor.

11             If we could move to Page 30, please -- or 130,

12   excuse me.  Thank you.

13   Q.  Agent Weatherhead, on Page 130 of the report, are there

14   two green bubbles?

15   A.  Yes.

16             MS. LEDERER:  If we could call out the first

17   bubble, please.  Thank you.

18   Q.  On what date and time was this message sent?

19   A.  January 2, 2021, 9:10 p.m. UTC.

20   Q.  Up here, can you read the text within this message?

21   A.  It says, "Forecast on the 6th."

22             MS. LEDERER:  And if we could just call out --

23   Q.  Is there also an attachment with this?

24   A.  Yes.

25             MS. LEDERER:  And if we could exit out of the

1    callout and just call out just the attachment.

2    Q.  Are you able to see what's in that image?

3    A.  Yes, it looks like a screenshot of a weather forecast on

4    someone's phone.

5            MS. LEDERER:  If we could exit out of the callout.

6    Thank you.

7            And if we could highlight the next message.

8    Q.  When was this next message sent?

9    A.  January 3, 2021, 1:19 a.m. UTC.

10   Q.  Is there a text within this message?

11   A.  It says, "Got my bag packed."

12   Q.  Is there also an image attached with that text?

13   A.  Yes.

14           MS. LEDERER:  If we could exit this callout.

15           Can we highlight the attached image?

16   Q.  Agent Weatherhead, can you see the attached image?

17   A.  Yes.  It's a suitcase with two hats in it, a pistol, and

18   what might be spare magazines.

19   Q.  What color are the hats?

20   A.  One is black, and one is red.

21           MS. LEDERER:  If we could exit this callout.

22           Your Honor, at this time the government would seek

23   to admit 130.

24           MS. MEDVIN:  No objection to admission.  We'll add

25   context on cross.

1          THE COURT:  It will be admitted.  Page 130 will be

2    admitted.

3    Q.  Agent, fair to say you don't know the source of either

4    of these two images included?

5    A.  That is correct.

6    Q.  But that they were -- but those two images are sent by

7    the owner phone?

8    A.  Yes.

9          MS. LEDERER:  Your Honor, if we can now turn our

10   attention to Pages 132 through 136.

11   Q.  Agent Weatherhead, starting with Page 132, are there two

12   blue bubbles on this page?

13   A.  Yes.

14   Q.  Starting with the first message, what date and time was

15   this sent?

16   A.  January 4, 2021, 5:57 p.m. UTC.

17   Q.  Is there a read receipt?

18   A.  Yes, January 4, 2021, 7:37 p.m. UTC.

19   Q.  What message is contained within -- or what text is

20   contained within this message?

21   A.  "You all registering for this?"

22         MS. LEDERER:  If we can exit out.  Thank you.

23   Q.  And is there a blue response below?

24   A.  Yes.

25         MS. LEDERER:  If we can call that out, please.

1    Thank you.

2    Q.  What date and time was this sent?

3    A.  January 4, 2021, 5:57 p.m.

4    Q.  Is there a read receipt?

5    A.  Yes, the read receipt is January 4, 2021, 7:37 p.m. UTC.

6    Q.  What text was sent with this message?

7    A.  It's a link to a Twitter post.

8    Q.  I'm highlighting right here after "Twitter.com/."  Can

9    you see the user name?

10   A.  "RealDonaldTrump."

11              THE COURT:  Say it again.  Say it again, please.

12              THE WITNESS:  "RealDonaldTrump."

13   Q.  And is there a photograph?

14   A.  Yes, depicting Donald Trump's face.

15              MS. LEDERER:  If we can exit out, please, and move

16   to Page 133.

17   Q.  Are there two blue responses here?

18   A.  Yes.

19              MS. LEDERER:  If we can start with the first one.

20   Q.  What time was this sent?

21   A.  January 4, 2021, 5:57 p.m. UTC.

22   Q.  Is there a read receipt?

23   A.  Yes, January 4, 2021, 7:37 p.m. UTC.

24   Q.  What is the text in this message?

25   A.  "Some of my other crew is."

1         MS. LEDERER:  If we could exit out, please.  Thank

2    you.

3         And if we could call out the second blue bubble.

4    Q.  What time was this sent?

5    A.  January 4, 2021, 6:03 p.m.

6    Q.  Is there a read receipt?

7    A.  Yes, January 4, 2021, 7:37 p.m. UTC.

8    Q.  What is the message contained within?

9    A.  "Not registering, just planning to show up around 7-9am

10   at President's Park as a rallying spot and gauge the lay of

11   the land as the day progresses.

12        "From Kylee Kremer's madre, same idea, also

13   retweeted by Trump Magnus."

14   Q.  And is there a colon after Trump Magnus?

15   A.  Yes.

16   Q.  Are there two attachments also within this message?

17   A.  Yes.

18        MS. LEDERER:  If we may please exit out of this

19   callout and then just call out the attachment portion of

20   this message.

21        THE COURT:  This is a different message?

22        MS. LEDERER:  Yes, Your Honor.  This --

23        THE COURT:  Wait a second.  So you've talked about

24   two messages on Page 133.  Where are we now?

25        MS. LEDERER:  We're still on 133.  We're on the

 1    second message on 133.

 2              THE COURT:  Second message.

 3    Q.  Can you make out the two image attachments?

 4    A.  Not very well.  Could we call out just the images?

 5    Q.  Yes.

 6    A.  Thank you.

 7    Q.  Looking at the first one -- I know it's blurry -- can

 8    you make out what's within?

 9    A.  It looks like a bus with Trump's image on it in

10    Washington, D.C.

11              MS. LEDERER:  And if we may please call out the

12    second image.

13    Q.  Can you make out this image?

14    A.  It looks like the silhouette of a man on a podium taken

15    from a view from standing behind the man.

16              MS. LEDERER:  If we could please exit out of the

17    callout and move to Page 134 of this message chain.

18    Q.  Are there three bubbles on this page?

19    A.  Yes.

20    Q.  Is the top one a green bubble?

21    A.  Yes.

22    Q.  And the bottom two, are those blue bubbles?

23    A.  Right.

24              MS. LEDERER:  If we can please highlight the first

25    one.

1    Q.  What time was this message sent?

2    A.  January 4, 2021, 7:40 p.m. UTC.

3    Q.  What is the text of this message from the defendant?

4    A.  "If you are signing up, PD, add bill and i to it.  If we

5    dont want to go, we dont go."

6    Q.  And is this message in response to the earlier

7    conversations that were going on?

8    A.  Yes.

9            MS. LEDERER:  We can exit out.

10           And if we could highlight the second -- or the

11   first blue bubble but second message on the screen.

12   Q.  What time was this sent?

13   A.  January 4, 2021, 7:43 p.m. UTC.

14   Q.  What time is the read receipt?

15   A.  January 4, 2021, 10:04 p.m. UTC.

16   Q.  What is the message within?

17   A.  "Isn't this the whole reason we are going?  I'm just not

18   sure if it's an email harvest or if it's something we have

19   to do."

20           MS. LEDERER:  If we can exit out of this callout,

21   please, and move to the last message on Page 134.

22   Q.  What time was this message sent?

23   A.  January 4, 2021, 7:44 p.m. UTC.

24   Q.  Is there a read receipt time?

25   A.  Yes, January 4, 2021, 10:04 p.m. UTC.

1    Q.  What is the text within this message?

2    A.  "You don't have to sign up, I'm not a signer upper type,

3    lol."

4         MS. LEDERER:  We can exit out, please, and go on

5    to Page 135.

6    Q.  Are there three blue bubbles on Page 135 of the report?

7    A.  Yes.

8         MS. LEDERER:  We can highlight the first message.

9    Q.  What time was this message sent?

10   A.  January 4, 2021, 7:44 p.m. UTC.

11   Q.  Is there a read receipt?

12   A.  Yes, January 4, 2021, 10:04 p.m. UTC.

13   Q.  What is the text in this message?

14   A.  "I'm a show up type."

15        MS. LEDERER:  If we can exit out of this message,

16   please, and go to the second one.

17   Q.  Could you read the date and time this message was sent.

18   A.  January 4, 2021, 7:49 p.m. UTC.

19   Q.  Can you read the read receipt date and time.

20   A.  January 4, 2021, 10:04 p.m. UTC.

21   Q.  And can you read the text of this message.

22   A.  "These movements attract drifters and entrepreneurs of

23   all types, and I'm glad for their organizing enthusiasm.

24   But they are in no sense an intermediary or authority.  I

25   will be in DC because the last legitimate president called

1    me, a citizen, there.  Simple as."

2              MS. LEDERER:  And if we can go to the third

3    message, please.

4    Q.  Agent Weatherhead, can you read the date and time of

5    this message when it was sent.

6    A.  January 4, 2021, 8:26 p.m. UTC.

7    Q.  Is there a read receipt?

8    A.  January 4, 2021, 10:04 p.m. UTC.

9    Q.  What is the text within this message?

10   A.  "Another outfit (million maga march) is commandeering

11   the National Mall.  I assume liberty square, right around

12   the corner from the WH, will be a focal point as well as it

13   was in Nov & Dec.  We can do a tour depending on live

14   developments, but it's my understanding the President's

15   Park/Ellipse will be where Trump himself will speak if he

16   does make an appearance."

17             MS. LEDERER:  Turning your attention to Page 136

18   of the report.

19   Q.  Are there two messages here?

20   A.  Yes.

21   Q.  Is the first one blue and the second one green?

22   A.  Yes.

23   Q.  If we could start with the first one.  When was this

24   message sent?

25   A.  January 4, 2021, 8:26 p.m. UTC.

1    Q.  Can you read the read receipt date and time?

2    A.  January 4, 2021, 10:04 p.m. UTC.

3    Q.  What is the text within the message?

4    A.  It's a link to a Twitter post.

5    Q.  Drawing your attention to after "Twitter.com/," can you

6    read that text from --

7    A.  "MillionMagaMarch."

8    Q.  And below, can you see the Twitter symbol?

9    A.  Yes.

10          MS. LEDERER:  All right.  And if we can exit the

11   callout and call out this second image.

12   Q.  Can you make out the second image that's included?

13   A.  It looks like an image of a group of people at a rally

14   or protest.

15          MS. LEDERER:  If we can exit out, please, and if

16   we could go to the green message.

17   Q.  What time was this green message sent?

18   A.  January 4, 2021, 10:07 p.m. UTC.

19   Q.  Can you read the text within this message from the

20   defendant?

21   A.  "Yes thats the idea, that the president will be at this

22   one.  If you dont sign up, you wont be able to go to that

23   particular event."

24   Q.  And does this message reference back the prior

25   conversations about details regarding the January 6th rally?

1    A.  Yes.

2           MS. LEDERER:  Your Honor, at this time the

3    government moves into evidence Pages 132 through 136 of the

4    report.

5           MS. MEDVIN:  No objection.

6           THE COURT:  Okay.  They will all be admitted,

7    Pages 132 through 136.

8           So that gets us through 602A.

9           MS. LEDERER:  Yes, Your Honor.

10          THE COURT:  Is there anything else you want to do

11   with 602 other than the one that's going to be added as a

12   separate exhibit later?

13          MS. LEDERER:  No, Your Honor, at this time.

14          THE COURT:  Okay.  It may come up later.

15          Now, just for planning purposes, do you have

16   additional questions for this witness?

17          MS. LEDERER:  Very briefly.

18          THE COURT:  All right.  So, Ms. Medvin, let me ask

19   you this.  Should we just finish the direct?  It is now

20   11:59.  We've been going to lunch closer to 12:45, but would

21   it make sense to let Ms. Lederer finish her direct, whatever

22   else is involved, then take lunch, and start fresh with you

23   after lunch with the cross?

24          MS. MEDVIN:  Yes, absolutely it makes sense.

25          THE COURT:  Okay.  Thank you.

1    Q.  Agent Weatherhead, yesterday we were discussing

2    generally your investigative steps, and I meant to ask you

3    yesterday, but it was late in the day.

4          In addition to reviewing CCTV and open source, did

5    you also speak or attempt to identify any officers located

6    in the CCTV footage of the defendant when he entered into

7    the building?

8    A.  Yes.

9    Q.  What officer did you try to identify?

10   A.  The officer who was trying to shut the door while the

11   defendant was trying to keep the door open.

12   Q.  And why did you attempt to locate that officer?

13   A.  It was very relevant to the case against the defendant.

14   Q.  Did you end up identifying that officer?

15   A.  Yes, Anthony Warner, Sergeant Warner.

16   Q.  Did you speak to Mr. Warner and show him some video?

17   A.  Yes.

18   Q.  Or, excuse me, not Mr. Warner --

19   A.  Screenshot of a video.

20   Q.  Do you recall when you first met with Sergeant Warner?

21   A.  I interviewed him over the phone.  I don't recall the

22   date.  I'm sorry.

23          MS. LEDERER:  I have no further questions at this

24   time.  Thank you.

25          THE COURT:  Wow.  Okay.  So pleasantly surprised.

1          Are there any -- you can step down for now.

2          THE WITNESS:  Thank you, Your Honor.

3          THE COURT:  Are there any other burgeoning issues,

4    now that we have a few minutes, either side wants to alert

5    me to other than the usual surprises that sometimes have

6    emerged in this case?

7          MS. LEDERER:  Your Honor, we briefly discussed

8    this at the start of Agent Weatherhead's testimony, but I

9    know we just went through a lot of material, so I just want

10   to put this back on your radar.

11         I know that Ms. Medvin will be questioning -- I

12   think that Ms. Medvin is going to question Agent Weatherhead

13   in regards to some of the statements that Agent Weatherhead

14   took from Sergeant Warner.  At this -- I just want to let

15   you know that I might be objecting to some portions of that

16   because I don't think that Ms. Medvin adequately laid down

17   any impeachment yesterday.  But, you know, I will give some

18   leeway and see where it's going, but I want to let you know

19   that there will be objections to certain portions

20   potentially if I don't think that that adequate impeachment

21   was made.

22         Also, additionally, there might be a defense

23   witness that, again, the government will object to for

24   relevancy portions.  But Ms. Medvin still has not indicated

25   whether or not she's officially calling that witness, so we

1    will have to argue that at that time.

2          THE COURT:  Ms. Medvin, have you -- I mean, in the

3    likelihood that we'll get to your first witness today, is

4    the government aware of who you might call first?

5          MS. MEDVIN:  Judge, to make this much easier for

6    everyone, the witness that the government is referring to

7    that they think they may object to is FBI Agent David Elias,

8    E-L-I-A-S.  That FBI agent would be testifying to, very

9    briefly, showing certain videos to Anthony Warner; the same

10   videos that Anthony Warner claimed on the stand that he had

11   never seen until he watched the video with these two

12   prosecutors.

13          Agent Elias will state that he showed him the

14   videos in 2022, a year and a half after January 6th and

15   about a year and a half before today.

16          It's very brief testimony, but it's to specific

17   issues that came out and are absolutely relevant because

18   they are relevant to the testimony of the government's

19   premier witness.

20          THE COURT:  Is he likely to be your first witness?

21          MS. MEDVIN:  I think Agent Weatherhead will be our

22   first witness.

23          THE COURT:  Okay.

24          MS. MEDVIN:  But it will depend on the cross.

25          That would be brief as well on the Warner issues.

1    It's just a few inconsistencies that we wanted to bring out

2    to the Court's attention.  That's all.

3                THE COURT:  Okay.  So we'll see how long her cross

4    of Agent Weatherhead is after lunch, and then hopefully

5    we'll be able to start the defense case this afternoon.

6                It's 12:04.  Why don't we come back at 1:15.

7                (Lunch recess taken)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          A F T E R N O O N   S E S S I O N

2               THE COURT:  All right.  Are we ready for cross-

3     examination?

4               MS. MEDVIN:  We are, Judge.

5               THE COURT:  And, again, you're still under oath,

6     Agent Weatherhead.

7               THE WITNESS:  Yes, Your Honor.

8                         CROSS-EXAMINATION

9     BY MS. MEDVIN:

10    Q.  Agent Weatherhead, you stated that you have been

11    investigating this case in order to research the actions of

12    Mr. Warnagiris on January 6th.  Did you check any databases?

13    A.  Yes.

14    Q.  Which databases did you check?

15    A.  LexisNexis I believe is the name of it.

16    Q.  And what type of information is contained in LexisNexis?

17    A.  I believe they refer to it as a consumer database.  If

18    you research someone's name, it will show you addresses and

19    telephone numbers, vehicles associated with that person.

20    Q.  Prior to arresting Mr. Warnagiris, you requested in an

21    email a TTK report to track his movements; is that correct?

22               MS. LEDERER:  Objection.  Your Honor, I just want

23    to highlight that we might be getting into territory that

24    was covered in the pretrial motions including topics that

25    were covered in ex parte filings.

1          So I think some leeway can be had here, but the

2     government will be objecting if we're getting into certain

3     topics, especially as it relates to confidential sources.

4          THE COURT:  Okay.  What's the question?

5          MS. MEDVIN:  I asked, prior to arresting

6     Mr. Warnagiris, if the agent had requested in an email a TTK

7     report to track his movements.

8          THE COURT:  You can answer yes or no.

9     A.  Yes, I did.

10    Q.  My next question is:  What is a TTK report?

11         MS. LEDERER:  Objection, relevancy.

12         MS. MEDVIN:  I'm trying to find out if there

13    are -- if there's information that the defense might not

14    have that's favorable.  The agent testified that he had

15    conducted investigation --

16         THE COURT:  Wait, wait, wait.  If it's a *Brady*

17    question, we've been through all of this.

18         MS. MEDVIN:  We have, Judge.

19         THE COURT:  We've litigated *Brady*.  I've written a

20    *Brady* opinion, and I told you in argument that I had

21    reviewed ex parte filings by the government.  I did not cite

22    them in the opinion, and I don't think -- and I concluded --

23    I concluded in that opinion that the first part of your

24    *Brady* request had become moot.  We went back and forth with

25    lots of filings and lots of hearings and lots of

1    discussions, but at the end of the day I concluded that what

2    you had asked for had been provided.

3                MS. MEDVIN:  We'll move on, Judge.

4                THE COURT:  And with respect to your very broad

5    larger request, I said it was too broad and too burdensome,

6    and that if you wanted to refine it, I would revisit it

7    again.  But I don't think here in court that -- in the

8    middle of the trial is the place to explore it again.

9                If it would -- let me put it this way:  The

10   government has represented that they have provided all

11   favorable exculpatory *Brady* and *Giglio* information of which

12   they are aware.  And that given the volume of material in

13   all of these January 6th cases, that to -- I concluded that

14   without a more focused inquiry, that it would be too

15   burdensome and, you know, looking for a needle in an

16   extremely large haystack.

17               And I said either in court or in the opinion --

18   probably not in the opinion -- that this is different from,

19   like, every other case, including major securities fraud

20   cases or major narcotics conspiracy cases, in terms of the

21   volume of potential material that exists out there,

22   including, for example, stuff that you had asked for of

23   events happening on -- in other parts of the Capitol that --

24   where Mr. Warnagiris never even was.  And so we narrowed it

25   to include areas where Officer Warner might have been, even

1    if Mr. Warnagiris wasn't there.

2         But at the end of the day -- and we spent a lot of

3    time on *Brady*.

4         At the end of the day, beyond the searches for the

5    body-worn cameras, photographs, and videos involving

6    Mr. Warnagiris, obviously, or anything relating to Officer

7    Warner, I said it was just too burdensome and too unfocused

8    to require the government to look for more when they had

9    said that they were not aware of anything that was

10   favorable.

11        And that doesn't mean they've looked at the

12   hundreds of thousands and millions of documents or other

13   stuff, videos and photographs, beyond those that could

14   search for the face of Mr. Warnagiris or Officer Warner.

15        Hypothetically, theoretically, there could be

16   something in this mass of material, but I've already ruled

17   that it's too burdensome, and to go further down this road

18   to explore stuff that's already been dealt with in my

19   opinion and all of our earlier arguments, and to do so in a

20   way that might disclose sensitive material that was made

21   available to me ex parte but does not -- there is nothing

22   that was explained in the ex parte filings that would lead

23   any reasonable person to conclude that the government has

24   withheld any favorable exculpatory or *Giglio* material in its

25   possession or control or in the possession or control of

1    agents affiliated with this investigation and prosecution.

2        Now, if the government thinks I've misstated

3    anything about representations they've made or my

4    understanding of it, since I'm doing it off the top of my

5    head at the moment, or if you have, Ms. Medvin, please put

6    it on the record.

7        MS. MEDVIN:  I'll move on to the phone messages,

8    Judge.

9        THE COURT:  Okay.

10       Anything from the government?

11       MS. LEDERER:  No, Your Honor.  Thank you.

12       MS. MEDVIN:  Court's indulgence.

13       THE COURT:  Yes.

14       (Pause)

15       MS. MEDVIN:  Your Honor, if I can ask for the

16   government's assistance in bringing up their Exhibit 602A on

17   Page 52, please.

18       THE COURT:  Page which?

19       MS. MEDVIN:  52.  Or cell phone page 52,

20   extraction data.

21       THE COURT:  We went through this this morning, and

22   I guess we decided we weren't going to show it because it

23   requires too much redaction of phone numbers and things as

24   we go through each and every item, even though it's been

25   admitted, right?

1          MS. LEDERER:  Yes, Your Honor.  I mean, obviously

2     right now the government has no objection to it being shown.

3     We're going to hand in the redacted version for actual

4     submission to the Court when it comes time, so that's going

5     to be Ms. Medvin's call now that she's on cross-examination.

6          THE COURT:  If you want it shown publicly in the

7     courtroom and rely on Mr. Haag to try to cross out phone

8     numbers as we go along, or just not do it that way.

9          MS. LEDERER:  And Mr. Haag just informed me that

10     he had emailed Ms. Medvin the redacted version that he

11     completed over lunch.

12          MS. MEDVIN:  Oh, I have not seen that yet.  But I

13     would prefer for it not to mess with the redactions, not to

14     show it, and then we can then --

15          THE COURT:  Okay.

16          MS. MEDVIN:  -- include it as part of a file

17     later.

18          THE COURT:  And, again, let's -- if we can make a

19     policy decision to use the redacted version of this for

20     closing arguments so that any interested people, whether

21     it's the press or members of the public or friends and

22     supporters of Mr. Warnagiris who want to be here for closing

23     arguments, can see the evidence.  But by then you should be

24     able -- there is a redacted version.  Mr. Haag just told us.

25          Go ahead.

1          MS. MEDVIN:  My screen went blank.

2          THE COURT:  So we're going to show the witness the

3    portions of Exhibit 602A that Ms. Medvin is going to ask him

4    about, and she's starting with Page 52.

5    Q.  And I'm just going to point your attention to the top of

6    that page, green text message from Mr. Warnagiris saying,

7    "yeah you can shoot it fine."

8          Was he referring to a conversation about shortage

9    of ammo and them purchasing various ammo?

10   A.  I don't know what that's in reference to.

11   Q.  Oh.  But it was not in reference to anything related to

12   January 6th; is that correct?

13   A.  I don't know the context of that comment.

14   Q.  Okay.

15         MS. MEDVIN:  The Court's indulgence.

16         If we can pull up from Government's 601, Page 47.

17         THE COURT:  601 is a one-page document.

18         MS. MEDVIN:  602.  My apologies.  602.

19         THE COURT:  Oh, sorry.

20         MS. MEDVIN:  602 is the full text message report.

21         THE COURT:  602 has been marked for

22   identification, and we're going to pull up 602, Page...?

23         MS. MEDVIN:  47.

24         THE COURT:  47.

25         MS. LEDERER:  And, Your Honor, if it saves time,

1    the government will stipulate that the text message on the

2    top of Page 52 relates to a different conversation.  During

3    our legal argument, the government informed Your Honor that

4    the top message was simply included in to show that it was a

5    continued conversation.  The entire chain is a continued

6    conversation.

7              So if this saves time --

8              THE COURT:  Now you said the top message.  Are you

9    talking about the top message on Page 47 that she's talking

10   about now, or the top message on Page 52 in 602A?

11             MS. LEDERER:  On Page 52, my apologies, in 602A.

12             THE COURT:  I don't know if that will save time.

13             Go ahead, Ms. Medvin.

14             MS. MEDVIN:  If the government will stipulate that

15   it's unrelated to January 6th, then we'll move on.

16             In 602A, if we can pull up Page 63, please.

17   Q.  On this page there is a text message from Mr. Warnagiris

18   with a meme.  Have you seen many memes from Mr. Warnagiris's

19   account?

20   A.  I don't recall.

21   Q.  You don't recall.

22             Okay.  I'm going to pull up Defense Document 068

23   for identification.

24             Are you able to see 068 on your screen?

25   A.  Yes.

 1    Q.  And in the green message from Mr. Warnagiris, do you see

 2    a meme sent?

 3    A.  Yes.

 4              MS. MEDVIN:  And I'm going to -- that was Page 14

 5    out of the cell phone report.

 6              I'm going to now scroll to Page 17 of the cell

 7    phone report.

 8    Q.  Do you see additional memes coming from Mr. Warnagiris?

 9    A.  Yes.

10              MS. MEDVIN:  I'm now going to scroll to Page 131

11    of his cell phone report.

12    Q.  Do you see another meme coming from Mr. Warnagiris?

13    A.  Yes.

14    Q.  Okay.  If you think back to reviewing the entirety of

15    the 400-plus page report, do you recall a lot of memes

16    coming from Mr. Warnagiris?

17    A.  Yes.

18    Q.  Okay.  I'm going to direct your attention to Government

19    Exhibit 602A at Page 130.

20              THE COURTROOM DEPUTY:  Ms. Medvin, are you

21    admitting 068?

22              MS. MEDVIN:  Not yet.

23              THE COURT:  This is Exhibit 602A again, page what?

24              MS. MEDVIN:  Page 130.

25              THE COURT:  130?  Ah, yes.

1          MS. MEDVIN:  If I can ask the government's help

2     for bringing that up on the screen, please, 102A at 130.

3          THE COURT REPORTER:  602?

4          MS. MEDVIN:  602A at 130.

5     Q.  There is a photograph that you've described previously.

6     It has two hats, and you described the firearm and some

7     ammunition.  Do you know if that is a meme?

8     A.  No, I don't.

9     Q.  Okay.  No briefcase was recovered from his home, was

10    there?

11    A.  No.

12    Q.  Okay.  And he frequently jokes with his brother and

13    sends memes, correct?

14    A.  Yes.

15    Q.  And he lived actually only a few minutes from D.C. in

16    Woodbridge; isn't that right?

17    A.  Yes.

18    Q.  And he didn't bring a suitcase on January the 6th, did

19    he?

20    A.  I didn't see him with a suitcase, no.

21    Q.  He brought a backpack, didn't he?

22    A.  Yes.

23    Q.  Okay.  And from the videos you observed on January 6th,

24    there were no indications or actions or words relating to

25    firearms possession related to Mr. Warnagiris; isn't that

1    right?

2            MS. LEDERER:  Objection.  Withdrawn.

3    A.  That's correct.

4    Q.  I'm going to show you Defense Document 067.

5            Do you see that up on your screen?

6    A.  Yes.

7    Q.  Does it look like some kind of website called The

8    Donald?

9    A.  Yes.

10   Q.  And do you see a photo or meme on that website that

11   resembles the one you saw texted from Mr. Warnagiris's

12   phone?

13   A.  Yes.

14   Q.  Can you confirm that it is the same one?

15   A.  It looks the same.

16   Q.  Okay.

17           MS. MEDVIN:  Judge, we move to admit Defense

18   Document 067 into evidence.

19           MS. LEDERER:  No objection.

20           THE COURT:  That will be admitted and can be

21   shown.  I guess it's already up there.

22   Q.  I'm going to direct your attention to Government Exhibit

23   602A at Page 69.

24           MS. MEDVIN:  If we could have the government's

25   help in that again.

```
1    Q.  Are you able to see that on your screen?

2    A.  Yes.

3    Q.  Okay.  And in this post Mr. Warnagiris discusses

4    politics, Vice President Pence, but he never states that

5    he's going to interfere with Vice President Pence; isn't

6    that right?

7    A.  That is correct.

8    Q.  And, in fact, he never states he's going to interfere

9    with anyone or anything for that matter; isn't that right?

10   A.  That's right.

11   Q.  And he never references the Capitol building, does he?

12   A.  No.

13   Q.  Not in this message nor any other message; isn't that

14   right?

15   A.  Correct.

16   Q.  And he's actually discussing some kind of electoral

17   meeting at a hotel as opposed to in Congress; isn't that

18   right?

19            MS. LEDERER:  Objection.

20            THE COURT:  Say it again.

21   Q.  He discusses a meeting at a hotel as opposed to

22   Congress; isn't that right?

23            MS. LEDERER:  Objection.  If she wants to ask --

24   read out specific terms and ask if he knows -- if she wants

25   to read off specific portions and ask if the agent knows
```

1    what is being referred to as opposed to making some

2    speculative --

3             THE COURT:  Well, it may or may not be

4    speculative.  The question is whether he has any -- whether

5    he can answer the question unless something is shown to him.

6             You can ask him.

7    Q.  He only discusses a meeting at a hotel; isn't that

8    right?

9    A.  I'm looking for the word "hotel" in this text.

10   Q.  Second paragraph in that text.  Is it the Republican

11   electors --

12   A.  Yes.

13   Q.  So he thought Republican electors are gathering in a

14   hotel based on this message; is that correct?

15            MS. LEDERER:  Objection.  Speculation based on

16   what the defendant thought.

17            MS. MEDVIN:  I'll rephrase it.

18            THE COURT:  Go ahead.

19   Q.  Based on the message, Mr. Warnagiris is discussing

20   Republican electors gathering in a hotel; isn't that right?

21   A.  Yes.

22   Q.  Looking for action words in what he had written, there

23   is no word in this text message that shows his intent to act

24   on anything; isn't that right?

25            MS. LEDERER:  Objection; form of the question.

 1              THE COURT:  Sustained as to the form of the
 2      question.
 3      Q.  His statements are in general form saying things like:
 4      We might just watch Pence on January 6th; isn't that right?
 5              MS. LEDERER:  Objection to the form of the
 6      question.
 7              THE COURT:  Overruled.  You're talking about this
 8      particular --
 9              MS. MEDVIN:  This particular text message.
10              THE COURT:  Right.
11      A.  Yes.
12      Q.  Other than saying he wants to watch Pence, he doesn't
13      use any other verb, does he?
14              MS. LEDERER:  Objection to the form of the
15      question.  It's general.
16              THE COURT:  We're talking about this text.
17              Go ahead.  You may answer as to what's on the
18      screen.
19      A.  Yes.
20      Q.  And he never discusses his personal desire to stop
21      anything or anyone; isn't that right?
22              MS. LEDERER:  Objection.  Again, form of the
23      question.  It's very general.
24              THE COURT:  If it relates -- does this relate --
25              MS. MEDVIN:  It's all related to this text.  All

1  my questions are related to this text message.

2  Q.  In this text message, he never discusses his personal

3  desire to stop anyone or anything; isn't that right?

4  A.  To me, the text message seems like --

5  Q.  Without -- excuse me.  I'm just saying, does he state it

6  in that message?

7          MS. LEDERER:  Objection.  If the agent can answer.

8  He was answering Ms. Medvin's question and explaining what

9  he was viewing.

10          THE COURT:  Well, the question -- he may not be

11  answering the question.  He may not be able to answer the

12  question.  But state it again.  The agent can either say yes

13  or no or he's unable to answer.

14  Q.  Does Mr. Warnagiris use any words to state that he

15  desires to stop anyone or anything?

16  A.  No.

17  Q.  And he never uses words to state that he desires to

18  interfere with anything; isn't that right?

19  A.  That's correct.

20  Q.  Mr. Warnagiris never states he wants to participate in

21  anything violent; isn't that right?

22  A.  That's correct.

23  Q.  I'm going to now bring your attention to Defense Exhibit

24  068.  It has been up for identification previously, not yet

25  in evidence.  And I'm going to show you Page 193.

1          Do you see a green text message from

2    Mr. Warnagiris's phone on your screen?

3    A.  Yes.

4    Q.  What is the date of that text message?

5    A.  January 7, 2021.

6    Q.  Can you read the text of that message?

7    A.  "I was thinking that, we need a letter campaign, if only

8    mailed via snail mail in anonymous letters to zerohedge."

9    Q.  That was sent one day after January 6th; is that

10   correct?

11   A.  Yes.

12          MS. MEDVIN:  I'm going to ask the government to

13   bring up 602A on Page 113, please.

14          Oh, Court's indulgence.  I'm sorry.  I move into

15   admission Defense Document 068 that we've just referenced,

16   four pages, 14, 17, 131, and 193.

17          MS. LEDERER:  Your Honor, no objection to the text

18   messages that were just read on those pages that were just

19   referenced.

20          THE COURT:  Okay.  So we're going to create -- the

21   defense is going to create, when we're all done, a separate

22   exhibit, just like the government's going to do, with the

23   specific pages from her Exhibit 068.  And they are for the

24   moment, and maybe more will come up later, Pages 14, 17,

25   131, and 193 of the exhibit.

1          MS. MEDVIN:  If the government can bring up 602A

2     on Page 114, please.

3          And if we can zoom into that bottom green text.

4     Q.  Do you see a green text on your screen?

5     A.  Yes.

6     Q.  In this -- do you -- well, why don't you take a moment

7     to read it so I can ask you questions about it.

8     A.  Okay, thanks.

9     Q.  In this text Mr. Warnagiris never states that he is

10    going to stop anyone or anything; isn't that right?

11    A.  That is correct.

12    Q.  He's only discussing the independent actions of Vice

13    President Pence; isn't that right?

14    A.  Yes.

15    Q.  I'm going to ask you a couple of questions now about

16    Officer Warner.

17          THE COURT:  Can we take this down, please?

18          MS. MEDVIN:  Yes.

19    Q.  Your first contact with Officer Warner was through

20    email; is that correct?

21    A.  I believe I reached out to him via phone and told him

22    I'd like to interview him, but I needed him to view an image

23    that we were going to discuss.

24          Then I emailed him the image.

25          Then he called me back.

1    Q.  I'm going to show you Defense 058.  Is the image on the

2    screen the one that you emailed to Officer Warner?

3    A.  Yes.

4           MS. MEDVIN:  Defense moves for admission of

5    Defense Image 058.

6           MS. LEDERER:  Your Honor, no objection to the

7    still coming in.

8           We had highlighted this exhibit to Your Honor

9    previously during the pretrial conference that this is a

10   screenshot that also shows the agent's desktop, so we would

11   ask for it, when it's finally admitted, to be redacted, the

12   edges be redacted since it shows the agent's computer.

13          MS. MEDVIN:  I don't mind redacting, but I don't

14   see the agent's desktop on this image.

15          THE COURT:  I don't see it here.

16          MS. LEDERER:  Well, it's a screenshot, so you can

17   see below, there's a desktop.

18          THE COURT:  Ms. Medvin and you will work it out.

19          MS. MEDVIN:  We don't have an objection.

20          THE COURT:  So 058 is offered and admitted, so it

21   can be shown.

22   Q.  And then you spoke with Anthony Warner about the case

23   over the phone, correct?

24   A.  Yes.

25   Q.  And that was March 26th of 2021; is that right?

```
 1    A.  Yes.

 2    Q.  So your first meeting with Officer Warner was not in the

 3    Library of Congress?

 4    A.  No.

 5    Q.  Have you ever met with Officer Warner in the Library of

 6    Congress?

 7    A.  No.

 8    Q.  And you -- I'll withdraw.

 9              After your conversation you wrote an FD302; is

10    that correct?

11    A.  Yes.

12    Q.  And in your FD302 you noted that Anthony Warner did not

13    realize that a protester was trying to keep the door open

14    until he saw the screenshot that you emailed him before that

15    phone interview; isn't that right?

16              THE COURT:  Ms. Medvin, read, first of all, more

17    slowly.

18              Secondly, she's about to object.

19              MS. MEDVIN:  Well, she heard my question, if she

20    would like to state the objection.

21              MS. LEDERER:  Yes, objection.  Your Honor, this is

22    improper impeachment.

23              THE COURT:  What?

24              MS. LEDERER:  This is improper impeachment.

25              MS. MEDVIN:  Judge, I am asking about their
```

1    conversation and whether he noted a memory lapse in the

2    officer.

3              MS. LEDERER:  Your Honor, it seemed like she was

4    also then referencing testimony from yesterday.

5              MS. MEDVIN:  I didn't reference any testimony.

6              THE COURT:  Ask your question again.

7    Q.  In your FD302 in March of 2021, did you note that

8    Anthony Warner stated that he did not realize that a

9    protester was trying to keep the door open until he saw the

10   screenshot?

11             THE COURT:  So that's an attempt to impeach

12   Officer Warner through another witness.  In other words,

13   under the rules governing impeachment, you can ask a witness

14   who makes a statement, you can say today you're saying X,

15   but didn't you say Y in the grand jury or didn't you say Y

16   when you talked to the FBI agent.

17             What's the authority for trying to impeach someone

18   who is not on the stand by asking another witness about what

19   he said?

20             MS. MEDVIN:  I'm asking about what he noted after

21   the conversation, his observations.

22             THE COURT:  Your question was didn't Warner state

23   the following.  That was your question.

24             MS. MEDVIN:  Okay.  I said whether he wrote down

25   what Warner stated.  I could rephrase that.

1          MS. LEDERER:  Your Honor --

2          THE COURT:  You can try.

3          MS. LEDERER:  It's also still improper

4    impeachment.  This line of questioning should have been done

5    with Sergeant Warner yesterday.

6          MS. MEDVIN:  Sergeant Warner could not remember

7    anything, and so none of this was possible with Sergeant

8    Warner.

9          THE COURT:  Well, if somebody can't recall

10   something, sometimes that happens.

11         MS. LEDERER:  And then, Your Honor, Ms. Medvin

12   should have refreshed Sergeant Warner's recollection by

13   showing her the 302, but she declined not to because today

14   she wanted to try to backdoor impeachment with Agent

15   Weatherhead.

16         THE COURT:  I'm sorry.  You can refresh

17   recollection with anything.

18         MS. LEDERER:  Right.  And she didn't do that

19   yesterday.

20         THE COURT:  She didn't do that.

21         MS. LEDERER:  Because now she wants to backdoor an

22   impeachment.

23         THE COURT:  She could have said, did you -- he

24   acknowledged talking -- Officer Warner, Sergeant Warner,

25   acknowledged talking with Agent Weatherhead.  And with

1    respect to certain questions that the government put to him,

2    he just didn't remember.

3         There were other things he said that he -- like

4    the statement about the Library of Congress.  But the

5    question is whether one can -- and so you could have said to

6    him:  Well, let me show you this document which purports to

7    summarize or state what you said to Agent Weatherford [sic].

8    If you look at paragraph such and such, does this refresh

9    your recollection about whether you said X?

10        And we did that with -- the government did that

11   with at least one other witness.  Maybe it was Sergeant

12   Warner.  It was somebody.

13        MS. LEDERER:  It was AUSA Haag who refreshed the

14   recollection properly of the chain-of-custody witness, Agent

15   Ly.

16        THE COURT:  And then said:  Well, if I showed you

17   the following document, might that refresh your

18   recollection?

19        He said yes.

20        And then the question was:  Read it to yourself,

21   and then give it back to me.  Now do you remember?  Or does

22   that refresh your recollection?

23        MS. LEDERER:  Correct.  AUSA Haag did a textbook

24   example of refreshing recollection.

25        What Ms. Medvin did not do with Sergeant Warner

1    was any refreshing of recollection, so today that she could

2    now try to backdoor in the impeachment through the improper

3    witness.

4              MS. MEDVIN:  Well, Judge, first of all, what the

5    government just described is using a witness's own notes to

6    help refresh his recollection.

7              THE COURT:  No, no, no.  Refreshing recollection

8    we learn in law school, at least I did, that when Wigmore or

9    McCormick said:  You can show someone the side of a cow.

10   Even though it might seem irrelevant to you, but if that

11   refreshes his recollection, oh, yes, I was at that farm or I

12   was -- it was a beautiful green pasture, you can do that.

13   You can refresh recollection with anything.  It doesn't

14   matter whether it's his prior statement, a document he

15   created.  It can be anything.

16             You didn't do that with Officer Warner.

17             MS. MEDVIN:  We made a decision not to do that,

18   Judge.  That is correct.

19             THE COURT:  Okay.  So you can't -- unless you find

20   me some law that you can impeach Warner extrinsically

21   through another witness, I don't think you can do it.

22             MS. MEDVIN:  I'll move on from the statement and

23   go to a different question, Judge.

24             THE COURT:  Yes.  I mean, the rules are pretty

25   clear about impeachment and how you do it.

```
 1                    Okay.  You may move on.
 2    Q.  After speaking with Officer Warner, you observed that he
 3    was confusing statements made to him between two different
 4    defendants or two different protesters; isn't that right?
 5    A.  My conclusion is that that is most likely what happened.
 6    Q.  In 2023, two and a half years after your initial phone
 7    call, you had another meeting with Anthony Warner; is that
 8    correct?
 9    A.  Yes.
10    Q.  In that meeting, were you investigating Officer Warner
11    for his interaction with protesters on January 6th?
12    A.  No.
13    Q.  To your knowledge, was Officer Warner under any other
14    investigation for his conduct on January 6th?
15              MS. LEDERER:  Objection.
16              THE COURT:  Wait a minute.  Wait a minute.  I'm
17    confused.
18              You interviewed Warner when did you say the second
19    time?
20              THE WITNESS:  It was in 2023, Your Honor.  I don't
21    remember the date.
22              THE COURT:  Okay.  And what's the question about
23    that interview?
24              MS. MEDVIN:  I asked if he was investigating him
25    for anything.
```

```
 1              THE COURT:  The question is:  Were you
 2   investigating Officer --
 3              MS. MEDVIN:  The specific question is whether he
 4   was investigating him for his conduct on January the 6th.
 5   A.  No, I was not.
 6   Q.  And then you met with Anthony Warner a second time in
 7   person when Anthony Warner was meeting with the prosecutors;
 8   is that correct?
 9   A.  Yes.  I thought that's what we were talking about for
10   the previous meeting.
11   Q.  Oh, there was only one meeting in 2023?  That's the same
12   meeting?
13   A.  I believe so, yes.
14   Q.  Okay.
15              MS. MEDVIN:  No further questions regarding
16   Anthony Warner.
17              THE COURT:  Just so I'm clear.  Your recollection
18   is in March 2023 -- is it your recollection in March 2023
19   when you met with Warner this was also with the prosecutors?
20              THE WITNESS:  Yes, Your Honor.
21              THE COURT:  Okay.  And it had to do with preparing
22   or looking forward to this trial?
23              THE WITNESS:  Yes, Your Honor.
24              THE COURT:  And just for the record, the trial was
25   previously scheduled earlier than we are now having it
```

 1    today.

 2              MS. MEDVIN:  The Court's indulgence.

 3    Q.  You made a comment in response to a question on direct.

 4    When you were asked what was happening on January 6th, you

 5    were reading a Tweet from December of 2020, and your -- the

 6    question posed to you was what happened on January 6th, and

 7    you answered something about a violent Trump rally.  Do you

 8    recall that?

 9              MS. LEDERER:  Objection.  I don't believe that was

10    the testimony.

11              THE COURT:  Well, the question is whether he

12    recalls saying that.  If he doesn't recall or it's not

13    consistent with what he does recall, we'll get to that.

14    A.  When I was asked specifically what was happening at the

15    Capitol building, I called it a protest gone violent or

16    turned violent, I believe.

17    Q.  But the text message was from December 14th, and at that

18    point there was no indication publicly known as to what was

19    going to happen on January 6th; isn't that right?

20    A.  That's correct.

21              MS. MEDVIN:  The Court's indulgence.

22              (Pause)

23              MS. MEDVIN:  Your Honor, I'm going to pull up

24    Defense Exhibit 055.

25              THE COURT:  Say that again.

1          MS. MEDVIN:  Defense Exhibit 055 for

2     identification.  I'm going to play a few minutes of this

3     exhibit for you.

4          (Video played)

5          MS. LEDERER:  Your Honor, if I may object at this

6     point.  If I may object at this point in time.  I do not

7     believe that 55 is in evidence.  I think a different exhibit

8     is in evidence that has --

9          THE COURT:  You don't believe what?

10         MS. LEDERER:  That 55 specifically is in evidence.

11    I believe that that first portion came from a government

12    exhibit that's admitted in evidence.

13         THE COURT:  Okay.

14         MS. LEDERER:  So I --

15         THE COURT:  So it is in evidence, or at least part

16    of it is?

17         MS. LEDERER:  Part of it.  But this one has been

18    manipulated with -- there's a highlighting on there, so at

19    this point I would object to this exhibit.

20         THE COURT:  Highlighting meaning there's words?

21         MS. LEDERER:  There are words on it.  That's also

22    on the government exhibit.  But there's also a -- the

23    defendant himself has been highlighted.

24         MS. MEDVIN:  Correct, Judge.  This is the defense

25    visual aid exhibit.  And if I can fast forward, I'll show

1    you.  The defendant is highlighted throughout his trip

2    through the Capitol.  It's about -- it's less than 20

3    minutes, but 19 or so minutes in total.  It shows -- it goes

4    through all of the videos showing the defendant.

5                 THE COURT:  Okay.  Stop a minute.

6                 Have we had a discussion about this before, this

7    particular exhibit?

8                 MS. MEDVIN:  We have mentioned it at various

9    times.  The government has been alerted since I think

10   October.

11                MS. LEDERER:  Your Honor, this exhibit was

12   described as a demonstrative, so the government was led to

13   believe that this would have been used during defense's

14   closing, which the government would have no objection to.

15   Using this video with the witness when it has been altered

16   or manipulated and spliced, I'd ask that defense use the

17   actual exhibits that were admitted during trial with this

18   witness.

19                She can use this during closing, but for the

20   witness testimony, she should use the actual exhibits that

21   have been referred to that have not been enhanced.

22                MS. MEDVIN:  The Judge has allowed two exhibits

23   for the government which have been altered and spliced

24   together with --

25                THE COURT:  The montage?

1          MS. MEDVIN:  The montage.  There's two of them in

2     total.

3          THE COURT:  I'm going to admit it.

4          MS. MEDVIN:  Thank you, Judge.

5          THE COURT:  I'm going to admit it over the

6     government's objection.  And, you know, we're all big boys

7     and girls here, and so we know that it's been -- the

8     government calls it altered.  The defendant's been circled.

9     There have been other times throughout this trial that, when

10    something is on the screen, he's been circled or Officer

11    Warner has been circled.

12         So, you know, I don't see how it's prejudicial,

13    and I'm going to admit Defense Exhibit 055, and she can ask

14    this witness questions to the extent he's able to answer

15    them.

16         MS. LEDERER:  Your Honor, that's fine.  I would

17    just ask that defense indicate what exhibits were used to

18    put together 55 so we can make sure it's all the exhibits

19    that have been previously moved into evidence.

20         MS. MEDVIN:  Well, we can ask the witness after he

21    watches the 20-minute video if that represents his

22    understanding of Mr. Warnagiris's trip inside the Capitol

23    building.

24         MS. LEDERER:  To me, that suggests there's

25    additional video in here that has not yet been admitted.

```
 1            MS. MEDVIN:  There are no additional --

 2            THE COURT:  We're going to take a break.  You two

 3    figure it out.  Go look at it.  Do something or another.

 4    We're going to have to go back through every individual

 5    exhibit that has and has not been admitted before we can ask

 6    him some questions and show the thing.

 7            MS. LEDERER:  No, I'm just asking that defense

 8    read on to the record what videos are in here.  If they've

 9    already been admitted, that's easy to put on the record.

10    And if there's additional video that has not been yet

11    admitted, it doesn't get to be blanketed admitted.  We'd

12    have to pause, identify the --

13            THE COURT:  I understand.  I understand your

14    point.  And I guess we've done that previously in this trial

15    that, you know, what is the underlying exhibit that the

16    larger exhibit comes from or whatever.

17            MS. MEDVIN:  We did not do that for the

18    government's visual aid exhibits.  We didn't do that for the

19    101 or for the 701 exhibits.  The government was permitted

20    without issue to include imagery that's not in any other

21    exhibits, specifically in 101.  Those videos are not

22    individual exhibits.

23            MS. LEDERER:  Your Honor, in Exhibit 701 -- 701 is

24    the montage of the CCTV which was supported by the other 700

25    exhibit series additionally, and it was the Congressional
```

 1    record, which were also additional exhibits.  They all came

 2    in together at once and supported each other.

 3              For the montage, Agent or Deputy Chief Lloyd sat

 4    there, and I paused and asked him was CCTV running that day?

 5    Is the entire video that's in here, have you seen it before?

 6    And he answered yes.

 7              Everything that's in it, is that CCTV from the

 8    Capitol?  And he answered yes.

 9              And all of the graphics in it that refer to

10    different areas of the Capitol, are those consistent with

11    what is then shown in the CCTV?  And he answered yes.

12              And then it came in.  We paused along the way.

13              But just to blanket move in evidence when portions

14    of it have not yet been identified is wholly improper.

15              MS. MEDVIN:  Judge, to my knowledge, there is no

16    video in here that has not been identified and admitted as

17    an exhibit.  If that did happen, that's not our intention.

18              But the government has had this video since

19    October.  And then we sent them an edited video when we

20    realized we're missing one of the exhibits that was edited,

21    and we made sure that this exhibit has the video because it

22    wasn't in there previously to make sure it was complete.

23    And the government never once told us that there's an

24    objection.  In fact, they said before the Court there's no

25    objection.  And never once have they told us they want a

1    list of all the videos that are in here.  So this is the

2    first time we're hearing it.

3          And in terms of time burden for that to happen, we

4    would have to take a break to create a list because we don't

5    have one since they've never voiced a concern about that.

6          MS. LEDERER:  Your Honor, we did voice a concern,

7    but it was brought to the understanding that it would be

8    used as a demonstrative such as in closing, not with a

9    witness.

10          A witness -- for evidence to be admitted, the

11    material within has to be identified.

12          THE COURT:  We had a discussion, and I can't

13    remember whether it was the final pretrial or when it was,

14    but at the same time we discussed both 701 proffered by the

15    government and 55 proffered by the defense.

16          I have some notes here that suggests that some of

17    this, even in this 55, may come from CCTV footage, I'm not

18    sure.

19          I don't know whether we resolved the question of

20    whether this was a demonstrative only to be used in opening

21    or closing, whether it would come in as evidence and all of

22    that, or specifically what objections were made, but I do

23    recall there were some objections.  And maybe somebody can

24    find in a transcript from the final pretrial or whenever

25    what was said about these particular -- this particular

1    exhibit.

2         I do know that in my final -- in my order

3    summarizing what happened at the final pretrial conference I

4    memorialized some of my rulings and some of our

5    discussion -- that's Docket 128 at March 28, 2024 -- and at

6    the very last paragraph of it it says Mr. Warnagiris objects

7    to the inclusion of the Government's Exhibit 101 on the

8    basis that the video montage is inadmissible hearsay.

9    Because the government will not offer the exhibit for the

10    truth of the matter asserted, the hearsay objection is

11    denied.  And that has to do with what people are saying on

12    the -- unidentified people are saying in the montage.

13         And, you know, we may have a similar ruling with

14    respect to 055 from the defense, but that doesn't answer the

15    larger argument that the government is making.  We don't

16    know where all of this came from.

17         101 for the government is what happened on the

18    House and Senate floor during the certification process and

19    came from CCTV video, and it had Congressional Record and

20    statutes and all that stuff along with it.

21         The other one was the government's -- or maybe

22    that was the 701.

23         MS. LEDERER:  701, Your Honor, yes.

24         THE COURT:  The montage -- I don't know what else

25    I said about it except it wasn't being admitted for the

1    truth of the matter asserted.  I may have said more at the

2    final pretrial conference, but I admitted it.

3           MS. LEDERER:  Your Honor -- apologies.  You also

4    did then discuss present sense impression and excited

5    utterance, and Your Honor had --

6           THE COURT:  Was that in respect to either of these

7    exhibits?

8           MS. LEDERER:  I believe that was with respect to

9    101 as well.  You had come out the next day -- I believe the

10   next -- you had taken a break and recited a bunch of case

11   law in regards to present sense impression as well.

12          MS. MEDVIN:  As far as admissibility, Judge, we

13   can have him testify to any issues -- I can have -- I'll

14   play a few moments at a time and say is this the defendant,

15   just like we would for any exhibit we're trying to enter.

16   It would just take a little bit longer.

17          But I just looked through it as we're standing

18   here, and the videos depicted are all the ones that came in

19   during this trial.  There's no addition.

20          I think there's one video the government chose not

21   to admit.  I think if the government can see on their

22   screen, is that the one video?  We can remove that one

23   video.

24          MS. LEDERER:  Or so long as it can be identified

25   by the agent, that's fine.  That's the whole purpose.  We

1    just want to make sure that everything's being admitted, has

2    either already properly been admitted or will be properly

3    admitted during the playing of this.  That's all.

4         THE COURT:  I think you all understand where the

5    area of dispute is.  She thinks that it's all supported by

6    things that are already in evidence.  And it may be that she

7    can assist the agent in identifying those things as we go

8    forward.

9         Let's take a 15-minute break.

10        (Recess taken)

11        THE COURT:  So what does anybody want to say?

12        MS. MEDVIN:  It sounds like the government's

13   concern is with a single video that is in the middle of the

14   composite video because it has not been admitted yet.  It

15   just shows the same incident from a different angle.  It's

16   about a few seconds long, and we could reference that as we

17   go through.

18        The government wanted us to identify every few

19   minutes what's going on.  That's what we planned on doing.

20        MS. LEDERER:  Well, Your Honor, I wanted counsel

21   to identify or to confirm that every exhibit in there had

22   been previously admitted.  That's all the government was

23   seeking.

24        THE COURT:  And have we gotten that accomplished

25   with the exception of one?

 1              MS. LEDERER:  Essentially -- counsel never gave me

 2      a list, but I was watching her scroll back and forth, and I

 3      believe there was just one.  We'll obviously ask for a

 4      better foundation if we believe that there's any other.

 5              Counsel had indicated that someone else had put

 6      that video together, so we would have to reference that

 7      person, but as I was watching her go back and forth -- and

 8      just for the record, there are some enhancements that

 9      someone else did.

10              THE COURT:  She would appreciate you talking into

11      a microphone.  You both talk fast.

12              MS. LEDERER:  I know.  I apologize.

13              And just like that, I lost my train of thought.

14      So lucky everyone.

15              THE COURT:  It happens to me all the time, but

16      you're a lot younger.

17              MS. LEDERER:  I know.

18              THE COURT:  You know you're a lot younger?

19              MS. LEDERER:  No, I'm not.

20              THE COURT:  Go ahead.

21              MS. LEDERER:  I was just --

22              THE COURT:  Go ahead.

23              MS. LEDERER:  It was more of a commentary on me.

24              MS. MEDVIN:  I would give opposing counsel a hug

25      because I feel bad for her right now.

1          MS. LEDERER:  No, it was more of a commentary,

2     yes, on me.  I should not lose my train of thought.  It was

3     more a commentary on me, Your Honor, I promise.

4          The government will obviously interject where need

5     be, but I don't think we will have to that much.

6          THE COURT:  Well, I did look back at what happened

7     at the final pretrial conference, and we talked about 701

8     and the Defense 55 at the same time.  And it was ultimately

9     described as a visual aid or, by me at least, as a

10    demonstrative, and the -- Ms. Medvin said we took everything

11    that we think relates to the defendant.  We put it all in

12    one video, and we spotlight him.  So it's a visual aid to

13    let the Court see where the defendant is.

14         I took that to mean a demonstrative.  She may have

15    meant a visual aid to show to a witness, and it doesn't

16    really matter.

17         And I said the government can object if they want

18    to after they look at it.  And actually my law clerks and I

19    looked at it shortly after the final pretrial conference

20    anyway.

21         So in view of the representations just made and

22    the -- Ms. Medvin's goal in doing this, and she'll ask the

23    agent some questions about it, I'm going to admit it.  So we

24    will admit the Defense 055 with the possible exception of a

25    few seconds, although that might be resolvable, too.  Okay?

 1          MS. LEDERER:  Yes, Your Honor.  If it makes it

 2    easy and defense counsel wants to stipulate, we can just

 3    stipulate and mark and move Exhibit 415 into the record

 4    right now, which is the video that is also included in this

 5    compilation.

 6          And just to let Your Honor know, I believe the

 7    compilation had been updated since the pretrial conference

 8    which was originally also a concern why we originally

 9    objected to make sure that, in fact, everything had come

10    into evidence.

11          MS. MEDVIN:  The video the government is

12    referencing is one they showed a witness and asked if you

13    see yourself.  The witness wasn't able to identify himself,

14    this video we have on the screen right now.  We can omit

15    that portion because he wasn't able to identify himself.

16    That's 13:04 through 13 -- 12:55.

17          I'm sorry, my computer is doing inverse again.

18    The Court's indulgence.

19          THE COURT:  All right.  Are we ready to go ahead?

20    Defense Exhibit 055 is admitted and can be shown to

21    everybody.

22          MS. MEDVIN:  I'm just going to play a few minutes

23    for you, and then I'm going to pause, and I'm going to ask

24    you some questions about it.  Okay?

25          THE WITNESS:  Okay.

```
1                    (Video playing)

2    BY MS. MEDVIN:

3    Q.  Do you see 055 on your screen now?

4    A.  Yes.

5            MS. MEDVIN:  I'm going to click play.

6                    (Video played)

7            MS. MEDVIN:  I'm going to click pause for now.

8    Q.  Do you observe Mr. Warnagiris in the outdoor areas of

9    Washington, D.C., near the Capitol in the earlier video, in

10   the early portions of the video?

11   A.  Yes.

12           THE COURT:  And which door is this?  It looks like

13   a main entrance of some type.

14           THE WITNESS:  The main Rotunda door, Your Honor.

15           MS. MEDVIN:  I'm going to rewind back.

16   Q.  The videos of him outdoors, do they appear to have been

17   taken before Mr. Warnagiris made his way to that front door

18   of the Capitol building?

19   A.  Yes.

20   Q.  And you saw highlighting on Mr. Warnagiris; is that

21   correct?

22   A.  Yes.

23                    (Video playing)

24           MS. MEDVIN:  I'm going to fast forward a little

25   bit.  Actually, I'm going to pause here.
```

1    Q.  The video in front of the Capitol with Mr. Warnagiris

2    cheering "USA," is that one of the videos you have seen

3    admitted throughout this trial?

4    A.  Yes.

5          MS. MEDVIN:  I'm going to click play one more

6    time.

7          (Video playing)

8          MS. MEDVIN:  I am going to change to my laptop,

9    Judge, from my iPad.  The Court's indulgence.

10          MS. LEDERER:  Your Honor, while Ms. Medvin does

11    that, can I just ask that --

12          (Video playing)

13          THE COURT:  Now, before you ask a question,

14    Ms. Lederer?

15          MS. LEDERER:  Can I just ask Ms. Medvin to put on

16    the record when she's pausing and playing just so we have a

17    clean record of what's being shown and when in the video.

18          THE COURT:  Pausing it.  We don't have a timestamp

19    on any of this, right?

20          MS. MEDVIN:  There's no timestamp on any of it.

21    There might be some from the CCTV footage that we've

22    combined.

23          THE COURT:  You can say I'm pausing where he's

24    standing at a door.  I'm pausing where --

25          MS. MEDVIN:  Yes.

```
 1                    (Pause)
 2             MS. MEDVIN:  I do not know what is going on,
 3   Judge.  I apologize.  I've played this video over and over
 4   again today.  I'm not sure what happened.
 5             I might need to restart my system.
 6                    (Pause)
 7             MS. MEDVIN:  Your Honor, if I can request a recess
 8   to try and fix this.  Both of my computers aren't playing
 9   the video.  I think something's wrong with my external hard
10   drive which is what carries all of this information.  It
11   appears to be overloaded.
12             THE COURT:  I'm happy to take a little break and
13   let you work on the technology.
14             MS. MEDVIN:  Thank you, Judge.
15                    (Recess taken)
16             THE COURT:  All right.  Defense Exhibit 055.
17             MS. MEDVIN:  Is my computer not connecting now?
18   Oh, no.  Everything was fine.
19             Is this visible on everyone's screen now?
20             Every time I touch it, that's when it starts doing
21   it.  That's when I come in contact with it.
22             Don't touch it.
23                    (Pause)
24             MS. MEDVIN:  Let's try to resume where we left
25   off.
```

1              So I'm playing from 1:47 in Defense 055.

2              (Video playing)

3              MS. MEDVIN:  I'm going to fast forward just a

4      little bit.  2:55 in the video.

5              (Video playing)

6              MS. MEDVIN:  I'm going to hit pause.

7              THE COURT:  Do you have any questions at this

8      point?

9      Q.  Does that appear to be a combination of videos you've

10     seen through this trial of Mr. Warnagiris?

11     A.  Yes.

12     Q.  And do they appear to be approximately in correct order

13     as far as time?

14             MS. LEDERER:  Objection.

15             THE COURT:  That's a hard question.

16             Do the ones that she showed you mostly show

17     Mr. Warnagiris on the steps leading up to the Rotunda door

18     and at the Rotunda door?

19             THE WITNESS:  Yes, Your Honor.

20     Q.  Do the videos appear to be in the correct time sequence?

21             MS. LEDERER:  Objection.

22             THE COURT:  Well, if he can answer it, he can; and

23     if he can't, he can't.

24     A.  It's hard to say.  They're all around -- they're close

25     in time.

1    Q.   Okay.   Now, the video that is currently up on the screen

2    at three minutes, 52 seconds at Defense 055, do you

3    recognize what that is --

4    A.   Yes.

5    Q.   -- from the security camera?

6    A.   Yes.

7         MS. MEDVIN:   I'm going to fast forward a little

8    bit because we have watched that quite a bit in this trial.

9         (Pause)

10        MS. MEDVIN:   There is a time period that the

11   government wants us to exclude because they didn't enter it,

12   and I'm going to play a portion, the Court's indulgence, so

13   I can note it time-wise.

14        MS. LEDERER:   And, Your Honor, we had agreed that

15   if we stipulated to the 415 coming in, we'd have no issue

16   with it coming in here.

17        MS. MEDVIN:   6:47 to 6:50 -- Court's indulgence.

18   It keeps going to 6:55.

19        So 6:47 to 6:55, that is a portion that is not in

20   evidence.   The government's witness wasn't able to admit it,

21   so we will exclude that portion from our video.

22        MS. LEDERER:   And, again, the government has no

23   issue with it coming in so long as the foundation is laid.

24   We also offered to admit the actual exhibit itself, the

25   actual video itself, 415.

```
 1                MS. MEDVIN:  We just excluded it to make it
 2    easier.  It's unnecessary one way or another.
 3                I'm going to keep fast forwarding.
 4                (Video playing)
 5    BY MS. MEDVIN:
 6    Q.  This is still all CCTV footage that we've watched; is
 7    that correct?
 8    A.  Yes.
 9                MS. MEDVIN:  Okay.  I'm going to now pause -- or
10    not pause.  I'm going to play at 7:54.
11                (Video playing)
12    Q.  And you saw two videos side by side; is that correct?
13    A.  Yes.
14    Q.  That was a YouTube video played side by side with the
15    CCTV video?
16    A.  Yes.
17    Q.  And both of those were admitted into evidence.
18                Do they appear to be synchronized to showing the
19    same event at the same time?
20    A.  Yes.
21                THE COURT:  What we just saw, was that Officer
22    Warner standing at the door?
23                THE WITNESS:  Yes, Your Honor.
24                THE COURT:  Inside the Rotunda door?
25                THE WITNESS:  Correct.
```

1          THE COURT:  In the earlier one that she showed you

2     from 6:47 to 6:55, was that a number of people, but

3     including Mr. Warnagiris, on the inside of the Rotunda door?

4          THE WITNESS:  Yes, Your Honor.

5          MS. MEDVIN:  I'm going to play at 8:19 into the

6     video.

7          (Video played)

8     Q.  And do you see Mr. Warnagiris highlighted?

9     A.  Yes.

10    Q.  And is that CCTV video?

11    A.  Yes.

12         MS. MEDVIN:  I'm going to speed it up a little

13    bit.

14    Q.  Is that Mr. Warnagiris highlighted again?

15    A.  Yes.

16    Q.  On CCTV?

17    A.  Right.

18         THE COURT:  Was that inside the Rotunda itself or

19    in Statuary Hall?  I'm not sure.

20         THE WITNESS:  I thought that was Statuary Hall,

21    Your Honor.

22         MS. MEDVIN:  I'm going to start playing from 9:40

23    into the video.

24         (Video playing)

25    Q.  Is that sped-up CCTV footage?

1    A.  Yes.  Not anymore.

2              MS. MEDVIN:  I'm going to pause at 11:32.

3    Q.  And I'll ask you, you're seeing two videos

4    simultaneously played.  One is CCTV, and one is a free

5    source or open-source YouTube video.  Do they appear to be

6    properly synchronized?

7    A.  Yes.

8              THE COURT:  And, again, for the record and perhaps

9    for the Court of Appeals, does what we just saw include a

10   man in a beard standing I guess in front of Mr. Warnagiris,

11   and the man in the beard saying "everybody be calm" and

12   "everybody be quiet," and Mr. Warnagiris at various points

13   having his hand up in the air?  Is that what we just saw

14   mostly?

15             THE WITNESS:  Yes, Your Honor.

16             MS. MEDVIN:  I'm going to fast forward just a

17   little bit, and I'm going to click "Play" at 11:49 into

18   Defense 055.

19             (Video playing)

20             MS. MEDVIN:  I'm going to fast forward a little

21   bit to 12:32.

22             (Video playing)

23   Q.  Do the videos that you just watched depict

24   Mr. Warnagiris inside the Capitol building?

25   A.  Yes.

1    Q.  And do they reflect the exhibits you have previously

2    seen admitted into evidence in this case?

3    A.  Yes.

4    Q.  And the additional edit from the defense is highlighting

5    of Mr. Warnagiris; is that correct?

6    A.  Yes.

7             MS. MEDVIN:  I'm going to click "Play" at 13:15.

8             (Video playing)

9    Q.  And did the video appear to be sped up during the time

10   period you just watched?

11   A.  Yes.

12            (Video playing)

13            MS. MEDVIN:  I'm going to pause at 13:52, and I'm

14   going to resume at 14:08.

15            (Video playing)

16            MS. MEDVIN:  I'm going to pause at 14:18.

17   Q.  Does that appear to be Mr. Warnagiris in the Capitol

18   Rotunda -- I'm sorry, in Statuary Hall?

19   A.  Yes.

20            THE COURT:  He's walking with another person.  Do

21   we know whether that person was a protester or law

22   enforcement officer or somebody else?

23            THE WITNESS:  Based on the video, Your Honor, he

24   looks like a protester.

25            MS. MEDVIN:  I'm going to hit "Play" at 14:44.

```
 1              (Video playing)
 2              MS. MEDVIN:  I'm going to hit "Pause" at 15
 3      minutes in.
 4      Q.  Were you able to see a switch back and forth between
 5      what appeared to be body cam and CCTV footage?
 6      A.  Yes.
 7      Q.  And they depict Mr. Warnagiris inside of the Rotunda?
 8      A.  Yes.
 9      Q.  Do they appear to be around 3:04 p.m.?
10      A.  Yes.
11              (Video playing)
12              MS. MEDVIN:  I'm going to play at 16:03.
13              (Video playing)
14              MS. MEDVIN:  And pause at 16:08.
15      Q.  Does that appear to be Mr. Warnagiris in body cam
16      footage?
17      A.  Yes.
18      Q.  And Mr. Warnagiris is highlighted; is that correct?
19      A.  Yes.
20              (Pause)
21              MS. MEDVIN:  I'm going to play at 17:45 in Defense
22      055.
23              (Video playing)
24              THE COURT:  And where in the Capitol was that clip
25      from?
```

```
 1              THE WITNESS:  The Rotunda, Your Honor.

 2              THE COURT:  And we see Mr. Warnagiris down on the

 3      ground at some point, correct?

 4              THE WITNESS:  Yes, Your Honor.

 5      Q.  And as I keep playing, let me know if you see

 6      highlighting on Mr. Warnagiris.

 7              (Video playing)

 8      A.  Now we see highlighting on Mr. Warnagiris.

 9              MS. MEDVIN:  At 18:25 into the video.

10              (Video playing)

11              MS. MEDVIN:  I'm going to play at 18:33 in Defense

12      055.

13      Q.  Does that appear to be CCTV footage?

14      A.  Yes.

15      Q.  With Mr. Warnagiris highlighted?

16      A.  Yes.

17      Q.  And do you see that footage sped up?

18      A.  Yes.

19              (Video playing)

20      Q.  And now we're at the end, 19:51 in the video.  And does

21      this exhibit portray most of the evidence -- if not all,

22      most of the evidence -- that you've seen in this trial of

23      Mr. Warnagiris?

24      A.  Yes.

25      Q.  Does it appear to be in chronological order?
```

1    A.  Yes.

2              MS. MEDVIN:  No further questions.

3              THE COURT:  Thank you.

4              Redirect?

5              MS. LEDERER:  Court's indulgence, Your Honor.  I

6    just need to pull one thing that we might play.

7              (Pause)

8              MS. LEDERER:  Thank you, Your Honor.

9                        REDIRECT EXAMINATION

10   BY MS. LEDERER:

11   Q.  Agent Weatherhead, I'm going to pick up where defense

12   left off.  Fair to say the compilation that you watched was

13   not everything that was played over the course of trial?

14   A.  It's hard for me to say.  We watched a lot of videos.

15   Q.  Defense didn't show you the video where the defendant

16   was outside the House main doors when the guns were drawn,

17   did she?

18   A.  No.

19   Q.  Defense did not show you in that compilation the

20   interaction between the defendant and Sergeant Warner, did

21   she?

22   A.  I think we fast forwarded through that portion.

23   Q.  But you yourself had watched that CCTV during your

24   investigation, correct?

25   A.  Yes.

1    Q.  And I believe you had previously testified that it was

2    the defendant's actions at the door that spurred the

3    investigation, correct?

4    A.  Yes.

5    Q.  And here at trial again you saw that CCTV, correct?

6    A.  Yes.

7         MS. LEDERER:  If we could bring up Exhibit 301,

8    please.  And if we can please bring it to approximately two

9    minutes and 15 seconds in.  Thank you.

10   Q.  Agent Warner [sic], this is what's been marked

11   previously as 301.  Is this CCTV facing the east or the main

12   Rotunda doors?

13   A.  Yes.

14   Q.  Can you see where the defendant is positioned?

15   A.  By the door with his left foot very near the hinge side

16   of the door.

17   Q.  And does the CCTV currently say 2:27 and 15 seconds

18   p.m.?

19   A.  Yes.

20        MS. LEDERER:  If we could press "Play," please,

21   and then pause it at 2:30.

22        MS. MEDVIN:  Judge, I'd say this is outside the

23   scope of direct.  I don't have an objection to them playing

24   this in our video.  We have all of this in the video.  As we

25   said, we watched it many times, which is why we skipped over

1    it.  But this is outside the scope now.

2             We didn't present this video.  We didn't even talk

3    about the moment.  We were not even talking about the

4    details.  We were just identifying.

5             MS. LEDERER:  Your Honor, defense just replayed

6    video that we've all watched multiple times, and I'm going

7    to have some questions based off of it.  And defense skipped

8    over the part that makes her client guilty.

9             THE COURT:  Fair enough.  You may proceed.

10            MS. MEDVIN:  Objection to that characterization.

11            THE COURT:  Okay.  Well, we don't -- I don't have

12   to accept the characterization, but I think there's -- the

13   objection to showing the video is overruled.

14            MS. LEDERER:  If we could press "Play," and we'll

15   pause around 2:30.

16            (Video playing)

17   Q.  Agent Weatherhead, do you see Sergeant Warner now coming

18   in through the door?

19   A.  Yes.

20            MS. LEDERER:  If we could continue to play,

21   please.

22            (Video playing)

23   Q.  Do you see the defendant making contact with --

24            MS. MEDVIN:  Objection, Judge.  This is outside

25   the scope of cross.

```
1              THE COURT:  Overruled.
2              MS. LEDERER:  If we could bring it back to 2:30,
3    please.  Thank you so much.
4    Q.  And as we play, Agent Warner [sic], I'm going to ask you
5    to describe what you're viewing.
6              MS. LEDERER:  If we could press "Play," please.
7    A.  Sergeant Warner is making it inside the door.
8    Mr. Warnagiris -- and Sergeant Warner is trying to close the
9    door.  Mr. Warnagiris is using his body weight to try to
10   push it open.  The two men made contact.  It looked like
11   Mr. Warnagiris tried to get Sergeant Warner away from him,
12   shoving him with his arm.
13             MS. LEDERER:  If we could press "Pause," please.
14             MS. MEDVIN:  Judge, I'm going to renew my
15   objection to this characterization and to the line of
16   questioning.
17             THE COURT:  Well, I'm going to overrule your
18   objection as to the line of questioning.
19             As to the characterization, the best evidence in
20   this case -- in this portion of the case is the video, and I
21   don't really care how Agent Weatherhead or any other witness
22   describes what they're seeing.  What's important is what I'm
23   seeing as the fact-finder.  Just as in a jury trial, the
24   jury goes back, in my experience in a lot of these cases,
25   and watches certain videos, sometimes multiple times.
```

1          I've done that already with some of them, and I

2     will do that when I'm preparing my written findings of fact.

3          So his characterization will not affect my

4     judgment.

5     Q.  Agent Warner [sic], I'm now going to -- now that you've

6     watched the video again, I'm going to ask you some questions

7     relating to text that the defendant said.

8          MS. LEDERER:  If we could please bring up 602A and

9     go to Page 69.

10          And, Your Honor, just to let you know, I believe

11     this is still the unredacted version so be mindful of what

12     gets published to the screen.

13          THE COURT:  What page, I'm sorry?  Page 69?

14     Q.  Now, Counsel asked you a lot of questions in regards to

15     what the defendant was explicitly saying in this text

16     message from December 15, 2020.

17          If you could, could you please read the first

18     sentence again.

19     A.  "Yeah its basically one of the last constitutional

20     offramps before violence solves the problem for us."

21     Q.  And if you could read the second sentence.

22     A.  "And so, as long as we are following process:  What is a

23     'competing electoral'" state -- "'slate.'"

24     Q.  So who is violence solving the problem for?

25          MS. MEDVIN:  Objection; calls for speculation.

1          THE COURT:  What was the question?

2          MS. LEDERER:  Who is violence solving the problem

3     for?

4          THE COURT:  The message says "one of the last

5     constitutional offramps before violence solves the problem

6     for us," so that's what it says.

7     Q.  Who is Mr. Warnagiris saying that violence is going to

8     solve the problem for?

9     A.  "For us."

10    Q.  And watching the CCTV that we just watched, did you view

11    violence in that CCTV?

12         MS. MEDVIN:  Objection, Judge; calls for an

13    ultimate opinion in this matter.  He's not an expert, and

14    it's an ultimate --

15         THE COURT:  I didn't hear the question.

16         MS. LEDERER:  I asked if he viewed violence --

17         THE COURT:  If he viewed violence?

18         MS. LEDERER:  Violence in the CCTV.  Not assault.

19    Not civil disorder.  Not entering and remaining.

20         THE COURT:  View violence what?

21         MS. LEDERER:  On the CCTV that was just played.

22         THE COURT:  I'll sustain the objection.

23    Q.  Now, Ms. Medvin had asked you if the defendant had

24    explicitly said that he was going to commit violence, and

25    you had begun to answer, but she cut you off.  What were you

1    going to answer?

2    A.  I thought she was trying to establish that he doesn't

3    mention any plans that he is going to go to the Capitol and

4    commit violence or try to stop the vote.

5            I was going to say that this message makes it

6    clear to me that that's what he wants to happen but --

7            MS. MEDVIN:  Objection to --

8            THE COURT:  Sustained.  Stricken.

9    A.  -- that he does not want --

10           THE COURT:  No.  Do not answer.

11           I can read the text.

12           MS. LEDERER:  Absolutely, Your Honor.  I'll move

13   on.

14           THE COURT:  I can read it.  Okay?  He's drawing a

15   conclusion from it.  Now, unless it motivated his actions,

16   what's the basis for his conclusion or speculation?

17           MS. LEDERER:  Your Honor, Ms. Medvin was also

18   trying to draw out speculation and conclusion.

19           THE COURT:  Well, that doesn't make it right.

20           MS. MEDVIN:  I was not though.  I was asking only

21   if --

22           THE COURT:  All right.  Enough.  I've sustained

23   your objection.

24   Q.  Is there mention of violence --

25           THE COURT:  Don't snatch defeat from the jaws of

1    victory, or whatever the phrase is.

2    Q.  Is there mention of violence in this text?

3    A.  Yes.

4    Q.  And in the same sentence that violence is referenced,

5    does it also say "for us"?

6    A.  Yes.

7            MS. MEDVIN:  Objection; asked and answered.

8            THE COURT:  Overruled.

9    Q.  And if you could read just this last portion again?

10   A.  "Is Pence on board?  Will he have the balls in the

11   moment he was made for?  With McConnell, Thune, and Cornyn

12   all cucking out, I'm skeptical.  These retards better

13   recognize the coming storm that waits for them if they fail

14   to follow through on their constitutional duties."

15           MS. LEDERER:  And if we can please go to Page 14.

16           THE COURT:  Of 602A?

17           MS. LEDERER:  Yes, Your Honor.  The next couple of

18   lines of questions will all refer to --

19           THE COURT:  You said Page 14?

20           MS. LEDERER:  Page 114, excuse me, of 602A.  In

21   the next couple of questions we will refer to 602A.

22           If we could call out the bottom text, please.

23   Q.  I don't need you to read the whole thing again, but if

24   you could, if you could just read this second portion.

25   A.  "If he is going to let us down on 6 jan it will be

1    because hes been under overwhelming pressure, the kind that

2    targets clarence thomas and brett kavanaugh, not because

3    some dicksuck like mitch mcconnell whispers sweet nothings

4    in his ear."

5    Q.  And was this in reference to Pence?

6    A.  Yes.

7              MS. LEDERER:  If we could go to Page 125, please.

8    And if we could call out this portion --

9              THE COURT:  What page?  I'm sorry.

10             MS. LEDERER:  125.  I'm referring to the second

11   message bubble.

12             MS. MEDVIN:  Judge, I'm going to object.  This is

13   also outside of cross.

14             THE COURT:  This is from somebody to others in the

15   chat group, including Mr. Warnagiris, right?

16             MS. LEDERER:  Yes, Your Honor.  And on cross-

17   examination Ms. Medvin asked about if the defendant

18   explicitly said he was going to commit violence or

19   explicitly referenced interference, so this is along those

20   line of questions of violence and interference.

21             THE COURT:  Go ahead.

22   Q.  Agent Weatherhead, just starting from after the

23   "breaking/," could you read the portion that is underlined.

24   A.  "Legal-filing-mike-pence-refused-to-sign-on-to-plan-to-

25   overturn-election."

1          MS. LEDERER:  If we could exit out of the callout.

2    Q.  And I think you had previously testified that there was

3    a read receipt with this text message, correct?

4    A.  Yes.

5          MS. LEDERER:  If we could please -- thank you very

6    much.

7          If we could exit the callout and go to Page 130 of

8    602A.  If we can call out the second text message on the

9    bottom.

10   Q.  Now, Ms. Medvin had asked you whether or not memes had

11   gone back and forth in this group chat.  Do you recall that?

12   A.  Yes.

13   Q.  Ms. Medvin also asked you if there had been joking back

14   and forth in the group chat.  Do you recall that?

15   A.  Actually, I don't.

16   Q.  Would you consider a photograph of a --

17          MS. MEDVIN:  Objection; speculation.

18          MS. LEDERER:  I haven't even asked the question

19   yet.

20          THE COURT:  She hasn't asked the question yet.

21   Q.  Would you consider -- fair to say on direct or on cross-

22   examination Ms. Medvin showed you a clearer picture of this

23   photograph, correct?

24   A.  Yes.

25   Q.  Could you make out the words of the hat in that clearer

1    photograph?

2    A.  Yes.

3    Q.  What were the words on the hat in the clearer

4    photograph?  I can bring that up if you don't recall.

5    A.  I don't recall if it was "Make America Great Again" or

6    "Keep America Great."

7              MS. LEDERER:  If we could show Defense Exhibit 68

8    for the agent.

9              THE COURT:  Defense Exhibit 68?

10              MS. LEDERER:  Yes, Your Honor.

11              THE COURT:  068?

12              MS. LEDERER:  Yes, Your Honor.  I might just have

13    to use my computer for it.

14              For the record, this is Defense Exhibit 67, not

15    68.

16              I think the cable might have officially gone.

17    Your Honor, I can just walk up with the laptop, if I may

18    just approach the witness.

19              THE COURT:  Sure.  So it's Defense Exhibit 067?

20              MS. LEDERER:  Yes, Your Honor.

21              THE COURT:  And it's in evidence?

22              MS. LEDERER:  Yes, Your Honor.  And I'm just

23    asking to approach the witness since the cable seems to have

24    officially gone.

25              THE COURT:  Yes, since you can't show us.

1          MS. LEDERER:  Showing counsel.

2    Q.  Looking at Exhibit 67, can you make out the words on the

3    hat?

4    A.  I'm sorry, we're not looking at 67 anymore.  I don't

5    know what happened.

6          THE COURT:  This is what he's looking at now.  It

7    does show what looks like a suitcase with a red hat and a

8    black hat in it.

9    Q.  Agent Weatherhead, what do each of those hats read?

10   A.  "Make America Great Again."

11   Q.  And what is next to the hat?

12   A.  A pistol and two magazines.

13   Q.  Do you find that to be a joke?

14         MS. MEDVIN:  Objection, Judge; calls for personal

15   opinion that doesn't go to any issue in this case, nor is it

16   within the scope of cross.

17         MS. LEDERER:  Your Honor, it's absolutely within

18   the scope of cross.  Ms. Medvin --

19         THE COURT:  Go ahead.  What's the question?

20   Q.  Do you find that image to be a joke?

21         THE COURT:  To be what?

22         MS. LEDERER:  A joke.

23         THE COURT:  I'll sustain the objection.

24         MS. LEDERER:  Your Honor, briefly, Ms. Medvin had

25   asked about joking and memes going back and forth suggesting

1    that this was a joke in a meme.  I can ask the agent if he

2    finds it to be very funny.

3              MS. MEDVIN:  The agent's personal opinion is

4    irrelevant as to my questions, which were about what the

5    defendants were sending each other, and we were shown

6    pictures that he identified as memes.

7              THE COURT:  I'm going to sustain the objection.

8    Q.  Agent Weatherhead, just one more question.  In reviewing

9    the text, the defendant also referenced the Rubicon,

10   correct?

11   A.  Yes.

12             MS. LEDERER:  I have no further questions.  Thank

13   you very much.

14             Your Honor, if I may retrieve the laptop?

15             THE COURT:  You may.

16             All right.  So can we let this witness leave the

17   witness stand for the time being?

18             MS. MEDVIN:  Yes, Judge.

19             THE COURT:  Okay.  Thank you, sir.

20             THE WITNESS:  Thank you, Your Honor.

21             MS. LEDERER:  Your Honor, at this time --

22   understanding that obviously both parties will be submitting

23   to you redacted versions and appropriate versions of all the

24   exhibits that have been submitted today or over the course

25   of the past couple of days, at this time the government

1    rests.

2              THE COURT:  Okay.  So the government rests its

3    case subject to everyone's agreement on what exhibits are in

4    and what exhibits are partly in and so forth.

5              So what happens next?

6              MS. MEDVIN:  Well, Judge, I have a Rule 29 motion

7    as I'm sure the Court expected.

8              I can argue the motion now or alternatively I

9    can -- or the Court could ask for the parties to reserve and

10   argue it after the close of the defense case, which is not

11   long.

12             I know some judges ask always to defer argument

13   and ask us to renew.

14             THE COURT:  What I would prefer, if this is all

15   right with you, since this is a bench trial, that you make

16   your motion without arguing now, because I know some of your

17   arguments; and that I reserve ruling on the motion.  I think

18   that will save time.

19             If it were a jury trial, it's important to hear

20   all of the arguments because it sometimes does happen that

21   even if a judge doesn't agree with the defendant in every

22   single count, the judge agrees on some counts, and before

23   the case goes forward in the presence of the jury, it's

24   important to know what's in and what's out.

25             But I think in a bench trial, unless you have

1     strong reasons to disagree, I think it would save us all

2     time if we just said you have made your motion, and I

3     reserve ruling until later.

4              MS. MEDVIN:  What I would ask is to make the

5     motion and reserve on the ruling for now, and then at the

6     end of the defense's case, I would ask to argue it because

7     we --

8              THE COURT:  Yes.

9              MS. MEDVIN:  -- have some interesting issues, even

10    before --

11             THE COURT:  Closings.

12             MS. MEDVIN:  -- before the case goes to closings.

13             THE COURT:  Okay.  So we're going to have -- the

14    government's rested.  You're making your motion.  I'm

15    reserving ruling.

16             There will be a defense case.  You will rest at

17    some point.  You'll make your motion and pause here for a

18    minute.

19             The government still has a right to a rebuttal

20    case.

21             So what you're asking is between the end of your

22    case and the rebuttal case that I -- that we have a more

23    fulsome argument, is that --

24             MS. MEDVIN:  Or at the end of the -- at the close

25    of all the evidence.

```
1              THE COURT:  Okay.  Fair enough.  Okay.
2              If that's agreeable to both sides in the effort of
3    saving time and with the understanding that she's preserved
4    all of her rights and arguments, I think it makes sense to
5    me unless the government has some objection.
6              MR. HAAG:  I think that's fine, Your Honor.
7              Just for the record, the government does object to
8    the motion, but recognizing --
9              THE COURT:  You don't object to the motion, you
10   oppose the motion.
11             MR. HAAG:  Oppose the motion.  Thank you, Your
12   Honor.
13             MS. MEDVIN:  So the defense moves for acquittal on
14   each of the nine counts of the indictment, for the record.
15             THE COURT:  Okay.
16             MR. HAAG:  And, Your Honor, the government would
17   oppose the motion as to all nine counts.
18             THE COURT:  And I will reserve ruling, and we'll
19   hear argument later in the case.
20             MS. MEDVIN:  Thank you, Judge.
21             THE COURT:  So what is your proposal at the
22   moment?  It is --
23             MS. MEDVIN:  Judge, if I may, I think my case
24   might be about five minutes long; so if I could have a few
25   minutes to confirm, it will be a very brief --
```

1          THE COURT:  Well, let's take a break.  I mean,

2     obviously, if she can finish her case today, that would save

3     us all -- that would give us our game plan for tomorrow,

4     right?

5          Always happy to take a break if it's going to save

6     time in the end.  I've sometimes said facetiously, in any

7     case, civil or criminal, if both sides agree on something,

8     I'll do it no matter what it is.  And then I sort of stop

9     and say things like subject matter jurisdiction I guess I

10    can't agree to.

11          Okay.  That's an aside.

12          Ten minutes or -- well, until Ms. Medvin tells us

13    she's ready, okay?

14          MS. MEDVIN:  Thank you, Judge.

15          (Recess taken)

16          MS. MEDVIN:  Judge, the defense rests.

17          THE COURT:  Okay.  Again, subject to the exhibits

18    and agreements on the exhibits, et cetera, right?

19          I mean, we have to make sure that only the ones

20    that have been admitted get in and parts that haven't

21    been admitted don't get in.  Even the government and I --

22    Ms. Johnson are going to figure all that out.

23          But you rest.

24          MS. MEDVIN:  The defense rests.

25          THE COURT:  Now, before I let you rest, I'd like

1    Mr. Warnagiris to come up to the podium for a moment with

2    you.

3        Good afternoon.

4        THE DEFENDANT:  Good afternoon, Your Honor.

5        THE COURT:  This is something that I think most

6    judges think it is our responsibility in every criminal

7    case, and that's to address the defendant directly and say

8    the following or something like the following.

9        You have a right to testify in your own behalf in

10    the criminal case.  Do you understand that?

11        THE DEFENDANT:  I understand.

12        THE COURT:  You also have a right under the

13    Constitution to remain silent and not to testify.  You

14    understand that as well?

15        THE DEFENDANT:  I understand, Your Honor.

16        THE COURT:  And this is a personal decision.  Any

17    defendant obviously relies on a good lawyer -- and you have

18    a good lawyer -- and her best advice to you.  But at the end

19    of the day, it's your personal decision whether to testify.

20    Do you understand that?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  And have you had enough time to

23    discuss the pros and cons of that with Ms. Medvin?

24        THE DEFENDANT:  I have, Your Honor.

25        THE COURT:  And have you made a decision on what

1     you want to do?

2                    THE DEFENDANT:  Yes, Your Honor.

3                    THE COURT:  And that decision is...?

4                    THE DEFENDANT:  I will not testify.

5                    THE COURT:  Okay.  Thank you very much, sir.  I

6     appreciate that.

7                    THE DEFENDANT:  Thank you, Your Honor.

8                    THE COURT:  And with that, the defense rests.

9                    Since the defense has rested, there's no rebuttal.

10                   Ms. Medvin has said she wants to make an argument

11    on Rule 29.  Is this the best time to do that?

12                   MS. MEDVIN:  I have actually two separate motions.

13    In addition to the Rule 29 -- before a Rule 29, I'm going to

14    ask for dismissal for a variance of the indictment, and I'm

15    citing *Russell v. United States*, 369 U.S. 749, Supreme Court

16    case from 1962.  I'm citing *Stirone v. United States*.

17                   THE COURT:  Spell that, please.

18                   MS. MEDVIN:  *Stirone*, S-T-I-R-O-N-E, 361 U.S. 212,

19    Supreme Court case from 1960.  And *Gaither v. United States*,

20    G-A-I-T-H-E-R.  That's 413 F. 2d 1061, Court of Appeals.

21                   THE COURT:  It's F. 2d, right?

22                   MS. MEDVIN:  F. 2d, Court of Appeals, District of

23    Columbia Circuit, 1969.

24                   THE COURT:  I know it well.

25                   MS. MEDVIN:  And in this case, the reason I'm

 1    saying there is a variance from the indictment is because,

 2    as the Court had ordered, the government provided to us

 3    materials from the grand jury, and in the grand jury

 4    indictment --

 5              THE COURT:  The current indictment?

 6              MS. MEDVIN:  The current indictment.

 7              THE COURT:  Docket 49, the one we're here on

 8    trial?

 9              MS. MEDVIN:  Yes.

10              THE COURT:  Okay.

11              MS. MEDVIN:  There is an affidavit with a map, and

12    that map depicts what --

13              THE COURT:  There's not an affidavit in the

14    indictment.

15              MS. MEDVIN:  There is an affidavit in the -- in a

16    grand jury exhibit for the indictment --

17              THE COURT:  Oh.

18              MS. MEDVIN:  -- as a grand jury exhibit.  The

19    particular exhibit for the grand jury is Grand Jury

20    Exhibit 1C.  Grand Jury Exhibit 1C is a map, according to

21    the affidavit, that delineates the restricted area under

22    which Mr. Warnagiris was indicted for Counts 4, 5, and 6.

23              That restricted area is different from the one

24    delineated in the map presented at trial through the

25    government's first witness, which was Thomas Lloyd.

1           The restricted area has -- it's not all

2     differences, but some differences to what is within the

3     restricted area.  And in this case it's not insubstantial

4     because the restricted area is an element of the offense

5     that the government has to prove.

6           So if the government proves to the grand jury that

7     a restricted area existed in one way and proves to this

8     Court or attempts to prove to this Court that a restricted

9     area would have existed in a different way, there is a

10    variance, and then the question will be:  Well, is it

11    significant enough?

12          Well, in this case it goes to an ultimate element

13    in the case, and *Stirone v. United States* specifically

14    addressed that issue.  It's an essential element.  And in

15    this case, it is an essential element; and so the difference

16    between the two matters.

17          THE COURT:  Tell me again the counts that you're

18    moving for dismissal of.  You said it a minute ago, I think.

19          MS. MEDVIN:  It's the -- just to make sure I am

20    correct.  It is Count 4, Count 5, and Count 6.

21          THE COURT:  4, 5, and 6?

22          MS. MEDVIN:  Counts 4, 5, and 6.  Each one are

23    charged under 18 USC 1752, and they have an essential

24    element of the offense that a restricted area be proven, and

25    there is a variance in how it was -- or the particular area

1    that was restricted that was proven.

2         THE COURT:  And just, again, analytically, 4, 5,

3    and 6, restricted area is a very important point.  Counts 7

4    and 8, the term of art that you have a separate argument on

5    but are not moving to dismiss on at the moment does not use

6    the term "restricted area" because Counts 7 and 8, the term

7    of art that's important is what are the Capitol grounds.

8         MS. MEDVIN:  Capitol grounds.

9         THE COURT:  That's different?

10        MS. MEDVIN:  That's a different issue.

11        So it's a very particularized issue.  It is for

12   the restricted area, and the specific counts that are

13   impacted because it's an essential element of the offense

14   are 4, 5, and 6 only.

15        I wish it would be more that were impacted by it,

16   but no.

17        And I could show a side-by-side image to the

18   Court, if that would be assistive in evaluating, but I think

19   the government is fully aware.  We have submitted it as an

20   exhibit.  We didn't end up entering it, but I think the

21   government is aware that there is a differential.

22        THE COURT:  One thing that would be helpful, since

23   I'm probably not going to rule this minute, is if you would

24   make a copy of that grand jury exhibit, the affidavit, and

25   the map that went with it available to me.  And if you don't

```
 1   have an extra copy, we can make one in chambers and give it
 2   back to you.
 3            MS. MEDVIN:  We could email it.  I have a PDF from
 4   the government, and so we can email it to chambers.
 5            THE COURT:  Talk to Michaela when we adjourn.
 6            MS. LEDERER:  Your Honor, if I may, just while
 7   we're on the topic of this grand jury map, if we end up
 8   filing anything, we would --
 9            THE COURT:  Why don't you come up.
10            MS. LEDERER:  Thank you, Your Honor.
11            I just want to make this note now because
12   Ms. Medvin brought up sharing the grand jury map.  I just
13   want to be cognizant, if we're filing anything on the docket
14   later, that we're not -- we're careful that we're not
15   necessarily filing grand jury exhibits on the public docket.
16            MS. MEDVIN:  This particular map was actually
17   filed by the government in at least one of my cases that I
18   could recall in front of Judge Kelly.  They wanted to do an
19   amendment to the indictment through the Court and actually
20   submitted this map.
21            So it's a public record in at least one case that
22   I'm on.  I'm not sure that it's any longer protected.
23            THE COURT:  We don't have to resolve that question
24   now.
25            What I would like -- the government is obviously
```

1    aware of the affidavit and the map from the grand jury

2    because they provided it to the defense, and my clerks and I

3    would like to look at it.  So you'll make a copy available.

4          And so my question is whether the government would

5    like to respond to this motion now or whether you want to

6    look more deeply into it?  And come to the podium.  It's

7    easier.

8          MR. HAAG:  Thank you, Your Honor.  As a broad

9    stroke, having looked at *Gaither* for the first time myself,

10   that there are notes that it needs to be a material

11   difference between what was presented to the grand jury and

12   what was available at trial.

13         Given that this is a brand-new motion that the

14   defendant is bringing before the Court now, I do think it's

15   appropriate for some type of briefing on this just to make

16   sure that everyone is well apprised with the law on this

17   issue as well as the facts before the Court.

18         THE COURT:  Yes, it's important.

19         As I recall the *Gaither* case, and it occurred when

20   I was clerking on the circuit actually, the issue was as

21   follows:  It had always been tradition to present evidence

22   to the grand jury, and then they voted an indictment, and

23   then the government wrote up the indictment and gave it to

24   the grand jury foreman to sign.

25         And so the question in *Gaither* -- I think it was

1    by Justice Skelly, right?  But the question in *Gaither* was:

2    Well, has the grand jury really returned this indictment if

3    they've never seen the language of the indictment?

4            I mean, in theory you could present no evidence on

5    a count and just decide to add it to the indictment and the

6    foreman signs it without thinking.  So the idea behind

7    *Gaither* was you go back to the grand jury a second time with

8    the actual indictment language, and then they say, yes --

9    essentially say this comports with what we intended, and

10   they vote again.

11           That's -- and I haven't been in a grand jury room

12   in a few decades, but that was the underpinnings of *Gaither.*

13   And you may well be right that what is a variance under

14   *Stirone* and *Russell* and is interpreted by *Gaither*, and is

15   this material or is this not material, whatever.

16           But I think, you know, you should brief it.  And

17   it may even be -- up to you, of course, whether it's

18   appropriate to check with your appellate people or your

19   grand jury people or whomever.  But let's -- you can let us

20   know.  I don't think it has to be done tonight and maybe

21   could be done later.  And if she wants to reply in writing

22   depending on how extensive what you do is, then she can have

23   time to do that, too.

24           MR. HAAG:  Your Honor, if I can clarify?  Is the

25   defense going to file their own written motion that the

1    government would have an opportunity to respond to, or is

2    the Court asking for a response based on the oral

3    representations made here?

4            THE COURT:  If I'm not going to rule today, do you

5    want to do something more fulsome in writing, or would you

6    rather, Ms. Medvin, they just respond to what you've said

7    orally and then you can reply to that?

8            MS. MEDVIN:  I think we've laid the grounds and

9    made the motion.  The government could respond, and we'll

10   reply to whatever they put on the record.

11           THE COURT:  Okay.  I think that will work.

12           MR. HAAG:  I think that's fine.

13           THE COURT:  She's relied on three basic cases, and

14   that may be all there is that's relevant.  There may be some

15   post-*Gaither* cases I'm unaware of.  Obviously if you cite

16   cases beyond those three, she's going to want to respond,

17   and she'll want to respond regardless.

18           So, you know, we'll agree on a schedule or you can

19   agree on a schedule, and maybe you want to let us know after

20   checking with some other people in your office.

21           MR. HAAG:  Will do.  Thank you, Your Honor.

22           THE COURT:  So I can reserve on that, again,

23   because it's a nonjury trial.  If the jury were here, I

24   think the defense would prefer that I throw out counts if I

25   were going to do it before they began their deliberations.

1           Rule 29.

2           MS. MEDVIN:  For Rule 29, I'm going to renew --

3   first of all, I will renew the Rule 29 motion that we made

4   at the close of the government's case and we're renewing it

5   at the close of all the evidence now.

6           THE COURT:  All the evidence.

7           MS. MEDVIN:  So to preserve.

8           As far as argument for Rule 29, I will only make

9   specific oral argument.  Even though I'm preserving for all

10  nine counts the rule, but in terms of oral argument, I'll

11  make on Count 8, Count 6, and Count 5.

12          THE COURT:  I thought for sure you were going to

13  say something about Counts 1 and 3, but...

14          MS. MEDVIN:  I may do that as well later, but I

15  will -- I was going to separate it out.

16          THE COURT:  Okay.

17          MS. MEDVIN:  But for the initial argument.

18          THE COURT:  Counts 5, 6, and 8.

19          MS. MEDVIN:  Let's put them all together to make

20  it easier.  I'll actually -- I'll start with Counts 1 and 3.

21          For Counts 1 and 3 -- I'll start when the Court's

22  ready.

23          For Counts 1 and 3, a victim is named in each of

24  these counts, and that is Officer AW, who we have learned in

25  the course of this trial is Sergeant Anthony Warner.

1          Sergeant Anthony Warner has unfortunate memory

2     lapses as to what happened.  Sergeant Warner actually

3     testified to not recalling having any interactions with

4     protesters.

5          He was asked:  Do you recall any specific

6     individual that you were interacting with as you were trying

7     to close the doors?

8          No, sir, he answered.

9          During the struggle, do you recall if anyone

10    touched you?

11         Answer:  I do not.  Again, in the struggle, I'm

12    thinking those are officers to my left and they're trying to

13    pull -- and I'm going to enunciate the word "pull" for the

14    Court -- so until I see the videos when I realize what's

15    going on.

16         So he says he needs the video to see what's going

17    on.

18         Then he's asked on redirect:  Do you know where

19    the defendant's elbow is at this point where he's watching a

20    video?

21         He says:  No, I do not.  I can only imagine it

22    looked like -- again, from the video, he imagined contact

23    from reviewing the video.  That's what he said on redirect.

24    That's this officer's memory.

25         He just didn't remember the incident.  He didn't

1   remember interacting with Mr. Warnagiris.  He had overall

2   poor memory.

3           We had the government's agent, FBI Agent

4   Weatherhead testify to having a variety of contact with

5   Officer Warner that he didn't recall having with him, and he

6   thought he met off -- I'm sorry, he thought he met Agent

7   Weatherhead in the Library of Congress, which never

8   happened.

9           So Officer Warner's memory isn't just poor as to

10  January 6th events, it's just simply poor overall, including

11  events after January 6th.  He just wasn't able to make this

12  case for the government.

13          But he is an essential witness for the government

14  to convict on these charges, and so the testimony of Officer

15  Warner is not sufficient as a matter of law to uphold Count

16  1 and Count 3 and other charges that mention assault, which

17  would also be Count 8 and Count 6.  He is an essential

18  witness for all of those elements.

19          Moreover, the government did not prove an assault

20  as this Court defines it.  This Court's assault definition

21  is an intentional attempt or threat to inflict injury upon

22  someone else when coupled with apparent and present ability

23  to do so.  There has to be an intention to inflict injury,

24  and no evidence presented to the Court shows that

25  Mr. Warnagiris had any intention to inflict injury on

1    Officer Warner.

2            Officer Warner, when he was asked what do you

3    think he was doing, he was answering that he was trying to

4    keep the door open as opposed to inflicting injury.

5            The government didn't meet its burden to even

6    carry this past the Rule 29 stage because of that witness.

7            As far as the assault, furthermore, incidental

8    contact, whether there was or wasn't, the government may

9    have met that burden.  Maybe there was contact; maybe there

10   wasn't.  But that's not enough.  That's not enough to

11   sustain the legal element of assault, which is required for

12   Count 6 and Count 8 and for parts of Count 3 based on this

13   Court's decision and interpretation of *Cua*.

14           The government's witness, Anthony Warner,

15   testified that Mr. Warnagiris had both hands on the door.

16   He testified on cross and on redirect that Mr. Warnagiris's

17   hands were on the door.  He understood the interaction to be

18   that Mr. Warnagiris is trying to push open a door, not to

19   intentionally inflict an injury.

20           THE COURT:  Who said that?

21           MS. MEDVIN:  Not to intentionally inflict.

22           THE COURT:  I know.  Warner said that, you said?

23           MS. MEDVIN:  Oh, Warner said the first part, now

24   I'm interpreting.

25           The government is not able to establish -- none of

1    the evidence comes close to even establishing, even with all

2    inferences, that Mr. Warnagiris intended to inflict an

3    injury.

4            And as far as the government's case in a Rule 29,

5    the point of a Rule 29 is to prevent speculation during

6    deliberations, and in this case, with the type of evidence

7    that's presented, it calls for speculation -- requires, in

8    fact, speculation -- in order to come to a verdict.  And

9    because of that, this case shouldn't go past the Rule 29

10   stage.

11           And I have case law that I can submit in a general

12   memo to the Court on Rule 29.  I'm sure the Court's very

13   familiar with the case law.

14           THE COURT:  I've got all the D.C. Circuit case

15   law.

16           And if you -- I wrote a very lengthy opinion in

17   the case against a police officer, Metropolitan Police

18   Officer Sutton, a while back.  We had a nine-week jury

19   trial, and he raised some issues, so I laid out what I think

20   the law is on Rule 29.

21           Now, that was a jury trial, admittedly, but in a

22   decision called *Jabr*, J-A-B-R, I said that Rule 29 also

23   applies in nonjury trials.

24           MS. MEDVIN:  And I know a similar opinion from

25   Judge Nichols as well, that Rule 29 applies in nonjury

```
1    trials.
2                THE COURT:  In the case you cite all the time
3    because you were defense counsel.
4                MS. MEDVIN:  Yes, that one with Judge Nichols.  We
5    have a lot of case law from that where a lot of issues have
6    come out.
7                As far as Counts 5 and 6, these are counts that
8    require for the government to establish that Vice President
9    Mike Pence was or would be temporarily visiting an area that
10   was posted, cordoned off, and otherwise a restricted area
11   within the United States Capitol and its grounds.  So the
12   specificity of the language for Counts 5 and 6 requires, as
13   an essential element, for the government to prove that the
14   vice president was within a restricted area.  And the
15   government had a witness testify as to the vice president's
16   whereabouts, and she did not testify as to the restricted
17   area.
18               Court's indulgence.
19               The specific language that was used before this
20   Court at trial was a security perimeter somewhere in the
21   Capitol grounds.
22               THE COURT:  Say that again.
23               MS. MEDVIN:  It was a security perimeter, and it
24   was within the Capitol grounds.  That was the testimony.
25   There is no specific testimony on the record for the
```

1    government to sustain its burden for Counts 5 and 6 as a

2    result.

3          Counts 5 and 6 necessarily require the

4    contemporaneous presence of the defendant and the vice

5    president as well, and Counts 5 and 6 are referencing a time

6    period where the defendant -- which would have been

7    happening after Vice President Mike Pence would have already

8    left the Capitol building itself.  And so for that reason,

9    the government is not able to establish on those two.

10          And I'll just, for purposes of pointing this out,

11    Count 4, for example, talks about entering and remaining in

12    a restricted building or grounds.  We're not making this

13    motion on Count 4 because that would have had a different

14    time period in terms of a contemporaneous presence between

15    the two.  But Counts 5 and 6 talk about a time period at

16    which Vice President Mike Pence has left, and it's an issue

17    of determining whether he's in the restricted area, and the

18    government was not able to do that with the evidence that

19    was presented.

20          So for purposes of Rule 29, Counts 5 and 6 on

21    those grounds need to be acquitted.  And so for a simple

22    argument, Judge.

23          We will reserve additional argument for after the

24    government presents their response.

25          MR. HAAG:  Your Honor, starting first with Count 1

 1    of the indictment charging the defendant with forcibly

 2    assaulting, resisting, opposing, impeding, intimidating, or

 3    interfering with any person designated under Sections 111

 4    and 114 in this case would be Sergeant Anthony Warner.  The

 5    government has clearly met its burden under Rule 29 in this

 6    case.

 7            The defendant, when he came into the main Rotunda

 8    doors, also called the East Rotunda doors during this trial,

 9    he stepped inside and held the door open as rioters streamed

10    inside the building.

11            THE COURT:  You're talking about Count 3?

12            MR. HAAG:  Am I talking about, yes, Count 3.  I

13    apologize, Your Honor.

14            THE COURT:  Yes, Count 3 is the one that uses the

15    word "forcibly" and has a long list of verbs.  Count 1 --

16            MR. HAAG:  Is civil disorder.

17            THE COURT:  Statute 111(a)(1) is Count 3.

18            Count 1 does not have the word "forcibly."

19            MR. HAAG:  Yes, Your Honor.  I was mixing up 111

20    and 231.

21            THE COURT:  Just for the record.

22            MR. HAAG:  I appreciate the clarification.

23            So when the defendant was inside the Capitol, he

24    was holding the door open so that rioters could stream

25    inside.  At that point Sergeant Warner came inside.

1          The video for this case clearly demonstrated that

2     Sergeant Warner was trying to close the doors.  You could

3     see Sergeant Warner's arm outside through the door frame

4     trying to pull the door closed.  That was also consistent

5     with Sergeant Warner's testimony about what was happening at

6     the time.

7          Then almost immediately as Sergeant Warner was

8     trying to close the doors, the defendant stepped in, and the

9     video shows that he was pushing against Sergeant Warner.

10         That, in and of itself, is sufficient to make out

11    the government's position and burden for Count 3,

12    specifically as to the charges -- the verbs of assault,

13    resisting, opposing, impeding, potentially intimidating, but

14    certainly interfering with Sergeant Warner in the execution

15    of his duties on January 6th; his duties specifically being

16    to protect the Capitol and protect the members of Congress

17    inside.

18         THE COURT:  And I've said and other judges have

19    said, and it's clear that if the government proves any one

20    of these things -- I mean, you do not have to prove an

21    actual assault if you prove imposing, impeding,

22    intimidating, interfering, right?

23         MR. HAAG:  Certainly, yes, Your Honor.

24         And with respect to the portion regarding assault

25    versus intent to commit another felony, the government's

1    position is that the defendant certainly was intending to

2    commit another felony.  There was some back-and-forth

3    pretrial about whether or not the 231 charge could be the

4    predicate for the intent to commit another felony.  The

5    government believes that is exactly what we have here.

6           In addition to the 231 charge, however, there was

7    the defendant's intent to obstruct the official proceeding,

8    the 1512 counts.  And based not just on his physical actions

9    that day as well as his text messages leading up to January

10   6th, it is clear that when he was trying to assault Sergeant

11   Warner, that his intent at that time was to commit another

12   felony.

13          Your Honor, the government is not conceding that

14   there wasn't an assault in this case.  There was an unwanted

15   touching.  You could see in the video that there was contact

16   between the defendant as well as Sergeant Warner.  And

17   specifically on direct examination I asked Sergeant Warner

18   if he had invited anyone to touch him that day, and he

19   indicated that he did not.

20          Turning next to Count 1, the 231 count.  I think

21   this largely mirrors the government's position just stated

22   for the 111(a) count.  Here you had Sergeant Warner, who was

23   trying to conduct his official duties that day, but when the

24   defendant came in, he, in fact, either obstructed, impeded,

25   or interfered with Sergeant Warner during the execution of

1    his duties.

2              Now, there certainly are some additional elements

3    to civil disorder.  That was certainly met here.  The

4    definition -- I believe it's under 232 -- indicates that

5    there needs to be multiple interactions with other

6    individuals.  The video in this case clearly shows a very

7    chaotic scene on the Capitol grounds on January 6th.

8              As far as interference with a federally protected

9    function, that, here, would be the United States Capitol

10   Police's efforts to protect Congress.  Congress is a federal

11   instrumentality.  It is a branch of government that in and

12   of itself is proving that point.

13             But additionally, there is the United States

14   Secret Service efforts to protect its protectees in this

15   case, who would be the vice president and his family.

16             And you heard from Special Agent Hawa exactly who

17   was present at the Capitol that day.

18             Additionally, the government provided Your Honor

19   with evidence regarding impact on interstate commerce.  I

20   know we didn't go into testimony about it, but there is

21   testimony in the record indicating the impact on Safeway as

22   a result of this civil disorder.  The fact that Safeway had

23   to follow the curfew, close early, and the impact on

24   Safeway's sales and their shipping and all of that is in the

25   evidence provided to the Court.

1          Responding to defense counsel's claims regarding

2     the restricted area, that, Your Honor, as you noted during

3     the trial, did not need to be proved through a single

4     witness.  There were multiple witnesses that talked about

5     how the grounds that day were restricted, starting first

6     with Special Agent Hawa indicating that Vice President Pence

7     in fact went to the Capitol that day.  He went to his

8     temporary office.  That shows that he was visiting the

9     Capitol that day.  His permanent office is back at the White

10    House.

11         We saw from Special Agent Hawa's testimony that he

12    arrived at the Capitol shortly before 1:00 p.m. that day and

13    he remained at the Capitol throughout the day into the early

14    morning hours of January 7th.

15         I would note that the statute says "will be

16    temporarily visiting," indicating some huger possibility of

17    a protectee visiting.  And that's exactly what we have here.

18    Your Honor saw the video of Vice President Pence being

19    relocated from the Senate Chamber where he had to be

20    relocated due to the breach of the Capitol.

21         At that point, that was around 2:26 p.m., the

22    defendant had entered the building at 2:25 p.m.  So there is

23    some contemporaneity -- I'm not even sure I can say that

24    word again.

25              THE COURT:  I have trouble with that word, too.

1          MR. HAAG:  They were in the building at the same

2     time.  Let's go with that.  So for that, the defendant was

3     in the building at the same time that the vice president was

4     there.

5          But additionally, we saw from Special Agent Hawa's

6     security form that she had provided to the Capitol Police

7     exactly what Vice President Pence's schedule was going to be

8     that day.  And after he had arrived at the Capitol, there

9     was an open-ended to-be-determined time that he was going to

10    be at the Capitol.  And the reason for that is because the

11    Secret Service did not know exactly what his schedule was

12    going to be as a result of the certification.  It seemed to

13    be that there was some expectation that there was going to

14    be objections from both sides of the Congress which would

15    require, as Special Agent Hawa testified, physical movements

16    by Vice President Pence from one side of the Capitol to the

17    other.  So that is satisfying the government's burden as to

18    the "will be temporarily visiting," because there's some

19    idea of future scope to his actions and his location that

20    day.

21         I believe those are the only arguments that

22    defense had raised.  The government would certainly oppose

23    Rule 29 on all grounds.

24         I'm happy to go through additional argument at

25    this juncture, but I believe that the government has met its

1    burden as to all elements and on all counts and would ask

2    that the Court deny the defendant's motion.

3            MS. MEDVIN:  The defense argument under Rule 29

4    goes to the issues and elements that the government did not

5    meet, and in response -- well, the government responded as

6    well here are other elements that we did meet of the same

7    statutes.  And I understand that the government wants to

8    concentrate on what they think they've met.  The arguments

9    were specifically on the issues that they have failed to

10   meet as a matter of law.  And so the issues that we brought

11   out to this Court are --

12           THE COURT:  Wait.  I'm not sure that's exactly

13   right.

14           So his response to your argument on both Count 1

15   and Count 3 is that even -- part of his response, even if --

16   even if the defendant did not assault Officer Warner, he

17   interfered with Officer Warner in the performance of his

18   duties and maybe also opposed, impeded, or resisted or

19   whatever, but he emphasized -- and only one of these verbs

20   has to be proved beyond a reasonable doubt.  He emphasized

21   interfered with.  And he's arguing that the video, to a

22   great extent, and Officer Warner to a lesser extent -- and,

23   again, I'm putting words in his mouth -- is sufficient to

24   show an interference.

25           MS. MEDVIN:  So for that code section -- this is

1    why I was going to leave it as a separate one, because the

2    *Cua* decision impacts -- and this Court adopted the *Cua*

3    decision -- it impacts how we argue it.

4         There are three separate crimes under 111(a).

5         THE COURT:  Wait, there are three separate crimes

6    of assault.  Isn't that what *Cua* said, no?

7         MS. MEDVIN:  The first two require to show

8    assault.

9         THE COURT:  Go ahead.  You're right.

10        MS. MEDVIN:  You must show assault for misdemeanor

11   assault or you have to show assault with the touching or one

12   of the other verbs together within a contemporaneous intent

13   to commit another felony.

14        THE COURT:  Wait, wait, wait, wait.  Under -- I

15   have to recall what I said in *Cua*.  It was complicated at

16   the time.  I've written about it.  You've all read it, and

17   I'll look at it again.

18        But forcibly -- there can be simple assault and

19   blah, blah, blah, but "forcibly" modifies each of the verbs.

20        MS. MEDVIN:  Correct.

21        THE COURT:  And they only have to prove one of

22   those verbs, one of those pieces of conduct, and that it was

23   done forcibly.  And that -- with the necessary intent.  And

24   that's Count 3.

25        Now, Count 1 is they have to prove that he's

1    engaged in lawful performance of his duties while a civil

2    disorder is going on, and there's no need to prove an act

3    was done forcibly, but there is a requirement of proving

4    that he interfered with a law enforcement officer lawfully

5    performing his duties.

6            So, I mean --

7            MS. MEDVIN:  For those we just go to the witness's

8    inability, the main witness's inability to recall that.  And

9    so the arguments related to the witness's inability to

10   recall what happened and --

11           THE COURT:  But he's relying more on the video

12   than on the witness, right?  And at least he didn't concede

13   anything.  But so -- I mean, I don't know whether we're just

14   going around in circles here.  But the question is --

15           MS. MEDVIN:  So Rule 29 --

16           THE COURT:  The question is whether or not there's

17   enough when you combine the testimony with the videos to --

18   and drawing all reasonable inferences in favor of the

19   government, to let the fact-finder -- in this case me --

20   decide whether it's proved beyond a reasonable doubt.

21           MS. MEDVIN:  The only question on those issues

22   that I posed to the Court was whether Anthony Warner's

23   testimony was sufficient to even bring that case to the

24   fact-finder.  So those are the issues I raise --

25           THE COURT:  But it's not Anthony Warner's

1    testimony alone; it's all of the evidence that I've heard

2    and seen over the last few days.

3          So the government is -- will dispute your

4    criticism of the helpfulness of Warner's testimony, but even

5    if Warner wasn't here, they would have the videotape, and

6    they would say -- and Mr. Haag did say -- that the videotape

7    is very strong evidence on Counts 1 and 3.

8          I mean, I'm not trying to -- I'm just trying to

9    say -- you made a very good argument, okay, and you hit all

10   the right points, and it's strong.  But I -- now, and again

11   later, but now with a lesser standard, I have to say, well,

12   given all the evidence I've seen and heard, and you said at

13   the very outset that -- I think you said that at the end of

14   the day with respect to Counts 1 and 3 it's all about a few

15   moments at the door.  And even if I disregarded Sergeant

16   Warner completely, hypothetically, the government would say

17   look at the videotape, and that's enough.

18          And is it enough to survive a Rule 29?

19          MS. MEDVIN:  I don't have additional legal

20   arguments on that point, Judge --

21          THE COURT:  Okay.  That's where -- that's where --

22          MS. MEDVIN:  -- for those two counts.

23          THE COURT:  That's where they are.

24          MS. MEDVIN:  Court's indulgence.

25          THE COURT:  And it is what it is.  That's all I'll

 1    say at the moment.

 2            MS. MEDVIN:  But nonetheless, for Count 6, which

 3    talks about an act of physical violence, and Count 8, which

 4    talks about an act of physical violence, which this Court

 5    interpreted already in our motion in limine, it requires for

 6    the government to have proven an assault.  And under this

 7    Court's definition of assault, which requires an intent to

 8    prove an injury, that wasn't proven.

 9            So unlike Count 1 and Count 3, Count 8,

10    specifically -- Count 8 and Count 6 specifically require

11    proof of an assault.

12            THE COURT:  You said I decided that in the motion

13    in limine decision?

14            MS. MEDVIN:  It was -- I think it was Monday's

15    hearing.

16            THE COURT:  Oh.

17            MS. MEDVIN:  Or maybe it was actually even before

18    that.  But there is a federal code section that interprets

19    the language --

20            THE COURT:  Oh, okay.  Now I know what you're

21    talking about.

22            MS. MEDVIN:  It was 40 USC something.

23            THE COURT:  I agreed that the common law

24    definition of "assault" applies, and then I went to Judge

25    Moss's opinion in *Cua*.

1          MS. MEDVIN:  It was before that hearing, at one of

2     the other -- because we had a lot of pretrial hearings.

3          THE COURT:  Do either of you know what she's

4     referring to?

5          MS. MEDVIN:  I would be -- if we took a break, I

6     could pull up the ECF files.  It was a written document.  It

7     was something we proposed in ECF-70 and something that you

8     responded to I believe in writing in response to that and

9     some of the government's pretrial issues determining what is

10    a definition of physical violence as is used in Count 8 and

11    Count 6.  And that definition included under 40 USC -- I

12    don't currently recall the code section.  I have it up on my

13    laptop, so if we take a break, I can get everything for this

14    Court --

15         THE COURT:  I know that I discussed after the

16    final pretrial conference in Docket 128 --

17         MS. MEDVIN:  This was before that.  It may have

18    even been --

19         THE COURT:  -- the definition of assault.

20         MS. MEDVIN:  This is the definition of "physical

21    violence."  This was maybe October.

22         THE COURT:  If somebody can find whether I ever

23    said anything about that.

24         Was it in the motion to dismiss or --

25         MS. MEDVIN:  No.  I cited it in ECF-70 in my -- I

1      guess we called it, I think, a trial brief.  I cited the

2      issue.

3              And then the Court, I believe, issued a written

4      order that cited this, or this would have been at a hearing,

5      but I think this was actually in a written response.  And it

6      went through -- actually, I have a copy of it.

7              THE COURT:  Well, in 71, Docket 71, you make the

8      argument on Page -- it began on Page 1 as to what "physical

9      violence" means under the very counts you're now talking

10     about.  And you say it's specifically defined in 5104(a)(1)

11     as an act involving an assault or other infliction or threat

12     of infliction of death or bodily harm on an individual or

13     damage to or destruction of real or personal property.

14             And then you say -- in other words, physical

15     violence refers us, under 5104(a)(1), to an assault.  So

16     then you go to defining "assault," and you rely on 18 USC --

17     you say -- it tells me to look at the common law for assault

18     and battery.  And then you go to all of the cases that Judge

19     Moss cited, *Feola* and other cases and *Cua.*  And then you go

20     from the common law discussion to the model penal code

21     instruction.  And then you go to *Duran*, which I think we

22     rejected as to Judge Moss, and to *DaSilva*.

23             And then you go back to the model penal code,

24     which I've rejected, and I don't know whether the government

25     responded in -- to Docket 71 discussion of physical

 1   violence.  But I do not recall -- and my law clerks and I

 2   will look for it -- whether I said anything about physical

 3   violence separate and apart from what I said about how I

 4   read the word "assault," because your "physical violence"

 5   argument, which basically was limited to less than half a

 6   page, ultimately takes us to the term "assault," which you

 7   then spend the next, you know, seven or eight pages

 8   discussing.

 9           MS. MEDVIN:  Correct, which are separate issues.

10   One is what is the definition of "physical violence," and

11   then separately, because physical violence --

12           THE COURT:  Well, you said physical violence -- in

13   order to define "physical violence," you take me to

14   5104(a)(1), which says "physical violence is an act

15   involving assault," and then the rest of the brief discusses

16   the word "assault."

17           MS. MEDVIN:  And the Court used a different

18   definition, which is almost identical to the one we

19   proposed, but the Court used a different definition as far

20   as injury.

21           So we have a definition for "assault," but the

22   question is what is still physical violence and that says

23   assault.  So now we know physical violence is assault, and

24   so now the Court has defined "assault" separately.

25           THE COURT:  Okay.

1          MS. MEDVIN:  So "assault," as this Court defines

2     it, is --

3          THE COURT:  You don't like my definition of

4     "assault," but I've told --

5          MS. MEDVIN:  I did not say I did not like it.  I

6     used your definition of "assault" in my argument.

7          THE COURT:  All right.  Well, I'm not quite sure

8     where we are on the physical violence question.  Maybe we

9     can figure it out later.

10          MS. MEDVIN:  I will try to look for that briefing.

11     I believe you just adopted the code section for both of

12     these, which was the 40 USC 5104, I believe you said.  I

13     will go look for that.

14          THE COURT:  Okay.  Thanks.

15          All right.  So let me suggest the following --

16          MS. MEDVIN:  Sorry, Judge, I wanted to respond to

17     a couple of other arguments.

18          THE COURT:  Oh, go ahead, I'm sorry.

19          MS. MEDVIN:  As far as the government's arguments

20     with regard to Counts 5 and 6 and talking about the

21     sufficiency of the evidence before the contemporaneous

22     presence of Vice President Pence and the defendant within a

23     restricted grounds, again, the government brushed over that

24     restricted grounds element.  That is an essential element of

25     those code sections that the government simply failed to

1    prove with respect to Vice President Pence being within the

2    restricted area.

3            The restricted area -- that code section requires

4    that, number one, the restricted area itself, it was

5    required to be proven.  Number two, that Vice President

6    Pence and the defendant were simultaneously within that

7    restricted area together.  And the government failed to

8    establish that.

9            THE COURT:  Anything else anybody wants to say at

10   the moment?

11           MR. HAAG:  Briefly on the "assault" definition,

12   Your Honor.

13           As I understand from the Court's ruling in ECF-

14   128, the Court defined "assault" using the common law

15   definition of "assault."  There are portions of that

16   definition that include an intent to inflict injury, but

17   that's not the only definition of common law assault.

18   Battery is a form of assault, which is an unwanted touching.

19   So I'm not sure why defense is only focusing on -- I know

20   why defense is focusing on just the intent to injure, but

21   that is certainly not the only form of assault that would

22   fall under a common law assault.

23           THE COURT:  All right.

24           MS. MEDVIN:  Judge, I will respond to that.

25   Actually, the definition of "assault" that I retrieved was

1    from the instructions the Court kept referencing.  You said

2    look at the -- I can't say the name, *Gossjankowski*.

3          THE COURT:  Oh, *Gossjankowski*.

4          MS. MEDVIN:  That.

5          The Court kept directing our attention to those

6    instructions.  The definition of "assault" that I retrieved

7    was from this Court's instructions in another case.  And

8    that definition of assault comports with the common law

9    definition of assault that was used in the D.C. Circuit.

10   The D.C. Circuit did not have that unwanted touch as some

11   other circuits have, but as we presented in a lot of briefs,

12   there were a variety of different ways to define "assault"

13   in different jurisdictions, but the one used by this Court

14   as referenced during the pretrial conferences required an

15   intent to inflict an injury.

16         THE COURT:  All right.  I mean, I can rule

17   partially now or I can do it in the morning.

18         How long are the closing arguments going to be?

19   Roughly.  You don't have to be precise.  There's a lot going

20   on in this case.

21         MS. LEDERER:  Roughly 20 to 30.  I have not timed

22   it.

23         THE COURT:  Oh, that's all?  I would have thought

24   more.

25         MS. LEDERER:  It could be more.

1          Honestly, I haven't timed it.  Let's go 20 to 40.

2    Hopefully closer to 20 than 40, but probably within there.

3          MS. MEDVIN:  I was hoping to keep it in under an

4    hour.

5          THE COURT:  Okay.  Well, the question is -- I

6    can't start tomorrow until about 10:30, and if I'm going to

7    rule on the -- the only question that's been raised that I

8    want to take another look at is this last thing we've been

9    talking about about physical violence.  I mean, I think

10   maybe I've already answered it, but other than that, I can

11   rule now orally on the Rule 29, and then we could begin

12   closing arguments at 10:30 in the morning.

13          If I reserve ruling on the Rule 29 until tomorrow

14   morning, then we may not get it all done before people want

15   to take a lunch break.  But we might be able to get it done

16   before everyone takes a lunch break.

17          So if everybody's willing to stay for ten more

18   minutes, I'll rule on the Rule 29 with one exception, and

19   then we can start with your closing at 10:30.

20          MS. MEDVIN:  I think that would be helpful.

21          MS. LEDERER:  That's fine with the government,

22   Your Honor.

23          THE COURT:  Pardon me?  Okay?

24          All right.  So look, and if you want to -- if

25   anybody wants to pinpoint anything else, my clerks will also

1    look at where I discussed physical violence, and we'll look

2    again at the *Gossjankowski* instruction and stuff, and I may

3    want to add something on that.

4        But that having been said, I said in *Jabr* and

5    Judge Nichols said in *DaSilva* that Rule 29 applies whether

6    it's a jury trial or a nonjury trial, and I said that it

7    applies in a bench trial, and the same standard applies, and

8    the same sufficiency evidence standard applies and the same

9    burdens apply.  And that basically is that I have to view

10   the evidence in the light most favorable to the government

11   when ruling on a Rule 29, even though later on, as the

12   ultimate fact-finder, I have to hold the government to its

13   burden of proof beyond a reasonable doubt.

14       So at this point I'm not ruling on credibility of

15   witnesses, but I'm really applying the legal standard to the

16   government's case, drawing all inferences in their favor in

17   deciding whether any reasonable fact-finder, considering the

18   evidence in the light most favorable to the government,

19   could find guilt beyond a reasonable doubt.

20       And in this case, with respect to Counts 1 and 3

21   where Officer Warner is the alleged victim, it seems to me

22   that drawing all reasonable inferences in favor of the

23   government, despite any flaws in Officer Warner's memory and

24   recollection, the videos are evidence from which the

25   government could exclusively rely and still get to a jury or

1    to a fact-finder in this case, if you draw all reasonable

2    inferences in their favor, recognizing that those few

3    moments can be interpreted differently and will be

4    interpreted differently during the closing arguments of the

5    parties, I am sure.

6            And so while Ms. Medvin argues that Warner is

7    essential, I don't think he's essential.  The government

8    will tell me why they think his testimony contributes to the

9    overall picture, but the videos alone, it seems to me, are

10    sufficient for Counts 1 and 2 to get to a jury or, in this

11    case, to me, the fact-finder.

12            With respect to Counts 5 and 6, whether the vice

13    president was in a restricted area while Mr. Warnagiris was

14    present, she says that Special Agent Hawa did not establish

15    this.  And it seems to me that drawing all reasonable

16    inferences in favor of the government, she did, in

17    combination with other things, including the video, which

18    shows -- we know what time the evidence shows -- what the

19    government's evidence says shows when the defendant arrived.

20    We saw and know what time the vice president left I think

21    either his office or the -- his office, I think, but headed

22    down those stairs.  There is a video on that, and Agent Hawa

23    was in the video.

24            And with respect to that video and the timeline of

25    that video and the timeline of the defendant being present

1    and drawing all reasonable -- and what she testified about

2    where he went in general terms, but sufficient for a

3    reasonable fact-finder to find that he was in a restricted

4    area even after he left at 2:25 or 2:26, whatever it was.

5    Drawing all reasonable inferences in the government's favor,

6    this gets to the fact-finder under Rule 29.

7          With respect to Count 3, which requires something

8    to be done "forcibly," whether a touching is sufficient

9    because common law assault includes battery or not doesn't

10   really matter because there is a reasonable -- drawing all

11   reasonable inferences in favor of the government, a fact-

12   finder could find that the defendant interfered with -- with

13   Officer Warner doing his duties with intent to commit

14   another felony under 231.

15         And similarly, under Count 1, which does not

16   require force, a reasonable fact-finder, drawing all

17   inferences in favor of the government, could find that he,

18   quote, interfered with Officer Warner.

19         And, again, even if one discounted some of Officer

20   Warner's testimony because of his lack of recollection or

21   imprecision, there are videos.  And videos are evidence from

22   which a reasonable juror could so find.

23         231, we've got the Safeway evidence.  That's an

24   impact on interstate commerce.  And the other felony, a

25   performance of a federally protected function, we've already

1   talked about.

2           So -- and with respect to restricted area under 5

3   and 6, I think between Officer Hawa and then the timeline

4   and the videos, drawing all reasonable inferences in favor

5   of the government, that's where we are.  There's enough to

6   go forward so that a fact-finder can decide whether there's

7   enough to find guilt beyond a reasonable doubt.

8           Now, there may not be, but there's enough to get

9   beyond a Rule 29.

10          And if everybody wants to look at what has been

11  said by me or by you about "physical violence" under Counts

12  6 -- there are two counts, I think, that talk about physical

13  violence -- you know, we can -- we will deal with that one

14  later.  But I think I need my recollection refreshed on what

15  I said or what you said, or if there's any additional law or

16  cases that you want to send by email to Michaela later, you

17  can do that.

18          Is there anything else anybody wants to say before

19  we call it a day?

20          If not...

21          MS. LEDERER:  Not from the government, Your Honor.

22          THE COURT:  Okay.

23          MS. MEDVIN:  I would request a briefing date on

24  the *Stirone* and progeny case law.

25          THE COURT:  Yes, and Mr. Haag will tell us that

1    tomorrow after he checks with other people.

2                MS. MEDVIN:  Oh.

3                THE COURT:  Because, you know, you've raised an

4    issue that could affect other cases and could affect their

5    office's view of how grand juries run and what *Gaither*

6    requires and what *Gaither* doesn't require.  And so I think

7    we should try to get it done reasonably soon, but I think he

8    needs to talk to some other people before he gives us a

9    date.

10               But before we leave here tomorrow, we'll have a

11   briefing schedule.

12               MS. MEDVIN:  So would it be fair to advise my

13   client that no decision would be rendered any time soon on a

14   lot of his charges and not to worry about having to discuss

15   issues with continued bond or --

16               THE COURT:  Continued bond.

17               MS. MEDVIN:  -- potential issues relating to

18   continued release?

19               THE COURT:  Oh, no, there's no problem.

20               MS. MEDVIN:  No problem.

21               THE COURT:  A presumption of innocence until I

22   rule.  And what I've said -- I think I've said a number of

23   times -- that given the *Griffin* case in the circuit and the

24   *Fischer* case in the Supreme Court --

25               MS. MEDVIN:  So for the entire indictment then?

```
 1              THE COURT:  Yeah.

 2              MS. MEDVIN:  Yes.

 3              THE COURT:  I mean, I'm not going to issue a

 4    partial decision unless I grant your motion to dismiss.

 5              MS. MEDVIN:  We'll take that.  We will accept that

 6    type of partial ruling.

 7              THE COURT:  No.  We're going to be good until the

 8    Supreme Court decides.

 9              MS. MEDVIN:  Thank you, Judge.

10              THE COURT:  All right.  So 10:30 tomorrow morning.

11    So you guys should get here early enough to get yourselves

12    set up and your technology and whatever else you want to do.

13    I think it's -- since we don't have a jury, it's probably

14    best if you just argue from here, and it's probably best for

15    your computer hookups and everything else, right?

16              MS. LEDERER:  Yes, Your Honor.

17              THE COURT:  Anything else?

18              (Whereupon the hearing was

19               adjourned at 5:26 p.m.)

20

21

22

23

24

25
```

1          **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3              I, LISA A. MOREIRA, RDR, CRR, do hereby

4     certify that the above and foregoing constitutes a true and

5     accurate transcript of my stenographic notes and is a full,

6     true and complete transcript of the proceedings to the best

7     of my ability.

8          Dated this 6th day of May, 2024.

9

10                                /s/Lisa A. Moreira, RDR, CRR
                                   Official Court Reporter
11                                 United States Courthouse
                                   Room 6718
12                                 333 Constitution Avenue, NW
13                                 Washington, DC 20001

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'14** [1] - 45:2
**'alternate'** [2] - 37:20, 37:24
**'competing** [4] - 37:12, 37:17, 37:18, 123:23
**'competing'** [1] - 37:22
**'official'** [2] - 37:21, 37:23
**'procedure'** [1] - 37:20
**'process'** [1] - 39:15
**'send'** [1] - 37:24
**'slate** [1] - 123:23

**/**

**/mike** [1] - 46:5
**/s/Lisa** [1] - 176:10

**0**

**055** [13] - 95:24, 96:1, 98:13, 102:14, 106:24, 107:20, 108:3, 110:16, 111:1, 112:2, 115:18, 117:22, 118:12
**058** [3] - 87:1, 87:5, 87:20
**067** [3] - 80:4, 80:18, 129:19
**068** [7] - 77:22, 77:24, 78:21, 84:24, 85:15, 85:23, 129:11

**1**

**1** [19] - 13:23, 145:13, 145:20, 145:21, 145:23, 147:16, 151:25, 152:15, 152:18, 154:20, 158:14, 159:25, 161:7, 161:14, 162:9, 164:8, 170:20, 171:10, 172:15
**1/20** [1] - 32:9
**101** [5] - 99:19, 99:21, 102:7, 102:17, 103:9
**102A** [1] - 79:2
**1061** [1] - 137:20
**109** [1] - 1:19
**10:04** [6] - 61:15, 61:25, 62:12, 62:20, 63:8, 64:2
**10:07** [1] - 64:18

**10:20** [1] - 7:13
**10:30** [4] - 169:6, 169:12, 169:19, 175:10
**10:35** [1] - 1:5
**111** [2] - 152:3, 152:19
**111(a** [1] - 154:22
**111(a)** [1] - 159:4
**111(a)(1** [1] - 152:17
**113** [5] - 45:2, 45:4, 48:15, 85:13
**114** [5] - 45:2, 48:15, 86:2, 126:20, 152:4
**11:32** [1] - 115:2
**11:49** [1] - 115:17
**11:59** [4] - 49:7, 49:12, 52:6, 65:20
**12** [1] - 40:3
**12/14** [1] - 11:5
**12/14/2020** [2] - 29:16, 45:24
**12/31** [1] - 49:24
**124** [7] - 48:18, 48:19, 48:20, 48:23, 51:20, 54:21, 55:8
**125** [7] - 48:20, 48:22, 51:20, 54:23, 55:8, 127:7, 127:10
**128** [3] - 102:5, 163:16, 167:14
**12:04** [1] - 69:6
**12:32** [1] - 115:21
**12:45** [1] - 65:20
**12:51:33** [1] - 49:22
**12:55** [1] - 107:16
**12th** [1] - 32:6
**13** [1] - 107:16
**130** [10] - 55:11, 55:13, 56:23, 57:1, 78:19, 78:24, 78:25, 79:2, 79:4, 128:7
**131** [3] - 78:10, 85:16, 85:25
**132** [4] - 57:10, 57:11, 65:3, 65:7
**133** [4] - 58:16, 59:24, 59:25, 60:1
**134** [2] - 60:17, 61:21
**135** [2] - 62:5, 62:6
**136** [4] - 57:10, 63:17, 65:3, 65:7
**13:04** [1] - 107:16
**13:15** [1] - 116:7
**13:52** [1] - 116:13
**14** [9] - 33:1, 33:12, 33:23, 33:25, 78:4, 85:16, 85:24, 126:15, 126:19
**14:08** [1] - 116:14
**14:18** [1] - 116:16

**14:44** [1] - 116:25
**14th** [1] - 95:17
**15** [11] - 36:4, 36:6, 36:14, 36:18, 37:7, 39:9, 39:13, 117:2, 120:9, 120:17, 123:16
**15-minute** [1] - 104:9
**1512** [1] - 154:8
**15th** [1] - 39:11
**16:03** [1] - 117:12
**16:08** [1] - 117:14
**17** [3] - 78:6, 85:16, 85:24
**1752** [1] - 139:23
**17:45** [1] - 117:21
**18** [2] - 139:23, 164:16
**18:25** [1] - 118:9
**18:33** [1] - 118:11
**19** [1] - 97:3
**193** [3] - 84:25, 85:16, 85:25
**1960** [1] - 137:19
**1962** [1] - 137:16
**1969** [1] - 137:23
**19:51** [1] - 118:20
**1:00** [4] - 50:3, 50:15, 50:17, 156:12
**1:15** [1] - 69:6
**1:19** [1] - 56:9
**1:21-cr-00382-PLF-1** [1] - 1:4
**1:37** [2] - 50:25, 51:2
**1:47** [1] - 111:1
**1C** [2] - 138:20

**2**

**2** [11] - 10:21, 13:23, 17:25, 18:6, 19:4, 22:1, 23:7, 23:10, 26:2, 55:19, 171:10
**20** [7] - 30:5, 43:8, 43:19, 97:2, 168:21, 169:1, 169:2
**20-minute** [1] - 98:21
**20001** [3] - 1:15, 1:24, 176:13
**202** [2] - 1:15, 1:24
**2020** [34] - 19:14, 20:1, 23:2, 24:2, 33:1, 33:12, 33:23, 33:25, 36:4, 36:6, 36:14, 36:18, 37:7, 39:9, 39:13, 43:8, 43:19, 45:9, 45:11, 45:19, 47:6, 47:13, 47:15, 47:24, 49:7, 49:22, 50:3, 50:15, 50:17, 50:25, 51:2, 95:5,

123:16
**2021** [29] - 38:12, 38:17, 55:19, 56:9, 57:16, 57:18, 58:3, 58:5, 58:21, 58:23, 59:5, 59:7, 61:2, 61:13, 61:15, 61:23, 61:25, 62:10, 62:12, 62:18, 62:20, 63:6, 63:8, 63:25, 64:2, 64:18, 85:5, 87:25, 89:7
**2022** [1] - 68:14
**2023** [5] - 93:6, 93:20, 94:11, 94:18
**2024** [3] - 1:4, 102:5, 176:8
**21-382** [1] - 3:3
**212** [1] - 137:18
**22314** [1] - 1:19
**231** [6] - 152:20, 154:3, 154:6, 154:20, 172:14, 172:23
**232** [1] - 155:4
**24** [7] - 45:9, 45:11, 45:19, 47:6, 47:13, 47:15, 47:24
**252-7012** [1] - 1:15
**26th** [1] - 87:25
**270** [1] - 29:19
**28** [1] - 102:5
**29** [29] - 132:6, 137:11, 137:13, 145:1, 145:2, 145:3, 145:8, 148:6, 149:4, 149:5, 149:9, 149:12, 149:20, 149:22, 149:25, 151:20, 152:5, 157:23, 158:3, 160:15, 161:18, 169:11, 169:13, 169:18, 170:5, 170:11, 172:6, 173:9
**2:24** [1] - 39:9
**2:25** [2] - 156:22, 172:4
**2:26** [4] - 45:9, 45:19, 156:21, 172:4
**2:27** [3] - 45:11, 45:24, 120:17
**2:30** [3] - 120:21, 121:15, 122:2
**2:33** [1] - 47:6
**2:34** [1] - 47:13
**2:38** [2] - 39:13, 47:15
**2:41** [1] - 48:2
**2:55** [1] - 111:4
**2d** [1] - 137:20,

137:21, 137:22

**3**

**3** [25] - 26:16, 26:17, 26:20, 26:23, 28:14, 56:9, 145:13, 145:20, 145:21, 145:23, 147:16, 148:12, 152:11, 152:12, 152:14, 152:17, 153:11, 158:15, 159:24, 161:7, 161:14, 162:9, 170:20, 172:7
**30** [3] - 49:7, 55:11, 168:21
**301** [2] - 120:7, 120:11
**302** [1] - 90:13
**30th** [2] - 49:12, 49:21
**31** [6] - 49:22, 50:3, 50:15, 50:17, 50:25, 51:2
**33** [1] - 27:6
**333** [2] - 1:23, 176:12
**354-3187** [1] - 1:24
**361** [1] - 137:18
**369** [1] - 137:15
**3:04** [1] - 117:9
**3:40:52** [1] - 11:4

**4**

**4** [32] - 1:4, 43:22, 57:16, 57:18, 58:3, 58:5, 58:21, 58:23, 59:5, 59:7, 61:2, 61:13, 61:15, 61:23, 61:25, 62:10, 62:12, 62:18, 62:20, 63:6, 63:8, 63:25, 64:2, 64:18, 138:22, 139:20, 139:21, 139:22, 140:2, 140:14, 151:11, 151:13
**40** [7] - 3:25, 5:21, 162:22, 163:11, 166:12, 169:1, 169:2
**400-plus** [1] - 78:15
**413** [1] - 137:20
**415** [3] - 107:3, 112:15, 112:25
**47** [4] - 76:16, 76:23, 76:24, 77:9
**480-some-page** [2] - 15:11, 15:22
**49** [1] - 138:7
**4:01** [1] - 36:4
**4:05** [1] - 36:14
**4:13** [2] - 36:6, 36:18

**4:29** [1] - 37:7

**5**

**5** [21] - 19:14, 20:1, 23:2, 138:22, 139:20, 139:21, 139:22, 140:2, 140:14, 145:11, 145:18, 150:7, 150:12, 151:1, 151:3, 151:5, 151:15, 151:20, 166:20, 171:12, 173:2
**5-2** [1] - 29:8
**500** [1] - 6:7
**5102(a** [2] - 3:25, 5:21
**5104** [1] - 166:12
**5104(a)(1** [1] - 164:10, 164:15, 165:14
**52** [14] - 11:2, 29:8, 29:11, 30:8, 30:12, 30:22, 74:17, 74:19, 76:4, 77:2, 77:10, 77:11, 112:2
**55** [6] - 96:7, 96:10, 98:18, 101:15, 101:17, 106:8
**5:15** [1] - 43:8
**5:16** [1] - 43:19
**5:26** [1] - 175:19
**5:57** [3] - 57:16, 58:3, 58:21

**6**

**6** [30] - 38:2, 38:12, 38:17, 43:21, 48:8, 126:25, 138:22, 139:20, 139:21, 139:22, 140:3, 140:14, 145:11, 145:18, 147:17, 148:12, 150:7, 150:12, 151:1, 151:3, 151:5, 151:15, 151:20, 162:2, 162:10, 163:11, 166:20, 171:12, 173:3, 173:12
**601** [3] - 1:14, 76:16, 76:17
**602** [33] - 6:3, 6:7, 15:13, 15:18, 15:19, 15:21, 16:6, 16:10, 17:13, 17:17, 17:24, 17:25, 18:4, 19:5, 21:22, 23:3, 26:5, 26:17, 26:18, 26:21,

26:22, 26:24, 26:25, 27:21, 29:1, 42:4, 65:11, 76:18, 76:20, 76:21, 76:22, 79:3
**602A** [41] - 6:1, 6:8, 7:7, 14:8, 16:1, 16:4, 16:14, 17:14, 19:1, 19:7, 21:2, 21:7, 21:14, 21:17, 23:11, 26:3, 26:11, 26:16, 27:20, 29:8, 29:10, 30:22, 30:24, 65:8, 74:16, 76:3, 77:10, 77:11, 77:16, 78:19, 78:23, 79:4, 80:23, 85:13, 86:1, 123:8, 126:16, 126:20, 126:21, 128:8
**602B** [2] - 16:16, 16:24
**602C** [3] - 27:20, 28:25, 29:2
**602D** [1] - 17:7
**62** [3] - 31:2, 31:20, 34:3
**63** [3] - 31:2, 34:3, 77:16
**67** [3] - 129:14, 130:2, 130:4
**6718** [2] - 1:23, 176:12
**68** [5] - 34:25, 40:25, 129:7, 129:9, 129:15
**69** [5] - 41:21, 42:18, 80:23, 123:9, 123:13
**6:03** [1] - 59:5
**6:47** [3] - 112:17, 112:19, 114:2
**6:49** [1] - 19:14
**6:50** [1] - 112:17
**6:51** [1] - 23:2
**6:55** [6] - 20:1, 23:4, 27:6, 112:18, 112:19, 114:2
**6th** [30] - 11:7, 23:23, 41:22, 41:25, 52:25, 53:2, 54:13, 55:21, 64:25, 68:14, 70:12, 72:13, 76:12, 77:15, 79:18, 79:23, 83:4, 85:9, 93:11, 93:14, 94:4, 95:4, 95:6, 95:19, 147:10, 147:11, 153:15, 154:10, 157:7, 176:8

**7**

**7** [3] - 85:5, 140:3, 140:6
**7-0** [2] - 39:2, 39:3
**7-9am** [1] - 59:9

**70** [8] - 34:25, 38:19, 39:1, 40:25, 41:23, 42:1, 42:5, 42:19
**700** [1] - 99:24
**701** [7] - 99:19, 99:23, 101:14, 102:22, 102:23, 106:7
**71** [3] - 164:7, 164:25
**749** [1] - 137:15
**7:36** [1] - 30:5
**7:37** [4] - 57:18, 58:5, 58:23, 59:7
**7:40** [1] - 61:2
**7:43** [1] - 61:13
**7:44** [2] - 61:23, 62:10
**7:49** [1] - 62:18
**7:54** [1] - 113:10
**7th** [1] - 156:14

**8**

**8** [10] - 140:4, 140:6, 145:11, 145:18, 147:17, 148:12, 162:3, 162:9, 162:10, 163:10
**886-4127** [1] - 1:20
**888** [1] - 1:20
**8:09** [1] - 33:1
**8:11** [1] - 33:12
**8:19** [1] - 114:5
**8:26** [3] - 33:23, 63:6, 63:25
**8:36** [1] - 33:25
**8:59** [1] - 7:13

**9**

**916** [1] - 1:19
**99** [3] - 42:21, 42:22, 44:24
**9:10** [1] - 55:19
**9:40** [1] - 114:22

**A**

**a.m** [24] - 1:5, 11:4, 36:4, 36:6, 36:14, 36:18, 37:7, 43:8, 43:19, 45:9, 45:11, 45:19, 45:24, 47:6, 47:13, 47:15, 48:2, 49:22, 50:3, 50:15, 50:17, 50:25, 51:2, 56:9
**ability** [2] - 147:22, 176:7
**able** [20] - 13:8, 15:14, 49:15, 56:2, 64:22, 69:5, 75:24, 77:24, 81:1, 84:11, 98:14,

107:13, 107:15, 112:20, 117:4, 147:11, 148:25, 151:9, 151:18, 169:15
**absolutely** [5] - 29:4, 65:24, 68:17, 125:12, 130:17
**academically** [1] - 34:12
**accept** [2] - 121:12, 175:5
**access** [1] - 55:6
**accomplished** [1] - 104:24
**according** [1] - 138:20
**account** [1] - 77:19
**accurate** [3] - 7:25, 176:5
**acknowledged** [2] - 90:24, 90:25
**acknowledges** [1] - 12:17
**acquittal** [1] - 134:13
**acquitted** [1] - 151:21
**act** [8] - 43:14, 46:11, 82:23, 160:2, 162:3, 162:4, 164:11, 165:14
**act-fraudulent-election** [1] - 46:11
**action** [1] - 82:22
**Action** [2] - 1:3, 3:2
**actions** [8] - 24:4, 70:11, 79:24, 86:12, 120:2, 125:15, 154:8, 157:19
**actual** [8] - 21:3, 75:3, 97:17, 97:20, 112:24, 112:25, 143:8, 153:21
**add** [6] - 9:24, 35:12, 56:24, 61:4, 143:5, 170:3
**added** [2] - 7:21, 65:11
**addition** [6] - 5:17, 7:1, 66:4, 103:19, 137:13, 154:6
**additional** [13] - 4:20, 65:16, 78:8, 98:25, 99:1, 99:10, 100:1, 116:4, 151:23, 155:2, 157:24, 161:19, 173:15
**additionally** [5] - 67:22, 99:25, 155:13, 155:18, 157:5
**address** [5] - 3:19, 6:11, 20:14, 20:15,

136:7
**addressed** [1] - 139:14
**addresses** [2] - 25:6, 70:18
**adequate** [1] - 67:20
**adequately** [1] - 67:16
**adjourn** [1] - 141:5
**adjourned** [1] - 175:19
**admissibility** [3] - 24:1, 42:14, 103:12
**admissible** [5] - 8:7, 10:23, 11:9, 11:11, 11:15
**admission** [4] - 41:2, 56:24, 85:15, 87:4
**admit** [28] - 16:2, 16:10, 21:13, 23:7, 23:9, 23:10, 24:14, 26:2, 27:18, 28:12, 30:22, 34:3, 34:24, 40:25, 44:24, 51:20, 54:20, 54:23, 56:23, 80:17, 98:3, 98:5, 98:13, 103:21, 106:23, 106:24, 112:20, 112:24
**admitted** [49] - 7:3, 9:23, 16:4, 16:14, 16:18, 16:25, 17:9, 17:13, 17:14, 21:9, 25:1, 26:14, 26:16, 26:23, 28:22, 30:24, 31:5, 45:1, 48:17, 53:23, 57:1, 57:2, 65:6, 74:25, 80:20, 87:11, 87:20, 96:12, 97:17, 98:25, 99:5, 99:9, 99:11, 100:16, 101:10, 102:25, 103:2, 104:1, 104:2, 104:3, 104:14, 104:22, 107:20, 109:3, 113:17, 116:2, 135:20, 135:21
**admittedly** [1] - 149:21
**admitting** [2] - 16:21, 78:21
**Adobe** [2] - 25:16, 26:1
**adopted** [2] - 159:2, 166:11
**advice** [1] - 136:18
**advise** [1] - 174:12
**affect** [4] - 5:10, 123:3, 174:4
**affidavit** [6] - 138:11, 138:13, 138:15,

138:21, 140:24, 142:1
**affiliated** [1] - 74:1
**afternoon** [3] - 69:5, 136:3, 136:4
**AGENT** [2] - 2:3, 15:1
**Agent** [60] - 9:5, 9:9, 9:11, 14:21, 15:4, 15:25, 18:4, 19:12, 21:16, 22:2, 27:1, 29:15, 31:20, 32:2, 36:2, 36:10, 38:11, 40:19, 42:22, 44:1, 44:18, 48:23, 51:8, 55:13, 56:16, 57:3, 57:11, 63:4, 66:1, 67:8, 67:12, 67:13, 68:7, 68:13, 68:21, 69:4, 70:6, 70:10, 90:14, 90:25, 91:7, 91:14, 119:11, 120:10, 121:17, 122:4, 122:21, 123:5, 127:22, 130:9, 131:8, 147:3, 147:6, 155:16, 156:6, 156:11, 157:5, 157:15, 171:14, 171:22
**agent** [29] - 6:10, 8:10, 8:15, 8:23, 9:14, 12:3, 14:1, 14:4, 14:20, 14:23, 15:17, 16:13, 23:19, 25:11, 52:21, 68:8, 71:6, 71:14, 81:25, 84:7, 84:12, 89:16, 100:3, 103:25, 104:7, 106:23, 129:8, 131:1, 147:3
**agent's** [4] - 87:10, 87:12, 87:14, 131:3
**agents** [1] - 74:1
**ago** [2] - 27:2, 139:18
**agree** [5] - 132:21, 135:7, 135:10, 144:18, 144:19
**agreeable** [1] - 134:2
**agreed** [4] - 16:17, 41:14, 112:14, 162:23
**agreement** [4] - 7:22, 8:2, 23:21, 132:3
**agreements** [1] - 135:18
**agrees** [1] - 132:22
**ahead** [16] - 17:21, 25:13, 31:11, 44:7, 46:10, 75:25, 77:13, 82:18, 83:17,

105:20, 105:22, 107:19, 127:21, 130:19, 159:9, 166:18
**aid** [5] - 96:25, 99:18, 106:9, 106:12, 106:15
**air** [1] - 115:13
**alert** [1] - 67:4
**alerted** [1] - 97:9
**Alexandria** [1] - 1:19
**alleged** [1] - 170:21
**allowed** [1] - 97:22
**almost** [3] - 6:7, 153:7, 165:18
**alone** [2] - 161:1, 171:9
**altered** [3] - 97:15, 97:23, 98:8
**alternative** [1] - 35:10
**alternatively** [1] - 132:8
**ambition** [1] - 48:4
**amended** [1] - 27:20
**amendment** [1] - 141:19
**Amendment** [1] - 31:18
**AMERICA** [1] - 1:3
**America** [5] - 3:3, 54:16, 129:5, 129:6, 130:10
**american** [1] - 43:14
**ammo** [2] - 76:9
**ammunition** [1] - 79:7
**analogy** [1] - 12:10
**analytically** [1] - 140:2
**Andrew** [1] - 3:4
**ANDREW** [1] - 1:13
**andrew.haag@usdoj.gov** [1] - 1:16
**angle** [2] - 48:6, 104:15
**anonymous** [1] - 85:8
**answer** [13] - 71:8, 82:5, 83:17, 84:7, 84:11, 84:13, 98:14, 102:14, 111:22, 124:25, 125:1, 125:10, 146:11
**answered** [7] - 95:7, 100:6, 100:8, 100:11, 126:7, 146:8, 169:10
**answering** [3] - 84:8, 84:11, 148:3
**answers** [1] - 38:21
**Anthony** [16] - 66:15, 68:9, 68:10, 87:22, 88:12, 89:8, 93:7,

94:6, 94:7, 94:16, 145:25, 146:1, 148:14, 152:4, 160:22, 160:25
**anyhow** [2] - 14:12, 14:14
**anyway** [1] - 106:20
**apart** [1] - 165:3
**apologies** [3] - 76:18, 77:11, 103:3
**apologize** [4] - 35:8, 105:12, 110:3, 152:13
**apparent** [1] - 147:22
**Appeals** [4] - 8:22, 115:9, 137:20, 137:22
**appear** [13] - 53:20, 108:16, 111:9, 111:12, 111:20, 113:18, 115:5, 116:9, 116:17, 117:9, 117:15, 118:13, 118:25
**appearance** [1] - 63:16
**APPEARANCES** [1] - 1:12
**appeared** [1] - 117:5
**appellate** [1] - 143:18
**applies** [7] - 149:23, 149:25, 162:24, 170:5, 170:7, 170:8
**apply** [1] - 170:9
**applying** [1] - 170:15
**appreciate** [3] - 105:10, 137:6, 152:22
**apprised** [1] - 142:16
**approach** [2] - 129:18, 129:23
**appropriate** [3] - 131:23, 142:15, 143:18
**April** [1] - 1:4
**area** [26] - 104:5, 138:21, 138:23, 139:1, 139:3, 139:4, 139:7, 139:9, 139:24, 139:25, 140:3, 140:6, 140:12, 150:9, 150:10, 150:14, 150:17, 151:17, 156:2, 167:2, 167:3, 167:4, 167:7, 171:13, 172:4, 173:2
**areas** [2] - 72:25, 100:10, 108:8
**argue** [7] - 24:16, 68:1,

132:8, 132:10, 133:6, 159:3, 175:14
**argues** [1] - 171:6
**arguing** [2] - 132:16, 158:21
**argument** [34] - 4:20, 4:23, 4:25, 5:9, 7:19, 10:8, 12:13, 30:16, 34:14, 34:16, 42:13, 53:3, 71:20, 77:3, 102:15, 132:12, 133:23, 134:19, 137:10, 140:4, 145:8, 145:9, 145:10, 145:17, 151:22, 151:23, 157:24, 158:3, 158:14, 161:9, 164:8, 165:5, 166:6
**arguments** [18] - 4:6, 9:3, 24:4, 73:19, 75:20, 75:23, 132:17, 132:20, 134:4, 157:21, 158:8, 160:9, 161:20, 166:17, 166:19, 168:18, 169:12, 171:4
**arm** [2] - 122:12, 153:3
**armed** [1] - 43:23
**arresting** [2] - 70:20, 71:5
**arrived** [3] - 156:12, 157:8, 171:19
**art** [2] - 140:4, 140:7
**aside** [1] - 135:11
**assault** [51] - 124:18, 147:16, 147:19, 147:20, 148:7, 148:11, 153:12, 153:21, 153:24, 154:10, 154:14, 158:16, 159:6, 159:8, 159:10, 159:11, 159:18, 162:6, 162:7, 162:11, 162:24, 163:19, 164:11, 164:15, 164:16, 164:17, 165:4, 165:6, 165:15, 165:16, 165:21, 165:23, 165:24, 166:1, 166:4, 166:6, 167:11, 167:14, 167:15, 167:17, 167:18, 167:21, 167:22, 167:25, 168:6, 168:8, 168:9, 168:12, 172:9

**assaulting** [1] - 152:2
**asserted** [2] - 102:10, 103:1
**assist** [2] - 18:22, 104:7
**assistance** [1] - 74:16
**assistive** [1] - 140:18
**associated** [1] - 70:19
**assume** [1] - 63:11
**assurance** [1] - 39:17
**attached** [3] - 56:12, 56:15, 56:16
**attachment** [5] - 4:3, 51:5, 55:23, 56:1, 59:19
**attachments** [10] - 32:15, 40:9, 40:14, 40:19, 46:13, 46:16, 46:17, 51:15, 59:16, 60:3
**attempt** [4] - 66:5, 66:12, 89:11, 147:21
**attempts** [1] - 139:8
**attendance** [1] - 50:20
**attention** [10] - 22:3, 57:10, 63:17, 64:5, 69:2, 76:5, 78:18, 80:22, 84:23, 168:5
**attract** [1] - 62:22
**AUSA** [3] - 3:19, 91:13, 91:23
**authority** [2] - 62:24, 89:17
**automatically** [2] - 5:5, 10:23
**available** [4] - 73:21, 140:25, 142:3, 142:12
**Avenue** [2] - 1:23, 176:12
**AW** [1] - 145:24
**aware** [6] - 68:4, 72:12, 73:9, 140:19, 140:21, 142:1

**B**

**back-and** [1] - 7:7
**back-and-forth** [3] - 10:19, 34:15, 154:2
**backdoor** [3] - 90:14, 90:21, 92:2
**backpack** [1] - 79:21
**bad** [2] - 30:13, 105:25
**bag** [1] - 56:11
**balls** [2] - 38:4, 126:10
**based** [8] - 82:14, 82:15, 82:19, 116:23, 121:7, 144:2, 148:12, 154:8

**basic** [1] - 144:13
**basis** [2] - 102:8, 125:16
**battery** [3] - 164:18, 167:18, 172:9
**beard** [2] - 115:10, 115:11
**bears** [2] - 6:15, 6:17
**beautiful** [1] - 92:12
**became** [2] - 14:8, 38:18
**become** [2] - 32:7, 71:24
**BEFORE** [1] - 1:10
**began** [3] - 6:1, 144:25, 164:8
**begin** [2] - 9:18, 169:11
**begins** [1] - 28:19
**begun** [1] - 124:25
**behalf** [1] - 136:9
**behind** [2] - 60:15, 143:6
**believes** [1] - 154:5
**belonged** [1] - 20:19
**below** [3] - 57:23, 64:8, 87:17
**BENCH** [1] - 1:9
**bench** [4] - 28:17, 132:15, 132:25, 170:7
**best** [7] - 25:18, 122:19, 136:18, 137:11, 175:14, 176:6
**better** [4] - 13:22, 38:6, 105:4, 126:12
**between** [10] - 6:8, 93:3, 117:4, 119:20, 133:21, 139:16, 142:11, 151:14, 154:16, 173:3
**beyond** [9] - 3:16, 73:4, 73:13, 144:16, 158:20, 160:20, 170:13, 170:19, 173:7, 173:9
**Biden** [1] - 32:9
**big** [1] - 98:6
**bigger** [1] - 49:10
**bill** [1] - 61:4
**bit** [10] - 49:10, 51:5, 103:16, 108:25, 111:4, 112:8, 114:13, 115:17, 115:21
**black** [2] - 56:20, 130:8
**blah** [3] - 159:19
**blank** [1] - 76:1

**blanket** [1] - 100:13
**blanketed** [1] - 99:11
**blowing** [2] - 40:8, 43:21
**blue** [42] - 7:24, 8:12, 11:8, 11:14, 11:22, 17:20, 18:15, 18:17, 28:7, 31:20, 33:16, 34:19, 35:4, 36:10, 36:13, 38:3, 39:4, 41:6, 41:8, 41:22, 45:5, 45:7, 46:20, 47:2, 47:11, 47:12, 49:1, 49:20, 50:9, 50:23, 52:9, 53:6, 55:7, 57:12, 57:23, 58:17, 59:3, 60:22, 61:11, 62:6, 63:21
**blues** [1] - 3:12
**blurry** [1] - 60:7
**board** [3] - 8:6, 38:4, 126:10
**bodily** [1] - 164:12
**body** [4] - 73:5, 117:5, 117:15, 122:9
**body-worn** [1] - 73:5
**bond** [2] - 174:15, 174:16
**book** [1] - 22:13
**bottom** [12] - 36:1, 36:2, 40:21, 40:23, 43:6, 49:3, 49:4, 50:22, 60:22, 86:3, 126:22, 128:9
**box** [1] - 46:20
**boys** [1] - 98:6
**Brady** [6] - 71:16, 71:19, 71:20, 71:24, 72:11, 73:3
**brain** [1] - 32:11
**branch** [1] - 155:11
**brand** [1] - 142:13
**brand-new** [1] - 142:13
**breach** [1] - 156:20
**break** [12] - 13:24, 99:2, 101:4, 103:10, 104:9, 110:12, 135:1, 135:5, 163:5, 163:13, 169:15, 169:16
**breaking** [1] - 127:23
**brett** [2] - 48:10, 127:2
**brief** [6] - 68:16, 68:25, 134:25, 143:16, 164:1, 165:15
**briefcase** [1] - 79:9
**briefing** [4] - 142:15, 166:10, 173:23, 174:11

**briefly** [5] - 65:17, 67:7, 68:9, 130:24, 167:11
**briefs** [2] - 5:4, 168:11
**bring** [13] - 6:23, 45:14, 69:1, 79:18, 84:23, 85:13, 86:1, 120:7, 120:8, 122:2, 123:8, 129:4, 160:23
**bringing** [3] - 74:16, 79:2, 142:14
**broad** [3] - 72:4, 72:5, 142:8
**broader** [2] - 10:12, 10:14
**broken** [1] - 10:16
**brother** [1] - 79:12
**brothers** [2] - 20:7, 27:11
**brought** [4] - 79:21, 101:7, 141:12, 158:10
**brushed** [1] - 166:23
**bubble** [15] - 19:18, 27:1, 27:3, 31:20, 33:3, 33:16, 45:7, 47:4, 49:5, 50:23, 55:17, 59:3, 60:20, 61:11, 127:11
**bubbles** [15] - 11:14, 17:20, 18:12, 18:14, 18:17, 18:19, 42:22, 45:5, 46:25, 48:23, 55:14, 57:12, 60:18, 60:22, 62:6
**building** [13] - 38:17, 66:7, 81:11, 95:15, 98:23, 108:18, 115:24, 151:8, 151:12, 152:10, 156:22, 157:1, 157:3
**bunch** [3] - 7:10, 38:2, 103:10
**burden** [12] - 6:15, 6:17, 11:18, 101:3, 148:5, 148:9, 151:1, 152:5, 153:11, 157:17, 158:1, 170:13
**burdens** [1] - 170:9
**burdensome** [4] - 72:5, 72:15, 73:7, 73:17
**burgeoning** [1] - 67:3
**bus** [1] - 60:9
**but..** [1] - 145:13
**BY** [6] - 15:3, 18:3, 70:9, 108:2, 113:5, 119:10

**C**

**cable** [2] - 129:16, 129:23
**Caesar** [1] - 44:20
**callout** [30] - 29:23, 29:24, 32:14, 32:24, 33:15, 35:20, 36:7, 37:2, 40:16, 43:16, 43:25, 45:14, 46:12, 49:8, 50:7, 50:21, 51:3, 51:18, 56:1, 56:5, 56:14, 56:21, 59:19, 60:17, 61:20, 64:11, 128:1, 128:7
**calm** [1] - 115:11
**cam** [2] - 117:5, 117:15
**camera** [1] - 112:5
**cameras** [1] - 73:5
**campaign** [1] - 85:7
**cannot** [1] - 54:17
**capitalized** [1] - 32:11
**Capitol** [37] - 3:24, 5:22, 38:16, 72:23, 81:11, 95:15, 97:2, 98:22, 100:8, 100:10, 108:9, 108:18, 109:1, 115:24, 116:17, 117:24, 125:3, 140:7, 140:8, 150:11, 150:21, 150:24, 151:8, 152:23, 153:16, 155:7, 155:9, 155:17, 156:7, 156:9, 156:12, 156:13, 156:20, 157:6, 157:8, 157:10, 157:16
**card** [1] - 46:8
**care** [1] - 122:21
**careful** [1] - 141:14
**carries** [1] - 110:10
**carry** [1] - 148:6
**case** [70] - 9:6, 9:19, 23:16, 28:20, 41:17, 44:12, 53:17, 66:13, 67:6, 69:5, 70:11, 72:19, 87:22, 103:10, 116:2, 122:20, 130:15, 132:3, 132:10, 132:23, 133:6, 133:12, 133:16, 133:20, 133:22, 134:19, 134:23, 135:2, 135:7, 136:7, 136:10, 137:16,

137:19, 137:25, 139:3, 139:12, 139:13, 139:15, 141:21, 142:19, 145:4, 147:12, 149:4, 149:6, 149:9, 149:11, 149:13, 149:14, 149:17, 150:2, 150:5, 152:4, 152:6, 153:1, 154:14, 155:6, 155:15, 160:19, 160:23, 168:7, 168:20, 170:16, 170:20, 171:1, 171:11, 173:24, 174:23, 174:24
**cases** [16] - 7:2, 7:23, 7:5, 12:22, 72:13, 72:20, 122:24, 144:17, 144:13, 144:15, 144:16, 164:18, 164:19, 173:16, 174:4
**caught** [1] - 32:12
**CCTV** [25] - 66:4, 66:6, 99:24, 100:4, 100:7, 100:11, 101:17, 102:19, 109:21, 113:6, 113:15, 114:10, 114:16, 114:25, 115:4, 117:5, 118:13, 119:23, 120:5, 120:11, 120:17, 124:10, 124:11, 124:18, 124:21
**cell** [5] - 6:5, 74:19, 78:5, 78:6, 78:11
**Cellebrite** [3] - 8:16, 14:3, 14:6
**certain** [11] - 8:10, 9:13, 15:7, 16:1, 16:18, 24:3, 67:19, 68:9, 71:2, 91:1, 122:25
**certainly** [10] - 8:21, 20:6, 27:10, 153:14, 153:23, 154:1, 155:2, 155:3, 157:22, 167:21
**CERTIFICATE** [1] - 176:1
**certification** [5] - 11:7, 41:25, 42:9, 102:18, 157:12
**certify** [1] - 176:4
**cetera** [2] - 25:20, 135:18
**chain** [3] - 60:17, 77:5,

91:14
**chain-of-custody** [1] - 91:14
**challenge** [1] - 31:18
**Chamber** [1] - 156:19
**chambers** [4] - 4:21, 4:22, 141:1, 141:4
**change** [1] - 109:8
**chaotic** [1] - 155:7
**characterization** [6] - 42:12, 121:10, 121:12, 122:15, 122:19, 123:3
**characterize** [1] - 42:14
**charade** [1] - 39:22
**charge** [2] - 154:3, 154:6
**charged** [1] - 139:23
**charges** [4] - 147:14, 147:16, 153:12, 174:14
**charging** [1] - 152:1
**chat** [26] - 6:9, 6:13, 11:3, 12:15, 12:17, 12:19, 15:14, 16:1, 16:5, 18:7, 18:9, 19:2, 19:13, 20:11, 21:4, 27:15, 29:17, 30:17, 30:20, 32:16, 34:17, 55:1, 127:15, 128:11, 128:14
**chats** [5] - 6:20, 15:7, 15:10, 15:11, 24:2
**check** [4] - 12:6, 70:12, 70:14, 143:18
**checking** [1] - 144:20
**checks** [1] - 174:1
**cheering** [1] - 109:2
**chessmaster** [1] - 35:19
**chief** [1] - 100:3
**chose** [1] - 103:20
**Chris** [1] - 24:12
**Christopher** [1] - 3:3
**CHRISTOPHER** [1] - 1:6
**chronological** [1] - 118:25
**circled** [3] - 98:8, 98:10, 98:11
**circles** [1] - 160:14
**circuit** [3] - 137:23, 142:20, 174:23
**Circuit** [2] - 149:14, 168:9, 168:10
**circuits** [1] - 168:11
**circumstances** [1] - 40:3
**cite** [3] - 71:21,

144:15, 150:2
**cited** [4] - 163:25, 164:1, 164:4, 164:19
**citing** [2] - 137:15, 137:16
**citizen** [1] - 63:1
**citizensfreepress. com/breaking** [1] - 51:11
**city** [4] - 43:23, 50:6, 52:4, 52:10
**civil** [6] - 124:19, 135:7, 152:16, 155:3, 155:22, 160:1
**claimed** [1] - 68:10
**claims** [1] - 156:1
**clarence** [2] - 48:10, 127:2
**clarification** [1] - 152:22
**clarify** [1] - 143:24
**clean** [1] - 109:17
**clear** [5] - 92:25, 94:17, 125:6, 153:19, 154:10
**clearer** [3] - 128:22, 128:25, 129:3
**clearly** [3] - 152:5, 153:1, 155:6
**clerk** [2] - 7:15, 14:23
**clerk's** [1] - 7:15
**clerking** [1] - 142:20
**clerks** [4] - 106:18, 142:2, 165:1, 169:25
**click** [5] - 108:5, 108:7, 109:5, 115:17, 116:7
**client** [2] - 121:8, 174:13
**client's** [1] - 8:4
**clip** [1] - 117:24
**close** [12] - 10:5, 111:24, 122:8, 132:10, 133:24, 145:4, 145:5, 146:7, 149:1, 153:2, 153:8, 155:23
**closed** [1] - 153:4
**closer** [2] - 65:20, 169:2
**closing** [11] - 4:24, 75:20, 75:22, 97:14, 97:19, 101:8, 101:21, 168:18, 169:12, 169:19, 171:4
**closings** [2] - 133:11, 133:12
**code** [8] - 158:25, 162:18, 163:12,

164:20, 164:23, 166:11, 166:25, 167:3
**cognizant** [1] - 141:13
**College** [1] - 32:6
**colloquially** [1] - 44:16
**colon** [1] - 59:14
**color** [2] - 18:22, 56:19
**colored** [2] - 18:12, 18:14
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 137:23
**combination** [2] - 111:9, 171:17
**combine** [1] - 160:17
**combined** [1] - 109:22
**comfortable** [1] - 25:19
**coming** [11] - 38:7, 40:4, 78:8, 78:12, 78:16, 87:7, 112:15, 112:16, 112:23, 121:17, 126:13
**commandeering** [1] - 63:10
**comment** [4] - 4:20, 55:9, 76:13, 95:3
**commentary** [3] - 105:23, 106:1, 106:3
**commerce** [2] - 155:19, 172:24
**commit** [9] - 124:24, 125:4, 127:18, 153:25, 154:2, 154:4, 154:11, 159:13, 172:13
**common** [9] - 44:17, 162:23, 164:17, 164:20, 167:14, 167:17, 167:22, 168:8, 172:9
**communities** [1] - 43:21
**competing** [2] - 29:18, 38:3
**compilation** [4] - 107:5, 107:7, 119:12, 119:19
**complete** [2] - 100:22, 176:6
**completed** [1] - 75:11
**completely** [2] - 12:12, 161:16
**completeness** [2] - 6:22, 24:11
**complicated** [2] - 28:3, 159:15
**comports** [2] - 143:9, 168:8
**composite** [1] -

104:14
**computer** [5] - 87:12, 107:17, 110:17, 129:13, 175:15
**computers** [1] - 110:8
**concede** [1] - 160:12
**conceding** [1] - 154:13
**concentrate** [1] - 158:8
**concern** [4] - 101:5, 101:6, 104:13, 107:8
**concerned** [1] - 6:19
**conclude** [1] - 73:23
**concluded** [4] - 71:22, 71:23, 72:1, 72:13
**conclusion** [4] - 93:5, 125:15, 125:16, 125:18
**conduct** [4] - 93:14, 94:4, 154:23, 159:22
**conducted** [1] - 71:15
**conference** [7] - 87:9, 102:3, 103:2, 106:7, 106:19, 107:7, 163:16
**conferences** [1] - 168:14
**confidential** [1] - 71:3
**confirm** [3] - 80:14, 104:21, 134:25
**confrontation** [1] - 40:2
**confused** [1] - 93:17
**confusing** [1] - 93:3
**Congress** [10] - 81:17, 81:22, 88:3, 88:6, 91:4, 147:7, 153:16, 155:10, 157:14
**congress** [1] - 37:25
**congressional** [2] - 99:25, 102:19
**connecting** [1] - 110:17
**conniving** [1] - 48:7
**cons** [1] - 136:23
**consider** [3] - 30:19, 128:16, 128:21
**considering** [1] - 170:17
**consistent** [3] - 95:13, 100:10, 153:4
**conspiracy** [1] - 72:20
**constitutes** [1] - 176:4
**Constitution** [3] - 1:23, 136:13, 176:12
**constitutional** [6] - 37:9, 38:8, 39:15, 123:19, 124:5, 126:14

**consumer** [1] - 70:17
**contact** [9] - 86:19, 110:21, 121:23, 122:10, 146:22, 147:4, 148:8, 148:9, 154:15
**contained** [4] - 57:19, 57:20, 59:8, 70:16
**contains** [1] - 5:21
**contemporaneity** [1] - 156:23
**contemporaneous** [4] - 151:4, 151:14, 159:12, 166:21
**content** [3] - 35:8, 36:19, 39:14
**context** [8] - 6:20, 9:23, 24:6, 30:14, 35:6, 53:19, 56:25, 76:13
**continual** [1] - 54:12
**continue** [3] - 30:20, 42:8, 121:20
**Continued** [1] - 15:2
**continued** [5] - 77:5, 174:15, 174:16, 174:18
**continues** [1] - 41:24
**continuity** [1] - 41:7
**continuously** [1] - 34:14
**contrarian** [1] - 37:14
**contributes** [1] - 171:8
**control** [2] - 73:25
**conversation** [21] - 6:19, 13:1, 14:10, 23:14, 30:13, 30:14, 42:7, 52:1, 52:2, 52:4, 53:20, 53:21, 53:22, 54:13, 76:8, 77:2, 77:5, 77:6, 88:9, 89:1, 89:21
**conversations** [3] - 54:11, 61:7, 64:25
**convict** [1] - 147:14
**convince** [1] - 35:14
**convinced** [1] - 10:2
**copy** [4] - 140:24, 141:1, 142:3, 164:6
**cordoned** [1] - 150:10
**corner** [2] - 43:7, 63:12
**Cornyn** [2] - 38:5, 126:11
**correct** [45] - 15:8, 16:22, 18:4, 18:7, 20:24, 29:17, 57:5, 70:21, 76:12, 79:13, 80:3, 81:7, 81:15, 82:14, 84:19, 84:22,

85:10, 86:11, 86:20, 87:23, 88:10, 91:23, 92:18, 93:8, 94:8, 95:20, 96:24, 108:21, 111:12, 111:20, 113:7, 113:12, 113:25, 116:5, 117:18, 118:3, 119:24, 120:3, 120:5, 128:3, 128:23, 131:10, 139:20, 159:20, 165:9
**correctly** [1] - 20:24
**Counsel** [1] - 123:14
**counsel** [13] - 4:21, 8:6, 9:10, 9:12, 16:19, 104:20, 105:1, 105:5, 105:24, 107:2, 130:1, 150:3
**counsel's** [1] - 156:1
**Count** [38] - 139:20, 145:11, 147:16, 147:17, 148:12, 151:11, 151:13, 151:25, 152:11, 152:12, 152:14, 152:15, 152:17, 152:18, 153:11, 154:20, 158:14, 158:15, 159:24, 159:25, 162:2, 162:3, 162:9, 162:10, 163:10, 163:11, 172:7, 172:15
**count** [5] - 132:22, 143:5, 147:15, 154:20, 154:22
**Counts** [9] - 140:3, 145:20, 145:21, 145:23, 150:12, 151:15, 161:7, 161:14, 166:20
**counts** [28] - 132:22, 134:14, 134:17, 138:22, 139:17, 139:22, 140:6, 140:12, 144:24, 145:10, 145:13, 145:18, 145:24, 150:7, 151:1, 151:3, 151:5, 151:20, 154:8, 158:1, 161:22, 164:9, 170:20, 171:10, 171:12, 173:11, 173:12
**couple** [5] - 86:15,

126:17, 126:21, 131:25, 166:17
**coupled** [1] - 147:22
**courageous** [1] - 39:20
**course** [6] - 12:16, 32:5, 119:13, 131:24, 143:17, 145:25
**court** [14] - 4:1, 37:21, 72:7, 72:17, 139:8, 147:20, 150:20, 158:11, 159:2, 162:4, 163:14, 166:1, 168:13
**Court** [40] - 1:22, 1:22, 5:11, 8:22, 13:16, 13:19, 24:19, 41:14, 75:4, 100:24, 106:13, 115:9, 132:7, 132:9, 137:15, 137:19, 137:20, 137:22, 138:2, 140:18, 141:19, 142:14, 142:17, 144:2, 146:14, 147:24, 149:12, 155:25, 158:2, 160:22, 164:3, 165:17, 165:19, 165:24, 167:14, 168:1, 168:5, 174:24, 175:8, 176:11
**COURT** [351] - 1:1, 3:8, 3:23, 4:14, 4:17, 4:25, 5:3, 5:12, 5:24, 8:8, 9:18, 9:25, 10:7, 10:24, 11:11, 11:21, 11:24, 12:2, 12:20, 13:12, 13:21, 14:16, 15:19, 15:21, 16:2, 16:7, 16:9, 16:14, 16:22, 16:25, 17:3, 17:5, 17:8, 17:11, 17:13, 17:17, 17:21, 17:24, 20:13, 20:17, 20:22, 21:6, 21:9, 21:17, 22:12, 22:18, 23:9, 23:24, 24:21, 24:24, 25:17, 25:23, 26:2, 26:8, 26:10, 26:12, 26:17, 26:20, 27:19, 28:9, 28:13, 28:15, 29:7, 29:25, 30:9, 30:18, 31:6, 31:13, 34:24, 35:21, 38:25, 39:2, 39:10, 40:14, 41:3, 42:1, 42:10, 42:19, 44:13,

45:1, 46:9, 48:17, 48:20, 48:22, 49:24, 52:6, 53:3, 53:6, 53:8, 53:12, 53:24, 54:3, 54:8, 54:14, 54:19, 57:1, 58:11, 59:21, 59:23, 60:2, 65:6, 65:10, 65:14, 65:18, 65:25, 66:25, 67:3, 68:2, 68:20, 68:23, 69:3, 70:2, 70:5, 71:4, 71:8, 71:16, 71:19, 72:4, 74:9, 74:13, 74:18, 74:21, 75:6, 75:15, 75:18, 76:2, 76:17, 76:19, 76:21, 76:24, 77:8, 77:12, 78:23, 78:25, 79:3, 80:20, 81:20, 82:3, 82:18, 83:1, 83:7, 83:10, 83:16, 83:24, 84:10, 85:20, 86:17, 87:15, 87:18, 87:20, 88:16, 88:23, 89:6, 89:11, 89:22, 90:2, 90:9, 90:16, 90:20, 90:23, 91:16, 92:7, 92:19, 92:24, 93:16, 93:22, 94:1, 94:17, 94:21, 94:24, 95:11, 95:25, 96:9, 96:13, 96:15, 96:20, 97:5, 97:25, 98:3, 98:5, 99:2, 99:13, 101:12, 102:24, 103:6, 104:4, 104:11, 104:24, 105:10, 105:15, 105:18, 105:20, 105:22, 106:6, 107:19, 108:12, 109:13, 109:18, 109:23, 110:12, 110:16, 111:7, 111:15, 111:22, 113:21, 113:24, 114:1, 114:18, 115:8, 116:20, 117:24, 118:2, 119:3, 121:9, 121:11, 122:1, 122:17, 123:13, 124:1, 124:4, 124:15, 124:17, 124:20, 124:22, 125:8, 125:10, 125:14, 125:19, 125:22, 125:25, 126:8, 126:16, 126:19, 127:9, 127:14, 127:21,

128:20, 129:9, 129:11, 129:19, 129:21, 129:25, 130:6, 130:19, 130:21, 130:23, 131:7, 131:15, 131:19, 132:2, 132:14, 133:8, 133:11, 133:13, 134:1, 134:9, 134:15, 134:18, 134:21, 135:1, 135:17, 135:25, 136:5, 136:12, 136:16, 136:22, 136:25, 137:3, 137:5, 137:8, 137:17, 137:21, 137:24, 138:5, 138:7, 138:10, 138:13, 138:17, 139:17, 139:21, 140:2, 140:9, 140:22, 141:5, 141:9, 141:23, 142:18, 144:4, 144:11, 144:13, 144:22, 145:6, 145:12, 145:16, 145:18, 148:20, 148:22, 149:14, 150:2, 150:22, 152:11, 152:14, 152:17, 152:21, 153:18, 156:25, 158:12, 159:5, 159:9, 159:14, 159:21, 160:11, 160:16, 160:25, 161:21, 161:23, 161:25, 162:12, 162:16, 162:20, 162:23, 163:3, 163:15, 163:19, 163:22, 164:7, 165:12, 165:25, 166:3, 166:7, 166:14, 166:18, 167:9, 167:23, 168:3, 168:16, 168:23, 169:5, 169:23, 173:22, 173:25, 174:3, 174:16, 174:19, 174:21, 175:1, 175:3, 175:7, 175:10, 175:17, 176:1
**court's** [10] - 74:12, 85:14, 112:17, 119:5, 147:20,

148:13, 150:18, 161:24, 162:7, 168:7
**Court's** [11] - 51:21, 69:2, 76:15, 95:2, 95:21, 107:18, 109:9, 112:12, 145:21, 149:12, 167:13
**Courthouse** [2] - 1:23, 176:11
**courtroom** [1] - 75:7
**COURTROOM** [3] - 3:2, 17:22, 78:20
**covered** [2] - 70:24, 70:25
**cow** [1] - 92:9
**cowboy** [1] - 40:22
**crash** [1] - 32:5
**create** [7] - 27:20, 28:13, 28:15, 28:24, 85:20, 85:21, 101:4
**created** [3] - 18:22, 23:14, 92:15
**creates** [1] - 31:14
**credibility** [1] - 170:14
**crew** [1] - 58:25
**crimes** [2] - 159:4, 159:5
**criminal** [3] - 135:7, 136:6, 136:10
**Criminal** [2] - 1:3, 3:2
**criticism** [1] - 161:4
**cross** [17] - 9:5, 9:20, 38:22, 56:25, 65:23, 68:24, 69:3, 70:2, 75:5, 75:7, 121:25, 127:13, 127:16, 128:21, 130:16, 130:18, 148:16
**CROSS** [1] - 70:8
**cross-examination** [1] - 75:5
**CROSS-EXAMINATION** [1] - 70:8
**crossed** [1] - 44:20
**crossing** [2] - 44:21
**CRR** [3] - 1:22, 176:3, 176:10
**Cua** [7] - 148:13, 159:2, 159:6, 159:15, 162:25, 164:19
**cuck** [1] - 39:23
**cucking** [2] - 38:6, 126:12
**cucks** [1] - 32:8
**cunt** [1] - 50:19
**curfew** [1] - 155:23
**current** [2] - 138:5,

138:6
**cursor** [2] - 47:24, 47:25
**custody** [1] - 91:14
**cut** [3] - 31:9, 44:8, 124:25

# D

**D.C** [8] - 50:5, 52:3, 60:10, 79:15, 108:9, 149:14, 168:9, 168:10
**dam** [2] - 40:6, 40:20
**dam..** [1] - 40:8
**damage** [1] - 164:13
**damn** [1] - 40:8
**DaSilva** [2] - 164:22, 170:5
**data** [1] - 74:20
**database** [1] - 70:17
**databases** [2] - 70:12, 70:14
**date** [27] - 19:9, 19:12, 19:25, 23:1, 32:25, 35:22, 36:2, 36:17, 37:6, 39:8, 43:6, 45:8, 45:16, 45:18, 55:3, 55:18, 57:14, 58:2, 62:17, 62:19, 63:4, 64:1, 66:22, 85:4, 93:21, 173:23, 174:9
**Dated** [1] - 176:8
**dates** [1] - 52:23
**David** [1] - 68:7
**days** [2] - 131:25, 161:2
**DC** [4] - 1:15, 1:24, 62:25, 176:13
**deal** [4] - 5:25, 12:22, 27:21, 173:13
**dealt** [1] - 73:18
**death** [1] - 164:12
**Dec** [1] - 63:13
**decades** [1] - 143:12
**December** [37] - 19:14, 20:1, 23:2, 24:2, 33:1, 33:12, 33:23, 33:25, 36:4, 36:6, 36:14, 36:18, 37:7, 39:9, 39:10, 39:13, 43:8, 43:19, 45:9, 45:11, 45:19, 47:6, 47:13, 47:15, 47:24, 49:7, 49:21, 49:22, 50:3, 50:15, 50:17, 50:25, 51:2, 95:5, 95:17, 123:16
**decide** [3] - 143:5,

160:20, 173:6
**decided** [2] - 74:22, 162:12
**decides** [1] - 175:8
**deciding** [1] - 170:17
**decision** [14] - 39:18, 75:19, 92:17, 136:16, 136:19, 136:25, 137:3, 148:13, 149:22, 159:2, 159:3, 162:13, 174:13, 175:4
**decisions** [1] - 3:11
**declined** [1] - 90:13
**deemed** [2] - 15:11, 37:21
**Deep** [1] - 38:1
**deep** [1] - 39:16
**deeply** [1] - 142:6
**defeat** [1] - 125:25
**defendant** [85] - 3:6, 10:15, 10:20, 10:22, 11:1, 11:3, 11:5, 11:9, 11:13, 11:15, 11:25, 12:15, 12:18, 13:10, 19:25, 20:2, 21:22, 23:3, 23:16, 23:20, 25:6, 26:6, 30:3, 34:6, 34:20, 34:21, 34:22, 41:8, 41:14, 41:21, 42:5, 44:1, 47:22, 49:12, 51:23, 51:25, 52:19, 52:25, 53:18, 54:1, 54:2, 54:11, 61:3, 64:20, 66:6, 66:11, 66:13, 82:16, 96:23, 97:1, 97:4, 103:14, 106:11, 106:13, 119:15, 119:20, 120:14, 121:23, 123:7, 123:15, 124:23, 127:17, 131:9, 132:21, 136:7, 136:17, 142:14, 151:4, 151:6, 152:1, 152:7, 152:23, 153:8, 154:1, 154:16, 154:24, 156:22, 157:2, 158:16, 166:22, 167:6, 171:19, 171:25, 172:12
**DEFENDANT** [8] - 136:4, 136:11, 136:15, 136:21, 136:24, 137:2, 137:4, 137:7

**Defendant** [2] - 1:7, 1:18
**defendant's** [12] - 19:21, 23:21, 35:4, 37:8, 41:20, 42:18, 43:2, 98:8, 120:2, 146:19, 154:7, 158:2
**defendants** [2] - 93:4, 131:5
**defense** [48] - 3:9, 5:1, 6:19, 7:19, 8:6, 9:19, 13:17, 31:11, 67:22, 69:5, 71:13, 85:21, 87:4, 96:24, 97:16, 98:17, 99:7, 101:15, 102:14, 106:8, 106:24, 107:2, 112:2, 115:18, 116:4, 117:21, 118:11, 119:11, 119:15, 119:19, 121:5, 121:7, 132:10, 133:16, 134:13, 135:16, 135:24, 137:8, 137:9, 142:2, 143:25, 144:24, 150:3, 156:1, 157:22, 158:3, 167:19, 167:20
**Defense** [17] - 77:22, 80:4, 80:17, 84:23, 85:15, 87:1, 87:5, 95:24, 96:1, 98:13, 107:20, 110:16, 111:1, 129:7, 129:9, 129:14, 129:19
**defense's** [3] - 5:20, 97:13, 133:6
**defer** [1] - 132:12
**define** [2] - 165:13, 168:12
**defined** [4] - 3:24, 164:10, 165:24, 167:14
**defines** [2] - 147:20, 166:1
**defining** [1] - 164:16
**definition** [24] - 5:2, 5:22, 147:20, 155:4, 162:7, 162:24, 163:10, 163:11, 163:19, 163:20, 165:10, 165:18, 165:19, 165:21, 166:3, 166:6, 167:11, 167:15, 167:16, 167:17, 167:25, 168:6, 168:8, 168:9

**delegation** [1] - 29:20
**deliberate** [1] - 28:19
**deliberations** [2] - 144:25, 149:6
**delineated** [1] - 138:24
**delineates** [1] - 138:21
**demon** [1] - 48:6
**demon-possessed** [1] - 48:6
**demonstrated** [1] - 153:1
**demonstrative** [5] - 97:12, 101:8, 101:20, 106:10, 106:14
**denied** [1] - 102:11
**deny** [1] - 158:2
**depict** [2] - 115:23, 117:7
**depicted** [1] - 103:18
**depicting** [1] - 58:14
**depicts** [1] - 138:12
**depth** [1] - 32:22
**deputy** [1] - 100:3
**DEPUTY** [3] - 3:2, 17:22, 78:20
**describe** [1] - 122:5
**described** [5] - 79:5, 79:6, 92:5, 97:12, 106:9
**describes** [1] - 122:22
**describing** [1] - 39:24
**designated** [1] - 152:3
**designation** [1] - 22:14
**desire** [2] - 83:20, 84:3
**desires** [2] - 84:15, 84:17
**desk** [1] - 25:15
**desktop** [3] - 87:10, 87:14, 87:17
**despite** [1] - 170:23
**destruction** [1] - 164:13
**details** [2] - 64:25, 121:4
**determined** [1] - 157:9
**determining** [2] - 151:17, 163:9
**developments** [1] - 63:14
**device** [1] - 34:8
**dicksuck** [2] - 48:11, 127:3
**difference** [2] - 139:15, 142:11
**differences** [2] - 139:2
**different** [20] - 13:3, 18:12, 59:21, 72:18, 77:2, 92:23, 93:3,

93:4, 96:7, 100:10, 104:15, 138:23, 139:9, 140:9, 140:10, 151:13, 165:17, 165:19, 168:12, 168:13
**differential** [1] - 140:21
**differently** [2] - 171:3, 171:4
**differs** [2] - 37:15, 37:22
**digits** [1] - 20:18
**dire** [1] - 38:20
**DIRECT** [1] - 15:2
**direct** [12] - 3:21, 9:5, 22:3, 42:18, 65:19, 65:21, 78:18, 80:22, 95:3, 120:23, 128:21, 154:17
**directing** [1] - 168:5
**directly** [7] - 11:5, 11:8, 11:13, 11:14, 21:23, 53:25, 136:7
**disagree** [2] - 8:14, 133:1
**disclose** [1] - 73:20
**discounted** [1] - 172:19
**discuss** [5] - 41:24, 86:23, 103:4, 136:23, 174:14
**discussed** [4] - 67:7, 101:14, 163:15, 170:1
**discusses** [6] - 81:3, 81:21, 82:7, 83:20, 84:2, 165:15
**discussing** [7] - 41:12, 41:21, 66:1, 81:16, 82:19, 86:12, 165:8
**discussion** [8] - 23:23, 54:24, 55:4, 97:6, 101:12, 102:5, 164:20, 164:25
**discussions** [2] - 24:5, 72:1
**dismiss** [3] - 140:5, 163:24, 175:4
**dismissal** [2] - 137:14, 139:18
**disorder** [5] - 124:19, 152:16, 155:3, 155:22, 160:2
**displaying** [1] - 32:17
**dispute** [2] - 104:5, 161:3
**disregard** [1] - 38:22
**disregarded** [1] - 161:15

**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [1] - 137:22
**Docket** [4] - 102:5, 163:16, 164:7, 164:25
**docket** [3] - 138:7, 141:13, 141:15
**document** [7] - 15:22, 16:2, 76:17, 91:6, 91:17, 92:14, 163:6
**Document** [4] - 77:22, 80:4, 80:18, 85:15
**documented** [2] - 22:9, 22:10
**documents** [2] - 6:12, 73:12
**Donald** [2] - 58:14, 80:8
**done** [14] - 6:6, 28:19, 85:21, 90:4, 99:14, 123:1, 143:20, 143:21, 159:23, 160:3, 169:14, 169:15, 172:8, 174:7
**door** [28] - 66:10, 66:11, 88:13, 89:9, 108:12, 108:14, 108:17, 109:24, 111:17, 111:18, 113:22, 113:24, 114:3, 120:2, 120:15, 120:16, 121:18, 122:7, 122:9, 148:4, 148:15, 148:17, 148:18, 152:9, 152:24, 153:3, 153:4, 161:15
**doors** [7] - 119:16, 120:12, 146:7, 152:8, 153:2, 153:8
**double** [1] - 50:19
**doubt** [6] - 39:23, 158:20, 160:20, 170:13, 170:19, 173:7
**down** [20] - 10:16, 15:23, 17:20, 19:17, 32:14, 39:21, 40:2, 45:14, 48:8, 50:6, 52:4, 52:10, 67:1, 67:16, 73:17, 86:17, 89:24, 118:2, 126:25, 171:22
**downloaded** [1] - 18:21
**draw** [4] - 24:1, 30:19, 125:18, 171:1
**drawing** [11] - 64:5,

125:14, 160:18, 170:16, 170:22, 171:15, 172:1, 172:5, 172:10, 172:16, 173:4
**drawn** [1] - 119:16
**drifters** [1] - 62:22
**drive** [1] - 110:10
**drop** [1] - 35:15
**due** [1] - 156:20
**Duran** [1] - 164:21
**during** [18] - 30:16, 77:2, 87:9, 97:13, 97:17, 97:19, 102:18, 103:19, 104:3, 116:9, 119:23, 146:9, 149:5, 152:8, 154:25, 156:2, 168:14, 171:4
**duties** [10] - 38:8, 126:14, 153:15, 154:23, 155:1, 158:18, 160:1, 160:5, 172:13

# E

**E-L-I-A-S** [1] - 68:8
**ear** [2] - 48:12, 127:4
**early** [4] - 108:10, 155:23, 156:13, 175:11
**easier** [5] - 26:1, 68:5, 113:2, 142:7, 145:20
**easiest** [1] - 3:18
**easing** [1] - 40:1
**east** [1] - 120:11
**East** [1] - 152:8
**easy** [2] - 99:9, 107:2
**ECF** [2] - 163:6, 167:13
**ECF-70** [2] - 163:7, 163:25
**edges** [1] - 87:12
**edit** [1] - 116:4
**edited** [2] - 100:19, 100:20
**effect** [6] - 11:10, 11:12, 11:15, 34:21, 34:23, 42:17
**effort** [1] - 134:2
**efforts** [2] - 155:10, 155:14
**eg** [1] - 37:20
**eight** [1] - 165:7
**either** [15] - 8:18, 10:2, 11:8, 27:19, 34:20, 40:7, 57:3, 67:4, 72:17, 84:12, 103:6,

104:2, 154:24, 163:3, 171:21
**elbow** [1] - 146:19
**election** [8] - 11:7, 23:23, 40:6, 41:24, 46:11, 51:14, 52:17, 127:25
**elector** [1] - 35:11
**elector'** [2] - 37:17, 37:18
**Electoral** [1] - 32:6
**electoral** [2] - 37:12, 81:16
**electoral'** [1] - 123:23
**electors** [6] - 29:19, 37:13, 37:20, 82:11, 82:13, 82:20
**element** [10] - 139:4, 139:12, 139:14, 139:15, 139:24, 140:13, 148:11, 150:13, 166:24
**elements** [5] - 147:18, 155:2, 158:1, 158:4, 158:6
**Elias** [2] - 68:7, 68:13
**email** [18] - 4:22, 5:9, 6:11, 7:12, 10:11, 11:17, 14:11, 20:14, 20:15, 25:6, 25:20, 61:18, 70:21, 71:6, 86:20, 141:3, 141:4, 173:16
**emailed** [5] - 4:21, 75:10, 86:24, 87:2, 88:14
**emails** [3] - 3:9, 5:6, 24:2
**emerged** [1] - 67:6
**emergency** [1] - 40:1
**emphasized** [2] - 158:19, 158:20
**end** [19] - 9:6, 9:15, 10:1, 29:1, 38:9, 66:14, 72:1, 73:2, 73:4, 118:20, 133:6, 133:21, 133:24, 135:6, 136:18, 140:20, 141:7, 161:13
**ended** [1] - 157:9
**ends** [3] - 28:20, 28:21, 32:11
**enforcement** [2] - 116:22, 160:4
**engaged** [2] - 53:9, 160:1
**engagement** [1] - 10:19
**engaging** [2] - 10:16,

11:3
**enhanced** [1] - 97:21
**enhancements** [1] - 105:8
**ensues** [1] - 52:1
**enter** [2] - 103:15, 112:11
**entered** [2] - 66:6, 156:22
**entering** [3] - 124:19, 140:20, 151:11
**enthusiasm** [1] - 62:23
**entire** [8] - 25:4, 28:5, 34:15, 36:9, 49:11, 77:5, 100:5, 174:25
**entirety** [2] - 29:2, 78:14
**entrance** [1] - 108:13
**entrepreneurs** [1] - 62:22
**enunciate** [1] - 146:13
**especially** [2] - 10:20, 12:1, 71:3
**ESQ** [3] - 1:13, 1:13, 1:18
**essential** [10] - 139:14, 139:15, 139:23, 140:13, 147:13, 147:17, 150:13, 166:24, 171:7
**essentially** [2] - 105:1, 143:9
**establish** [8] - 17:19, 21:12, 125:2, 148:25, 150:8, 151:9, 167:8, 171:14
**established** [1] - 23:19
**establishes** [1] - 33:17
**establishing** [3] - 8:5, 11:19, 149:1
**establishmentarian** [1] - 47:9
**et** [2] - 25:20, 135:18
**evaluating** [1] - 140:18
**event** [2] - 64:23, 113:19
**events** [3] - 72:23, 147:10, 147:11
**evidence** [51] - 9:23, 23:25, 28:5, 30:8, 44:24, 48:15, 65:3, 75:23, 80:18, 84:25, 96:7, 96:8, 96:10, 96:12, 96:15, 98:19, 100:13, 101:10, 101:21, 104:6, 107:10, 112:20, 113:17, 116:2, 118:21, 118:22,

122:19, 129:21, 133:25, 142:21, 143:4, 145:5, 145:6, 147:24, 149:1, 149:6, 151:18, 155:19, 155:25, 161:1, 161:7, 161:12, 166:21, 170:8, 170:10, 170:18, 170:24, 171:18, 171:19, 172:21, 172:23
**Evite** [2] - 12:4, 12:5
**ex** [4] - 70:25, 71:21, 73:21, 73:22
**exactly** [6] - 154:5, 155:16, 156:17, 157:7, 157:11, 158:12
**EXAMINATION** [3] - 15:2, 70:8, 119:9
**examination** [7] - 3:21, 21:6, 70:3, 75:5, 127:17, 128:22, 154:17
**examine** [1] - 8:17
**example** [3] - 72:22, 91:24, 151:11
**except** [3] - 11:1, 30:20, 102:25
**exception** [2] - 104:25, 106:24, 169:18
**exceptions** [1] - 7:5
**exchanges** [1] - 7:8
**excited** [1] - 103:4
**exclude** [4] - 42:19, 55:7, 112:11, 112:21
**excluded** [1] - 113:1
**exclusively** [1] - 170:25
**exculpatory** [2] - 72:11, 73:24
**excuse** [11] - 22:1, 22:23, 29:18, 32:21, 35:9, 45:15, 49:9, 49:21, 51:4, 55:12, 66:18, 84:5, 126:20
**execution** [2] - 153:14, 154:25
**exhibit** [30] - 28:15, 65:12, 85:22, 85:25, 87:8, 96:3, 96:7, 96:12, 96:19, 96:22, 96:25, 97:7, 97:11, 99:5, 99:15, 99:16, 99:25, 100:17, 100:21, 102:1, 102:9, 103:15, 104:21, 112:24, 118:21, 138:16,

138:18, 138:19, 140:20, 140:24
**Exhibit** [25] - 6:3, 6:7, 74:16, 76:3, 78:19, 78:23, 80:22, 84:23, 85:23, 95:24, 96:1, 98:13, 99:23, 102:7, 107:3, 107:20, 110:16, 120:7, 129:7, 129:9, 129:14, 129:19, 130:2, 138:20
**exhibits** [22] - 17:9, 23:22, 25:8, 97:17, 97:20, 97:22, 98:17, 98:18, 99:18, 99:19, 99:21, 99:22, 100:1, 100:20, 103:7, 116:1, 131:24, 132:3, 132:4, 135:17, 135:18, 141:15
**existed** [2] - 139:7, 139:9
**existence** [1] - 12:16
**exists** [2] - 54:7, 72:21
**exit** [40] - 19:16, 29:23, 29:24, 32:24, 35:20, 36:7, 37:2, 40:16, 43:16, 43:25, 45:21, 45:25, 46:12, 46:23, 47:10, 47:20, 48:13, 49:8, 49:19, 50:7, 50:21, 51:3, 51:18, 55:25, 56:5, 56:14, 56:21, 57:22, 58:15, 59:1, 59:18, 60:16, 61:9, 61:20, 62:4, 62:15, 64:10, 64:15, 128:1, 128:7
**expectation** [1] - 157:13
**expectations** [1] - 53:1
**expected** [1] - 132:7
**experience** [1] - 122:24
**expert** [1] - 124:13
**explained** [1] - 73:22
**explaining** [1] - 84:8
**explicitly** [4] - 123:15, 124:24, 127:18, 127:19
**explore** [2] - 72:8, 73:18
**extensive** [1] - 143:22
**extent** [5] - 12:21, 14:17, 98:14, 158:22
**external** [1] - 110:9
**extra** [1] - 141:1

**extract** [3] - 27:21, 28:10, 29:9
**extracted** [4] - 6:4, 6:6, 14:4, 28:25
**extraction** [4] - 14:3, 15:7, 22:24, 74:20
**extremely** [1] - 72:16
**extrinsically** [1] - 92:20

## F

**face** [2] - 58:14, 73:14
**facetiously** [1] - 135:6
**facing** [1] - 120:11
**fact** [28] - 5:13, 8:20, 11:19, 12:14, 12:18, 30:18, 34:16, 81:8, 100:24, 107:9, 122:23, 123:2, 149:8, 154:24, 155:22, 156:7, 160:19, 160:24, 170:12, 170:17, 171:1, 171:11, 172:3, 172:6, 172:11, 172:16, 173:6
**fact-finder** [12] - 30:18, 122:23, 160:19, 160:24, 170:12, 170:17, 171:1, 171:11, 172:3, 172:6, 172:16, 173:6
**fact-finding** [1] - 8:20
**facts** [2] - 8:21, 142:17
**fail** [2] - 38:7, 126:13
**failed** [3] - 158:9, 166:25, 167:7
**fair** [6] - 57:3, 119:12, 121:9, 128:21, 134:1, 174:12
**faith** [1] - 49:9
**fall** [1] - 167:22
**familiar** [3] - 44:2, 44:18, 149:13
**family** [1] - 155:15
**far** [10] - 28:1, 103:12, 111:13, 145:8, 148:7, 149:4, 150:7, 155:8, 165:19, 166:19
**farm** [1] - 92:11
**fast** [9] - 96:25, 105:11, 108:24, 111:3, 112:7, 113:3, 115:16, 115:20, 119:22
**faster** [1] - 3:14

**fate** [1] - 39:19
**favor** [11] - 20:8, 27:11, 160:18, 170:16, 170:22, 171:2, 171:16, 172:5, 172:11, 172:17, 173:4
**favorable** [6] - 71:14, 72:11, 73:10, 73:24, 170:10, 170:18
**FBI** [4] - 68:7, 68:8, 89:16, 147:3
**FD302** [3] - 88:9, 88:12, 89:7
**fear** [1] - 32:12
**fear-puckered** [1] - 32:12
**federal** [2] - 155:10, 162:18
**federally** [2] - 155:8, 172:25
**FEEL** [2] - 32:10, 32:11
**felony** [7] - 153:25, 154:2, 154:4, 154:12, 159:13, 172:14, 172:24
**Feola** [1] - 164:19
**few** [15] - 15:5, 67:4, 69:1, 79:15, 96:2, 103:14, 104:16, 104:18, 106:25, 107:22, 134:24, 143:12, 161:2, 161:14, 171:2
**fifth** [1] - 50:6
**figure** [3] - 99:3, 135:22, 166:9
**figured** [1] - 25:25
**file** [3] - 5:4, 75:16, 143:25
**filed** [4] - 3:17, 7:12, 24:21, 141:17
**files** [1] - 163:6
**filing** [10] - 3:25, 4:2, 24:23, 37:19, 51:13, 52:15, 127:24, 141:8, 141:13, 141:15
**filings** [5] - 6:25, 70:25, 71:21, 71:25, 73:22
**final** [10] - 39:19, 40:2, 101:13, 101:24, 102:2, 102:3, 103:2, 106:7, 106:19, 163:16
**finally** [1] - 87:11
**finder** [13] - 30:18, 122:23, 160:19,

160:24, 170:12, 170:17, 171:1, 171:11, 172:3, 172:6, 172:12, 172:16, 173:6
**findings** [1] - 123:2
**fine** [8] - 30:14, 76:7, 98:16, 103:25, 110:18, 134:6, 144:12, 169:21
**finish** [4] - 9:4, 65:19, 65:21, 135:2
**finishes** [1] - 7:18
**finishing** [1] - 44:8
**firearm** [1] - 79:6
**firearms** [1] - 79:25
**First** [1] - 31:18
**first** [54] - 3:19, 10:20, 12:14, 12:17, 19:6, 19:7, 20:11, 21:3, 34:5, 34:20, 35:1, 35:3, 41:2, 41:6, 43:4, 45:6, 45:8, 46:19, 47:4, 47:17, 49:1, 50:12, 52:6, 54:20, 55:16, 57:14, 58:19, 60:7, 60:24, 61:11, 62:8, 63:21, 63:23, 66:20, 68:3, 68:4, 68:20, 68:22, 71:23, 86:19, 88:2, 88:16, 92:4, 96:11, 101:2, 123:17, 138:25, 142:9, 145:3, 148:23, 151:25, 156:5, 159:7
**Fischer** [1] - 174:24
**fit** [1] - 42:15
**five** [2] - 27:2, 134:24
**fix** [1] - 110:8
**flaws** [1] - 170:23
**flip** [1] - 38:19
**floor** [1] - 102:18
**flow** [1] - 40:8
**focal** [1] - 63:12
**focus** [2] - 16:6, 49:9
**focused** [2] - 14:7, 72:14
**focusing** [2] - 167:19, 167:20
**follow** [4] - 10:8, 38:8, 126:14, 155:23
**follow-up** [1] - 10:8
**following** [7] - 37:11, 89:23, 91:17, 123:22, 136:8, 166:15
**follows** [1] - 142:21
**foot** [1] - 120:15
**footage** [9] - 66:6,

160:24, 170:12, 170:17, 171:1, 171:11, 172:3, 172:6, 172:16, 173:6
**FOR** [1] - 1:1
**force** [1] - 172:16
**forcibly** [8] - 152:1, 152:15, 152:18, 159:18, 159:19, 159:23, 160:3, 172:8
**forecast** [2] - 55:21, 56:3
**foregoing** [1] - 176:4
**foreman** [2] - 142:24, 143:6
**form** [10] - 5:4, 82:25, 83:1, 83:3, 83:5, 83:14, 83:22, 157:6, 167:18, 167:21
**former** [1] - 32:19
**forth** [13] - 3:25, 7:8, 10:19, 34:15, 71:24, 105:2, 105:7, 117:4, 128:11, 128:14, 130:25, 132:4, 154:2
**forward** [12] - 6:23, 25:17, 94:22, 96:25, 104:8, 108:24, 111:3, 112:7, 115:16, 115:20, 132:23, 173:6
**forwarded** [1] - 119:22
**forwarding** [1] - 113:3
**foundation** [2] - 105:4, 112:23
**four** [7] - 6:9, 20:14, 20:18, 25:11, 25:18, 32:17, 85:16
**frame** [1] - 153:3
**fraud** [1] - 72:19
**fraudulent** [2] - 37:21, 46:11
**free** [1] - 115:4
**frequently** [1] - 79:12
**fresh** [1] - 65:22
**FRIEDMAN** [1] - 1:10
**friends** [1] - 75:21
**front** [4] - 108:17, 109:1, 115:10, 141:18
**full** [3] - 36:23, 76:20, 176:5
**fully** [1] - 140:19
**fulsome** [2] - 133:23, 144:5
**function** [2] - 155:9, 172:25
**functionaries** [2] - 38:1, 39:16
**fundamental** [1] - 7:6

101:17, 109:21, 113:6, 114:25, 117:5, 117:16, 118:13, 118:17

**funny** [1] - 131:2
**furthermore** [1] - 148:7
**future** [1] - 157:19

# G

**G-A-I-T-H-E-R** [1] - 137:20
**GA** [1] - 29:17
**Gaither** [11] - 137:19, 142:9, 142:19, 142:25, 143:1, 143:7, 143:12, 143:14, 144:15, 174:5, 174:6
**game** [1] - 135:3
**gathering** [3] - 37:13, 82:13, 82:20
**gauge** [1] - 59:10
**general** [6] - 54:13, 83:3, 83:15, 83:23, 149:11, 172:2
**generally** [2] - 22:7, 66:2
**generates** [1] - 34:21
**Giglio** [2] - 72:11, 73:24
**girls** [1] - 98:7
**given** [6] - 5:14, 53:20, 72:12, 142:13, 161:12, 174:23
**glad** [1] - 62:23
**global** [2] - 13:14, 13:17
**globally** [6] - 14:2, 14:9, 16:5, 16:8, 17:19, 21:12
**goal** [2] - 9:25, 106:22
**goals** [1] - 10:2
**GOP** [1] - 39:20
**Gossjankowski** [3] - 168:2, 168:3, 170:2
**governing** [1] - 89:13
**government** [145] - 3:8, 4:5, 4:11, 4:17, 6:6, 6:17, 6:22, 7:12, 7:16, 7:18, 8:1, 10:4, 10:13, 11:18, 13:6, 13:8, 13:18, 23:7, 24:1, 24:4, 24:10, 24:15, 24:22, 27:17, 28:3, 29:5, 30:8, 30:15, 30:16, 31:10, 34:3, 34:13, 34:19, 40:25, 42:15, 48:14, 51:19, 51:24, 56:22, 65:3, 67:23, 68:4, 68:6, 71:2, 71:21, 72:10, 73:8, 73:23,

74:2, 74:10, 75:2, 77:1, 77:3, 77:14, 85:12, 86:1, 91:1, 91:10, 92:5, 96:11, 96:22, 97:9, 97:12, 97:14, 97:23, 98:8, 99:19, 100:18, 100:23, 101:15, 102:9, 102:15, 102:17, 103:20, 103:21, 104:18, 104:22, 106:4, 106:17, 107:11, 112:11, 112:22, 131:25, 132:2, 133:19, 134:5, 134:7, 134:16, 135:21, 138:2, 139:5, 139:6, 140:19, 140:21, 141:4, 141:17, 141:25, 142:4, 142:23, 144:1, 144:9, 147:12, 147:13, 147:19, 148:5, 148:8, 148:25, 150:8, 150:13, 150:15, 151:1, 151:9, 151:18, 151:24, 152:5, 153:19, 154:5, 154:13, 155:11, 155:18, 157:22, 157:25, 158:4, 158:5, 158:7, 160:19, 161:3, 161:16, 162:6, 164:24, 166:23, 166:25, 167:7, 169:21, 170:10, 170:12, 170:18, 170:23, 170:25, 171:7, 171:16, 172:11, 172:17, 173:5, 173:21
**Government** [2] - 78:18, 80:22
**government's** [28] - 9:6, 12:13, 29:11, 68:18, 74:16, 79:1, 80:24, 85:22, 98:6, 99:18, 102:21, 104:12, 112:20, 133:14, 138:25, 145:4, 147:3, 148:14, 149:4, 153:11, 153:25, 154:21, 157:17, 163:9, 166:19, 170:16, 171:19, 172:5

**Government's** [2] - 76:16, 102:7
**governor** [1] - 37:15
**GP** [1] - 46:20
**grand** [22] - 89:15, 138:3, 138:16, 138:18, 138:19, 138:20, 139:6, 140:24, 141:7, 141:12, 141:15, 142:1, 142:11, 142:22, 142:24, 143:2, 143:7, 143:11, 143:19, 174:5
**grant** [2] - 5:20, 175:4
**graphics** [1] - 100:9
**great** [5] - 39:19, 129:5, 129:6, 130:10, 158:22
**green** [37] - 7:23, 8:12, 17:20, 18:15, 18:19, 19:18, 19:23, 27:1, 27:3, 28:7, 28:10, 28:12, 30:12, 33:3, 37:1, 37:5, 41:6, 42:24, 47:2, 47:4, 47:21, 49:1, 49:5, 54:4, 54:20, 55:14, 60:20, 63:21, 64:16, 64:17, 76:6, 78:1, 85:1, 86:3, 86:4, 92:12
**greens** [1] - 3:13
**Griffin** [1] - 174:23
**ground** [1] - 118:3
**grounds** [16] - 3:24, 5:22, 23:12, 140:7, 140:8, 144:8, 150:11, 150:21, 150:24, 151:12, 151:21, 155:7, 156:5, 157:23, 166:23, 166:24
**group** [30] - 6:9, 7:18, 11:3, 12:14, 12:17, 12:19, 13:23, 15:7, 15:10, 15:25, 16:5, 18:7, 19:2, 19:12, 20:11, 21:4, 27:15, 29:7, 29:17, 31:2, 32:15, 34:17, 34:25, 45:2, 48:22, 55:1, 64:13, 127:15, 128:11, 128:14
**groups** [2] - 7:16
**guess** [9] - 6:11, 17:15, 28:20, 74:22, 80:21, 99:14, 115:10, 135:9, 164:1

**guilt** [2] - 170:19, 173:7
**guilty** [1] - 121:8
**guns** [1] - 119:16
**guys** [4] - 5:4, 50:5, 52:3, 175:11

# H

**HAAG** [18] - 1:13, 25:22, 25:25, 134:6, 134:11, 134:16, 142:8, 143:24, 144:12, 144:21, 151:25, 152:12, 152:16, 152:19, 152:22, 153:23, 157:1, 167:11
**Haag** [15] - 3:4, 3:19, 25:15, 25:21, 29:8, 30:1, 30:25, 31:8, 75:7, 75:9, 75:24, 91:13, 91:23, 161:6, 173:25
**hagmann** [2] - 43:15
**hagmann-report** [1] - 43:15
**half** [4] - 68:14, 68:15, 93:6, 165:5
**Hall** [3] - 114:19, 114:20, 116:18
**hammer** [1] - 35:14
**hand** [4] - 8:24, 47:17, 75:3, 115:13
**hands** [2] - 148:15, 148:17
**happier** [1] - 31:17
**happy** [4] - 3:15, 110:12, 135:5, 157:24
**hard** [6] - 35:13, 110:9, 111:15, 111:24, 119:14
**harm** [1] - 164:12
**harvest** [1] - 61:18
**hat** [6] - 128:25, 129:3, 130:3, 130:7, 130:8, 130:11
**hats** [4] - 56:17, 56:19, 79:6, 130:9
**Hawa** [6] - 155:16, 156:6, 157:15, 171:14, 171:22, 173:3
**Hawa's** [2] - 156:11, 157:5
**haystack** [1] - 72:16
**head** [1] - 74:5
**headed** [1] - 171:21
**heads** [1] - 35:15

**hear** [8] - 6:1, 9:2, 27:22, 50:5, 52:3, 124:15, 132:19, 134:19
**heard** [6] - 39:18, 41:14, 88:19, 155:16, 161:1, 161:12
**hearing** [5] - 101:2, 162:15, 163:1, 164:4, 175:18
**hearings** [2] - 71:25, 163:2
**hearsay** [4] - 7:5, 102:8, 102:10
**held** [1] - 152:9
**HELD** [1] - 1:10
**help** [10] - 3:10, 3:11, 3:13, 7:25, 8:19, 15:14, 79:1, 80:25, 92:6
**helpful** [5] - 3:9, 5:13, 7:2, 140:22, 169:20
**helpfulness** [1] - 161:4
**hereby** [1] - 176:3
**herself** [1] - 9:11
**hes** [3] - 48:6, 48:9, 127:1
**high** [1] - 53:15
**higher** [1] - 48:4
**highlight** [19] - 13:7, 13:9, 33:16, 45:22, 46:2, 46:15, 47:11, 47:21, 49:11, 49:20, 50:12, 51:4, 51:6, 56:7, 56:15, 60:24, 61:10, 62:8, 70:23
**highlighted** [8] - 10:13, 87:8, 96:23, 97:1, 114:8, 114:14, 117:18, 118:15
**highlighting** [7] - 58:8, 96:18, 96:20, 108:20, 116:4, 118:6, 118:8
**highly** [4] - 41:11, 41:17, 53:13
**himself** [5] - 10:22, 63:15, 96:23, 107:13, 107:15
**hinge** [1] - 120:15
**historically** [1] - 44:16
**history** [1] - 44:18
**hit** [4] - 41:16, 116:25, 117:2, 161:9
**hold** [1] - 170:12
**holding** [1] - 152:24
**home** [1] - 79:9
**honest** [1] - 9:22

187

**honestly** [2] - 48:4, 169:1

**Honor** [142] - 8:1, 9:7, 10:4, 10:10, 11:17, 13:6, 14:13, 15:17, 16:20, 20:21, 21:1, 21:8, 21:11, 21:25, 22:17, 23:6, 23:17, 24:22, 25:9, 25:22, 26:4, 26:15, 27:17, 29:4, 30:7, 30:10, 30:15, 31:9, 34:2, 34:13, 35:24, 38:20, 39:11, 40:12, 40:24, 41:19, 42:6, 42:13, 44:23, 48:14, 48:21, 51:19, 52:21, 53:5, 53:7, 53:11, 53:25, 55:10, 56:22, 57:9, 59:22, 65:2, 65:9, 65:13, 67:2, 67:7, 70:7, 70:22, 74:11, 74:15, 75:1, 76:25, 77:3, 85:17, 87:6, 87:8, 88:21, 89:3, 90:1, 90:11, 93:20, 94:20, 94:23, 95:23, 96:5, 97:11, 98:16, 99:23, 101:6, 102:23, 103:3, 103:5, 104:20, 106:3, 107:1, 107:6, 108:14, 109:10, 110:7, 111:19, 112:14, 113:23, 114:4, 114:21, 115:15, 116:23, 118:1, 118:4, 119:5, 119:8, 121:5, 123:10, 125:12, 125:17, 126:17, 127:16, 129:10, 129:12, 129:17, 129:20, 129:22, 130:17, 130:24, 131:14, 131:20, 131:21, 134:6, 134:12, 134:16, 136:4, 136:15, 136:21, 136:24, 137:2, 137:7, 141:6, 141:10, 142:8, 143:24, 144:21, 151:25, 152:13, 152:19, 153:23, 154:13, 155:18, 156:2, 156:18, 167:12, 169:22, 173:21, 175:16

**Honor's** [1] - 3:22

**HONORABLE** [1] -

1:10

**hookups** [1] - 175:15

**hope** [1] - 50:19

**hopefully** [3] - 13:22, 69:4, 169:2

**hoping** [2] - 47:8, 169:3

**hotel** [7] - 37:14, 81:17, 81:21, 82:7, 82:9, 82:14, 82:20

**hour** [4] - 47:24, 49:25, 169:4

**hours** [3] - 13:2, 42:2, 156:14

**House** [4] - 29:20, 102:18, 119:16, 156:10

**hug** [1] - 105:24

**huger** [1] - 156:16

**hundreds** [1] - 73:12

**hypothetically** [2] - 73:15, 161:16

---

# I

**idea** [4] - 59:12, 64:21, 143:6, 157:19

**identical** [1] - 165:18

**identification** [8] - 15:13, 15:18, 15:21, 16:13, 76:22, 77:23, 84:24, 96:2

**identified** [6] - 6:10, 100:14, 100:16, 101:11, 103:24, 131:6

**identify** [7] - 66:5, 66:9, 99:12, 104:18, 104:21, 107:13, 107:15

**identifying** [5] - 20:14, 20:18, 66:14, 104:7, 121:4

**image** [31] - 33:7, 33:9, 33:20, 33:21, 35:16, 35:18, 40:9, 40:20, 46:22, 49:15, 49:17, 51:5, 51:6, 51:15, 56:2, 56:12, 56:15, 56:16, 60:3, 60:9, 60:12, 60:13, 64:11, 64:12, 64:13, 86:22, 86:24, 87:1, 87:14, 130:20, 140:17

**Image** [1] - 87:5

**imagery** [1] - 99:20

**images** [5] - 32:23, 40:9, 57:4, 57:6, 60:4

**imagine** [1] - 146:21

**imagined** [1] - 146:22

**immediate** [1] - 42:2

**immediately** [1] - 153:7

**impact** [4] - 155:19, 155:21, 155:23, 172:24

**impacted** [2] - 140:13, 140:15

**impacts** [2] - 159:2, 159:3

**impeach** [3] - 89:11, 89:17, 92:20

**impeachment** [10] - 67:17, 67:20, 88:22, 88:24, 89:13, 90:4, 90:14, 90:22, 92:2, 92:25

**impeded** [2] - 154:24, 158:18

**impeding** [3] - 152:2, 153:13, 153:21

**important** [7] - 10:18, 122:22, 132:19, 132:24, 140:3, 140:7, 142:18

**imposing** [1] - 153:21

**imprecision** [1] - 172:21

**impression** [2] - 103:4, 103:11

**improper** [5] - 88:22, 88:24, 90:3, 92:2, 100:14

**IN** [1] - 1:1

**inability** [3] - 160:8, 160:9

**inadmissible** [1] - 102:8

**inadvertently** [2] - 29:3, 29:6

**inappropriate** [1] - 4:22

**incident** [2] - 104:15, 146:25

**incidental** [1] - 148:7

**include** [8] - 28:4, 28:25, 49:13, 72:25, 75:16, 99:20, 115:9, 167:16

**included** [14] - 11:1, 11:2, 26:11, 30:16, 40:9, 42:7, 46:13, 47:16, 48:3, 57:4, 64:12, 77:4, 107:4, 163:11

**includes** [1] - 172:9

**including** [10] - 40:3, 41:23, 55:9, 70:24,

72:19, 72:22, 114:3, 127:15, 147:10, 171:17

**inclusion** [1] - 102:7

**incoming** [1] - 18:18

**inconsistencies** [1] - 69:1

**indeed** [1] - 34:11

**independent** [1] - 86:12

**indicate** [6] - 11:22, 19:20, 22:15, 39:12, 43:1, 98:17

**indicated** [10] - 24:22, 27:2, 27:5, 30:16, 34:19, 45:10, 45:23, 67:24, 105:5, 154:19

**indicates** [4] - 7:23, 7:24, 22:6, 155:4

**indicating** [4] - 31:22, 155:21, 156:6, 156:16

**indication** [4] - 42:4, 52:19, 55:5, 95:18

**indications** [1] - 79:24

**indicted** [1] - 138:22

**indictment** [17] - 134:14, 137:14, 138:1, 138:4, 138:5, 138:6, 138:14, 138:16, 141:19, 142:22, 142:23, 143:2, 143:3, 143:5, 143:8, 152:1, 174:25

**individual** [4] - 99:4, 99:22, 146:6, 164:12

**individuals** [4] - 16:1, 25:7, 30:20, 155:6

**indulgence** [13] - 51:22, 74:12, 76:15, 85:14, 95:2, 95:21, 107:18, 109:9, 112:12, 112:17, 119:5, 150:18, 161:24

**inferences** [12] - 24:1, 30:19, 149:2, 160:18, 170:16, 170:22, 171:2, 171:16, 172:5, 172:11, 172:17, 173:4

**inflict** [8] - 147:21, 147:23, 147:25, 148:19, 148:21, 149:2, 167:16, 168:15

**inflicting** [1] - 148:4

**infliction** [2] - 164:11, 164:12

**information** [5] - 10:11, 70:16, 71:13, 72:11, 110:10

**informed** [2] - 75:9, 77:3

**initial** [7] - 20:11, 21:3, 27:14, 54:1, 54:4, 93:6, 145:17

**initiated** [2] - 6:12, 7:9

**injure** [1] - 167:20

**injury** [10] - 147:21, 147:23, 147:25, 148:4, 148:19, 149:3, 162:8, 165:20, 167:16, 168:15

**innocence** [1] - 174:21

**inquiry** [1] - 72:14

**inside** [13] - 98:22, 113:24, 114:3, 114:18, 115:24, 117:7, 122:7, 152:9, 152:10, 152:23, 152:25, 153:17

**instruction** [2] - 164:21, 170:2

**instructions** [3] - 168:1, 168:6, 168:7

**instrumentality** [1] - 155:11

**insubstantial** [1] - 139:3

**intended** [2] - 143:9, 149:2

**intending** [1] - 154:1

**intensity** [1] - 40:2

**intent** [14] - 11:6, 24:3, 82:23, 153:25, 154:4, 154:7, 154:11, 159:12, 159:23, 162:7, 167:16, 167:20, 168:15, 172:13

**intention** [3] - 100:17, 147:23, 147:25

**intentional** [1] - 147:21

**intentionally** [2] - 148:19, 148:21

**interact** [1] - 41:15

**interacted** [2] - 8:15, 53:18

**interacting** [2] - 146:6, 147:1

**interaction** [4] - 14:6, 93:11, 119:20, 148:17

**interactions** [2] - 146:3, 155:5

**interchanges** [1] - 6:8

**interested** [1] - 75:20
**interesting** [1] - 133:9
**interfere** [3] - 81:5, 81:8, 84:18
**interfered** [6] - 154:25, 158:17, 158:21, 160:4, 172:12, 172:18
**interference** [4] - 127:19, 127:20, 155:8, 158:24
**interfering** [3] - 152:3, 153:14, 153:22
**interject** [1] - 106:4
**intermediary** [1] - 62:24
**interpretation** [1] - 148:13
**interpreted** [4] - 143:14, 162:5, 171:3, 171:4
**interpreting** [1] - 148:24
**interprets** [1] - 162:18
**interrupt** [1] - 46:10
**interrupted** [1] - 36:24
**interstate** [2] - 155:19, 172:24
**interview** [3] - 86:22, 88:15, 93:23
**interviewed** [2] - 66:21, 93:18
**intimidating** [3] - 152:2, 153:13, 153:22
**introduce** [1] - 24:10
**invade** [1] - 44:20
**inverse** [1] - 107:17
**investigating** [5] - 70:11, 93:10, 93:24, 94:2, 94:4
**investigation** [5] - 71:15, 74:1, 93:14, 119:24, 120:3
**investigative** [1] - 66:2
**invitation** [2] - 12:4, 12:5
**invited** [2] - 12:7, 12:15, 154:18
**involved** [2] - 7:7, 65:22
**involves** [1] - 39:15
**involving** [3] - 73:5, 164:11, 165:15
**iPad** [1] - 109:9
**irrelevant** [2] - 92:10, 131:4
**is..** [1] - 137:3
**issue** [17] - 3:19, 3:23, 25:14, 53:16, 99:20,

112:15, 112:23, 130:15, 139:14, 140:10, 140:11, 142:17, 142:20, 151:16, 164:2, 174:4, 175:3
**issued** [1] - 164:3
**issues** [17] - 3:15, 67:3, 68:17, 68:25, 103:13, 133:9, 149:19, 150:5, 158:4, 158:9, 158:10, 160:21, 160:24, 163:9, 165:9, 174:15, 174:17
**Italy** [1] - 44:6
**item** [4] - 54:20, 54:23, 74:24
**items** [1] - 6:6
**itself** [9] - 12:17, 42:4, 112:24, 112:25, 114:18, 151:8, 153:10, 155:12, 167:4

## J

**Jabr** [2] - 149:22, 170:4
**JABR** [1] - 149:22
**jan** [4] - 38:2, 43:21, 43:22, 126:25
**Jan** [1] - 48:8
**January** [56] - 11:7, 23:23, 38:12, 38:17, 41:22, 41:25, 52:25, 53:2, 54:13, 55:19, 56:9, 57:16, 57:18, 58:3, 58:5, 58:21, 58:23, 59:5, 59:7, 61:2, 61:13, 61:15, 61:23, 61:25, 62:10, 62:12, 62:18, 62:20, 63:6, 63:8, 63:25, 64:2, 64:18, 64:25, 68:14, 70:12, 72:13, 76:12, 77:15, 79:18, 79:23, 83:4, 85:5, 85:9, 93:11, 93:14, 94:4, 95:4, 95:6, 95:19, 147:10, 147:11, 153:15, 154:9, 155:7, 156:14
**jaws** [1] - 125:25
**jealous** [1] - 48:7
**Johnson** [2] - 16:19, 135:22
**joke** [4] - 130:13, 130:20, 130:22, 131:1

**jokes** [1] - 79:12
**joking** [2] - 128:13, 130:25
**judge** [19] - 23:12, 24:18, 30:11, 34:4, 51:21, 53:13, 68:5, 80:17, 88:25, 97:22, 100:15, 120:22, 122:14, 127:12, 132:21, 132:22, 134:23, 135:16, 167:24
**Judge** [36] - 4:13, 4:19, 5:23, 31:3, 42:11, 70:4, 71:18, 72:3, 74:8, 92:4, 92:18, 92:23, 96:24, 98:4, 103:12, 109:9, 110:3, 110:14, 121:24, 124:12, 130:14, 131:18, 132:6, 134:20, 135:14, 141:18, 149:25, 150:4, 151:22, 161:20, 162:24, 164:18, 164:22, 166:16, 170:5, 175:9
**JUDGE** [1] - 1:10
**judges** [3] - 132:12, 136:6, 153:18
**judgment** [1] - 123:4
**judicial** [5] - 4:4, 4:12, 4:16, 5:17, 5:21
**Julius** [1] - 44:20
**juncture** [1] - 157:25
**juries** [1] - 174:5
**jurisdiction** [1] - 135:9
**jurisdictions** [1] - 168:13
**juror** [1] - 172:22
**jury** [33] - 28:19, 89:15, 122:23, 122:24, 132:19, 132:23, 138:3, 138:16, 138:18, 138:19, 138:20, 139:6, 140:24, 141:7, 141:12, 141:15, 142:1, 142:11, 142:22, 142:24, 143:2, 143:7, 143:11, 143:19, 144:23, 149:18, 149:21, 170:6, 170:25, 171:10, 175:13
**Justice** [1] - 143:1

## K

**kavanaugh** [2] - 48:10, 127:2
**keep** [9] - 29:19, 66:11, 88:13, 89:9, 113:3, 118:5, 129:6, 148:4, 169:3
**keeps** [1] - 112:18
**Kelly** [1] - 141:18
**kept** [2] - 168:1, 168:5
**kicking** [1] - 27:15
**kicks** [2] - 27:15
**kind** [6] - 39:23, 41:12, 48:9, 80:7, 81:16, 127:1
**knowledge** [3] - 11:6, 93:13, 100:15
**known** [1] - 95:18
**knows** [2] - 81:24, 81:25
**Kremer's** [1] - 59:12
**Kylee** [1] - 59:12

## L

**lack** [1] - 172:20
**laid** [4] - 67:16, 112:23, 144:8, 149:19
**land** [1] - 59:11
**language** [5] - 143:3, 143:8, 150:12, 150:19, 162:19
**lapse** [1] - 89:1
**lapses** [1] - 146:2
**laptop** [4] - 109:8, 129:17, 131:14, 163:13
**large** [2] - 10:15, 72:16
**largely** [1] - 154:21
**larger** [8] - 15:7, 18:4, 18:6, 19:2, 53:21, 72:5, 99:16, 102:15
**last** [28] - 3:9, 3:25, 4:15, 6:25, 7:13, 10:9, 14:11, 14:24, 20:18, 25:11, 25:18, 34:6, 37:9, 41:7, 42:3, 46:11, 52:18, 52:23, 53:14, 54:23, 61:21, 62:25, 102:6, 123:19, 124:4, 126:9, 161:2, 169:8
**late** [1] - 66:3
**LAW** [1] - 1:18
**law** [30] - 7:15, 13:14, 14:23, 25:24, 92:8, 92:20, 103:11, 106:18, 116:21,

142:16, 147:15, 149:11, 149:13, 149:15, 149:20, 150:5, 158:10, 160:4, 162:23, 164:17, 164:20, 165:1, 167:14, 167:17, 167:22, 168:8, 172:9, 173:15, 173:24
**lawful** [1] - 160:1
**lawfully** [1] - 160:4
**lawyer** [2] - 136:17, 136:18
**lawyers** [1] - 8:21
**lay** [1] - 59:10
**lead** [1] - 73:22
**leading** [2] - 111:17, 154:9
**learn** [1] - 92:8
**learned** [1] - 145:24
**least** [8] - 54:21, 91:11, 92:8, 96:15, 106:9, 141:17, 141:21, 160:12
**leave** [3] - 131:16, 159:1, 174:10
**led** [2] - 24:3, 97:12
**Lederer** [3] - 3:5, 65:21, 109:14
**LEDERER** [259] - 1:13, 3:18, 8:1, 9:7, 10:4, 10:10, 10:25, 11:12, 11:22, 11:25, 12:12, 13:6, 14:12, 15:3, 15:17, 15:20, 15:23, 16:4, 16:8, 16:12, 16:20, 16:23, 17:2, 17:4, 17:6, 17:9, 17:12, 17:16, 17:18, 18:1, 18:3, 18:9, 19:4, 19:9, 19:16, 19:23, 21:2, 21:8, 21:11, 21:19, 21:25, 23:6, 23:10, 23:17, 24:22, 25:9, 26:1, 26:4, 26:9, 26:11, 26:15, 26:18, 26:25, 27:17, 28:11, 28:14, 29:4, 29:12, 29:23, 30:7, 30:10, 30:15, 31:9, 31:25, 32:14, 32:24, 33:2, 33:15, 34:2, 34:13, 35:1, 35:20, 35:23, 36:7, 37:2, 37:4, 39:1, 39:3, 39:6, 40:12, 40:16, 40:24, 41:19, 42:6, 42:13, 43:4, 43:16, 43:25, 44:23,

45:6, 45:14, 45:21, 45:25, 46:12, 46:15, 46:23, 47:10, 47:20, 47:25, 48:13, 48:18, 48:21, 49:3, 49:8, 49:19, 50:7, 50:12, 50:21, 51:3, 51:18, 52:21, 53:5, 53:7, 53:11, 53:25, 54:6, 54:9, 54:16, 55:10, 55:16, 55:22, 55:25, 56:5, 56:14, 56:21, 57:9, 57:22, 57:25, 58:15, 58:19, 59:1, 59:18, 59:22, 59:25, 60:11, 60:16, 60:24, 61:9, 61:20, 62:4, 62:8, 62:15, 63:2, 63:17, 64:10, 64:15, 65:2, 65:9, 65:13, 65:17, 66:23, 67:7, 70:22, 71:11, 74:11, 75:1, 75:9, 76:25, 77:11, 80:2, 80:19, 81:19, 81:23, 82:15, 82:25, 83:5, 83:14, 83:22, 84:7, 85:17, 87:6, 87:16, 88:21, 88:24, 89:3, 90:1, 90:3, 90:11, 90:18, 90:21, 91:13, 91:23, 93:15, 95:9, 96:5, 96:10, 96:14, 96:17, 96:21, 97:11, 98:16, 98:24, 99:7, 99:23, 101:6, 102:23, 103:3, 103:8, 103:24, 104:20, 105:1, 105:12, 105:17, 105:19, 105:21, 105:23, 106:1, 107:1, 109:10, 109:15, 111:14, 111:21, 112:14, 112:22, 119:5, 119:8, 119:10, 120:7, 120:20, 121:5, 121:14, 121:20, 122:2, 122:6, 122:13, 123:8, 124:2, 124:16, 124:18, 124:21, 125:12, 125:17, 126:15, 126:17, 126:20, 127:7, 127:10, 127:16, 128:1, 128:5, 128:18, 129:7, 129:10, 129:12, 129:20, 129:22,

130:1, 130:17, 130:22, 130:24, 131:12, 131:21, 141:6, 141:10, 168:21, 168:25, 169:21, 173:21, 175:16

**Lederer)....................
.............15** [1] - 2:4
**Lederer)....................
.............119** [1] - 2:5
**leeway** [2] - 67:18, 71:1
**left** [10] - 18:17, 25:3, 110:24, 119:12, 120:15, 146:12, 151:8, 151:16, 171:20, 172:4
**Legal** [1] - 127:24
**legal** [7] - 10:7, 51:13, 52:14, 77:3, 148:11, 161:19, 170:15
**legal-filing-mike-
pence-refused-to-
sign-on-to-plan-to**
[1] - 51:13
**Legal-filing-mike-
pence-refused-to-
sign-on-to-plan-to**
[1] - 127:24
**legislature** [2] - 37:15, 37:19
**legitimate** [1] - 62:25
**length** [1] - 9:20
**lengthy** [1] - 149:16
**less** [2] - 97:2, 165:5
**lesser** [2] - 158:22, 161:11
**letter** [1] - 85:7
**letters** [2] - 46:20, 85:8
**LexisNexis** [2] - 70:15, 70:16
**liberty** [1] - 63:11
**Library** [4] - 88:3, 88:5, 91:4, 147:7
**light** [3] - 14:10, 170:10, 170:18
**like-one-hagmann** [1]
- 43:15
**likelihood** [1] - 68:3
**likely** [3] - 9:18, 68:20, 93:5
**limine** [2] - 162:5, 162:13
**limited** [1] - 165:5
**limiting** [2] - 20:8, 27:11
**limpdicked** [1] - 37:19
**line** [7] - 3:21, 22:4, 23:17, 90:4, 122:15,

122:18, 127:20
**lines** [1] - 126:18
**link** [12] - 43:10, 46:4, 49:13, 51:8, 51:12, 52:7, 54:5, 54:6, 54:7, 58:7, 64:4
**Lisa** [1] - 1:22
**LISA** [1] - 176:3
**list** [4] - 101:1, 101:4, 105:2, 152:15
**listener** [6] - 11:10, 11:12, 11:16, 34:22, 34:23, 42:17
**litigated** [1] - 71:19
**live** [1] - 63:13
**lived** [1] - 79:15
**Lloyd** [2] - 100:3, 138:25
**locate** [1] - 66:12
**located** [1] - 66:5
**location** [1] - 157:19
**logically** [1] - 12:1
**logistical** [1] - 31:14
**logistically** [1] - 28:16
**lol** [1] - 62:3
**look** [23] - 23:24, 26:20, 48:6, 73:8, 80:7, 91:8, 99:3, 106:6, 106:18, 142:3, 142:6, 159:17, 161:17, 164:17, 165:2, 166:10, 166:13, 168:2, 169:8, 169:24, 170:1, 173:10
**looked** [6] - 73:11, 103:17, 106:19, 122:10, 142:9, 146:22
**looking** [12] - 9:11, 22:24, 23:3, 26:23, 60:7, 72:15, 82:9, 82:22, 94:22, 130:2, 130:4, 130:6
**looks** [11] - 30:13, 40:21, 49:24, 56:3, 60:9, 60:14, 64:13, 80:15, 108:12, 116:24, 130:7
**lose** [1] - 106:2
**lost** [1] - 105:13
**loud** [2] - 21:20, 21:21
**love** [1] - 32:5
**luck** [1] - 25:21
**lucky** [1] - 105:14
**lunch** [9] - 9:19, 65:20, 65:22, 65:23, 69:4, 69:7, 75:11, 169:15, 169:16

**Ly** [1] - 91:15

**M**

**madre** [1] - 59:12
**maga** [1] - 63:10
**magazines** [2] - 56:18, 130:12
**Magnus** [2] - 59:13, 59:14
**mail** [1] - 85:8
**mailed** [1] - 85:8
**main** [6] - 108:13, 108:14, 119:16, 120:11, 152:7, 160:8
**major** [2] - 72:19, 72:20
**mall** [1] - 63:11
**man** [4] - 60:14, 60:15, 115:10, 115:11
**manageable** [1] - 40:7
**manipulated** [2] - 96:18, 97:16
**map** [21] - 3:19, 3:24, 4:3, 4:7, 5:22, 52:1, 52:7, 54:5, 54:14, 54:15, 54:16, 138:11, 138:12, 138:20, 138:24, 140:25, 141:7, 141:12, 141:16, 141:20, 142:1
**March** [5] - 87:25, 89:7, 94:18, 102:5
**march** [1] - 63:10
**Marina** [1] - 3:6
**MARINA** [1] - 1:18
**marina@medvinlaw.
com** [1] - 1:20
**mark** [2] - 22:1, 107:3
**marked** [2] - 76:21, 120:10
**marking** [1] - 16:12
**mass** [1] - 73:16
**material** [10] - 67:9, 72:12, 72:21, 73:16, 73:20, 73:24, 101:11, 142:10, 143:15
**materials** [1] - 138:3
**matter** [12] - 7:4, 81:9, 92:14, 102:10, 103:1, 106:16, 124:13, 135:8, 135:9, 147:15, 158:10, 172:10
**matters** [1] - 139:16
**mayor** [6] - 50:5, 52:3, 52:10, 52:18, 55:8, 55:9

**McConnell** [2] - 38:5, 126:11
**mcconnell** [2] - 48:11, 127:3
**McCormick** [1] - 92:9
**mean** [26] - 8:12, 8:13, 12:10, 12:24, 22:5, 22:20, 27:3, 31:6, 44:8, 54:5, 68:2, 73:11, 75:1, 92:24, 106:14, 135:1, 135:19, 143:4, 153:20, 160:6, 160:13, 161:8, 168:16, 169:9, 175:3
**meaning** [2] - 44:21, 96:20
**means** [6] - 8:14, 22:16, 34:8, 44:17, 164:9
**meant** [2] - 66:2, 106:15
**measure** [1] - 39:16
**Medvin** [46] - 3:6, 7:10, 7:13, 7:21, 8:3, 9:17, 13:12, 13:25, 24:10, 25:12, 26:13, 26:21, 27:22, 42:20, 65:18, 67:11, 67:12, 67:16, 67:24, 68:2, 74:5, 75:10, 76:3, 77:13, 78:20, 87:18, 88:16, 90:11, 91:25, 106:10, 109:10, 109:15, 124:23, 125:17, 127:17, 128:10, 128:13, 128:22, 130:18, 130:24, 135:12, 136:23, 137:10, 141:12, 144:6, 171:6
**MEDVIN** [228] - 1:18, 1:18, 4:13, 4:15, 4:19, 5:1, 5:10, 5:23, 9:20, 13:16, 16:11, 22:22, 23:12, 24:18, 27:25, 30:11, 31:3, 34:4, 38:20, 41:1, 41:5, 42:11, 44:11, 44:25, 48:16, 51:21, 53:13, 56:24, 65:5, 65:24, 68:5, 68:21, 68:24, 70:4, 70:9, 71:5, 71:12, 71:18, 72:3, 74:7, 74:12, 74:15, 74:19, 75:12, 75:16, 76:1, 76:15, 76:18, 76:20, 76:23, 77:14, 78:4, 78:10, 78:22, 78:24, 79:1,

79:4, 80:17, 80:24,
82:17, 83:9, 83:25,
85:12, 86:1, 86:18,
87:4, 87:13, 87:19,
88:19, 88:25, 89:5,
89:20, 89:24, 90:6,
92:4, 92:17, 92:22,
93:24, 94:3, 94:15,
95:2, 95:21, 95:23,
96:1, 96:24, 97:8,
97:22, 98:1, 98:4,
98:20, 99:1, 99:17,
100:15, 103:12,
104:12, 105:24,
107:11, 107:22,
108:2, 108:5, 108:7,
108:15, 108:24,
109:5, 109:8,
109:20, 109:25,
110:2, 110:7,
110:14, 110:17,
110:24, 111:3,
111:6, 112:7,
112:10, 112:17,
113:1, 113:5, 113:9,
114:5, 114:12,
114:22, 115:2,
115:16, 115:20,
116:7, 116:13,
116:16, 116:25,
117:2, 117:12,
117:14, 117:21,
118:9, 118:11,
119:2, 120:22,
121:10, 121:24,
122:14, 123:25,
124:12, 125:7,
125:20, 126:7,
127:12, 128:17,
130:14, 131:3,
131:18, 132:6,
133:4, 133:9,
133:12, 133:24,
134:13, 134:20,
134:23, 135:14,
135:16, 135:24,
137:12, 137:18,
137:22, 137:25,
138:6, 138:9,
138:11, 138:15,
138:18, 139:19,
139:22, 140:8,
140:10, 141:3,
141:16, 144:8,
145:2, 145:7,
145:14, 145:17,
145:19, 148:21,
148:23, 149:24,
150:4, 150:23,
158:3, 158:25,
159:7, 159:10,

159:20, 160:7,
160:15, 160:21,
161:19, 161:22,
161:24, 162:2,
162:14, 162:17,
162:22, 163:1,
163:5, 163:17,
163:20, 163:25,
165:9, 165:17,
166:1, 166:5,
166:10, 166:16,
166:19, 167:24,
168:4, 169:3,
169:20, 173:23,
174:2, 174:12,
174:17, 174:20,
174:25, 175:2,
175:5, 175:9
**Medvin's** [6] - 3:12,
3:25, 23:24, 75:5,
84:8, 106:22
**Medvin**......................
..............**70** [1] - 2:4
**meet** [4] - 148:5,
158:5, 158:6, 158:10
**meeting** [10] - 81:17,
81:21, 82:7, 88:2,
93:7, 93:10, 94:7,
94:10, 94:11, 94:12
**member** [1] - 29:16
**members** [2] - 75:21,
153:16
**meme** [7] - 34:11,
77:18, 78:2, 78:12,
79:7, 80:10, 131:1
**memes** [7] - 77:18,
78:8, 78:15, 79:13,
128:10, 130:25,
131:6
**memo** [1] - 149:12
**memorialized** [1] -
102:4
**memory** [6] - 89:1,
146:1, 146:24,
147:2, 147:9, 170:23
**men** [1] - 122:10
**mention** [4] - 125:3,
125:24, 126:2,
147:16
**mentioned** [1] - 97:8
**mess** [1] - 75:13
**message** [172] - 8:5,
10:15, 10:18, 10:20,
11:1, 11:4, 11:23,
12:14, 12:17, 19:6,
19:7, 19:24, 20:5,
20:11, 21:3, 21:5,
21:14, 21:22, 22:6,
22:9, 22:13, 22:15,
23:1, 23:4, 23:8,

23:11, 23:21, 24:18,
26:7, 27:15, 27:18,
28:1, 28:7, 28:10,
29:16, 30:12, 31:22,
32:1, 32:4, 33:11,
33:13, 33:17, 33:24,
34:5, 34:15, 35:2,
35:3, 35:4, 35:6,
35:8, 35:16, 36:3,
36:9, 36:10, 36:11,
36:13, 36:15, 36:21,
37:5, 38:9, 39:6,
39:8, 39:12, 39:14,
40:10, 41:6, 41:16,
41:19, 41:20, 41:22,
42:1, 42:5, 42:18,
43:5, 43:6, 43:9,
43:17, 43:18, 43:20,
44:2, 45:3, 45:8,
45:12, 45:17, 45:18,
46:3, 46:13, 47:23,
49:6, 49:11, 49:12,
49:19, 49:20, 49:21,
50:4, 50:9, 50:13,
50:14, 50:18, 50:24,
51:25, 52:24, 55:18,
55:20, 56:7, 56:8,
56:10, 57:14, 57:19,
57:20, 58:6, 58:24,
59:8, 59:16, 59:20,
59:21, 60:1, 60:2,
60:17, 61:1, 61:3,
61:6, 61:11, 61:16,
61:21, 61:22, 62:1,
62:8, 62:9, 62:13,
62:15, 62:17, 62:21,
63:3, 63:5, 63:9,
63:24, 64:3, 64:16,
64:17, 64:19, 64:24,
76:6, 76:20, 77:1,
77:4, 77:8, 77:9,
77:10, 77:17, 78:1,
81:13, 82:14, 82:19,
82:23, 83:9, 84:1,
84:2, 84:4, 84:6,
85:1, 85:4, 85:6,
95:17, 123:16,
124:4, 125:5,
127:11, 128:3, 128:8
**messages** [25] - 3:20,
6:4, 6:13, 6:21, 7:3,
7:19, 8:4, 9:22,
10:17, 11:19, 11:22,
18:18, 18:20, 19:2,
21:12, 28:2, 28:4,
28:7, 45:3, 53:19,
59:24, 63:19, 74:7,
85:18, 154:9
**messaging** [1] - 41:23
**met** [13] - 10:3, 11:18,
66:20, 88:5, 94:6,

94:19, 147:6, 148:9,
152:5, 155:3,
157:25, 158:8
**Metropolitan** [1] -
149:17
**Mexico** [1] - 35:10
**Michaela** [2] - 141:5,
173:16
**microphone** [2] - 41:4,
105:11
**middle** [2] - 72:8,
104:13
**might** [30] - 3:13, 3:18,
9:8, 9:12, 12:10,
38:2, 49:15, 53:2,
54:25, 55:9, 56:18,
67:15, 67:22, 68:4,
70:23, 71:13, 72:25,
73:20, 83:4, 91:17,
92:10, 106:25,
109:21, 110:5,
119:6, 129:12,
129:16, 134:24,
169:15
**Mike** [7] - 46:22,
52:24, 53:1, 54:12,
150:9, 151:7, 151:16
**mike** [4] - 46:7, 47:8,
51:13, 127:24
**mike-pence-must-
tomorrow-
president-trump-
retweets** [1] - 46:7
**million** [1] - 63:10
**millionMagaMarch** [1]
- 64:7
**millions** [1] - 73:12
**mind** [3] - 34:9, 41:13,
87:13
**mind-thinking** [1] -
41:13
**minded** [2] - 20:7,
27:11
**mindful** [1] - 123:11
**mindset** [1] - 41:13
**Minibroahs** [2] - 18:7,
19:2
**minute** [6] - 93:16,
97:5, 133:18,
139:18, 140:23
**minutes** [21] - 13:2,
20:10, 23:20, 26:6,
27:2, 27:14, 33:13,
67:4, 79:15, 96:2,
97:3, 104:19,
107:22, 112:2,
117:3, 120:9,
134:24, 134:25,
135:12, 169:18
**miracle** [1] - 10:5

**mirrors** [1] - 154:21
**misdemeanor** [1] -
159:10
**missing** [1] - 100:20
**misstated** [1] - 74:2
**mitch** [2] - 48:11,
127:3
**mixing** [1] - 152:19
**model** [2] - 164:20,
164:23
**modern** [1] - 44:16
**modified** [1] - 4:8
**modifies** [1] - 159:19
**moment** [12] - 16:17,
38:5, 74:5, 85:24,
86:6, 121:3, 126:11,
134:22, 136:1,
140:5, 162:1, 167:10
**moments** [3] - 103:14,
161:15, 171:3
**Monday's** [1] - 162:14
**montage** [7] - 97:25,
98:1, 99:24, 100:3,
102:8, 102:12,
102:24
**month** [1] - 32:7
**moot** [1] - 71:24
**MOREIRA** [1] - 176:3
**Moreira** [2] - 1:22,
176:10
**moreover** [1] - 147:19
**morning** [7] - 14:11,
74:21, 156:14,
168:17, 169:12,
169:14, 175:10
**Moss** [2] - 164:19,
164:22
**Moss's** [1] - 162:25
**most** [8] - 10:10,
44:17, 93:5, 118:21,
118:22, 136:5,
170:10, 170:18
**mostly** [2] - 111:16,
115:14
**motion** [24] - 132:6,
132:8, 132:16,
132:17, 133:2,
133:5, 133:14,
133:17, 134:8,
134:9, 134:10,
134:11, 134:17,
142:5, 142:13,
143:25, 144:9,
145:3, 151:13,
158:2, 162:5,
162:12, 163:24,
175:4
**motions** [3] - 5:5,
70:24, 137:12
**motivated** [1] - 125:15

**motivation** [1] - 24:3
**motive** [1] - 11:6
**mouth** [1] - 158:23
**move** [26] - 12:18, 22:1, 23:9, 23:18, 25:16, 27:18, 30:8, 32:8, 42:21, 47:25, 48:15, 48:18, 55:11, 58:15, 60:17, 61:21, 72:3, 74:7, 77:15, 80:17, 85:14, 92:22, 93:1, 100:13, 107:3, 125:12
**moved** [1] - 98:19
**movements** [4] - 62:22, 70:21, 71:7, 157:15
**moves** [5] - 40:25, 51:19, 65:3, 87:4, 134:13
**moving** [4] - 28:22, 28:24, 139:18, 140:5
**MR** [17] - 25:22, 25:25, 134:6, 134:11, 134:16, 142:8, 143:24, 144:12, 144:21, 151:25, 152:12, 152:16, 152:19, 152:22, 153:23, 157:1, 167:11
**MS** [484] - 3:18, 4:13, 4:15, 4:19, 5:1, 5:10, 5:23, 8:1, 9:7, 9:20, 10:4, 10:10, 10:25, 11:12, 11:22, 11:25, 12:12, 13:6, 13:16, 14:12, 15:3, 15:17, 15:20, 15:23, 16:4, 16:8, 16:11, 16:12, 16:20, 16:23, 17:2, 17:4, 17:6, 17:9, 17:12, 17:16, 17:18, 18:1, 18:3, 18:9, 19:4, 19:9, 19:16, 19:23, 21:2, 21:8, 21:11, 21:19, 21:25, 22:22, 23:6, 23:10, 23:12, 23:17, 24:18, 24:22, 25:9, 26:1, 26:4, 26:9, 26:11, 26:15, 26:18, 26:25, 27:17, 27:25, 28:11, 28:14, 29:4, 29:12, 29:23, 30:7, 30:10, 30:11, 30:15, 31:3, 31:9, 31:25, 32:14, 32:24, 33:2, 33:15, 34:2, 34:4, 34:13, 35:1, 35:20, 35:23,

36:7, 37:2, 37:4, 38:20, 39:1, 39:3, 39:6, 40:12, 40:16, 40:24, 41:1, 41:5, 41:19, 42:6, 42:11, 42:13, 43:4, 43:16, 43:25, 44:11, 44:23, 44:25, 45:6, 45:14, 45:21, 45:25, 46:12, 46:15, 46:23, 47:10, 47:20, 47:25, 48:13, 48:16, 48:18, 48:21, 49:3, 49:8, 49:19, 50:7, 50:12, 50:21, 51:3, 51:18, 51:21, 52:21, 53:5, 53:7, 53:11, 53:13, 53:25, 54:6, 54:9, 54:16, 55:10, 55:16, 55:22, 55:25, 56:5, 56:14, 56:21, 56:24, 57:9, 57:22, 57:25, 58:15, 58:19, 59:1, 59:18, 59:22, 59:25, 60:11, 60:16, 60:24, 61:9, 61:20, 62:4, 62:8, 62:15, 63:2, 63:17, 64:10, 64:15, 65:2, 65:5, 65:9, 65:13, 65:17, 65:24, 66:23, 67:7, 68:5, 68:21, 68:24, 70:4, 70:9, 70:22, 71:5, 71:11, 71:12, 71:18, 72:3, 74:7, 74:11, 74:12, 74:15, 74:19, 75:1, 75:9, 75:12, 75:16, 76:1, 76:15, 76:18, 76:20, 76:23, 76:25, 77:11, 77:14, 78:4, 78:10, 78:22, 78:24, 79:1, 79:4, 80:2, 80:17, 80:19, 80:24, 81:19, 81:23, 82:15, 82:17, 82:25, 83:5, 83:9, 83:14, 83:22, 83:25, 84:7, 85:12, 85:17, 86:1, 86:18, 87:4, 87:6, 87:13, 87:16, 87:19, 88:19, 88:21, 88:24, 88:25, 89:3, 89:5, 89:20, 89:24, 90:1, 90:3, 90:6, 90:11, 90:18, 90:21, 91:13, 91:23, 92:4, 92:17, 92:22, 93:15, 93:24, 94:3, 94:15, 95:2, 95:9, 95:21, 95:23, 96:1, 96:5, 96:10, 96:14, 96:17, 96:21, 96:24,

97:8, 97:11, 97:22, 98:1, 98:4, 98:16, 98:20, 98:24, 99:1, 99:7, 99:17, 99:23, 100:15, 101:6, 102:23, 103:3, 103:8, 103:12, 103:24, 104:12, 104:20, 105:1, 105:12, 105:17, 105:19, 105:21, 105:23, 105:24, 106:1, 107:1, 107:11, 107:22, 108:2, 108:5, 108:7, 108:15, 108:24, 109:5, 109:8, 109:10, 109:15, 109:20, 109:25, 110:2, 110:7, 110:14, 110:17, 110:24, 111:3, 111:6, 111:14, 111:21, 112:7, 112:10, 112:14, 112:17, 112:22, 113:1, 113:5, 113:9, 114:5, 114:12, 114:22, 115:2, 115:16, 115:20, 116:7, 116:13, 116:16, 116:25, 117:2, 117:12, 117:14, 117:21, 118:9, 118:11, 119:2, 119:5, 119:8, 119:10, 120:7, 120:20, 120:22, 121:5, 121:10, 121:14, 121:20, 121:24, 122:2, 122:6, 122:13, 122:14, 123:8, 123:25, 124:2, 124:12, 124:16, 124:18, 124:21, 125:7, 125:12, 125:17, 125:20, 126:7, 126:15, 126:17, 126:20, 127:7, 127:10, 127:12, 127:16, 128:1, 128:5, 128:17, 128:18, 129:7, 129:10, 129:12, 129:20, 129:22, 130:1, 130:14, 130:17, 130:22, 130:24, 131:3, 131:12, 131:18, 131:21,

132:6, 133:4, 133:9, 133:12, 133:24, 134:13, 134:20, 134:23, 135:14, 135:16, 135:24, 137:12, 137:18, 137:22, 137:25, 138:6, 138:9, 138:11, 138:15, 138:18, 139:19, 139:22, 140:8, 140:10, 141:3, 141:6, 141:10, 141:16, 144:8, 145:2, 145:7, 145:14, 145:17, 145:19, 148:21, 148:23, 149:24, 150:4, 150:23, 158:3, 158:25, 159:7, 159:10, 159:20, 160:7, 160:15, 160:21, 161:19, 161:22, 161:24, 162:2, 162:14, 162:17, 162:22, 163:1, 163:5, 163:17, 163:20, 163:25, 165:9, 165:17, 166:1, 166:5, 166:10, 166:16, 166:19, 167:24, 168:4, 168:21, 168:25, 169:3, 169:20, 169:21, 173:21, 173:23, 174:2, 174:12, 174:17, 174:20, 174:25, 175:2, 175:5, 175:9, 175:16
**multiple** [5] - 28:4, 121:6, 122:25, 155:5, 156:4
**must** [3] - 37:25, 46:7, 159:10

# N

**name** [6] - 14:24, 24:13, 58:9, 70:15, 70:18, 168:2
**named** [2] - 24:12, 145:23
**namely** [1] - 53:9
**narcotics** [1] - 72:20
**narrowed** [1] - 72:24
**national** [1] - 63:11
**near** [3] - 44:6, 108:9, 120:15
**necessarily** [3] -

37:22, 141:15, 151:3
**necessary** [2] - 8:24, 159:23
**need** [15] - 8:21, 9:9, 9:23, 17:1, 29:14, 29:19, 85:7, 106:4, 110:5, 119:6, 126:23, 151:21, 156:3, 160:2, 173:14
**needed** [1] - 86:22
**needle** [1] - 72:15
**needs** [4] - 142:10, 146:16, 155:5, 174:8
**nephews** [2] - 20:9, 27:12
**never** [17] - 29:5, 68:11, 72:24, 81:4, 81:8, 81:11, 83:20, 84:2, 84:17, 84:20, 86:9, 100:23, 100:25, 101:5, 105:1, 143:3, 147:7
**New** [1] - 35:10
**new** [3] - 28:15, 49:21, 142:13
**news** [1] - 28:17
**next** [31] - 5:25, 21:12, 29:7, 31:2, 32:7, 33:2, 34:25, 36:9, 36:10, 37:1, 41:20, 42:17, 45:2, 45:16, 45:18, 46:24, 46:25, 50:8, 50:22, 56:7, 56:8, 71:10, 103:9, 103:10, 126:17, 126:21, 130:11, 132:5, 154:20, 165:7
**nice** [1] - 30:3
**niceties** [2] - 20:8, 27:12
**Nichols** [3] - 149:25, 150:4, 170:5
**nieces** [2] - 20:9, 27:12
**night** [6] - 3:9, 4:1, 6:25, 7:13, 10:9, 14:11
**nine** [4] - 134:14, 134:17, 145:10, 149:18
**nine-week** [1] - 149:18
**NO** [1] - 38:3
**nobody's** [1] - 35:10
**none** [2] - 90:7, 148:25
**nonetheless** [1] - 162:2
**nonjury** [4] - 144:23, 149:23, 149:25, 170:6
**NOT** [1] - 37:21

192

**not..** [1] - 173:20
**note** [4] - 89:7, 112:13, 141:11, 156:15
**noted** [4] - 88:12, 89:1, 89:20, 156:2
**notes** [4] - 92:5, 101:16, 142:10, 176:5
**nothing** [4] - 12:24, 29:3, 37:25, 73:21
**nothings** [2] - 48:11, 127:3
**notice** [6] - 4:4, 4:12, 4:16, 5:14, 5:17, 5:21
**Nov** [1] - 63:13
**NPR** [1] - 25:4
**number** [8] - 6:11, 7:1, 25:10, 28:23, 114:2, 167:4, 167:5, 174:22
**numbers** [17] - 20:14, 20:15, 20:19, 24:19, 24:20, 25:5, 25:11, 25:19, 29:9, 29:10, 30:2, 30:25, 31:3, 31:16, 70:19, 74:23, 75:8
**NV** [1] - 29:17
**NW** [3] - 1:14, 1:23, 176:12

## O

**oath** [2] - 14:21, 70:5
**object** [16] - 4:12, 4:17, 9:12, 9:14, 30:11, 51:21, 67:23, 68:7, 88:18, 96:5, 96:6, 96:19, 106:17, 127:12, 134:7, 134:9
**objected** [1] - 107:9
**objecting** [4] - 8:3, 23:12, 67:15, 71:2
**objection** [63] - 4:6, 22:22, 23:25, 24:15, 24:20, 26:21, 27:25, 28:6, 34:4, 34:24, 41:1, 41:5, 41:9, 42:11, 44:11, 44:14, 44:25, 48:16, 56:24, 65:5, 70:22, 71:11, 75:2, 80:19, 81:19, 81:23, 82:15, 82:25, 83:5, 83:14, 83:22, 84:7, 85:17, 87:6, 87:19, 88:20, 88:21, 93:15, 95:9, 97:14, 98:6, 100:24, 100:25, 102:10, 111:14, 111:21,

120:23, 121:10, 121:13, 121:24, 122:15, 122:18, 123:25, 124:12, 124:22, 125:7, 125:23, 126:7, 128:17, 130:14, 130:23, 131:7, 134:5
**Objection** [1] - 80:2
**objections** [6] - 6:14, 28:7, 67:19, 101:22, 101:23, 157:14
**objects** [1] - 102:6
**obscure** [1] - 39:25
**observations** [1] - 89:21
**observe** [1] - 108:8
**observed** [2] - 79:23, 93:2
**obstruct** [1] - 154:7
**obstructed** [1] - 154:24
**obviously** [9] - 73:6, 75:1, 105:3, 106:4, 131:22, 135:2, 136:17, 141:25, 144:15
**occasionally** [1] - 11:13
**occupy** [1] - 43:23
**occurred** [2] - 6:20, 142:19
**occurring** [1] - 38:11
**October** [3] - 97:10, 100:19, 163:21
**odds** [1] - 32:9
**OF** [4] - 1:1, 1:3, 1:9, 176:1
**offense** [3] - 139:4, 139:24, 140:13
**offer** [3] - 26:12, 26:13, 102:9
**offered** [3] - 7:4, 87:20, 112:24
**office** [6] - 48:5, 144:20, 156:8, 156:9, 171:21
**office's** [1] - 174:5
**officer** [12] - 66:9, 66:10, 66:12, 66:14, 89:2, 92:16, 94:2, 116:22, 145:24, 149:17, 149:18, 160:4
**Officer** [29] - 72:25, 73:6, 73:14, 86:16, 86:19, 87:2, 88:2, 88:5, 89:12, 90:24, 93:2, 93:10, 93:13, 98:10, 113:21,

147:5, 147:9, 147:14, 148:1, 148:2, 158:16, 158:17, 158:22, 170:21, 170:23, 172:13, 172:18, 172:19, 173:3
**officer's** [1] - 146:24
**officers** [3] - 39:15, 66:5, 146:12
**OFFICIAL** [1] - 176:1
**official** [3] - 154:7, 154:23, 176:11
**Official** [1] - 1:22
**officially** [3] - 67:25, 129:16, 129:24
**offramps** [3] - 37:10, 123:20, 124:5
**omit** [1] - 107:14
**on'** [1] - 32:8
**once** [4] - 14:16, 100:2, 100:23, 100:25
**one** [107] - 6:9, 7:18, 8:8, 8:25, 9:8, 10:15, 12:5, 15:10, 15:14, 19:17, 20:15, 20:19, 24:7, 24:9, 27:8, 28:4, 32:4, 34:6, 36:23, 37:9, 40:20, 40:21, 41:6, 41:8, 42:3, 43:15, 46:19, 48:5, 49:1, 51:15, 52:6, 52:9, 52:11, 52:13, 52:14, 53:3, 53:8, 55:7, 55:8, 56:20, 58:19, 60:7, 60:20, 60:25, 62:16, 63:21, 63:23, 64:22, 65:11, 76:17, 80:11, 80:14, 85:9, 87:2, 91:5, 91:11, 94:11, 96:17, 100:20, 101:5, 102:21, 103:20, 103:22, 104:25, 105:3, 106:12, 107:12, 109:2, 109:5, 113:2, 114:1, 115:4, 119:6, 123:19, 124:4, 131:8, 138:7, 138:23, 139:7, 139:22, 140:22, 141:1, 141:17, 141:21, 150:4, 152:14, 153:19, 157:16, 158:19, 159:1, 159:11, 159:21, 159:22, 163:1, 165:10,

165:18, 167:4, 168:13, 169:18, 172:19, 173:13
**one-page** [1] - 76:17
**ones** [5] - 53:6, 55:7, 103:18, 111:16, 135:19
**ongoing** [4] - 10:19, 11:3, 30:17, 55:4
**open** [12] - 38:2, 66:4, 66:11, 88:13, 89:9, 115:5, 122:10, 148:4, 148:18, 152:9, 152:24, 157:9
**open-ended** [1] - 157:9
**open-source** [1] - 115:5
**opened** [15] - 11:23, 11:24, 12:7, 22:9, 22:10, 22:15, 22:18, 22:19, 22:20, 22:25, 23:14, 34:8, 52:20, 53:4, 55:6
**opening** [2] - 23:17, 101:20
**operation** [1] - 46:8
**operation-pence-card-urging-VP** [1] - 46:8
**opinion** [12] - 71:20, 71:22, 71:23, 72:17, 72:18, 73:19, 124:13, 130:15, 131:3, 149:16, 149:24, 162:25
**opportunity** [1] - 144:1
**oppose** [4] - 134:10, 134:11, 134:17, 157:22
**opposed** [5] - 81:17, 81:21, 82:1, 148:4, 158:18
**opposing** [4] - 10:23, 105:24, 152:2, 153:13
**opposite** [1] - 37:15
**oral** [3] - 144:2, 145:9, 145:10
**orally** [2] - 144:7, 169:11
**order** [8] - 3:16, 70:11, 102:2, 111:12, 118:25, 149:8, 164:4, 165:13
**ordered** [1] - 138:2
**organizing** [1] - 62:23
**original** [1] - 9:25
**originally** [2] - 107:8

**otherwise** [2] - 42:4, 150:10
**ought** [4] - 8:9, 8:10, 8:22, 13:23
**ourselves** [1] - 13:22
**outcome** [1] - 39:22
**outdoor** [1] - 108:8
**outdoors** [1] - 108:16
**outfit** [1] - 63:10
**outgoing** [1] - 18:20
**outset** [1] - 161:13
**outside** [6] - 119:16, 120:22, 121:1, 121:24, 127:13, 153:3
**outweigh** [1] - 41:18
**outweighed** [1] - 53:15
**outweighs** [1] - 42:20
**overall** [4] - 13:20, 147:1, 147:10, 171:9
**overarching** [2] - 34:14, 42:8
**overloaded** [1] - 110:11
**overrule** [1] - 122:17
**overruled** [4] - 83:7, 121:13, 122:1, 126:8
**overturn** [3] - 51:14, 52:16, 127:25
**overturn-election** [2] - 51:14, 127:25
**overview** [1] - 8:15
**overwhelming** [2] - 48:9, 127:1
**own** [4] - 8:4, 92:5, 136:9, 143:25
**owner** [7] - 22:20, 27:3, 27:5, 27:23, 31:23, 33:4, 57:7

## P

**p.m** [44] - 7:13, 19:14, 20:1, 23:2, 23:4, 27:6, 30:5, 33:1, 33:12, 33:23, 34:1, 39:9, 39:13, 49:7, 52:6, 55:19, 57:16, 57:18, 58:3, 58:5, 58:21, 58:23, 59:5, 59:7, 61:2, 61:13, 61:15, 61:23, 61:25, 62:10, 62:12, 62:18, 62:20, 63:6, 63:8, 63:25, 64:2, 64:18, 117:9, 120:18, 156:12, 156:21, 156:22, 175:19
**PA** [2] - 29:17, 37:19

**package** [1] - 14:3
**packed** [1] - 56:11
**PAGE** [1] - 2:2
**page** [30] - 10:12,
18:18, 18:20, 19:17,
27:18, 28:3, 28:5,
28:8, 30:12, 33:2,
37:1, 38:25, 39:4,
46:24, 46:25, 48:20,
50:8, 52:9, 57:12,
60:18, 74:18, 74:19,
76:6, 76:17, 77:17,
78:15, 78:23,
123:13, 127:9, 165:6
**Page** [78] - 10:21,
11:2, 17:25, 18:6,
19:4, 22:1, 23:7,
23:10, 26:2, 26:16,
26:17, 26:20, 26:23,
28:12, 28:14, 29:8,
29:11, 30:8, 30:12,
30:22, 31:20, 38:19,
39:1, 41:20, 41:23,
42:1, 42:5, 42:18,
42:19, 42:21, 42:22,
44:24, 45:4, 48:18,
48:19, 48:23, 54:21,
54:23, 55:8, 55:11,
55:13, 57:1, 57:11,
58:16, 59:24, 60:17,
61:21, 62:5, 62:6,
63:17, 74:17, 76:4,
76:16, 77:2, 77:9,
77:10, 77:11, 77:16,
78:4, 78:6, 78:10,
78:19, 78:24, 80:23,
84:25, 85:13, 86:2,
123:9, 123:13,
126:15, 126:19,
126:20, 127:7,
128:7, 164:8
**Page..** [1] - 76:22
**pages** [6] - 6:7, 28:2,
85:16, 85:18, 85:23,
165:7
**Pages** [12] - 13:23,
31:2, 34:3, 34:25,
40:25, 45:2, 48:15,
51:20, 57:10, 65:3,
65:7, 85:24
**pagination** [1] - 13:24
**painstakingly** [2] -
8:5, 13:7
**paper** [1] - 30:13
**paragraph** [3] - 82:10,
91:8, 102:6
**paralegal** [1] - 29:11
**pardon** [2] - 4:14,
169:23
**pare** [1] - 17:20

**Park** [1] - 59:10
**park/Ellipse** [1] -
63:15
**parlance** [1] - 44:17
**part** [12] - 4:15, 5:8,
10:10, 13:1, 53:21,
71:23, 75:16, 96:15,
96:17, 121:8,
148:23, 158:15
**parte** [4] - 70:25,
71:21, 73:21, 73:22
**partial** [2] - 175:4,
175:6
**partially** [1] - 168:17
**participate** [3] - 39:22,
52:2, 84:20
**participated** [1] - 55:2
**participating** [2] -
12:16, 52:5
**participation** [1] -
30:17
**particular** [16] - 4:7,
6:13, 7:18, 13:18,
22:15, 24:7, 41:11,
64:23, 83:8, 83:9,
97:7, 101:25,
138:19, 139:25,
141:16
**particularized** [1] -
140:11
**particularly** [1] - 3:12
**parties** [4] - 3:7,
131:22, 132:9, 171:5
**partly** [1] - 132:4
**parts** [3] - 72:23,
135:20, 148:12
**party** [3] - 10:23,
10:24, 37:16
**past** [3] - 131:25,
148:6, 149:9
**pasture** [1] - 92:12
**pathological** [1] - 48:5
**PAUL** [1] - 1:10
**pause** [15] - 15:23,
99:12, 107:23,
108:7, 108:25,
111:6, 113:9,
113:10, 115:2,
116:13, 116:16,
117:14, 120:21,
121:15, 133:17
**Pause** [10] - 74:14,
95:22, 110:1, 110:6,
110:23, 112:9,
117:2, 117:20,
119:7, 122:13
**paused** [2] - 100:4,
100:12
**pausing** [4] - 109:16,
109:18, 109:23,

109:24
**PD** [1] - 61:4
**PDF** [1] - 141:3
**peace** [1] - 40:1
**penal** [2] - 164:20,
164:23
**pence** [5] - 46:7, 46:8,
47:8, 51:13, 127:24
**Pence** [23] - 38:2,
38:4, 46:22, 51:17,
52:24, 53:1, 54:12,
81:4, 81:5, 83:4,
83:12, 86:13,
126:10, 127:5,
150:9, 151:7,
151:16, 156:6,
156:18, 157:16,
166:22, 167:1, 167:6
**Pence's** [1] - 157:7
**people** [21] - 6:9, 8:16,
12:7, 14:6, 24:13,
24:25, 25:4, 31:15,
31:16, 44:17, 64:13,
75:20, 102:11,
102:12, 114:2,
143:18, 143:19,
144:20, 169:14,
174:1, 174:8
**people's** [1] - 24:3
**perfectly** [1] - 9:21
**performance** [3] -
158:17, 160:1,
172:25
**performing** [1] - 160:5
**perhaps** [2] - 28:13,
115:8
**perimeter** [2] - 150:20,
150:23
**period** [5] - 112:10,
116:10, 151:6,
151:14, 151:15
**permanent** [1] - 156:9
**permitted** [1] - 99:19
**person** [8] - 11:14,
70:19, 73:23, 94:7,
105:7, 116:20,
116:21, 152:3
**personal** [7] - 83:20,
84:2, 130:14, 131:3,
136:16, 136:19,
164:13
**phone** [54] - 6:5, 6:10,
7:24, 14:4, 18:20,
19:21, 20:14, 20:15,
20:18, 20:19, 20:22,
20:24, 22:9, 22:10,
22:21, 22:23, 22:25,
24:18, 24:20, 25:5,
27:3, 27:6, 27:24,
29:9, 30:1, 30:25,

31:16, 31:23, 33:4,
35:4, 43:2, 52:12,
53:4, 54:22, 55:6,
56:4, 57:7, 66:21,
74:7, 74:19, 74:23,
75:7, 78:5, 78:7,
78:11, 80:12, 85:2,
86:21, 87:23, 88:15,
93:6
**phones** [1] - 24:13
**photo** [1] - 80:10
**photograph** [7] -
51:16, 58:13, 79:5,
128:16, 128:23,
129:1, 129:4
**photographs** [2] -
73:5, 73:13
**phrase** [1] - 126:1
**physical** [23] - 154:8,
157:15, 162:3,
162:4, 163:10,
163:20, 164:8,
164:14, 164:25,
165:2, 165:4,
165:10, 165:11,
165:12, 165:13,
165:14, 165:22,
165:23, 166:8,
169:9, 170:1,
173:11, 173:12
**pick** [1] - 119:11
**picture** [3] - 51:25,
128:22, 171:9
**pictures** [1] - 131:6
**pieces** [2] - 16:18,
159:22
**pinpoint** [1] - 169:25
**pistol** [2] - 56:17,
130:12
**pixilated** [1] - 54:18
**place** [1] - 72:8
**Plaintiff** [1] - 1:4
**plan** [5] - 14:14, 51:13,
52:16, 127:24, 135:3
**Plan** [1] - 10:1
**planned** [1] - 104:19
**planning** [2] - 59:9,
65:15
**plans** [2] - 5:1, 125:3
**Play** [6] - 115:17,
116:7, 116:25,
120:20, 121:14,
122:6
**play** [14] - 96:2,
103:14, 107:22,
108:5, 109:5,
112:12, 113:10,
114:5, 117:12,
117:21, 118:11,
119:6, 121:20, 122:4

**played** [8] - 96:4,
108:6, 110:3,
113:14, 114:7,
115:4, 119:13,
124:21
**playing** [30] - 104:3,
108:1, 108:23,
109:7, 109:12,
109:16, 110:8,
111:1, 111:2, 111:5,
113:4, 113:11,
114:22, 114:24,
115:19, 115:22,
116:8, 116:12,
116:15, 117:1,
117:11, 117:13,
117:23, 118:5,
118:7, 118:10,
118:19, 120:23,
121:16, 121:22
**PLC** [1] - 1:18
**pleasantly** [1] - 66:25
**podium** [2] - 60:14,
136:1, 142:6
**point** [24] - 5:8, 10:11,
13:15, 27:20, 29:1,
44:22, 63:12, 76:5,
95:18, 96:6, 96:19,
99:14, 111:8, 118:3,
133:17, 140:3,
146:19, 149:5,
152:25, 155:12,
156:21, 161:20,
170:14
**pointed** [2] - 4:2,
11:17
**pointing** [2] - 5:12,
151:10
**points** [3] - 13:17,
115:12, 161:10
**police** [1] - 149:17
**Police** [2] - 149:17,
157:6
**Police's** [1] - 155:10
**policy** [1] - 75:19
**political** [2] - 23:18,
23:23, 47:18
**politically** [1] - 41:12
**politicians** [1] - 48:6
**politics** [2] - 53:16,
81:4
**poor** [3] - 147:2,
147:9, 147:10
**portion** [29] - 16:21,
17:12, 22:3, 29:13,
31:10, 36:1, 40:17,
45:15, 45:21, 45:22,
46:2, 49:4, 49:11,
50:22, 51:6, 59:19,
96:11, 107:15,

112:12, 112:19, 112:21, 119:22, 122:20, 126:9, 126:24, 127:8, 127:23, 153:24
**portions** [2] - 10:17, 16:25, 17:3, 55:1, 67:15, 67:19, 67:24, 76:3, 81:25, 100:13, 108:10, 167:15
**portray** [1] - 118:21
**pose** [1] - 8:10
**posed** [2] - 95:6, 160:22
**posing** [1] - 13:19
**position** [5] - 4:9, 13:19, 153:11, 154:1, 154:21
**positioned** [1] - 120:14
**possessed** [1] - 48:6
**possession** [3] - 73:25, 79:25
**possibility** [1] - 156:16
**possible** [2] - 90:7, 106:24
**post** [5] - 40:6, 58:7, 64:4, 81:3, 144:15
**post-election** [1] - 40:6
**post-Gaither** [1] - 144:15
**posted** [2] - 30:23, 150:10
**potential** [3] - 53:16, 72:21, 174:17
**potentially** [4] - 4:23, 41:13, 67:20, 153:13
**precise** [1] - 168:19
**predicate** [2] - 8:18, 154:4
**prefer** [3] - 75:13, 132:14, 144:24
**prejudice** [3] - 41:18, 42:20, 53:15
**prejudicial** [4] - 41:11, 41:17, 53:14, 98:12
**premier** [1] - 68:19
**prepared** [1] - 10:5
**preparing** [2] - 94:21, 123:2
**preponderance** [2] - 6:18, 11:18
**presence** [4] - 132:23, 151:4, 151:14, 166:22
**present** [10] - 3:7, 103:4, 103:11, 121:2, 142:21, 143:4, 147:22,

155:17, 171:14, 171:25
**presented** [7] - 8:2, 138:24, 142:11, 147:24, 149:7, 151:19, 168:11
**presents** [1] - 151:24
**preserve** [3] - 25:5, 40:1, 145:7
**preserved** [1] - 134:3
**preserving** [1] - 145:9
**President** [15] - 32:17, 32:19, 81:4, 81:5, 86:13, 150:8, 151:7, 151:16, 156:6, 156:18, 157:7, 157:16, 166:22, 167:1, 167:5
**President's** [1] - 59:10
**president's** [2] - 63:14, 150:15
**presidential** [2] - 11:7, 41:24
**press** [5] - 75:21, 120:20, 121:14, 122:6, 122:13
**pressure** [3] - 40:1, 48:9, 127:1
**presumption** [1] - 174:21
**pretending** [1] - 35:13
**pretrial** [14] - 70:24, 87:9, 101:13, 101:24, 102:3, 103:2, 106:7, 106:19, 107:7, 154:3, 163:2, 163:9, 163:16, 168:14
**pretty** [1] - 92:24
**prevent** [1] - 149:5
**previous** [1] - 94:10
**previously** [14] - 41:10, 53:9, 79:5, 84:24, 87:9, 94:25, 98:19, 99:14, 100:22, 104:22, 116:1, 120:1, 120:11, 128:2
**Prince** [1] - 1:19
**pristine** [1] - 28:18
**privacy** [2] - 24:20, 25:5
**probative** [3] - 41:18,

42:20, 53:14
**problem** [8] - 37:10, 123:20, 123:24, 124:2, 124:5, 124:8, 174:19, 174:20
**problems** [1] - 31:15
**procedure** [1] - 32:6
**procedures** [1] - 39:25
**proceed** [1] - 121:9
**proceeding** [1] - 154:7
**proceedings** [1] - 176:6
**process** [7] - 13:14, 14:10, 37:12, 38:1, 41:25, 102:18, 123:22
**produces** [1] - 28:3
**proffered** [2] - 101:14, 101:15
**progeny** [1] - 173:24
**progresses** [1] - 59:13
**projected** [1] - 24:19
**promise** [1] - 106:3
**proof** [6] - 6:15, 6:17, 34:11, 53:18, 162:11, 170:13
**properly** [4] - 91:14, 104:2, 115:6
**property** [1] - 164:13
**proposal** [1] - 134:21
**proposed** [2] - 163:7, 165:19
**pros** [1] - 136:23
**prosecution** [1] - 74:1
**prosecutors** [3] - 68:12, 94:7, 94:19
**prospect** [1] - 43:22
**protect** [4] - 153:16, 155:10, 155:14
**protected** [3] - 141:22, 155:8, 172:25
**protectee** [1] - 156:17
**protectees** [1] - 155:14
**protest** [3] - 38:18, 64:14, 95:15
**protester** [4] - 88:13, 89:9, 116:21, 116:24
**protesters** [3] - 93:4, 93:11, 146:4
**prove** [11] - 139:5, 139:8, 147:19, 150:13, 153:20, 153:21, 159:21, 159:25, 160:2, 162:8, 167:1
**proved** [3] - 156:3, 158:20, 160:20
**proven** [5] - 139:24, 140:1, 162:6, 162:8,

167:5
**proves** [3] - 139:6, 139:7, 153:19
**provide** [1] - 16:19
**provided** [7] - 72:2, 72:10, 138:2, 142:2, 155:18, 155:25, 157:6
**providing** [1] - 7:1
**proving** [2] - 155:12, 160:3
**provisionally** [9] - 16:3, 16:4, 16:10, 16:15, 17:14, 21:10, 21:18, 30:24
**PS** [1] - 35:10
**public** [8] - 24:25, 25:8, 31:4, 31:7, 31:14, 75:21, 141:15, 141:21
**publicly** [2] - 75:6, 95:18
**published** [2] - 29:14, 123:12
**publishing** [1] - 31:15
**puckered** [1] - 32:12
**pull** [10] - 76:16, 76:22, 77:16, 77:22, 95:23, 119:6, 146:13, 153:4, 163:6
**purchasing** [1] - 76:9
**pure** [1] - 28:18
**purport** [1] - 6:8
**purports** [1] - 91:6
**purpose** [1] - 103:25
**purposes** [6] - 8:9, 8:20, 24:17, 65:15, 151:10, 151:20
**pursuant** [1] - 20:25
**push** [2] - 122:10, 148:18
**pushing** [1] - 153:9
**put** [22] - 5:6, 14:1, 14:20, 17:15, 17:22, 26:23, 29:10, 29:12, 29:25, 30:23, 31:7, 67:10, 72:9, 74:5, 91:1, 98:18, 99:9, 105:5, 106:11, 109:15, 144:10, 145:19
**putting** [2] - 31:13, 158:23

## Q

**qualifying** [2] - 9:8, 9:16
**questioning** [4] - 67:11, 90:4, 122:16,

122:18
**questions** [30] - 4:6, 5:14, 7:6, 8:10, 9:9, 9:13, 9:16, 13:18, 14:18, 65:16, 66:23, 84:1, 86:7, 86:15, 91:1, 94:15, 98:14, 99:6, 106:23, 107:24, 111:7, 119:2, 121:7, 123:6, 123:14, 126:18, 126:21, 127:20, 131:4, 131:12
**quickly** [2] - 12:23, 13:10
**quiet** [1] - 115:12
**quite** [7] - 14:5, 25:12, 32:12, 34:17, 35:14, 112:8, 166:7
**quote** [1] - 172:18
**quotes** [1] - 37:18

## R

**radar** [2] - 35:10, 67:10
**raise** [2] - 26:21, 160:24
**raised** [6] - 7:11, 41:9, 149:19, 157:22, 169:7, 174:3
**rally** [4] - 38:15, 64:13, 64:25, 95:7
**rallying** [1] - 59:10
**rather** [4] - 7:16, 8:11, 39:15, 144:6
**RDR** [3] - 1:22, 176:3, 176:10
**reached** [1] - 86:21
**reacted** [1] - 42:5
**reaction** [1] - 42:7
**READ** [1] - 12:11
**Read** [1] - 22:4
**read** [93] - 8:25, 11:20, 11:21, 12:10, 12:11, 13:9, 13:11, 20:6, 21:15, 21:20, 21:21, 22:5, 22:6, 22:7, 22:13, 22:14, 23:1, 23:21, 25:11, 27:8, 29:15, 32:2, 32:4, 33:24, 33:25, 34:6, 34:8, 34:9, 34:11, 34:17, 35:7, 35:18, 36:5, 36:15, 36:17, 36:23, 39:12, 41:23, 45:10, 45:11, 45:22, 45:23, 46:5, 47:14, 50:2, 50:16, 51:1, 51:12, 52:22, 52:23,

54:17, 55:20, 57:17, 58:4, 58:5, 58:22, 59:6, 61:14, 61:24, 62:11, 62:17, 62:19, 62:21, 63:4, 63:7, 64:1, 64:6, 64:19, 81:24, 81:25, 85:6, 85:18, 86:7, 88:16, 91:20, 99:8, 123:17, 123:21, 125:11, 125:14, 126:9, 126:23, 126:24, 127:23, 128:3, 130:9, 159:16, 165:4
**reader** [1] - 18:23
**reading** [2] - 22:13, 95:5
**ready** [4] - 70:2, 107:19, 135:13, 145:22
**real** [1] - 164:13
**RealDonaldTrump** [2] - 58:10, 58:12
**realistically** [1] - 28:1
**realize** [3] - 88:13, 89:8, 146:14
**realized** [1] - 100:20
**really** [6] - 34:10, 106:16, 122:21, 143:2, 170:15, 172:10
**reason** [6] - 26:13, 42:20, 61:17, 137:25, 151:8, 157:10
**reasonable** [19] - 73:23, 158:20, 160:18, 160:20, 170:13, 170:17, 170:19, 170:22, 171:1, 171:15, 172:1, 172:3, 172:5, 172:10, 172:11, 172:16, 172:22, 173:4, 173:7
**reasonably** [1] - 174:7
**reasons** [1] - 133:1
**REBEKAH** [1] - 1:13
**Rebekah** [1] - 3:5
**rebekah.lederer@ usdoj.gov** [1] - 1:16
**rebuttal** [3] - 133:19, 133:22, 137:9
**recalling** [1] - 146:3
**receipt** [27] - 13:9, 13:10, 13:11, 33:24, 36:5, 36:15, 36:17, 39:12, 41:23, 45:10, 45:23, 47:14, 50:2, 50:16, 51:1, 57:17,

58:4, 58:5, 58:22, 59:6, 61:14, 61:24, 62:11, 62:19, 63:7, 64:1, 128:3
**receipts** [5] - 21:15, 22:5, 22:8, 52:22, 52:23
**receive** [1] - 12:4
**received** [2] - 24:14, 37:25
**receiving** [1] - 18:24
**recess** [2] - 69:7, 110:7
**Recess** [3] - 104:10, 110:15, 135:15
**recited** [1] - 103:10
**reckoning** [3] - 40:4, 40:5, 40:23
**recognize** [3] - 38:7, 112:3, 126:13
**recognizing** [2] - 134:8, 171:2
**recollection** [18] - 16:9, 90:12, 90:17, 91:9, 91:14, 91:18, 91:22, 91:24, 92:1, 92:6, 92:7, 92:11, 92:13, 94:17, 94:18, 170:24, 172:20, 173:14
**record** [31] - 4:23, 5:5, 5:6, 8:9, 14:13, 17:5, 23:22, 26:4, 29:15, 32:3, 35:3, 52:22, 74:6, 94:24, 99:8, 99:9, 100:1, 102:19, 105:8, 107:3, 109:16, 109:17, 115:8, 129:14, 134:7, 134:14, 141:21, 144:10, 150:25, 152:21, 155:21
**recovered** [1] - 79:9
**red** [4] - 8:12, 8:14, 56:20, 130:7
**redact** [2] - 25:16, 29:9
**redacted** [9] - 17:2, 25:13, 75:3, 75:10, 75:19, 75:24, 87:11, 87:12, 131:23
**redacting** [3] - 24:23, 30:1, 87:13
**redaction** [1] - 74:23
**redactions** [3] - 29:14, 31:11, 75:13
**REDIRECT** [1] - 119:9
**redirect** [5] - 9:5, 119:4, 146:18, 146:23, 148:16

**reduced** [1] - 47:8
**refer** [4] - 70:17, 100:9, 126:18, 126:21
**reference** [10] - 18:16, 21:3, 21:14, 64:24, 76:10, 76:11, 89:5, 104:16, 105:6, 127:5
**referenced** [8] - 24:12, 54:10, 85:15, 85:19, 126:4, 127:19, 131:9, 168:14
**references** [2] - 54:10, 81:11
**referencing** [10] - 15:25, 16:1, 19:1, 26:5, 44:1, 52:24, 89:4, 107:12, 151:5, 168:1
**referred** [3] - 14:22, 82:1, 97:21
**referring** [4] - 68:6, 76:8, 127:10, 163:4
**refers** [1] - 164:15
**refine** [1] - 72:6
**reflect** [1] - 116:1
**refresh** [6] - 90:16, 91:8, 91:17, 91:22, 92:6, 92:13
**refreshed** [3] - 90:12, 91:13, 173:14
**refreshes** [1] - 92:11
**refreshing** [3] - 91:24, 92:1, 92:7
**refuse** [2] - 32:8, 52:16
**refused** [2] - 51:13, 127:24
**regard** [1] - 166:20
**regarding** [7] - 23:23, 54:12, 64:25, 94:15, 153:24, 155:19, 156:1
**regardless** [1] - 144:17
**regards** [3] - 67:13, 103:11, 123:14
**registering** [2] - 57:21, 59:9
**rejected** [2] - 164:22, 164:24
**relate** [2] - 23:22, 83:24
**related** [7] - 17:7, 41:13, 76:11, 79:25, 83:25, 84:1, 160:9
**relates** [9] - 11:6, 14:2, 23:15, 30:12, 53:8, 71:3, 77:2, 83:24, 106:11
**relating** [7] - 52:14,

55:2, 55:8, 73:6, 79:24, 123:7, 174:17
**relation** [3] - 23:16, 42:8, 50:9
**release** [1] - 174:18
**releases** [2] - 40:1, 40:6
**relevance** [2] - 24:16
**relevancy** [3] - 23:13, 67:24, 71:11
**relevant** [13] - 4:24, 7:8, 12:22, 15:11, 16:16, 24:5, 31:10, 32:7, 34:10, 66:13, 68:17, 68:18, 144:14
**relied** [1] - 144:13
**relies** [1] - 136:17
**relocated** [2] - 156:19, 156:20
**relook** [1] - 29:2
**rely** [4] - 8:20, 75:7, 164:16, 170:25
**relying** [1] - 160:11
**remain** [1] - 136:13
**remained** [1] - 156:13
**remaining** [3] - 23:22, 124:19, 151:11
**remember** [7] - 90:6, 91:2, 91:21, 93:21, 101:13, 146:25, 147:1
**remembering** [1] - 20:23
**remove** [2] - 33:15, 103:22
**rendered** [1] - 174:13
**renew** [5] - 24:19, 122:14, 132:13, 145:2, 145:3
**renewing** [1] - 145:4
**rephrase** [2] - 82:17, 89:25
**replayed** [1] - 121:5
**reply** [3] - 143:21, 144:7, 144:10
**report** [23] - 10:21, 14:4, 15:11, 16:24, 18:4, 18:6, 22:1, 23:7, 26:5, 43:15, 48:24, 55:13, 62:6, 63:18, 65:4, 70:21, 71:7, 71:10, 76:20, 78:5, 78:7, 78:11, 78:15
**REPORTER** [2] - 79:3, 176:1
**Reporter** [3] - 1:22, 1:22, 176:11
**representations** [3] - 74:3, 106:21, 144:3

**represented** [1] - 72:10
**represents** [1] - 98:21
**republic** [1] - 39:19
**Republican** [4] - 37:13, 82:10, 82:13, 82:20
**request** [5] - 5:20, 71:24, 72:5, 110:7, 173:23
**requested** [2] - 70:20, 71:6
**require** [8] - 73:8, 150:8, 151:3, 157:15, 159:7, 162:10, 172:16, 174:6
**required** [2] - 148:11, 167:5, 168:14
**requirement** [1] - 160:3
**requires** [8] - 74:23, 149:7, 150:12, 162:5, 162:7, 167:3, 172:7, 174:6
**research** [2] - 70:11, 70:18
**resembles** [1] - 80:11
**reserve** [9] - 38:22, 132:9, 132:17, 133:3, 133:5, 134:18, 144:22, 151:23, 169:13
**reserving** [1] - 133:15
**reservoir** [1] - 40:7
**resisted** [1] - 158:18
**resisting** [2] - 152:2, 153:13
**resolvable** [1] - 106:25
**resolve** [1] - 141:23
**resolved** [1] - 101:19
**respect** [14] - 3:24, 72:4, 91:1, 102:14, 103:6, 103:8, 153:24, 161:14, 167:1, 170:20, 171:12, 171:24, 172:7, 173:2
**respond** [20] - 12:23, 13:2, 19:25, 20:2, 23:4, 26:6, 30:3, 33:4, 41:8, 47:22, 51:23, 54:3, 142:5, 144:1, 144:6, 144:9, 144:16, 144:17, 166:16, 167:24
**responded** [13] - 7:9, 7:13, 11:9, 12:8, 21:23, 24:8, 24:9, 34:7, 52:20, 55:5,

158:5, 163:8, 164:25
**responding** [5] -
11:14, 12:1, 19:21,
54:1, 156:1
**responds** [4] - 11:13,
12:23, 13:10, 23:20
**response** [45] - 7:14,
12:13, 12:25, 26:8,
27:9, 27:23, 27:24,
30:5, 33:6, 33:18,
33:20, 34:5, 34:20,
34:21, 34:23, 37:1,
37:6, 37:8, 39:4,
41:7, 41:20, 41:22,
42:2, 42:17, 42:18,
47:5, 47:7, 47:11,
47:12, 47:16, 47:21,
48:3, 51:9, 52:10,
52:13, 57:23, 61:6,
95:3, 144:2, 151:24,
158:5, 158:14,
158:15, 163:8, 164:5
**responses** [2] - 50:9,
58:17
**responsibility** [1] -
136:6
**responsive** [1] - 54:25
**rest** [7] - 10:11, 21:6,
51:12, 133:16,
135:23, 135:25,
165:15
**restart** [1] - 110:5
**rested** [2] - 133:14,
137:9
**restricted** [28] -
138:21, 138:23,
139:1, 139:3, 139:4,
139:7, 139:8,
139:24, 140:1,
140:3, 140:6,
140:12, 150:10,
150:14, 150:16,
151:12, 151:17,
156:2, 156:5,
166:23, 166:24,
167:2, 167:3, 167:4,
167:7, 171:13,
172:3, 173:2
**rests** [5] - 132:1,
132:2, 135:16,
135:24, 137:8
**result** [3] - 151:2,
155:22, 157:12
**resume** [2] - 110:24,
116:14
**Resumed** [2] - 2:3,
15:1
**retards** [2] - 38:6,
126:12
**retrieve** [1] - 131:14

**retrieved** [2] - 167:25,
168:6
**return** [1] - 44:22
**returned** [1] - 143:2
**retweeted** [1] - 59:13
**retweets** [1] - 46:7
**reviewed** [1] - 71:21
**reviewing** [4] - 66:4,
78:14, 131:8, 146:23
**revisit** [1] - 72:6
**rewind** [1] - 108:15
**rights** [1] - 134:4
**rioters** [2] - 152:9,
152:24
**risk** [1] - 40:8
**river** [2] - 44:6, 44:9
**road** [1] - 73:17
**roll** [1] - 3:20
**rolling** [1] - 33:10
**Rome** [3] - 44:6, 44:9,
44:20
**room** [4] - 20:6, 24:25,
27:10, 143:11
**Room** [2] - 1:23,
176:12
**Rotunda** [12] - 108:14,
111:17, 111:18,
113:24, 114:3,
114:18, 116:18,
117:7, 118:1,
120:12, 152:7, 152:8
**roughly** [2] - 168:19,
168:21
**Rubicon** [9] - 43:24,
44:2, 44:3, 44:5,
44:9, 44:16, 44:19,
44:21, 131:9
**Rule** [30] - 6:22, 132:6,
137:11, 137:13,
145:1, 145:2, 145:3,
145:8, 148:6, 149:4,
149:5, 149:9,
149:12, 149:20,
149:22, 149:25,
151:20, 152:5,
157:23, 158:3,
160:15, 161:18,
169:11, 169:13,
169:18, 170:5,
170:11, 172:6, 173:9
**rule** [9] - 7:20, 140:23,
144:4, 145:10,
168:16, 169:7,
169:11, 169:18,
174:22
**ruled** [1] - 73:16
**rules** [2] - 89:13, 92:24
**ruling** [11] - 102:13,
132:17, 133:3,
133:5, 133:15,

134:18, 167:13,
169:13, 170:11,
170:14, 175:6
**rulings** [1] - 102:4
**Rumble.com/vbwjmv**
[1] - 43:14
**Rumble.com/vbwjmv**
**-dont-just-talk-like-**
**an-american-act** [1] -
43:14
**run** [2] - 38:1, 174:5
**running** [1] - 100:4
**runs** [1] - 6:7
**Russell** [2] - 137:15,
143:14

## S

**Safeway** [3] - 155:21,
155:22, 172:23
**Safeway's** [1] - 155:24
**sales** [1] - 155:24
**sat** [1] - 100:3
**satisfying** [1] - 157:17
**save** [6] - 9:14, 77:12,
132:18, 133:1,
135:2, 135:5
**saves** [2] - 76:25, 77:7
**saving** [1] - 134:3
**saw** [15] - 7:9, 21:22,
80:11, 88:14, 89:9,
108:20, 113:12,
113:21, 115:9,
115:13, 120:5,
156:11, 156:18,
157:5, 171:20
**scenario** [1] - 41:12
**scene** [1] - 155:7
**schedule** [5] - 144:18,
144:19, 157:7,
157:11, 174:11
**scheduled** [1] - 94:25
**scheme** [1] - 18:22
**school** [2] - 25:24,
92:8
**scope** [6] - 120:23,
121:1, 121:25,
130:16, 130:18,
157:19
**screen** [27] - 17:15,
17:23, 29:10, 29:12,
30:1, 30:24, 31:4,
31:7, 31:14, 46:9,
61:11, 76:1, 77:24,
79:2, 80:5, 81:1,
83:18, 85:2, 86:4,
87:2, 98:10, 103:22,
107:14, 108:3,
110:19, 112:1,
123:12

**screenshot** [6] - 56:3,
66:19, 87:10, 87:16,
88:14, 89:10
**scroll** [9] - 15:23,
18:11, 19:4, 19:17,
33:2, 46:24, 78:6,
78:10, 105:2
**scrolled** [1] - 29:11
**search** [2] - 20:25,
73:14
**searches** [1] - 73:4
**seated** [1] - 32:9
**second** [26] - 5:8,
21:13, 43:17, 43:18,
46:21, 49:1, 51:15,
59:3, 59:23, 60:1,
60:2, 60:12, 61:10,
61:11, 62:16, 63:21,
64:11, 64:12, 82:10,
93:18, 94:6, 123:21,
126:24, 127:10,
128:8, 143:7
**secondly** [2] - 5:16,
88:18
**seconds** [6] - 30:5,
104:16, 106:25,
112:2, 120:9, 120:17
**Secret** [2] - 155:14,
157:11
**section** [5] - 158:25,
162:18, 163:12,
166:11, 167:3
**sections** [1] - 166:25
**Sections** [1] - 152:3
**securities** [1] - 72:19
**security** [4] - 112:5,
150:20, 150:23,
157:6
**see** [53] - 3:14, 5:18,
12:6, 18:1, 19:18,
21:13, 23:13, 24:6,
40:14, 40:23, 43:15,
46:17, 48:5, 51:16,
56:2, 56:16, 58:9,
64:8, 67:18, 69:3,
75:23, 77:24, 78:1,
78:8, 78:12, 79:20,
80:5, 80:10, 81:1,
85:1, 86:4, 87:14,
87:15, 87:17, 98:12,
103:21, 106:13,
107:13, 108:3,
114:8, 117:4, 118:2,
118:5, 118:8,
118:17, 120:14,
121:17, 121:23,
146:14, 146:16,
153:3, 154:15
**see..** [1] - 45:13
**seeing** [7] - 18:11,

18:14, 43:21, 46:9,
115:3, 122:22,
122:23
**seek** [5] - 23:7, 28:12,
40:13, 44:23, 56:22
**seeking** [1] - 104:23
**seeks** [1] - 34:3
**seem** [1] - 92:10
**sees** [1] - 42:15
**seized** [1] - 20:25
**selected** [1] - 19:2
**Senate** [2] - 102:18,
156:19
**send** [2] - 12:5, 173:16
**sending** [7] - 8:5,
18:23, 18:24, 29:18,
33:17, 35:4, 131:5
**sends** [2] - 34:22,
79:13
**sense** [10] - 3:22, 9:16,
34:12, 35:12, 62:24,
65:21, 65:24, 103:4,
103:11, 134:4
**sensitive** [1] - 73:20
**sent** [56] - 7:12, 10:8,
10:18, 11:4, 11:5,
11:8, 19:10, 20:10,
27:5, 27:14, 31:22,
32:15, 32:25, 33:11,
33:22, 35:10, 35:16,
36:3, 36:13, 39:8,
41:19, 43:6, 43:9,
43:11, 43:18, 45:8,
45:18, 47:5, 47:12,
49:6, 49:11, 50:14,
50:24, 51:8, 54:1,
54:6, 55:18, 56:8,
57:6, 57:15, 58:2,
58:6, 58:20, 59:4,
61:1, 61:12, 61:22,
62:9, 62:17, 63:5,
63:24, 64:17, 78:2,
85:9, 100:19
**sentence** [3] - 123:18,
123:21, 126:4
**separate** [16] - 10:17,
20:7, 27:10, 30:13,
52:14, 53:20, 65:12,
85:21, 137:12,
140:4, 145:15,
159:1, 159:4, 159:5,
165:3, 165:9
**separately** [2] -
165:11, 165:24
**sequence** [1] - 111:20
**Sergeant** [31] - 66:15,
66:20, 67:14, 90:5,
90:6, 90:7, 90:12,
90:24, 91:11, 91:25,
119:20, 121:17,

122:7, 122:8, 122:11, 145:25, 146:2, 152:4, 152:25, 153:2, 153:3, 153:5, 153:7, 153:9, 153:14, 154:10, 154:16, 154:17, 154:22, 154:25, 161:15

**sergeant** [1] - 146:1

**series** [2] - 6:3, 99:25

**Service** [2] - 155:14, 157:11

**set** [2] - 3:25, 175:12

**seven** [2] - 35:11, 165:7

**seventh** [1] - 50:6

**sexist** [1] - 55:9

**shall** [1] - 10:7

**sharing** [1] - 141:12

**shipping** [1] - 155:24

**shit** [3] - 37:18, 43:24, 44:2

**shoot** [1] - 76:7

**shortage** [1] - 76:8

**shortly** [2] - 106:19, 156:12

**shoving** [1] - 122:12

**show** [38] - 11:2, 15:13, 15:17, 24:7, 24:8, 25:1, 25:8, 25:18, 30:17, 34:6, 54:14, 59:9, 62:14, 66:16, 70:18, 74:22, 75:14, 76:2, 77:4, 80:4, 84:25, 87:1, 91:6, 92:9, 96:25, 99:6, 106:15, 111:16, 119:15, 119:19, 129:7, 129:25, 130:7, 140:17, 158:24, 159:7, 159:10, 159:11

**showed** [2] - 68:13, 91:16, 107:12, 111:16, 114:1, 128:22

**showing** [12] - 10:19, 17:24, 24:5, 33:25, 41:6, 41:7, 68:9, 90:13, 97:4, 113:18, 121:13, 130:1

**shown** [11] - 21:17, 32:3, 75:2, 75:6, 80:21, 82:5, 87:21, 100:11, 107:20, 109:17, 131:5

**shows** [15] - 10:15, 34:5, 34:7, 82:23,

87:10, 87:12, 97:3, 104:15, 147:24, 153:9, 155:6, 156:8, 171:18, 171:19

**shut** [1] - 66:10

**shutting** [3] - 50:6, 52:3, 52:10

**sic** [3] - 120:10, 122:4, 123:5

**sic]** [1] - 91:7

**side** - 18:17, 18:19, 35:12, 67:4, 92:9, 113:12, 113:14, 120:15, 140:17, 157:16

**side-by-side** [1] - 140:17

**sides** [4] - 24:15, 134:2, 135:7, 157:14

**sign** [6] - 51:13, 52:16, 62:2, 64:22, 127:24, 142:24

**signer** [1] - 62:2

**significance** [2] - 44:9, 44:13

**significant** [1] - 139:11

**signifies** [1] - 52:8

**signify** [1] - 54:4

**signing** [1] - 61:4

**signs** [1] - 143:6

**silent** [1] - 136:13

**silhouette** [1] - 60:14

**similar** [2] - 102:13, 149:24

**similarly** [1] - 172:15

**simple** [3] - 63:1, 151:21, 159:18

**simply** [3] - 77:4, 147:10, 166:25

**simultaneously** [3] - 17:10, 115:4, 167:6

**single** [5] - 8:25, 10:12, 104:13, 132:22, 156:3

**sit** [1] - 25:15

**six** [4] - 20:10, 23:20, 26:6, 27:14

**sixth** [1] - 50:6

**Skelly** [1] - 143:1

**skeptical** [2] - 38:6, 126:12

**skipped** [2] - 120:25, 121:7

**slate** [3] - 35:11, 37:21, 37:22

**slate'** [1] - 37:12

**slates** [2] - 37:24, 38:3

**sleeves** [1] - 33:10

**slowly** [1] - 88:17

**snail** [1] - 85:8

**snatch** [1] - 125:25

**snuck** [1] - 29:3

**solve** [1] - 124:8

**solves** [3] - 37:10, 123:20, 124:5

**solving** [2] - 123:24, 124:2

**someone** [11] - 10:18, 24:12, 31:22, 33:17, 53:4, 55:5, 89:17, 92:9, 105:5, 105:9, 147:22

**something's** [2] - 24:25, 110:9

**sometimes** [5] - 67:5, 90:10, 122:25, 132:20, 135:6

**somewhere** [1] - 150:20

**soon** [2] - 174:7, 174:13

**soon..** [1] - 35:15

**sorry** [20] - 4:13, 14:24, 36:24, 41:4, 44:7, 46:10, 49:9, 66:22, 76:19, 85:14, 90:16, 107:17, 116:18, 123:13, 127:9, 130:4, 147:6, 166:16, 166:18

**sort** [2] - 13:14, 135:8

**sounds** [1] - 104:12

**source** [4] - 57:3, 66:4, 115:5

**sources** [1] - 71:3

**spare** [1] - 56:18

**speaking** [2] - 41:3, 93:2

**Special** [6] - 155:16, 156:6, 156:11, 157:5, 157:15, 171:14

**specific** [12] - 21:13, 42:6, 68:16, 81:24, 81:25, 85:23, 94:3, 140:12, 145:9, 146:5, 150:19, 150:25

**specifically** [13] - 14:18, 95:14, 96:10, 99:21, 101:22, 139:13, 153:12, 153:15, 154:17, 158:9, 162:10, 164:10

**specificity** [1] - 150:12

**speculating** [1] - 44:11

**speculation** [8] -

82:15, 123:25, 125:16, 125:18, 128:17, 149:5, 149:7, 149:8

**speculative** [2] - 82:2, 82:4

**sped** [3] - 114:25, 116:9, 118:17

**sped-up** [1] - 114:25

**speed** [2] - 8:7, 114:12

**spell** [1] - 137:17

**spend** [1] - 165:7

**spent** [1] - 73:2

**sphincters** [1] - 32:12

**spliced** [2] - 97:16, 97:23

**spot** [1] - 59:10

**spotlight** [1] - 106:12

**spurred** [1] - 120:2

**square** [1] - 63:11

**squish** [1] - 39:20

**stage** [2] - 148:6, 149:10

**stairs** [1] - 171:22

**stand** [6] - 14:2, 14:17, 14:20, 68:10, 89:18, 131:17

**standard** [4] - 161:11, 170:7, 170:8, 170:15

**standing** [5] - 60:15, 103:17, 109:24, 113:22, 115:10

**start** [15] - 10:9, 13:15, 43:4, 45:6, 47:4, 58:19, 63:23, 65:22, 67:8, 69:5, 114:22, 145:20, 145:21, 169:6, 169:19

**started** [6] - 7:17, 8:25, 15:4, 19:13, 20:11, 21:3

**starting** [10] - 10:20, 46:5, 51:8, 51:11, 57:11, 57:14, 76:4, 127:22, 151:25, 156:5

**starts** [2] - 51:24, 110:20

**state** [13] - 29:18, 29:20, 37:14, 39:16, 68:13, 84:5, 84:12, 84:14, 84:17, 88:20, 89:22, 91:7, 123:23

**State** [1] - 38:1

**statement** [7] - 10:23, 10:24, 10:25, 89:14, 91:4, 92:14, 92:22

**statements** [4] - 23:15, 67:13, 83:3, 93:3

**states** [5] - 35:11, 81:4, 81:8, 84:20, 86:9

**STATES** [3] - 1:1, 1:3, 1:10

**States** [12] - 1:13, 3:3, 3:4, 49:16, 137:15, 137:16, 137:19, 139:13, 150:11, 155:9, 155:13, 176:11

**Statuary** [3] - 114:19, 114:20, 116:18

**statute** [4] - 4:3, 152:17, 156:15

**statutes** [2] - 102:20, 158:7

**stay** [1] - 169:17

**steelers** [1] - 20:9, 27:13

**stenographic** [1] - 176:5

**step** [1] - 67:1

**stepped** [2] - 152:9, 153:8

**steps** [3] - 15:5, 66:2, 111:17

**STEVEN** [2] - 2:3, 15:1

**still** [15] - 14:21, 23:12, 25:8, 42:17, 53:13, 59:25, 67:24, 70:5, 87:7, 90:3, 113:6, 123:11, 133:19, 165:22, 170:25

**stipulate** [5] - 7:22, 77:1, 77:14, 107:2, 107:3

**stipulated** [1] - 112:15

**Stirone** [5] - 137:16, 137:18, 139:13, 143:14, 173:24

**STIRONE** [1] - 137:18

**stop** [8] - 31:13, 83:20, 84:3, 84:15, 86:10, 97:5, 125:4, 135:8

**stopping** [1] - 42:9

**storm** [2] - 38:7, 126:13

**story** [1] - 32:10

**stream** [1] - 152:24

**streamed** [1] - 152:9

**Street** [2] - 1:14, 1:19

**stricken** [1] - 125:8

**string** [2] - 20:7, 27:10

**stroke** [3] - 10:12, 10:14, 142:9

**strong** [2] - 133:1, 161:7, 161:10

**structured** [1] - 15:15

**struggle** [2] - 146:9,

146:11

**stuff** [7] - 5:5, 30:25, 72:22, 73:13, 73:18, 102:20, 170:2

**subject** [3] - 132:3, 135:9, 135:17

**submission** [1] - 75:4

**submit** [1] - 149:11

**submitted** [3] - 131:24, 140:19, 141:20

**submitting** [1] - 131:22

**subsequently** [1] - 23:20

**sufficiency** [2] - 166:21, 170:8

**sufficient** [7] - 147:15, 153:10, 158:23, 160:23, 171:10, 172:2, 172:8

**suggest** [1] - 166:15

**suggested** [2] - 7:14, 7:15

**suggesting** [1] - 130:25

**suggestion** [2] - 7:21, 27:19

**suggestions** [1] - 3:12

**suggests** [2] - 98:24, 101:16

**suicide** [1] - 47:19

**suitcase** [4] - 56:17, 79:18, 79:20, 130:7

**Suite** [1] - 1:19

**summarize** [1] - 91:7

**summarizing** [1] - 102:3

**supported** [3] - 99:24, 100:2, 104:5

**supporters** [1] - 75:22

**Supreme** [4] - 137:15, 137:19, 174:24, 175:8

**surprised** [1] - 66:25

**surprises** [1] - 67:5

**survive** [1] - 161:18

**sustain** [6] - 44:14, 124:22, 130:23, 131:7, 148:11, 151:1

**sustained** [4] - 28:1, 83:1, 125:8, 125:22

**Sutton** [1] - 149:18

**swamp** [1] - 48:7

**sway** [1] - 41:14

**sweet** [2] - 48:11, 127:3

**swelling** [1] - 40:7

**switch** [1] - 117:4

**symbol** [1] - 64:8

**synchronized** [2] - 113:18, 115:6

**system** [1] - 110:5

---

## T

**tagged** [1] - 15:7

**talks** [5] - 20:8, 27:12, 151:11, 162:3, 162:4

**tallies** [1] - 38:3

**tally** [1] - 37:23

**Tanya** [1] - 30:23

**targets** [2] - 48:10, 127:2

**teach** [1] - 25:23

**technology** [2] - 110:13, 175:12

**telephone** [1] - 70:19

**temporarily** [3] - 150:9, 156:16, 157:18

**temporary** [1] - 156:8

**ten** [3] - 42:2, 135:12, 169:17

**term** [5] - 44:21, 140:4, 140:6, 165:6

**terms** [7] - 44:13, 72:20, 81:24, 101:3, 145:10, 151:14, 172:2

**territory** [1] - 70:23

**testified** [13] - 14:5, 15:6, 19:20, 32:22, 33:8, 71:14, 120:1, 128:2, 146:3, 148:15, 148:16, 157:15, 172:1

**testify** [13] - 8:16, 12:3, 14:2, 26:5, 52:21, 103:13, 136:9, 136:13, 136:19, 137:4, 147:4, 150:15, 150:16

**testifying** [1] - 68:8

**testimony** [25] - 6:1, 8:21, 12:10, 20:23, 27:23, 67:8, 68:16, 68:18, 89:4, 89:5, 95:10, 97:20, 147:14, 150:24, 150:25, 153:5, 155:20, 155:21, 156:11, 160:17, 160:23, 161:1, 161:4, 171:8, 172:20

**text** [69] - 3:20, 7:3, 8:4, 10:15, 10:17, 10:18, 10:20, 12:14, 22:3, 23:8, 23:10,

29:16, 43:20, 44:2, 45:12, 46:3, 47:7, 47:16, 48:3, 50:4, 50:18, 51:5, 51:6, 54:1, 54:4, 55:20, 56:10, 56:12, 57:19, 58:6, 58:24, 61:3, 62:1, 62:13, 62:21, 63:9, 64:3, 64:6, 64:19, 76:6, 76:20, 77:1, 77:17, 82:9, 82:10, 82:23, 83:9, 83:16, 83:25, 84:1, 84:2, 84:4, 85:1, 85:4, 85:6, 85:17, 86:3, 86:4, 86:9, 95:17, 123:7, 123:15, 125:11, 126:2, 126:22, 128:3, 128:8, 131:9, 154:9

**textbook** [1] - 91:23

**texted** [1] - 80:11

**texting** [1] - 53:1

**texts** [3] - 9:8, 15:5, 52:25

**THE** [387] - 1:1, 1:1, 1:10, 3:2, 3:8, 3:23, 4:14, 4:17, 4:25, 5:3, 5:12, 5:24, 8:8, 9:18, 9:25, 10:7, 10:24, 11:11, 11:21, 11:24, 12:2, 12:20, 13:12, 13:21, 14:16, 15:19, 15:21, 16:2, 16:7, 16:9, 16:14, 16:22, 16:25, 17:3, 17:5, 17:8, 17:11, 17:13, 17:17, 17:21, 17:22, 17:24, 20:13, 20:16, 20:17, 20:21, 20:22, 21:1, 21:6, 21:9, 21:17, 22:12, 22:17, 22:18, 22:19, 23:9, 23:24, 24:21, 24:24, 25:17, 25:23, 26:2, 26:8, 26:10, 26:12, 26:17, 26:20, 27:19, 28:9, 28:13, 28:15, 29:7, 29:25, 30:9, 30:18, 31:6, 31:13, 34:24, 35:21, 38:25, 39:2, 39:10, 39:11, 40:14, 41:3, 42:1, 42:10, 42:19, 44:13, 45:1, 46:9, 48:17, 48:20, 48:22, 49:24, 52:6, 53:3, 53:6, 53:8, 53:12, 53:24, 54:3, 54:8, 54:14,

54:19, 57:1, 58:11, 58:12, 59:21, 59:23, 60:2, 65:6, 65:10, 65:14, 65:18, 65:25, 66:25, 67:2, 67:3, 68:2, 68:20, 68:23, 69:3, 70:2, 70:5, 70:7, 71:4, 71:8, 71:16, 71:19, 72:4, 74:9, 74:13, 74:18, 74:21, 75:6, 75:15, 75:18, 76:2, 76:17, 76:19, 76:21, 76:24, 77:8, 77:12, 78:20, 78:23, 78:25, 79:3, 80:20, 81:20, 82:3, 82:18, 83:1, 83:7, 83:10, 83:16, 83:24, 84:10, 85:20, 86:17, 87:15, 87:18, 87:20, 88:16, 88:23, 89:6, 89:11, 89:22, 90:2, 90:9, 90:16, 90:20, 90:23, 91:16, 92:7, 92:19, 92:24, 93:16, 93:20, 93:22, 94:1, 94:17, 94:20, 94:21, 94:23, 94:24, 95:11, 95:25, 96:9, 96:13, 96:15, 96:20, 97:5, 97:25, 98:3, 98:5, 99:2, 99:13, 101:12, 102:24, 103:6, 104:4, 104:11, 104:24, 105:10, 105:15, 105:18, 105:20, 105:22, 106:6, 107:19, 107:25, 108:12, 108:14, 109:13, 109:18, 109:23, 110:12, 110:16, 111:7, 111:15, 111:19, 111:22, 113:21, 113:23, 113:24, 113:25, 114:1, 114:4, 114:18, 114:20, 115:8, 115:15, 116:20, 116:23, 117:24, 118:1, 118:2, 118:4, 119:3, 121:9, 121:11, 122:1, 122:17, 123:13, 124:1, 124:4, 124:15, 124:17, 124:20, 124:22, 125:8, 125:10, 125:14, 125:19, 125:22, 125:25, 126:8,

126:16, 126:19, 127:9, 127:14, 127:21, 128:20, 129:9, 129:11, 129:19, 129:21, 129:25, 130:6, 130:19, 130:21, 130:23, 131:7, 131:15, 131:19, 131:20, 132:2, 132:14, 133:8, 133:11, 133:13, 134:1, 134:9, 134:15, 134:18, 134:21, 135:1, 135:17, 135:25, 136:4, 136:5, 136:11, 136:12, 136:15, 136:16, 136:21, 136:22, 136:24, 136:25, 137:2, 137:3, 137:4, 137:5, 137:7, 137:8, 137:17, 137:21, 137:24, 138:5, 138:7, 138:10, 138:13, 138:17, 139:17, 139:21, 140:2, 140:9, 140:22, 141:5, 141:9, 141:23, 142:18, 144:4, 144:11, 144:13, 144:22, 145:6, 145:12, 145:16, 145:18, 148:20, 148:22, 149:14, 150:2, 150:22, 152:11, 152:14, 152:17, 152:21, 153:18, 156:25, 158:12, 159:5, 159:9, 159:14, 159:21, 160:11, 160:16, 160:25, 161:21, 161:23, 161:25, 162:12, 162:16, 162:20, 162:23, 163:3, 163:15, 163:19, 163:22, 164:7, 165:12, 165:25, 166:3, 166:7, 166:14, 166:18, 167:9, 167:23, 168:3, 168:16, 168:23, 169:5, 169:23, 173:22, 173:25, 174:3, 174:16, 174:19, 174:21, 175:1,

175:3, 175:7, 175:10, 175:17
**theater** [1] - 39:23
**themselves** [2] - 6:23, 35:14
**theoretically** [1] - 73:15
**theory** [1] - 143:4
**therefore** [1] - 11:25
**they've** [7] - 5:14, 73:11, 74:3, 99:8, 101:5, 143:3, 158:8
**thinking** [4] - 41:13, 85:7, 143:6, 146:12
**thinks** [2] - 74:2, 104:5
**third** [1] - 63:2
**thomas** [2] - 48:10, 127:2
**Thomas** [1] - 138:25
**thousands** [1] - 73:12
**thread** [1] - 23:18
**threat** [2] - 147:21, 164:11
**three** [15] - 6:9, 20:14, 30:9, 32:19, 32:21, 46:11, 46:25, 53:6, 60:18, 62:6, 112:2, 144:13, 144:16, 159:4, 159:5
**throughout** [6] - 10:16, 34:15, 97:1, 98:9, 109:3, 156:13
**throw** [1] - 144:24
**thumbnail** [2] - 17:6, 46:21
**thumbnails** [1] - 46:17
**Thune** [2] - 38:5, 126:11
**Thursday** [1] - 1:4
**time-wise** [1] - 112:13
**timed** [3] - 40:6, 168:21, 169:1
**timeline** [3] - 171:24, 171:25, 173:3
**timestamp** [3] - 13:9, 109:18, 109:20
**title** [1] - 43:11
**to-be-determined** [1] - 157:9
**today** [17] - 9:19, 10:1, 10:5, 29:19, 36:22, 36:25, 37:19, 68:3, 68:15, 89:14, 90:13, 92:1, 95:1, 110:4, 131:24, 135:2, 144:4
**together** [7] - 97:24, 98:18, 100:2, 105:6, 145:19, 159:12, 167:7
**tomorrow** [8] - 10:1,

46:7, 135:3, 169:6, 169:13, 174:1, 174:10, 175:10
**tonight** [1] - 143:20
**took** [5] - 5:12, 67:14, 106:10, 106:14, 163:5
**top** [15] - 11:1, 30:11, 31:25, 40:20, 40:22, 45:15, 46:2, 60:20, 74:4, 76:5, 77:2, 77:4, 77:8, 77:9, 77:10
**topic** [3] - 42:8, 53:9, 141:7
**topics** [2] - 70:24, 71:3
**total** [2] - 97:3, 98:2
**touch** [4] - 110:20, 110:22, 154:18, 168:10
**touched** [1] - 146:10
**touching** [4] - 154:15, 159:11, 167:18, 172:8
**tour** [1] - 63:13
**track** [2] - 70:21, 71:7
**tradition** [1] - 142:21
**train** [2] - 105:13, 106:2
**TRANSCRIPT** [1] - 1:9
**transcript** [3] - 101:24, 176:5, 176:6
**trial** [34] - 10:1, 28:17, 28:20, 72:8, 94:22, 94:24, 97:17, 98:9, 99:14, 103:19, 109:3, 111:10, 112:8, 118:22, 119:13, 120:5, 122:23, 132:15, 132:19, 132:25, 138:8, 138:24, 142:12, 144:23, 145:25, 149:19, 149:21, 150:20, 152:8, 156:3, 164:1, 170:6, 170:7
**TRIAL** [1] - 1:9
**trials** [3] - 24:24, 149:23, 150:1
**tricky** [1] - 28:5
**tried** [2] - 54:7, 122:11
**trip** [2] - 97:1, 98:22
**trouble** [1] - 156:25
**true** [2] - 176:4, 176:6
**trump** [1] - 46:7
**Trump** [15] - 32:18, 32:19, 33:7, 33:9, 33:21, 37:14, 38:15, 39:21, 40:3, 51:17,

59:13, 59:14, 63:15, 95:7
**Trump's** [2] - 58:14, 60:9
**trust** [1] - 5:10
**truth** [3] - 7:4, 102:10, 103:1
**try** [11] - 66:9, 75:7, 90:2, 90:14, 92:2, 110:8, 110:24, 122:9, 125:4, 166:10, 174:7
**trying** [22] - 23:13, 66:10, 66:11, 71:12, 88:13, 89:9, 89:17, 103:15, 122:8, 125:2, 125:18, 146:6, 146:12, 148:3, 148:18, 153:2, 153:4, 153:8, 154:10, 154:23, 161:8
**TTK** [3] - 70:21, 71:6, 71:10
**turn** [1] - 57:9
**turned** [1] - 95:16
**turning** [2] - 63:17, 154:20
**Tweet** [1] - 95:5
**Twitter** [4] - 49:13, 58:7, 64:4, 64:8
**Twitter.com** [1] - 64:5
**Twitter.com/** [1] - 58:8
**two** [48] - 9:8, 12:24, 14:6, 25:4, 33:13, 34:5, 40:19, 41:6, 42:22, 45:3, 45:5, 46:17, 48:23, 50:9, 52:9, 55:7, 55:14, 56:17, 57:4, 57:6, 57:11, 58:17, 59:16, 59:24, 60:3, 60:22, 63:19, 68:11, 79:6, 93:3, 93:4, 93:6, 97:22, 98:1, 99:2, 113:12, 115:3, 120:8, 122:10, 130:12, 137:12, 139:16, 151:9, 151:15, 159:7, 161:22, 167:5, 173:12
**type** [8] - 4:22, 62:2, 62:14, 70:16, 108:13, 142:15, 149:6, 175:6
**types** [2] - 9:22, 62:23

## U

**U.S** [4] - 1:23, 52:6,

137:15, 137:18
**ultimate** [4] - 124:13, 124:14, 139:12, 170:12
**ultimately** [2] - 106:8, 165:6
**unable** [1] - 84:13
**unaware** [1] - 144:15
**uncall** [1] - 18:10
**under** [34] - 6:22, 11:9, 11:11, 11:15, 14:21, 22:3, 40:3, 48:9, 52:16, 70:5, 89:13, 93:13, 127:1, 136:12, 138:21, 139:23, 143:13, 152:3, 152:5, 155:4, 158:3, 159:4, 159:14, 162:6, 163:11, 164:9, 164:15, 167:22, 169:3, 172:6, 172:14, 172:15, 173:2, 173:11
**underlined** [1] - 127:23
**underlying** [1] - 99:15
**underpinnings** [1] - 143:12
**understood** [2] - 55:10, 148:17
**unfocused** [1] - 73:7
**unfortunate** [1] - 146:1
**unfortunately** [1] - 54:17
**unidentified** [1] - 102:12
**UNITED** [3] - 1:1, 1:3, 1:10
**United** [12] - 1:13, 3:3, 3:4, 49:16, 137:15, 137:16, 137:19, 139:13, 150:11, 155:9, 155:13, 176:11
**unless** [8] - 31:17, 42:4, 82:5, 92:19, 125:15, 132:25, 134:5, 175:4
**unlike** [2] - 42:3, 162:9
**unnecessary** [1] - 113:2
**unredacted** [1] - 123:11
**unrelated** [5] - 30:13, 30:14, 52:1, 52:2, 77:15
**unwanted** [3] - 154:14, 167:18, 168:10

**up** [63] - 3:15, 3:19, 5:18, 8:7, 9:15, 10:8, 13:4, 19:4, 26:24, 29:25, 30:23, 31:7, 31:13, 32:12, 33:10, 38:2, 40:8, 43:21, 55:20, 59:9, 61:4, 62:2, 62:14, 64:22, 65:14, 66:14, 74:16, 76:16, 76:22, 77:16, 77:22, 79:2, 80:5, 80:21, 84:24, 85:13, 85:24, 86:1, 95:23, 111:17, 112:1, 114:12, 114:25, 115:13, 116:9, 118:17, 119:11, 120:7, 123:8, 129:4, 129:17, 136:1, 140:20, 141:7, 141:9, 141:12, 142:23, 143:17, 152:19, 154:9, 163:6, 163:12, 175:12
**updated** [1] - 107:7
**uphold** [1] - 147:15
**upper** [1] - 62:2
**urging** [1] - 46:8
**URL** [2] - 43:12, 46:4
**USA** [1] - 109:2
**USAO** [1] - 1:14
**USC** [7] - 3:25, 5:21, 139:23, 162:22, 163:11, 164:16, 166:12
**user** [1] - 58:9
**uses** [2] - 84:17, 152:14
**usual** [1] - 67:5
**UTC** [53] - 11:4, 19:14, 20:3, 23:2, 33:1, 33:12, 33:23, 34:1, 36:4, 36:6, 36:14, 36:18, 37:7, 39:9, 39:13, 43:8, 43:19, 45:9, 45:11, 45:19, 45:24, 47:6, 47:13, 47:15, 48:2, 49:7, 49:22, 50:3, 50:15, 50:17, 51:2, 55:19, 56:9, 57:16, 57:18, 58:5, 58:21, 58:23, 59:7, 61:2, 61:13, 61:15, 61:23, 61:25, 62:10, 62:12, 62:18, 62:20, 63:6, 63:8, 63:25, 64:2, 64:18
**utilized** [1] - 34:17
**utterance** [1] - 103:5

**V**

**VA** [1] - 1:19
**value** [3] - 41:18, 42:20, 53:15
**variance** [5] - 137:14, 138:1, 139:10, 139:25, 143:13
**variety** [2] - 147:4, 168:12
**various** [3] - 76:9, 97:8, 115:12
**vehicles** [1] - 70:19
**verb** [1] - 83:13
**verbs** [6] - 152:15, 153:12, 158:19, 159:12, 159:19, 159:22
**verdict** [1] - 149:8
**version** [5] - 75:3, 75:10, 75:19, 75:24, 123:11
**versions** [3] - 17:6, 131:23
**versus** [3] - 13:10, 18:23, 153:25
**via** [2] - 85:8, 86:21
**vice** [2] - 52:15, 52:19, 53:9, 54:24, 55:2, 150:14, 150:15, 151:4, 155:15, 157:3, 171:12, 171:20
**Vice** [13] - 81:4, 81:5, 86:12, 150:8, 151:7, 151:16, 156:6, 156:18, 157:7, 157:16, 166:22, 167:1, 167:5
**victim** [2] - 145:23, 170:21
**victory** [1] - 126:1
**Video** [25] - 96:4, 108:6, 108:23, 109:7, 109:12, 111:2, 111:5, 113:4, 113:11, 114:7, 114:24, 115:19, 115:22, 116:8, 116:12, 116:15, 117:1, 117:11, 117:13, 117:23, 118:7, 118:10, 118:19, 121:16, 121:22
**video** [71] - 43:10, 43:11, 66:16, 66:19, 68:11, 97:15, 98:21, 98:25, 99:10, 100:5, 100:16, 100:18,

100:19, 100:21, 102:8, 102:19, 103:20, 103:22, 103:23, 104:13, 104:14, 105:6, 106:12, 107:4, 107:11, 107:14, 108:1, 108:9, 108:10, 109:1, 109:17, 110:3, 110:9, 111:4, 112:1, 112:21, 112:25, 113:14, 113:15, 114:6, 114:10, 114:23, 115:5, 116:9, 116:23, 118:9, 118:20, 119:15, 120:24, 121:2, 121:6, 121:13, 122:20, 123:6, 146:16, 146:20, 146:22, 146:23, 153:1, 153:9, 154:15, 155:6, 156:18, 158:21, 160:11, 171:17, 171:22, 171:23, 171:24, 171:25
**videos** [27] - 68:9, 68:10, 68:14, 73:5, 73:13, 79:23, 97:4, 99:8, 99:21, 101:1, 103:18, 108:16, 109:2, 111:9, 111:20, 113:12, 115:3, 115:23, 119:14, 122:25, 146:14, 160:17, 170:24, 171:9, 172:21, 173:4
**videotape** [3] - 161:5, 161:6, 161:17
**view** [7] - 60:15, 86:22, 106:21, 124:10, 124:20, 170:9, 174:5
**viewed** [2] - 124:16, 124:17
**viewing** [2] - 84:9, 122:5
**violence** [39] - 37:10, 123:20, 123:24, 124:2, 124:5, 124:7, 124:11, 124:16, 124:17, 124:18, 124:20, 124:24, 125:4, 125:24, 126:2, 126:4, 127:18, 127:20, 162:3, 162:4,

163:10, 163:21, 164:9, 164:15, 165:1, 165:3, 165:4, 165:10, 165:11, 165:12, 165:13, 165:14, 165:22, 165:23, 166:8, 169:9, 170:1, 173:11, 173:13
**violent** [6] - 38:18, 40:5, 84:21, 95:7, 95:15, 95:16
**visible** [3] - 31:4, 35:24, 110:19
**visiting** [5] - 150:9, 156:8, 156:16, 156:17, 157:18
**visual** [5] - 96:25, 99:18, 106:9, 106:12, 106:15
**voice** [1] - 101:6
**voiced** [1] - 101:5
**voir** [1] - 38:20
**volume** [2] - 72:12, 72:21
**vote** [3] - 29:20, 125:4, 143:10
**voted** [1] - 142:22
**voting** [1] - 37:14
**VP** [2] - 39:18, 46:8
**vs** [1] - 1:5

**W**

**wait** [12] - 59:23, 71:16, 93:16, 158:12, 159:5, 159:14
**waits** [2] - 38:7, 126:13
**walk** [2] - 15:14, 129:17
**walking** [1] - 116:20
**wants** [19] - 12:18, 24:1, 26:21, 67:4, 81:23, 81:24, 83:12, 84:20, 90:21, 107:2, 112:11, 125:6, 137:10, 143:21, 158:7, 167:9, 169:25, 173:10, 173:18
**Warnagiris** [62] - 3:3, 6:10, 7:8, 20:19, 24:8, 24:14, 70:12, 70:20, 71:6, 72:24, 73:1, 73:6, 73:14, 75:22, 76:6, 77:17, 78:1, 78:8, 78:12, 78:16, 79:25, 81:3,

82:19, 84:14, 84:20, 86:9, 102:6, 108:8, 108:17, 108:20, 109:1, 111:10, 111:17, 114:3, 114:8, 114:14, 115:10, 115:12, 115:24, 116:5, 116:17, 117:7, 117:15, 117:18, 118:2, 118:6, 118:8, 118:15, 118:23, 122:8, 122:9, 122:11, 124:7, 127:15, 136:1, 138:22, 147:1, 147:25, 148:15, 148:18, 149:2, 171:13
**WARNAGIRIS** [1] - 1:6
**Warnagiris's** [8] - 6:5, 7:23, 52:12, 77:18, 80:11, 85:2, 98:22, 148:16
**Warnagiris..** [1] - 27:24
**warner** [1] - 92:16
**Warner** [80] - 66:15, 66:16, 66:18, 66:20, 67:14, 68:9, 68:10, 68:25, 72:25, 73:7, 73:14, 86:16, 86:19, 87:2, 87:22, 88:2, 88:5, 88:12, 89:8, 89:12, 89:22, 89:25, 90:5, 90:6, 90:8, 90:24, 91:12, 91:25, 92:20, 93:2, 93:7, 93:10, 93:13, 93:18, 94:6, 94:7, 94:16, 94:19, 98:11, 113:22, 119:20, 120:10, 121:17, 122:4, 122:7, 122:8, 122:11, 123:5, 145:25, 146:1, 146:2, 147:5, 147:15, 148:1, 148:2, 148:14, 148:22, 148:23, 152:4, 152:25, 153:2, 153:7, 153:9, 153:14, 154:11, 154:16, 154:17, 154:22, 154:25, 158:16, 158:17, 158:22, 161:5, 161:16, 170:21, 171:6, 172:13, 172:18

**Warner's** [9] - 90:12, 147:9, 153:3, 153:5, 160:22, 160:25, 161:4, 170:23, 172:20
**warrant** [1] - 20:25
**Washington** [5] - 1:15, 1:24, 60:10, 108:9, 176:13
**watch** [3] - 38:2, 83:4, 83:12
**watched** [12] - 68:11, 112:8, 113:6, 115:23, 116:10, 119:12, 119:14, 119:23, 120:25, 121:6, 123:6, 124:10
**watches** [2] - 98:21, 122:25
**watching** [4] - 105:2, 105:7, 124:10, 146:19
**ways** [1] - 168:12
**weather** [1] - 56:3
**Weatherford** [1] - 91:7
**Weatherhead** [44] - 9:5, 9:9, 9:11, 14:21, 15:4, 15:25, 18:4, 19:12, 21:16, 22:2, 27:2, 29:15, 31:20, 32:2, 36:2, 36:10, 38:11, 40:19, 42:22, 44:1, 44:18, 48:23, 51:8, 55:13, 56:16, 57:11, 63:4, 66:1, 67:12, 67:13, 68:21, 69:4, 70:6, 70:10, 90:15, 90:25, 119:11, 121:17, 122:21, 127:22, 130:9, 131:8, 147:4, 147:7
**WEATHERHEAD** [2] - 2:3, 15:1
**Weatherhead's** [1] - 67:8
**weatherstone** [2] - 14:23, 14:24
**website** [2] - 80:7, 80:10
**week** [1] - 149:18
**weeks** [1] - 12:25
**weight** [3] - 23:25, 24:16, 122:9
**WH** [1] - 63:12
**whereabouts** [1] - 150:16
**whispers** [1] - 48:11, 127:3
**white** [1] - 46:20

**White** [1] - 156:9
**whole** [6] - 14:7, 26:5, 40:8, 61:17, 103:25, 126:23
**wholly** [1] - 100:14
**Wigmore** [1] - 92:8
**willing** [1] - 169:17
**wind** [1] - 5:18
**wise** [1] - 112:13
**wish** [1] - 140:15
**withdraw** [2] - 38:23, 88:8
**withdrawn** [1] - 80:2
**withheld** [1] - 73:24
**witness** [45] - 9:11, 18:1, 26:5, 35:25, 38:21, 65:16, 67:23, 67:25, 68:3, 68:6, 68:19, 68:20, 68:22, 76:2, 89:12, 89:13, 89:18, 91:11, 91:14, 92:3, 92:21, 97:15, 97:18, 97:20, 98:14, 98:20, 101:9, 101:10, 106:15, 107:12, 107:13, 112:20, 122:21, 129:18, 129:23, 131:16, 131:17, 138:25, 147:13, 147:18, 148:6, 148:14, 150:15, 156:4, 160:12
**WITNESS** [25] - 2:2, 20:16, 20:21, 21:1, 22:17, 22:19, 39:11, 58:12, 67:2, 70:7, 93:20, 94:20, 94:23, 107:25, 108:14, 111:19, 113:23, 113:25, 114:4, 114:20, 115:15, 116:23, 118:1, 118:4, 131:20
**witness's** [4] - 92:5, 160:7, 160:8, 160:9
**witnesses** [2] - 156:4, 170:15
**woman** [1] - 25:3
**won** [1] - 35:13
**Woodbridge** [1] - 79:16
**word** [11] - 34:8, 34:12, 82:9, 82:23, 146:13, 152:15, 152:18, 156:24, 156:25, 165:4, 165:16
**words** [14] - 35:18, 46:11, 79:24, 82:22,

84:14, 84:17, 89:12, 96:20, 96:21, 128:25, 129:3, 130:2, 158:23, 164:14
**works** [2] - 14:7, 28:16
**worn** [1] - 73:5
**worry** [1] - 174:14
**worth** [2] - 5:9, 54:21
**wow** [1] - 66:25
**writing** [7] - 40:22, 40:23, 49:16, 54:17, 143:21, 144:5, 163:8
**written** [8] - 71:19, 82:22, 123:2, 143:25, 159:16, 163:6, 164:3, 164:5
**wrote** [4] - 88:9, 89:24, 142:23, 149:16

# Y

**year** [2] - 68:14, 68:15
**years** [3] - 4:8, 40:4, 93:6
**yessir** [2] - 36:20, 36:25
**yesterday** [28] - 4:1, 6:14, 7:17, 8:3, 9:1, 9:10, 12:21, 14:5, 14:22, 15:5, 15:25, 16:3, 20:13, 20:17, 20:23, 21:20, 24:23, 29:15, 29:22, 32:3, 32:22, 33:8, 66:1, 66:3, 67:17, 89:4, 90:5, 90:19
**yesterday's** [1] - 6:19
**yet..** [1] - 50:19
**younger** [2] - 105:16, 105:18
**yourself** [3] - 91:20, 107:13, 119:23
**yourselves** [1] - 175:11
**YouTube** [2] - 113:14, 115:5

# Z

**zerohedge** [1] - 85:8
**zoom** [1] - 86:3