**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-382 (PLF) |
| | : | |
| CHRISTOPHER WARNAGIRIS, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S *FISCHER* MOTIONS AND
GOVERNMENT'S MOTION TO REOPEN EVIDENCE**

Now comes the government to submit this opposition to the defendant's three motions stemming from the Supreme Court's recent decision in *United States v. Fischer*, 603 U.S. ----, 144 S.Ct. 2176 (2024). ECF Nos. 152, 153, 154. Rather than ruling on the defendant's renewed Rule 29 motion, ECF No. 153, the government respectfully moves the Court to reopen the evidence in this case to allow the parties to submit new evidence in response to *Fischer*. The Court should deny the defendant's motion to dismiss, ECF No. 152, as untimely because of the absolute prejudice the government would face in the event of an adverse decision. In the alternative, the Court should deny the motion on the merits, because the second superseding indictment adequately states an offense consistent with the statutory language of Section 1512(c)(2). Lastly, the government agrees that *Fischer* requires some modification to the bench instructions previously proposed by the government. *See* ECF No. 154.

**FACTUAL SUMMARY AND PROCEDURAL BACKGROUND**

**I. Brief Procedural History**

The defendant, Christopher Warnagiris, was arrested in May 2021 for his violent and obstructive acts during the riot at the U.S. Capitol on January 6, 2021. ECF No. 1. On March 22, 2023, the defendant was indicted in Second Superseding Indictment charging the defendant with,

among eight other offenses, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. ECF No. 49. On November 18, 2022, the defendant filed a motion to dismiss this charge for failure to state an offense and lack of specificity. ECF No. 37 at 1. After extensive briefing, *see* ECF Nos. 38, 40, 41, 54, and 55, the Court denied the motion, ECF No. 87. After the Supreme Court granted *certiorari* in *Fischer*, the defendant filed a motion to stay the proceedings pending the disposition of *Fischer*. ECF No. 103. The Court granted the motion in part due to scheduling conflicts. Minute Order, December 12, 2023.

Starting on April 1, 2024, this Court presided over a non-jury trial for all charges against the defendant. During the trial, the Court noted that it would not issue a verdict on the case until after the Supreme Court ruled in *Fischer* and the D.C. Circuit ruled in *United States v. Couy Griffin*, 22-3042. *See* Trial Tr. 4/5/24 61:24-62:2. On June 30, 2024, the defendant filed three motions related to *Fischer* on various grounds. ECF Nos. 152, 153, and 154. The government now responds jointly to all three motions.

## II.    Brief Factual Recitation[1]

On January 6, 2021, a joint session of Congress met to certify the Electoral College votes for the 2020 presidential election. The defendant, who at the time was an active-duty Marine, pushed his way to the front of the mob at the East Rotunda Doors and fought his way through the doors becoming one of the first rioters to breach those doors at 2:25 p.m. He then used his strength and violent force to prevent other police officers inside the building from their attempts to resecure the doors. One of them, Officer A.W., had to fight with the defendant during the attempt regain control of the doors. During the encounter, the defendant shoved Officer. A.W. and used his body

---

[1] Based on the physical evidence and testimony submitted at trial.

2

weight against the officer and the door to keep the door open. The defendant's actions enabled a flood of rioters to enter who then went on to occupy the Capitol Building and stop the Congressional proceedings. The Senate was forced to recess and evacuate at approximately 2:13 p.m., the Vice President was forced to relocate from his office at approximately 2:25 p.m., and the House was forced to recess and evacuate at 2:29 p.m.

After Officer A.W. regained control of the door, the defendant walked the length of the Rotunda to the Will Rodgers Hallway, which leads directly to the floor the House of Representative. There, the defendant and other rioters were temporarily stopped by police as members and staff still remained inside the House floor and gallery. Members and staff were eventually evacuated from the floor as the line of rioters overran officers and positioned themselves right outside the final door leading to the House floor. The defendant remained in this crowd for some time until police directed him back toward the Rotunda. In the Rotunda, the defendant used his body weight to impede officers' attempts to clear the Rotunda of rioters. Congress was not able to reconvene until much later in the day and the votes were not certified until January 7, 2021.

Text messages on the defendant's phone revealed his full knowledge of the certification proceeding set to occur on January 6, 2021 as he and others discussed the election in a group chat. *See* Gov't Ex. 602A. Specifically, in December 2020, the defendant discussed a "competing electoral slate" as "one of the last constitutional offramps before violence solves the problem for us." *Id*. at 11. The defendant also texted, "These retards better recognize the coming storm that waits for them if they fail to follow through on their constitutional duties" when discussing whether or not certain elected officials, including the former Vice President Mike Pence, would be on board for a competing slate of electors. *Id*. In other words, the defendant expressed specific intent

3

regarding a slate of electoral votes – i.e., records, documents, or other things – associated with the official proceeding.

Beyond the defendant's own conduct, the government also admitted extensive evidence to prove the existence and function of an official proceeding, namely the certification of the Electoral College votes. This evidence included a montage video, statutes, the relevant portion of the United States Constitution, and congressional records. Gov't Exs. 701-711. While there was testimony from a member of the United States Capitol Police about the disruption of the certification, no witness testified to any records, documents, or other objects used in the proceeding – specifically, the presentation, impairment, and/or availability of ballots during the proceeding.

## DISCUSSION

**I. The Court Should Reopen Evidence in Light of the *Fischer* Decision and Defer Ruling on the Defendant's Renewed Rule 29 Until After Close of Evidence.**

Rather than ruling on the defendant's renewed motion for judgment of acquittal, ECF No. 153, the government respectfully moves the Court to reopen the evidence to allow the parties to submit new evidence in response to the Supreme Court's *Fischer* decision. Although parties are typically not allowed to introduce new evidence into the record after they have rested their cases, caselaw establishes that courts may permit the parties to reopen evidence in certain circumstances. When weighing a motion to reopen evidence, courts should inquire "whether the party opposing reopening would be prejudiced if reopening is permitted." *United States v. Trant*, 924 F.3d 83, 88 (3d Cir. 2019) (citation omitted). To make this determination, courts look to "whether the opposing party will have a reasonable opportunity to rebut the moving party's new evidence" and "whether granting the motion will cause substantial disruption to the proceedings or result in the new evidence taking on distorted importance[.]" *Id.* In addition to the prejudice analysis, courts "should

4

assess the reasonableness of the moving party's explanation for failing to introduce the desired evidence before resting and whether the new evidence is admissible and has probative value." *Id.* While the government is unaware of any D.C. Circuit precedent on the appropriate standard for motions to reopen evidence in the context of a trial, the prejudice and reasonableness standard described in *Trant* is used in at least nine other circuits. *Id.* at 89 (citing cases); *see also United States v. Watson*, 391 F. Supp. 2d 89, 91-92 (D.D.C. 2005) (discussing the same standard for motions to reopen evidence in suppression hearings).

Applying this standard here, the government's motion is reasonable and will not unfairly prejudice the defendant. First, the government's motion is reasonable because at the time that this Court first heard evidence in the case, *binding* precedent did not require any evidence of documents, objects, or other things used in an official proceeding to sustain a conviction under Section 1512(c)(2). *United States v. Fischer*, 64 F.4th 329, 336-37 (D.C. Cir. 2023), *rev'd*, 144 S. Ct. 2176 (2024). Rather, the government needed to prove only that the defendant engaged in some kind of obstructive act to any aspect of the proceeding. *Id.* at 337. In light of that precedent, the government had no reason to introduce evidence to meet the much narrower standard set forth in *Fischer*. 144 S. Ct. at 2190. The government also submits that it will seek to introduce evidence that is admissible and probative to this case. In particular, the government anticipates calling a congressional witness to discuss the use of paper ballots during the certification proceeding and the impact that the riot had on the availability of those ballots. The government will argue, among other things, that the defendant's actions amounted to an attempt to impair the availability and integrity of those ballots or that the defendant aided and abetted others to do the same.

Turning to prejudice against the defendant, if the Court reopens the evidence in this case,

5

the defendant will have every opportunity to rebut the government's new evidence through cross-examination and by calling his own witnesses should he choose to do so. The defendant will also be able to make additional arguments in summation against the government's case. Additionally, reopening the evidence will not disrupt the proceedings because they have been in effect stayed pending the decision from the Supreme Court in *Fischer* as well as the decision from the D.C. Circuit in *United States v. Couy Griffin*, 22-3042. *See* Trial Tr. 4/5/24 61:24-62:2. Thus, submitting new evidence would cause no additional disruption to these proceedings beyond what has already happened. As for the concern of whether new evidence may receive distorted importance, this factor only arises in a jury trial where the jurors may view the new evidence differently than what was originally submitted to them. *See, e.g.*, *United States v. Nunez*, 432 F.3d 573, 581-82 (4th Cir. 2005). In the context of a bench trial, the Court is certainly capable of giving all evidence its appropriate weight. Thus, the Court should permit the government to reopen the evidence in this case.[2]

For these reasons, the defendant's motion for the Court to reconsider its denials of his Rule 29 motions is premature. *See* ECF No. 153 at 3. The motion seeks to hold the government responsible for failing to introduce evidence at trial pursuant to a legal instruction that did not exist. *Id.*; *Fischer*, 64 F.4th at 336-37; *see also United States v. Reynoso*, 38 F.4th 1083, 1091 (D.C. Cir. 2022) (stating "a defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law."). The defendant's motion is particularly specious given that he previously sought to stay his trial

---

[2] If the Court denies this motion, the government respectfully requests the opportunity to address the Court further to argue sufficiency of the evidence on the current record before the Court renders a verdict.

6

until after the Supreme Court ruled in *Fischer*. ECF No. 103. The only purpose of such a stay is to wait for the exact guidance that the *Fischer* decision provides. For the defendant to now argue that the government should not be given the opportunity to submit evidence consistent with that guidance is an attempt to have his cake and eat it too. Thus, the Court should withhold ruling on the defendant's renewed Rule 29 motion until after the parties have had the chance to introduce additional evidence in response to *Fischer*.

**II.     The Defendant Fails to Show Good Cause for Filing an Untimely Motion to Dismiss.**

The court should deny the defendant's motion to dismiss because, while a denial would not significantly prejudice the defendant, the alternative would greatly prejudice the government at this stage in the proceedings. In general, defendants are required to submit all pretrial motions, including motions to dismiss on the grounds of a defect in the indictment, in advance of trial. Fed. R. Crim. P. 12(a)(3)(B). Failure to submit such a motion in advance of trial means the motion should be treated as untimely. Fed. R. Crim. P. 12(c)(3). The rule applies to both trial courts and appellate courts. *United States v. Bowline*, 917 F.3d 1227, 1230-31 (10th Cir. 2019). However, courts may still consider an untimely motion "if the [moving] party shows good cause" for the delay. Fed. R. Crim. P. 12(c)(3); *United States v. Weather*, 186 F.3d 948, 952 (D.C. Cir. 1999) (citing *Davis v. United States*, 411 U.S. 233, 242 (1973)). As *Weathers* explains, "The purpose of the rule . . . is to compel defendants to object to technical defects in the indictment early enough to allow the district court . . . to permit the prosecution to accommodate meritorious challenges, and to do so without disrupting an ongoing trial." 186 F.3d at 953 (quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992)).

To show good cause, the moving party must "show both cause and prejudice." 1 CHARLES

A. WRIGHT, Fed. Prac. & Proc. Crim, § 194 (5th ed.). This standard thus requires inquiry into "the reason for the defendant's tardiness and whether he has shown that he is actually prejudiced by the defect . . . of which he complains." *United States v. Madeoy*, 912 F.2d 1486, 1490 (D.C. Cir. 1990). The fact that the information supporting the motion was not reasonably available during the motions period would seem to satisfy the good cause standard. *See, e.g.*, *United States v. Lamela*, 942 F.2d 100, 103-105 (1st Cir. 1991) (considering the defendant's untimely motion to dismiss on appeal because the defendant did not have the necessary grand jury transcripts until after trial began). However, under the good cause standard, courts may inquire into not only the potential prejudice faced by the moving party if the untimely motion is not accepted, but also the potential prejudice to the opposing party if the motion is accepted. *See United States v. Salahuddin*, 509 F.3d 858, 862 (7th Cir. 2007).

In *Salahuddin*, the defendant withdrew his earlier guilty plea after both parties realized that a prior conviction could subject him to heightened penalties not previously contemplated. *Id.* at 861. After the case returned to the trial track, the defendant filed pretrial motions to suppress evidence and statements. *Id.* at 860. The date of the filing, however, was after the deadline for pretrial motions set by the court before the defendant entered his guilty plea. *Id.* at 859-60. As a result, the court deemed the motions untimely and declined to entertain them. *Id.* at 860. As part of its analysis holding that the district court abused its discretion to not hear the motions, the Seventh Circuit noted that the purpose of the good cause rule was to ensure "the speed and efficiency of the judicial process [and] fairness to the Government." *Id.* at 862.[3] With this purpose

---

[3] This opinion discusses the purpose of Rule 12(e), rather than Rule 12(c)(3). *See Salahuddin*, 509 F.3d at 862. As of today, Rule 12(e) is listed as "reserved." Fed. R. Crim. P. 12(e). However, when the Seventh Circuit issued its opinion in *Salahuddin*, Rule 12(e) was the untimely motion

in mind, the court held that considering the untimely motion would not controvert this purpose because, if the evidence was suppressed, the government could appeal that decision as jeopardy had not attached. *Id.* at 862-63.

Applying the good cause standard here, the defendant fails to meet his burden. To be clear, the government recognizes that the first prong of the good cause standard weighs in the defendant's favor. As with the government's motion to reopen the evidence, the defendant did not have the caselaw necessary to file the motion to dismiss prior to trial. *See Lamela*, 942 F.2d at 103-105. As to prejudice, however, the defendant's argument fails. This court first heard evidence in this trial on April 1, 2024. At that moment, jeopardy attached to all charges in this case, including the charge that the defendant now seeks to dismiss. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977). As a result, the government lacks the ability to respond in the standard way to a motion to dismiss an indictment—by seeking a superseding indictment that fixes the alleged technical failure. *Weathers*, 186 F.3d at 953. In addition, if the court were to grant the defendant's motion to dismiss at this stage, the government would lack any recourse to appeal. *See Lee v. United States*, 432 U.S. 23, 30 (1977) ("Where a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged . . . further prosecution is barred by the Double Jeopardy Clause."); *compare Salahuddin*, 509 F.3d at 862-63. By contrast, the defendant faces little prejudice because he can still argue, as he has in Rule 29 motion, that the government failed to prove the elements of the offense as set forth in *Fischer*. ECF No. 153.[4] Then,

---

provision. This provision was moved to Rule 12(c)(3) as part of the 2014 amendments to the rule. Fed. R. Crim. P. 12.

[4] In addition, unlike cases where prejudice could lie when a defendant unnecessarily faces trial on a defective indictment, this defendant has already gone through the trial in this case, excepting the additional evidence that the government seeks to admit. Thus, there is little if any prejudice on

9

if this Court is unpersuaded by his argument and convicts the defendant of the offense, he can pursue both his motion to dismiss and the sufficiency argument on appeal. *United States v. Dennis*, 41 F.4th 732, 740 (5th Cir. 2022) ("When a pretrial motion is denied as untimely, [courts] review the denial of the motion for plain error."). Because the defendant has these avenues available to him to challenge any verdict or conviction even if the Court denies his untimely motion, the defendant cannot meet his burden to show prejudice under the good cause standard. This conclusion is further bolstered by the significant prejudice the government faces if the motion is accepted at this point in the proceedings. Thus, the Court should deny the defendant's motion as untimely.

### III. If the Court Considers the Defendant's Motion to Dismiss, the Motion Should be Denied Because the Indictment Adequately States an Offense.

If the Court decides to hear the defendant's motion to dismiss, the Court should still deny the motion on the merits. This Court already thoroughly explained the standard of review for motions to dismiss in its order denying the defendant's previous motion on similar grounds. *See* ECF No. 87 at 5-6. The defendant now argues the indictment is deficient because it fails to reference "records, documents, objects, or . . . other things used in" the official proceeding. ECF No. 152 at 1 (citing *Fischer*, 144 S.Ct. at 2190). However, the second superseding indictment alleges that the defendant committed the offense using the exact same linguistic structure as the relevant statute, which provides notice of the exact crime for which the defendant is charged. ECF No. 49 at 2 (alleging that the defendant "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding[.]; *compare* 18 U.S.C. § 1512(c)(2) ("Whoever corruptly . . .

---

those grounds either.

obstructs, influences, or impedes any official proceeding[.]"). Indeed, the Court already rejected this same argument for the same reason when it denied the defendant's first motion to dismiss. ECF No. 87 at 11-13. Further, the Supreme Court in *Fischer* did not step into the shoes of Congress and modify the statutory language of the offense as the defendant seems to suggest. Rather, the Court only clarified the way one must obstruct, influence, or impede an official proceeding to be liable under Section 1512(c)(2). Therefore, the second superseding indictment adequately states an offense and the defendant's motion to dismiss should be denied.

**IV.     In Light of the Supreme Court's *Fischer* Decision, the Government Agrees that the Bench Instructions Should be Modified.**

In December 2023, the government provided the Court with a number of objections to a set of jury instructions used by this Court and other judges in this district. ECF No. 100. Upon review of the Supreme Court's decision in *Fischer*, 144 S.Ct. 2176, the government agrees that some modifications are warranted to the previous instruction for the offense of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. *See* ECF No. 154 (Defendant's Motion to Modify Bench Instructions). As the government's previous filing was a series of objections to other jury instructions, *see* ECF No. 100, rather than a set of complete instructions, the government includes its entire proposed instruction for the sake of simplicity.

**COUNT TWO: OBSTRUCTION OF AN OFFICIAL PROCEEDING**

Count Two of the Second Superseding Indictment charges the defendant with corruptly obstructing an official proceeding and attempting to do so, which is a violation of 18 U.S.C. § 1512(c)(2).

Count Two also charges the defendant with aiding and abetting others to commit that

offense.

## Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

- *First*, the defendant committed or attempted to commit an act that impaired the integrity of or rendered unavailable records, documents, or other things to be used in an official proceeding;

- *Second*, the defendant intended to impair the integrity of or render unavailable such records, documents, objects, or other things to be used in an official proceeding; and,

- *Third*, the defendant acted corruptly.

## Definitions

Congress's Joint Session to certify the Electoral College vote on January 6, 2021, was an "official proceeding" as that term is used in this count.[5] The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.[6]

---

[5] *Fischer*, 64 F.4th at 342 (D.C. Cir. 2023) (affirming district court's holding "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2)). See also 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress").

[6] 18 U.S.C. § 1512(f)(1) ("For the purposes of this section—(1) an official proceeding need not be pending or about to be instituted at the time of the offense"). For the nexus requirement (that the official proceeding need be reasonably foreseeable), *see United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995). For other January 6 trials that have used a similar instruction, *see, e.g.*, *United States v. Reffitt*, 21-cr-32

To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both.[7] The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other

---

(DLF) (ECF No. 119 at 25-26); *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 12), *affirmed at* 86 F.4th 355 (D.C. Cir. 2023); *United States v. Thompson*, 21-cr-161 (RBW) (ECF No. 832 at 26); *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); and *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 23).

[7] In *United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023), the district court adopted a jury instruction that largely mirrored this proposed definition of "corruptly." *Id.* at 362. On appeal, the D.C. Circuit stated: "[T]he district court correctly informed the jury that it could find that Robertson acted 'corruptly' if the government proved that he 'use[d] [independently] unlawful means' when he obstructed, impeded, or influenced the Electoral College vote certification. . . . Defining 'corruptly' as 'wrongfully' — and treating independently unlawful conduct as 'wrongful' — provides an objective measure of culpable conduct that is straightforward to apply: A court or a jury can easily determine whether the evidence shows that a defendant took unlawful action to obstruct, impede, or influence the proceeding." *Id.* at 369.

13

independently unlawful conduct, does act corruptly.[8] One way of acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person.[9]

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for their conduct.[10]

---

[8] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54, 82 (D.D.C. 2021); *United States v. Lonich*, 23 F.4th 881, 902-03 (9th Cir. 2022). For other January 6 trials that have used similar instructions, see, *e.g.*, *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7), *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-29), and *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10).

[9] "[T]here are many ways to prove 'corruptly[,]'" *United States v. Robertson*, 86 F.4th 355, 373 n.8 (D.C. Cir. 2023); this is merely one way. *See id.* at 374 ("Acting 'dishonestly' would be consistent with the ordinary meaning of acting 'corruptly.' . . . Likewise, a defendant's obstructive conduct may often seek to secure an unlawful benefit for himself or another, such as preventing negative testimony at a trial."). This formulation, which *Robertson* found was not required but which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.), *cert. granted*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023); *id.* at 352 (Walker, J., concurring), *overruled on other grounds*, 144 S. Ct. 2176 (2024), was provided in *United States v. Nordean, et al*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10), *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 24), *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27), and *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 28).

[10] *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 29).

Attempt

In order to find the defendant guilty of attempt to commit obstruction of an official proceeding, the Court must find that the government proved beyond a reasonable doubt each of the following elements:

- *First*, that the defendant intended to commit the crime of obstruction of an official proceeding, as the Court defined that offense above; and,
- *Second*, that the defendant took a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, the Court may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because the defendant thought about it. The Court must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, the Court may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because the defendant made some plans to or some preparation for committing that crime. Instead, the Court must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

A defendant may be found guilty of the offense charged in Count Two if the defendant committed obstruction of an official proceeding, or attempted to commit obstruction of an official

15

proceeding. Each of these two ways of committing the offense is described in the instructions. If the Court finds beyond a reasonable doubt that the defendant committed the offense of obstruction of an official proceeding in either one of these ways, the Court should find the defendant guilty of Count Two.

Aiding and Abetting[11]

In this case, the government further alleges that the defendant committed Count Two by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count Two.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if the Court finds beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of Count Two because the defendant aided and abetted others in committing the offense, the Court must find that the government proved beyond a reasonable doubt the following elements:

---

[11] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02. *See United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 29-31); *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 21-25).

- *First*, that others committed the offense by committing each of the elements of the offense charged, as explained above;

- *Second*, that the defendant knew that the specified offense was going to be committed or was being committed by others;

- *Third*, that the defendant performed an act or acts in furtherance of the specified offense;

- *Fourth*, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the specified offense; and,

- *Fifth*, that the defendant did that act or acts with the intent that others commit the specified offense.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, the Court must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, the Court may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances.

17

However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for the Court to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, the Court may not find the defendant guilty of the specified offense as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

## **CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court reopen evidence in this case, deny the defendant's motion to dismiss Count Two of the second superseding indictment, and adopt the government's proposed bench instruction for the same count.

          Respectfully submitted,

          MATTHEW M. GRAVES
          UNITED STATES ATTORNEY
          D.C. Bar Number 481052

By:   */s/ ANDREW HAAG*
        Andrew Haag
        Assistant United States Attorney
        Massachusetts Bar No. 705425
        601 D Street NW, Washington, DC 20530
        Tel. No.: (202) 252-7755
        Email: andrew.haag@usdoj.gov

*/s/ REBEKAH LEDERER*
Rebekah Lederer
Assistant United States Attorney
Pennsylvania Bar No. 320922
601 D St. N.W, Washington, DC 20530
Tel. No.: (202) 252-7012
Email: rebekah.lederer@usdoj.gov